# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN

| | | |
|---|---|---|
| FORD MOTOR COMPANY, a Delaware Corporation; SEVERSTAL NORTH AMERICA, INC., a Delaware Corporation, | Civil Action No. | **DEMAND FOR JURY TRIAL** |
| Plaintiffs, | | |
| v. | | |
| MICHIGAN CONSOLIDATED GAS COMPANY, a Michigan Corporation, | | |
| Defendant. | | |

_____/

| | |
|---|---|
| DICKINSON WRIGHT PLLC | ECKERT SEAMANS CHERIN & MELLOTT, LLC |
|   D. Lee Khachaturian (P59966) | |
|   Tammy L. Helminski (P69431) |   Robert V. Campedel (P47828) |
| Attorneys for Ford Motor Company | Attorneys for Severstal North America, Inc. |
| 500 Woodward Avenue, Suite 4000 | 600 Grant Street, 44th Floor |
| Detroit, MI 48226 | Pittsburgh, PA 15219-2788 |
| (313) 223-3500 | (412) 566-6000 |

_____/

## COMPLAINT

Plaintiffs Ford Motor Company and Severstal North America, Inc., by and through their respective counsel Dickinson Wright PLLC and Eckert Seamans Cherin & Mellott, LLC, bring this civil action against Michigan Consolidated Gas Company, and support their allegations as follows:

## PARTIES AND JURISDICTION

1.   Plaintiff Ford Motor Company ("Ford") is a Delaware corporation with its principal place of business located in Dearborn, Michigan.

2.   Plaintiff Severstal North America, Inc. ("Severstal") is a Delaware corporation with its principal place of business located in Dearborn, Michigan.

3.   Defendant Michigan Consolidated Gas Company ("MichCon") is a Michigan corporation with its principal place of business located in Detroit, Michigan.

4.   This case, in part, arises under a federal statute; i.e., the Comprehensive Environmental Responsibility, Compensation and Liability Act, 42 U.S.C. § 9601 *et seq*. (hereinafter "CERCLA").

5.   This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331.

6.   This Court has pendent jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367 because they are so related to Plaintiffs' CERCLA claims that they form part of the same case or controversy.

7.   Venue is proper in the Eastern District of Michigan pursuant to 28 U.S.C. § 1391(b) and 42 U.S.C. § 9613 because the claims arose within this district.

8.   Notice of this action has been provided to the State of Michigan and MichCon pursuant to MCL 324.20135.

## GENERAL ALLEGATIONS

9. The Detroit Gas Company operated a manufactured gas plant and conducted other manufacturing operations from at least the mid-1920's until the mid 1950's on the west side of the Rouge River in the City of Dearborn, Michigan, hereinafter referred to as the "MGP Site."

10. In 1938, Ford acquired 13 acres of land on the east side of the River, across from the MGP Site.

11. The manufactured gas plant operations at the MGP Site included the production of by-products, such as oils and tars.

12. At least some of these oil and tar by-products were dumped in surface impoundments at the MGP Site adjacent to what was then the western bank of the Rouge River (the "River").

13. The Detroit Gas Company became part of MichCon in 1949. As a result, MichCon is the successor to the Detroit Gas Company and is liable for the debts, liabilities, duties and obligations of its predecessor. (Hereinafter, reference to MichCon includes, where appropriate, reference to the Detroit Gas Company).

14. Manufactured gas plant operations ceased at the MGP Site in or around 1954.

15. In the late 1960's, the United States Army Corps of Engineers realigned the River. The new River channel was moved west of the original river channel and consequently, cut through MichCon's MGP Site. This realignment resulted in the MGP Site straddling the east and wide sides of the River.

16. In connection with the realignment of the River in 1967 and 1968, the United States Army Corps of Engineers identified potential free-phase oil, tar, or oily material in

the0areas of the former surface impoundments of the manufactured gas plant operations, including areas on the newly-created east side of the River.

17. In 1968, Ford acquired title to a portion, 22 acres, of the MGP Site. These 22 acres were located on the east side of the River as a result of the relocation of the River. At that same time, Ford acquired 10 acres of land that had been part of the original River channel.

18. The Schaefer Road Area Property ("SRA Property"), which is the principal property at issue in this litigation, is 45 acres and is entirely on the east side of the River. It consists of the 13 acres Ford acquired in 1938 (*see* ¶ 10), and the 32 acres acquired in 1968 (*see* ¶ 17).

19. In 1989, Ford sold the 45-acre SRA Property to the Rouge Steel Company, and in 2004, Severstal purchased the assets of the Rouge Steel Company, including the SRA Property, in a bankruptcy proceeding.

20. Several Phases of Remedial Investigations (collectively "Remedial Investigations") have been performed by Ford and Severstal at the SRA Property and on adjoining property along the riverbank not owned by Ford or Severstal, under the oversight of the Michigan Department of Environmental Quality (the "MDEQ").

21. The results of the Remedial Investigations show that there are thirteen types of volatile organic chemicals ("VOCs") and twenty-two types of semi-volatile organic chemicals ("SVOCs") present in the subsurface at the SRA Property.

22. The Remedial Investigations revealed that the highest concentrations of VOCs and SVOCs were present in the subsurface under the former manufactured gas plant surface

impoundments located on the property that previously had been part of the MGP Site that Ford acquired from MichCon in 1968.

23.     Additionally, the Remedial Investigations revealed that high concentrations of nineteen different metals, free-phase dense non-aqueous phase liquid ("DNAPL"), and polychlorinated biphenyls ("PCBs") were also present in the subsurface under the former manufactured gas plant surface impoundments located on the property that previously had been part of the MGP Site that Ford acquired from MichCon in 1968.

24.     To address these issues at the SRA, in November 2007 the SRA site was officially added to a Corrective Action Consent Order ("CACO") entered into by Ford and Severstal with the State of Michigan.

25.     In conducting the response activities at, and associated with, the SRA Property required under the CACO, Ford and Severstal have incurred costs and will continue to incur costs.

**COUNT I**
**COST RECOVERY PURSUANT TO THE COMPREHENSIVE ENVIRONMENTAL RESPONSE, COMPENSATION, AND LIABILITY ACT, 42 U.S.C. § 9607**

26.     Ford and Severstal incorporate by reference the preceding paragraphs as though fully set forth herein.

27.     MichCon is liable for cost recovery to Ford and Severstal pursuant to CERCLA 42 U.S.C. § 9607, as alleged in the following paragraphs.

28.     MichCon falls under the definition of "person" as that term is defined in 42 U.S.C. § 9601(21).

29. While MichCon owned and/or conducted operations at the MGP Site, including property that became the SRA Property, it deposited, discharged, stored, released and/or disposed of chemical substances onto and into the soil at the SRA Property, including but not limited to manufactured gas production by-products such as tar substances.

30. These by-products included "hazardous substances" as that term is defined in 42 U.S.C. § 9601(14).

31. The SRA Property constitutes a "facility" within the meaning of 42 U.S.C. § 9601(9) because it is a place where MichCon created a pit, pond, lagoon, impoundment, ditch and/or landfill and where MichCon deposited, stored, disposed of, and/or placed hazardous substances.

32. The storage, disposal, release, placement, and/or discharge of hazardous substances including but not limited to VOCs, SVOCs, DNAPL, and metals at the SRA Property constitutes or has resulted in the release or threatened release of hazardous substances and has resulted in a hazardous condition at the MGP Site, including property that became the SRA Property, necessitating the incurrence of response costs to address the conditions at the SRA Property and on adjacent property.

33. Ford and Severstal have incurred and will continue to incur response costs to remedy the condition of the SRA Property including, but not limited to:

   a. the costs of obtaining samples at the SRA Property and adjacent property to determine both the extent of the release at the SRA property and the hydrogeological characteristics of the soils and groundwater at the SRA property and adjacent property;

   b. the laboratory costs of analyzing samples obtained at the SRA Property and adjacent property for a determination of the concentrations of hazardous substances;

    c. the costs associated with the assessment of any potential hazards at the SRA Property resulting from incidental exposure to the soil or inhalation of ambient air;

    d. the cost of analyzing the impact of the release to the soil and groundwater;

    e. the costs of developing an appropriate remedy to successfully reduce the risk of contamination or hazard to human health and the environment;

    f. the cost of implementing any and all remediation required at the SRA Property and any associated adjacent property;

    g. the cost of reimbursing the MDEQ for its response activities;

    h. any other necessary response costs consistent with the National Contingency Plan as specified at 40 C.F.R. part 300.

34.    The incurrence of the response costs described in Paragraph 33 above is necessary to ensure the effective remediation (as will be determined by MDEQ under the terms of the CACO and applicable statutes and regulations) of the SRA Property, and of associated property as may be required by MDEQ.

35.    The response costs Plaintiffs have incurred, and will incur, include both costs for "removal" as that term is defined in 42 U.S.C. § 9601(23) and "remedial action" as that term is defined in 42 U.S.C. § 9601(24).

36.    The incurrence of the response costs described in Paragraph 33 above is consistent with the purposes and intent of the National Contingency Plan as set forth in 40 C.F.R., Part 300.

37.    Under 42 U.S.C. § 9607(a)(4), MichCon is liable for response costs identified in Paragraph 33.

38.    MichCon is liable for Plaintiffs' actual attorneys' fees and other costs in bringing and prosecuting this action.

Wherefore, Ford and Severstal demand a judgment in their favor against MichCon, in an amount to be determined, together with interests, costs, attorneys' fees and any additional relief this Court may deem appropriate.

## COUNT II
## CONTRIBUTION PURSUANT TO THE COMPREHENSIVE ENVIRONMENTAL RESPONSE, COMPENSATION, AND LIABILITY ACT, 42 U.S.C. § 9613

39. Ford and Severstal incorporate by reference the preceding paragraphs as though fully set forth herein.

40. MichCon is liable for cost recovery to Ford and Severstal pursuant to CERCLA 42 U.S.C. § 9613, as alleged in the following paragraphs.

41. MichCon falls under the definition of "person" as that term is defined in 42 U.S.C. § 9601(21).

42. While MichCon owned and/or conducted operations at the MGP Site, including property that became the SRA Property, it deposited, discharged, stored, released and/or disposed of chemical substances onto and into the soil at the SRA Property, including but not limited to manufactured gas production by-products such as tar substances.

43. These by-products included "hazardous substances" as that term is defined in 42 U.S.C. § 9601(14).

44. The SRA Property constitutes a "facility" within the meaning of 42 U.S.C. § 9601(9) because it is a place where MichCon created a pit, pond, lagoon, impoundment, ditch and/or landfill and where MichCon deposited, stored, disposed of, and/or placed hazardous substances.

45. The storage, disposal, release, placement, and/or discharge of hazardous substances including but not limited to VOCs, SVOCs, DNAPL, and metals at the MGP Site, including property that became the SRA Property, constitutes or has resulted in the release or threatened release of hazardous substances and has resulted in a hazardous condition at the SRA Property necessitating the incurrence of response costs to address the conditions at the SRA Property.

46. Ford and Severstal have incurred and will continue to incur response costs to remedy the condition of the SRA Property including, but not limited to those listed in Paragraph 33 above.

47. The incurrence of these response costs is necessary to ensure the effective remediation (as will be determined by MDEQ under the terms of the the CACO and applicable statutes and regulations) of the SRA Property.

48. The incurrence of the response costs described in Paragraph 33 above is consistent with the purposes and intent of the National Contingency Plan as set forth in 40 C.F.R., Part 300.

49. Ford and Severstal have been subjected to a civil action by the State of Michigan for their liability, or potential liability, under 42 U.S.C. § 9607(a)(4) for the response costs identified in Paragraph 33.

50. Under the authority of 42 U.S.C. § 9622(h), Ford and Severstal have entered into a settlement agreement with the MDEQ for past response costs.

51. MichCon is liable to Ford and Severstal for contribution under 42 U.S.C. § 9613(f).

52. MichCon is liable for Plaintiffs' actual attorneys' fees and other costs in bringing and prosecuting this action.

Wherefore, Ford and Severstal demand a judgment in their favor against MichCon, in an amount to be determined, together with interests, costs, attorneys' fees and any additional relief this Court may deem appropriate.

## COUNT III
## COST RECOVERY PURSUANT TO THE MICHIGAN
## NATURAL RESOURCES AND ENVIRONMENTAL PROTECTION ACT

53. Ford and Severstal incorporate by reference the preceding paragraphs as though fully set forth herein.

54. The MGP Site, including property that became the SRA Property, is a "facility" as that term is defined in MCL § 324.20101 as it is an area, place, or property where a hazardous substance in excess of the concentrations set forth in MCL § 324.20120a(1)(a) or (17) has been released, deposited, disposed of, or otherwise comes to be located.

55. While MichCon owned and/or conducted operations at the SRA Property, they released, deposited and/or disposed of hazardous substances at the SRA property and are responsible for activities causing a release or threat of release.

56. Ford and Severstal have incurred and will continue to incur costs relating to the selection and implementation of response activities at the SRA Property and adjacent property as a result of MichCon's operations.

57. Under MCL § 324.20126a, MichCon is jointly and severally liable for all response costs, plus interest, incurred by Ford and Severstal in conjunction with the selection and implementation of response activities at the SRA Property.

Wherefore, Ford and Severstal demand a judgment in their favor against MichCon, in an amount to be determined, together with interests and costs, and any additional relief which is deemed appropriate.

## COUNT IV
## VIOLATION OF THE MICHIGAN ENVIRONMENTAL PROTECTION ACT

58. Ford and Severstal incorporate by reference the preceding paragraphs as though fully set forth herein.

59. MichCon has polluted, impaired or destroyed the air, water and/or other natural resources of the State of Michigan by its conduct of storing, disposing and/or discharging hazardous substances on the MGP Site, including property that became the SRA Property.

60. Such pollution, impairment and destruction violates the Michigan Environmental Protection Act, MCL § 324.1701 *et seq*.

Wherefore, Ford and Severstal request that this court award them equitable relief, apportion the costs of remediation of the SRA Property and associated adjacent property to MichCon as appropriate, and grant Ford and Severstal such other and further relief as is deemed appropriate.

## COUNT V
## NEGLIGENCE

61. Ford and Severstal incorporate by reference the preceding paragraphs as though fully set forth herein.

62. MichCon disposed of, discharged onto, and/or stored hazardous and dangerous substances on the MGP site. They knew or should have known of the attendant risks to the

environment and to the MGP Site, including property that became the SRA Property, in disposing, discharging and/or storing hazardous and dangerous substances.

63. MichCon had a duty to properly store and dispose of these hazardous substances.

64. MichCon breached this duty by conducting such disposal, storage and discharge of hazardous substances in a negligent manner by its:

    a. failure to prevent the contamination of the MGP Site, including property that became the SRA Property;

    b. failure to decontaminate the MGP Site, including property that became the SRA Property;

    c. failure to mitigate the contamination of the MGP Site, including property that became the SRA Property; and

    d. failure to give notice or warning to Ford, Severstal or others of the contamination of the MGP Site, including property that became the SRA Property.

65. At the times when Ford acquired the parcels comprising the SRA Property, the nature and/or extent of the contamination of those parcels was not readily observable to Ford.

66. By reason of the foregoing, Ford and Severstal have incurred, and will continue to incur, damages.

Wherefore, Ford and Severstal request this Court award all damages to which they are entitled, and order all other legal or equitable relief to which they may be entitled, including costs, interest, and attorney fees.

## COUNT VI
## COMMON LAW INDEMNIFICATION AND CONTRIBUTION

67. Ford and Severstal incorporate by reference the preceding paragraphs as though fully set forth herein.

68. MichCon released solid and/or hazardous waste and/or hazardous and dangerous substances onto and into the ground at the MGP Site, including property that became the SRA Property, in a negligent manner, as described in Count V above.

69. As a result of such releases, Ford and Severstal have incurred costs for the study and remediation of the SRA Property and associated adjacent property, and Ford and Severstal will continue to incur response costs as described in Paragraph 33 above.

70. MichCon is jointly and severally liable for these costs incurred by Ford and Severstal.

Wherefore, Ford and Severstal request a judgment for indemnification against MichCon for those responses costs incurred and yet to be incurred by Ford and Severstal with regard to the SRA Property and associated adjacent property. In the alternative, Ford and Severstal request a judgment of contribution pursuant to MCL 600.2925a against MichCon for those responses costs incurred and yet to be incurred by Ford and Severstal at the SRA Property and associated adjacent property.

## COUNT VII
## PUBLIC AND PRIVATE NUISANCE

71. Ford and Severstal incorporate by reference the preceding paragraphs as though fully set forth herein.

72. Prior to Ford or Severstal obtaining ownership of the SRA Property and during the time MichCon owned the SRA Property, MichCon created and negligently permitted to remain on the MGP Site, including property that became the SRA Property, a defective and artificial condition, i.e. the presence of contaminants in excessive amounts which involved an unreasonable risk of harm to other persons and to surrounding properties.

73. MichCon thereby created a public nuisance of a continuing nature at the MGP Site, including property that became the SRA Property.

74. As a result of this public nuisance, Ford and Severstal have suffered, and will continue to suffer, specific damages in the form of abatement costs.

75. MichCon also created a private nuisance of a continuing nature at the SRA Property.

76. As a result of this private nuisance, Ford and Severstal have suffered, and will continue to suffer, damages in the form of deprivation of the use and enjoyment of the SRA Property and diminution of property value.

Wherefore, Ford and Severstal request this court award all damages to which they are entitled, and order all other legal or equitable relief to which they may be entitled, including costs, interest, and attorney fees.

| DICKINSON WRIGHT PLLC | ECKERT SEAMANS CHERIN & MELLOTT, LLC |
|---|---|
| By: s/D. Lee Khachaturian<br>   D. Lee Khachaturian (P59966)<br>   Tammy L. Helminski (P69431)<br>Attorneys for Ford Motor Company<br>500 Woodward Avenue, Suite 4000<br>Detroit, MI  48226<br>(313) 223-3500<br>dkhachaturian@dickinsonwright.com<br>thelminski@dickinsonwright.com | By: s/with consent of Robert V. Campedel<br>   Robert V. Campedel (P47828)<br>Attorneys for Severstal North America, Inc.<br>600 Grant Street, 44th Floor<br>Pittsburgh, PA 15219-2788<br>(412) 566-6000<br>rcampedel@eckertseamans.com |

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| FORD MOTOR COMPANY, a Delaware Corporation; SEVERSTAL NORTH AMERICA, INC., a Delaware Corporation, | Civil Action No. |
| Plaintiffs, | |
| v. | |
| MICHIGAN CONSOLIDATED GAS COMPANY, a Michigan Corporation, | |
| Defendant. | |

| | |
|---|---|
| DICKINSON WRIGHT PLLC | ECKERT SEAMANS CHERIN & MELLOTT, LLC |
|    D. Lee Khachaturian (P59966) | |
|    Tammy L. Helminski (P69431) |    Robert V. Campedel (P47828) |
| Attorneys for Ford Motor Company | Attorneys for Severstal North America, Inc. |
| 500 Woodward Avenue, Suite 4000 | 600 Grant Street, 44th Floor |
| Detroit, MI  48226 | Pittsburgh, PA 15219-2788 |
| (313) 223-3500 | (412) 566-6000 |

### **Jury Demand**

Plaintiffs respectfully demand a trial by jury as to all issues so triable.

Respectfully Submitted,

| | |
|---|---|
| DICKINSON WRIGHT PLLC | ECKERT SEAMANS CHERIN & MELLOTT, LLC |
| By: s/D. Lee Khachaturian | By: s/with consent of Robert V. Campedel |
|    D. Lee Khachaturian (P59966) |    Robert V. Campedel (P47828) |
|    Tammy L. Helminski (P69431) | Attorneys for Severstal North America, Inc. |
| Attorneys for Ford Motor Company | 600 Grant Street, 44th Floor |
| 500 Woodward Avenue, Suite 4000 | Pittsburgh, PA 15219-2788 |
| Detroit, MI  48226 | (412) 566-6000 |
| (313) 223-3500 | rcampedel@eckertseamans.com |
| dkhachaturian@dickinsonwright.com | |
| thelminski@dickinsonwright.com | |