## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

FORD MOTOR COMPANY, a
Delaware Corporation; SEVERSTAL
NORTH AMERICA, INC., a Delaware
Corporation,

                              Plaintiffs,

     vs.

MICHIGAN CONSOLIDATED
GAS COMPANY, a Michigan
Corporation,

                              Defendant.

_____/

Civil Case No. 2:08cv13503
Hon. Robert H. Cleland

**ORAL ARGUMENT REQUESTED**

## DEFENDANT'S MOTION TO DISMISS

       Defendant Michigan Consolidated Gas Company ("MichCon" or "Defendant"), by its attorneys, Pepper Hamilton LLP, respectfully moves pursuant to Fed. R. Civ. P. 12(b)(6) for dismissal of Plaintiffs' Complaint for the reason that Plaintiffs fail to state a claim upon which relief may be granted. In support of this Motion, MichCon refers the Court to the brief and exhibits filed herewith.

       On October 28, 2005, pursuant to E.D. Mich. L. Civ. R. 7.1(a), counsel for MichCon contacted D. Lee Khachaturian, counsel for Ford Motor Company and Robert V. Campedel, counsel for Severstal North America, Inc. by telephone conference to explain the nature of the motion and to request concurrence in the relief requested herein. Such concurrence was denied, thus necessitating the filing of this Motion.

WHEREFORE, MichCon respectfully requests that its Motion to Dismiss be granted and that Plaintiffs' Complaint be dismissed in its entirety with prejudice.

Respectfully submitted,

/s/ Scott L. Gorland
SCOTT L. GORLAND (P28237)
THOMAS P. WILCZAK (P36415)
MARK A. ERMAN (P71351)
Pepper Hamilton LLP
100 Renaissance Center, 36th Floor
Detroit, MI 48243
(313) 259-7110
gorlands@pepperlaw.com
wilczakt@pepperlaw.com
ermanm@pepperlaw.com
Attorneys for Defendant MichCon

Dated: October 30, 2008

#10204929 v2 (105125.29)

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

FORD MOTOR COMPANY, a
Delaware Corporation; SEVERSTAL
NORTH AMERICA, INC., a Delaware
Corporation,

                            Plaintiffs,

    vs.

MICHIGAN CONSOLIDATED
GAS COMPANY, a Michigan
Corporation,

                            Defendant.

_____/

Civil Case No. 2:08cv13503
Hon. Robert H. Cleland

## BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

SCOTT L. GORLAND (P28237)
THOMAS P. WILCZAK (P36415)
MARK A. ERMAN (P71351)
Pepper Hamilton LLP
100 Renaissance Center, 36th Floor
Detroit, MI 48243
(313) 259-7110
gorlands@pepperlaw.com
wilczakt@pepperlaw.com
ermanm@pepperlaw.com
Attorneys for Defendant MichCon

## STATEMENT OF THE ISSUES PRESENTED

1.  Whether Plaintiffs have failed to state a claim upon which relief may be granted under Section 107 of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA") given that only costs incurred voluntarily may be recovered under §107, and that the Plaintiffs are seeking to recover costs incurred *involuntarily* as a result of a corrective action consent order ("CACO") with the Michigan Department of Environmental Quality ("MDEQ").

2.  Whether Plaintiffs have failed to state a claim upon which relief may be granted under CERCLA §113 given that Plaintiffs' administrative settlement did not resolve Plaintiffs' CERCLA liability, Plaintiffs did not comply with the public notice and comment procedures, and this lawsuit was filed more than three years after the date of the CACO, which was executed on April 28, 2000.

3.  Whether Plaintiffs have failed to state a claim upon which relief may be granted under M.C.L. §324.20126a when this statute is "modeled after" CERCLA §107, which, under controlling authorities, cannot be raised here.

4.  Whether Plaintiffs have failed to state a claim upon which relief may be granted under the Michigan Environmental Protection Act ("MEPA") when:

    a.  Plaintiffs' MEPA is barred by the applicable statute of limitations,

    b.  Michigan law prohibits the use of MEPA as a §113 claim in disguise, and

    c.  Plaintiffs' MEPA allegations directly conflict with and are, thus, preempted by CERCLA §113's equitable apportionment remedy.

5.  Whether Plaintiffs have failed to state a claim upon which relief may be granted for negligence when:

    a.  Plaintiffs' negligence claim accrued in 1968, the statute of limitations for a negligence claim is three years and is not subject to the common law continuing wrong/violation or discovery doctrines, which were abrogated by the Michigan Supreme Court, and

    b.  under Michigan law, a former property owner like MichCon does not owe a legal duty to its successor owners.

6.  Whether Plaintiffs have failed to state claims upon which relief may be granted for common law indemnification and contribution when these causes of action are preempted as duplicative of and in direct conflict with CERCLA.

7.  Whether Plaintiffs have failed to state a claim upon which relief may be granted for public and private nuisance when:

    a.  Plaintiffs' public and private nuisance claims are barred by the applicable statute of limitations,

b.  Under Michigan law, a defendant cannot be found liable for a private nuisance in the absence of the right to possession or control of the land in which the nuisance is located, and MichCon has not owned or controlled the land since 1968, and

c.  Michigan law requires that a public nuisance plaintiff allege both an interference with "a common right enjoyed by the general public" and a "type of harm different from the general public," which Plaintiffs did not, and cannot, allege here.

## CONTROLLING OR MOST APPROPRIATE AUTHORITIES

### Cases

*Busch Oil Co., Inc. v. Amoco Oil Co.*, 1996 WL 33143114 (W.D. Mich., Feb. 20, 1996)

*Centerior Serv. Co. v. Acme Scrap Iron & Metal Corp.*, 153 F.3d 344 (6th Cir. 1998)

*City of Waukesha v. Viacom International Inc.*, 404 F.Supp.2d 1112 (E.D. Wisc. 2005)

*Garg v. Macomb Cty. Mental Health Authority*, 696 N.W.2d 646 (Mich. 2005)

*Genesco, Inc. v. Dep't of Environmental Quality*, 645 N.W.2d 319 (Mich. App. 2002)

*ITT Industries, Inc. v. BorgWarner*, 506 F.3d 452 (6th Cir. 2007) (rehearing en banc denied)

*Trentadue v. Buckler Automatic Lawn Sprinkler Co.*, 479 Mich 378 (2007)

*United States v. Atlantic Research Corp.*, 127 S.Ct. 2331 (2007)

*W.R. Grace & Co.-Conn. v. Zotos International, Inc.*, 2005 WL 1076117 (W.D.N.Y., May 3, 2005)

*Wacker Chem. Corp. v. Bayer Cropscience*, 2006 U.S. Dist. LEXIS 61483 (E.D Mich., Aug. 18, 2006)

*Weaver v. United States*, 809 F. Supp. 527 (E.D. Mich. 1992)

*Zoufal v. Amoco Oil Co.*, 1993 WL 208812 (E.D. Mich., Mar. 19, 1993)


### Statutes

Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C 9607, et seq.

M.C.L. § 324.1701 et seq.

M.C.L. § 324.20126A

# TABLE OF CONTENTS

Page

STATEMENT OF THE ISSUES PRESENTED .................................................................. i

CONTROLLING OR MOST APPROPRIATE AUTHORITIES ..................................... iii

TABLE OF AUTHORITIES ................................................................................ vi

I.      INTRODUCTION ........................................................................... 1

II.     STATEMENT OF FACTS .............................................................. 2

III.    LEGAL STANDARDS ................................................................... 3

IV.     ARGUMENT ................................................................................. 4

    A.  Plaintiffs Cannot State a CERCLA §107 Cost Recovery Claim (Count I) .......................................... 4

        1.  The U.S. Supreme Court's decision in *Atlantic Research* Precludes a CERCLA §107 Claim ....... 4

        2.  The Plain Language of CERCLA §113 Demonstrates That Ford and Severstal Are Limited to a Claim For Contribution For Administratively Compelled Costs of Response. ...................... 6

        3.  The Sixth Circuit's Decision In *Centerior Serv. Co.* Addressed This Exact Issue and Held That Administratively Compelled Work Costs May Not Be Recovered Under §107. ........... 7

    B.  Plaintiffs Cannot State a CERCLA §113 Contribution Claim (Count II) Since The CACO Did Not "Resolve" Their CERCLA Liability And, In Any Event, Their §113 Claim Is Time Barred Under §113(g)(3)(B). ......................................................... 8

        1.  The Plaintiffs' CACO Contains The Same Reservations and Carve-Outs As The AOC In *ITT*. ..... 9

        2.  The Plaintiffs' CACO Cannot Be A §122(h) Settlement, As Required By *ITT*. ..................... 12

            a.  The CACO Was Not A 122(h) Settlement Since EPA Never Authorized MDEQ To Settle Federal CERCLA Liability On Its Behalf. ................................. 12

            b.  A Valid Section 122(h) Settlement Must Comply With The Public Notice And Comment Procedures In §122(i). ...................................................... 13

        3.  Plaintiffs' §113 Contribution Claim Is Time-Barred By The Statute of Limitations In §113(g)(3)(B). .................................................................. 14

    C.  Plaintiffs Count III (cost recovery under M.C.L. §324.20126a) Fails As M.C.L. §324.20126a Is Modeled After CERCLA §107(a) And as Such, Fails as a Matter of Law. .................................. 15

D.  Counts IV, V, and VII Are Time-Barred Under Michigan Law.........................................16

E.  Plaintiffs' MEPA Claim Is Barred As A Sham, Plaintiffs Lack Standing, And The MEPA
    Claim Is Preempted. ..............................................................................................................18

    1.  Plaintiffs' MEPA Claim Is A Sham...........................................................................18

    2.  As A PRP, Plaintiffs Lack Standing..........................................................................18

    3.  Plaintiffs' MEPA Claim Is Preempted By CERCLA. ................................................19

F.  Plaintiffs' Cannot State A Negligence Claim Since Former Property Owners Do Not
    Owe A Duty To Their Successor Owner. ...............................................................................20

G.  Both Common Law Indemnification And Contribution (Count VI) Are Preempted By CERCLA. ......21

H.  Plaintiffs Fail To State A Claim For Public and Private Nuisance (Count VII) Because
    A Private Nuisance Claim Cannot Be Brought Against One's Predecessor And Plaintiffs
    Lack The Requisite Standing To Raise A Public Nuisance Claim....................................23

    1.  A Private Nuisance Claim Cannot Be Brought Against One's Predecessor...............23

    2.  Plaintiffs Lack Standing To Raise A Public Nuisance Claim ...................................23

V.  CONCLUSION AND RELIEF REQUESTED.................................................................................25

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Adkins v. Thomas Solvent Co.,*
    487 N.W.2d 715 (Mich. 1992) .................................................................................23, 24

*ASARCO, Inc. v. Union Pacific R.R. Co.,*
    2006 WL 173662 (D.Ariz., Jan. 24, 2006) ......................................................................13

*Attorney General v. Harkins,*
    669 N.W.2d 296 (Mich. App. 2003) ...............................................................................16

*Bell Atlantic v. Twombly,*
    127 S. Ct. 1955 (2007) .....................................................................................................3

*Busch Oil Co., Inc. v. Amoco Oil Co.,*
    1996 WL 33143114 (W.D. Mich., Feb. 20, 1996) .....................................................20, 23

*Centerior Serv. Co. v. Acme Scrap Iron & Metal Corp.,*
    153 F.3d 344 (6th Cir. 1998) ...............................................................................1, 7, 8, 20

*City of Gary v. Shafer,*
    2007 U.S. Dist. LEXIS 75503 (N.D. Ind. Oct. 4, 2007) ..................................................10

*City of Waukesha v. Viacom International Inc.,*
    404 F.Supp.2d 1112 (E.D. Wisc. 2005) .............................................................11, 12, 13

*Coeur D'Alene Tribe v. Asarco Inc.,*
    2001 WL 34139603 (D.Idaho, Mar. 30, 2001) ...............................................................22

*Columbia Nat. Res., Inc. v. Tatum,*
    58 F.3d 1101 (6th Cir. 1995) .............................................................................................4

*Commer. Money Ctr., Inc. v. Ill. Union Ins. Co.,*
    508 F.3d 327 (6th Cir. 2007) .............................................................................................4

*Davis v. Chrysler Corp.,*
    151 Mich.App. 463, 391 N.W.2d 376 (1986) ..................................................................17

*E.I. DuPont de Nemours and Co. v. U.S.,*
    508 F.3d 126 (3rd Cir. 2007) .............................................................................................5

*Garg v. Macomb Cty. Mental Health Authority*
    696 N.W.2d 646 (Mich. 2005) ....................................................................................16, 17

*Genesco, Inc. v. Dep't of Environmental Quality,*
    645 N.W.2d 319 .................................................................................................... 15

*Hicks Family Ltd. Partnership v. 1st Nat. Bank of Howell,*
    2006 WL 2818514 (Mich. App., Oct. 3, 2006) ...................................................... 17

*Hicks Family Ltd. Partnership v. 1st Nat. Bank of Howell,*
    2008 WL 2744333 (Mich. App., July 15, 2008) ................................................... 15

*ITT Indus. v. Borgwarner, Inc.*
    2006 U.S. Dist. LEXIS 59877; 2006 WL 2460793  (W.D. Mich. Aug. 22, 2006) ...... 11, 13, 15

*ITT Industries, Inc. v. BorgWarner,*
    506 F.3d 452 (6th Cir. 2007) (rehearing en banc denied) ............................... passim

*Kalamazoo River Study Group v. Rockwell Intern.,*
    258 F.Supp.2d 736 (W.D. Mich. 2002) ................................................................ 19

*M & M Realty Co. v. Eberton Terminal Corp.,*
    977 F.Supp. 683 (M.D.Pa., 1997) ....................................................................... 21

*Morgan v. Church's Fried Chicken,*
    829 F.2d 10 (6th Cir. 1987) ................................................................................... 4

*Nemeth v Abonmarche Dev, Inc,*
    576 N.W.2d 641 (Mich. 1998) ............................................................................. 19

*New York State Elec. & Gas Corp. v. FirstEnergy Corp.,*
    2007 WL 1434901 (N.D.N.Y., May 11, 2007) ..................................................... 22

*New York v. Next Millennium Realty LLC,*
    2008 WL 1958002 (E.D.N.Y. May 2, 2008) ............................................... 8, 19, 21

*Niagara Mohawk Power Corp. v. Consol. Rail Corp.,*
    2008 WL 2746912 (N.D.N.Y. July 16, 2008) ........................................................ 8

*Niagara Mohawk Power v. Consolidated Rail Corp.*
    436 F.Supp.2d 398 (N.D.N.Y. 2006) .................................................................. 12

*OSI, Inc. v. U.S.,*
    525 F.3d 1294 (11th Cir. 2008) ............................................................................. 5

*Peeples v. Detroit,*
    99 Mich. App. 285 (1980) .................................................................................... 21

*Philadelphia Elec. Co. v. Hercules, Inc.,*
    762 F.2d 303 (3d Cir. 1985) .......................................................................... 23, 24

*PMC, Inc. v. Sherwin-Williams Co.,*
    151 F.3d 610 (7th Cir.1998) ........................................................................22

*Pontious v. EQ Bilss Co.,*
    102 Mich. App. 718 (1981) ..........................................................................21

*Preserve the Dunes, Inc v. Department of Envtl Quality,*
    690 N.W.2d 487 (Mich. App. 2004)............................................................19

*Sanyo North America Corporation v. Avco Corporation,*
    2008 U.S. Dist. LEXIS 51354 (S.D. Ind., July 3, 2008) ...........................21

*Scheid v. Fanny Farmer Candy Shops, Inc.,*
    859 F.2d 434 (6th Cir. 1988)....................................................................4, 21

*Skinner v. D-M-E-Corp.,*
    124 Mich. App. 580 (1983) ..........................................................................21

*Terlicki v. Stewart,*
    278 Mich. App. 644 (2008) ..........................................................................17

*Traver Lakes Community Maintenance Ass'n v. Douglas Co.,*
    224 Mich.App. 335, 568 N.W.2d 847 (1997)............................................17

*Trentadue v. Buckler Automatic Lawn Sprinkler Co.*
    479 Mich 378 (2007) ...................................................................................17

*U.S. v. Alcan Aluminum Corp.*
    990 F.2d 711 (2nd Cir. 1993) ......................................................................14

*United States v. Atlantic Research Corp.,*
    127 S.Ct. 2331 (2007) ........................................................................ passim

*United States v. Colorado & Eastern R. Co.,*
    50 F.3d 1530 (10th Cir. 1995)........................................................................8

*United Technologies Corp. v. Browning-Ferris Indus., Inc.,*
    33 F.3d 96 (1st Cir. 1994) ..........................................................................6, 8

*W.R. Grace & Co.-Conn. v. Zotos International, Inc.,*
    2005 WL 1076117 (W.D.N.Y., May 3, 2005) ..................................... passim

*Wacker Chem. Corp. v. Bayer Cropscience,*
    2006 U.S. Dist. LEXIS 61483 (E.D Mich., Aug. 18, 2006) ..................18, 20

*Weaver v. United States,*
    809 F. Supp. 527 (E.D. Mich. 1992) ...........................................................23

*West Michigan Environmental Action Council v. Natural Resources Comm.*,
   275 N.W.2d 538 (Mich. 1979) ............................................................................... 19

*Westinghouse Electric Company v. United States*,
   2008 WL 2952759 (E.D. Mo., July 29, 2008) ......................................................... 14

*Wyser-Pratte Management Co., Inc. v. Telxon Corp.*,
   413 F.3d 553 (6th Cir. 2005).................................................................................... 4

*Zoufal v. Amoco Oil Co.*,
   *1993 WL 208812 (E.D. Mich., Mar. 19, 1993)* ................................................. *18, 20, 23*

## STATUTES

Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. 9607 ................. 1, 12

42 U.S.C. §9613 *et seq.* ............................................................................. 1, 6, 9, 15

42 U.S.C. §9622 *et seq.* .................................................................................... 12, 14, 15

M.C.L. §324.1701 *et seq* ("MEPA") ......................................................................... passim

M.C.L. §324.20126a ............................................................................................... 1, 15, 16

M.C.L. §600.5805(10) ................................................................................................... 17

M.C.L. §600.5813.......................................................................................................... 16

M.C.L. §600.5827.......................................................................................................... 16

M.C.L. §600.5841.......................................................................................................... 17

Defendant Michigan Consolidated Gas Company ("MichCon" or "Defendant"), by its attorneys, Pepper Hamilton LLP, respectfully submits this Brief in Support of its Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted.

## I.    INTRODUCTION

Ford Motor Company ("Ford") and Severstal North America, Inc. ("Severstal"), collectively "Plaintiffs," filed this lawsuit to recover past, present, and future costs that they have or will incur due to contamination at the Shaefer Road Area Property ("SRA Property" or "Property") in the City of Dearborn, Michigan. Plaintiffs have alleged seven (7) different legal theories to recover the same costs, but none state a claim upon which relief can be granted.

Specifically, the United States Supreme Court's decision in *U.S. v. Atlantic Research* and the Sixth Circuit's decision in *Centerior Serv. Co. v. Acme Scrap Iron & Metal Corp.* bar Count I (cost recovery under CERCLA §107[1]) since the Plaintiffs' costs were not incurred "voluntarily" and must be raised, if at all, under CERCLA §113.[2] The Sixth Circuit's 2007 decision in *ITT Industries v. BorgWarner* precludes Count II (contribution under CERCLA §113). Even without *ITT Industries v. BorgWarner*, Count II is barred by the three-year statute of limitations in CERCLA §113(g)(3)(B). Count III (cost recovery under M.C.L. §324.20126a) must be dismissed since it is "modeled after" §107(a) of CERCLA and the Michigan courts have adopted *Atlantic Research*. Plaintiffs cannot state a claim for Count IV (violation of the Michigan Environmental Protection Act[3]) since Michigan case law prohibits the use of MEPA as a §113 claim in disguise. Plaintiffs' MEPA allegations also directly conflict with CERCLA §113's equitable apportionment remedy and, therefore, are preempted.

---

[1] The Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. 9607 ("CERCLA §107" or "§107").

[2] 42 U.S.C. §9613 ("CERCLA §113" or "§113").

[3] M.C.L. §324.1701 *et seq* ("MEPA").

Furthermore, Count IV (MEPA), Count V (Negligence), and Count VII (Public and Private Nuisance) were time-barred decades ago since accrual of these claims occurred no later than 1968 when MichCon sold the SRA Property to Ford. This accrual date cannot be extended based on the common law continuing violation/wrong or discovery doctrines since the Michigan Supreme Court has abrogated these equitable doctrines. Count V (negligence) and Count VII (private nuisance) must also be dismissed since these claims cannot be asserted by a future landowner against its predecessor. Count VI (common law indemnification and contribution) is preempted by CERCLA's §113 contribution remedy, which directly conflicts with these state law causes of action. Finally, Plaintiffs cannot state a claim for public nuisance (Count VII) since Plaintiffs have not alleged any interference with a "common right enjoyed by the general public" or a "type of harm different from the general public." As set forth below, for many of Plaintiffs' claims, there are multiple independent bars to relief mandating dismissal as a matter of law.

## II.    STATEMENT OF FACTS

For purposes of this motion only, MichCon accepts as true all facts alleged in the Complaint, some of which are restated here. Exhibit A ("Complaint"). MichCon or a predecessor company operated a manufactured gas plant ("MGP") on a portion of the current SRA Property from approximately the mid-1920's to 1954. Exh. A, ¶¶9-14. MGP operations ceased in or around 1954. Id., ¶14. In 1968, MichCon sold approximately 22 acres of its property to Ford. Id., ¶17. Ford used MichCon's former Property to expand its existing wastewater treatment plant ("WWTP") operations on adjacent property it owned from 1938 to 1989 (Id., ¶10, 19), which consisted of a series of wastewater settling ponds and lagoons. Exhibit B, Ford's Response to U.S. EPA's CERCLA §104(e) request dated May 30, 1989 ("104(e) Response"), at 5-6. During Ford's ownership, Ford disposed of a variety of hazardous wastes on the SRA Property. Id. at 8-9. In 1989, Ford sold the SRA Property to Rouge Steel Company ("Rouge"). Exh. A., ¶19. During Rouge's ownership, several Remedial Investigations were performed to investigate subsurface contamination and on April 28, 2000, a Corrective Action Consent Order ("CACO") was entered between

2

Ford, Rouge, and the Michigan Department of Environmental Quality ("MDEQ").  Exhibit C ("CACO").  The CACO required Ford and Rouge to address contamination at the SRA Property by submitting a Workplan to MDEQ for approval that would contain a schedule for investigation and remediation activities to be conducted at the Property.  Exh. C, §8.7.2 at 19.

The CACO, referred to by Plaintiffs at Paragraph 24 of the Complaint (Exh. A), was amended five times during 2000 to 2007:  on May 3, 2000 (Exhibit D, "First Amendment"), January 29, 2004 (Exhibit E, "Second Amendment"), May 27, 2005 (Exhibit F, "Third Amendment"), February 28, 2006 (Exhibit G, "Fourth Amendment"), and on November 9, 2007 (Exhibit H, "Fifth Amendment").  After Severstal purchased the SRA Property from Rouge in 2004 (Exh. A, ¶19), Severstal was substituted for Rouge as a party to the CACO.  Exh. E, at 2.  The Fifth Amendment, which was executed in 2007 over seven years after the initial CACO, purports to "resolve" Ford's and Severstal's federal liability under CERCLA for the SRA Property.  Exh. H, ¶15 at 8.  The U.S. Environmental Protection Agency was not a party to the CACO nor any of the subsequent amendments.

Now, fifty-four years after MichCon ceased operations at its MGP, forty years after MichCon sold the Property to Ford, and over eight years after the CACO, Plaintiffs have filed the instant lawsuit.

III.    **LEGAL STANDARDS**

A complaint cannot survive a motion under Rule 12(b)(6) unless the factual allegations "state a claim to relief that is plausible on its face." *Bell Atlantic v. Twombly*, 127 S. Ct. 1955, 1974 (2007) (abrogating *Conley's* standard that the "complaint should not be dismissed for failure to state a claim unless it appears beyond a doubt that the plaintiff can prove *no set of facts* in support of his claim which would entitle him to relief").  This "entitlement to relief" requires "more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do."  Id. at 1964-65.  In other words, it must contain sufficient factual allegations to raise a right to relief above the speculative level.  Id.  The Court

3

does not accept the "bare assertion of legal conclusions," *Columbia Nat. Res., Inc. v. Tatum*, 58 F.3d 1101,

1109 (6th Cir. 1995), nor does the Court accept "unwarranted factual inferences." *Morgan v. Church's Fried*

*Chicken*, 829 F.2d 10, 12 (6th Cir. 1987). "A plaintiff will not be thrown out of court for failing to plead facts

in support of every arcane element of his claim. But when a complaint omits facts that, if they existed,

would clearly dominate the case, it seems fair to assume that those facts do not exist." *Scheid v. Fanny*

*Farmer Candy Shops, Inc.*, 859 F.2d 434, 437 (6th Cir. 1988) (citation omitted). Although a court may only

adjudge a motion to dismiss on the face of the non-moving party's pleadings, "when a document is referred

to in the pleadings and is integral to the claims, it may be considered without converting a motion to dismiss

into one for summary judgment." *Commer. Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 335-36 (6th

Cir. 2007). A court may also consider, without converting the motion, "other materials that are…public

records, or are otherwise appropriate for the taking of judicial notice." *Wyser-Pratte Management Co., Inc.*

*v. Telxon Corp.*, 413 F.3d 553, 560 (6th Cir. 2005).

## IV.    ARGUMENT

### A.    Plaintiffs Cannot State a CERCLA §107 Cost Recovery Claim (Count I).

#### 1.    The U.S. Supreme Court's decision in *Atlantic Research* Precludes a CERCLA §107 Claim.

The U.S. Supreme Court's decision in *United States v. Atlantic Research Corp.*, 127 S.Ct.

2331 (2007), confirmed that "[a] PRP cannot simultaneously seek to recover the same expenses under

§107(a)" and §113(f). Id. at 2338. "The remedies available in §§ 107(a) and 113(f) compliment each other

by providing causes of action to persons in different procedural circumstances." Id. On one hand, "§107(a)

permits cost recovery (as distinct from contribution) by a private party that has itself incurred cleanup

costs." Id. Section 113(f), on the other hand, authorizes a contribution action for potentially responsible

4

parties ("PRPs")[4] who have been subject to a civil action pursuant to §106 or §107 or who have entered into a judicially or administratively approved settlement when there is an inequitable distribution of common liability among liable parties. Id. at 2338, n.5.

Although the Supreme Court in *Atlantic Research* chose not to decide whether compelled costs of response "are recoverable under §113(f), §107(a), or both," the Court did make clear that "costs incurred **voluntarily**" can be recovered under §107. Id. at 2338 n.6 (affirming the Eighth Circuit's "hold[ing] that a private party which **voluntarily** undertakes a cleanup...thus barring it from contribution under CERCLA's §113, may pursue an action...under §107") (emphasis added). *Atlantic Research*'s "voluntariness" requirement was recently confirmed in *E.I. DuPont de Nemours and Co. v. U.S.*, 508 F.3d 126 (3rd Cir. 2007). In *Dupont*, the Third Circuit summarized *Atlantic Research* as "holding that a private party may recover under § 107 **voluntarily** incurred cleanup costs from another party...." Id. at 128 (emphasis added).[5]

Plaintiffs concede that the costs they have incurred at the SRA Property were not incurred "voluntarily." See Exh. A, ¶34 ("The incurrence of the response costs described in Paragraph 33 above is necessary to ensure the effective remediation (**as will be determined by MDEQ under the terms of the CACO** and applicable statutes and regulations)....") (emphasis added). Therefore, *Atlantic Research* and its progeny mandate that Plaintiffs must attempt to seek relief under §113(f) – not §107(a). As such, Count I must be dismissed.

---

[4] PRPs are defined in CERCLA §107(a) and include four broad categories of persons that may be liable to other persons for various costs: (1) the current owner or operator of a facility, (2) the former owner or operator at the time when hazardous substances were disposed of at the facility, (3) a person who arranged for disposal or treatment of hazardous substances at the facility, and (4) a transporter of hazardous substances at the facility. Id. at 2336 n.2.

[5] See also OSI, Inc. v. U.S., 525 F.3d 1294, 1297 n.1 (11th Cir. 2008) (citing *Atlantic Research* for the proposition that §107 permits recovery of removal and remediation costs "**voluntarily incurred**") (emphasis added).

2. **The Plain Language of CERCLA §113 Demonstrates That Ford and Severstal Are Limited to a Claim For Contribution For Administratively Compelled Costs of Response.**

CERCLA §113(f)(3)(B) provides:

A person who has resolved its liability to the United States or a State <u>for some or all of a response action</u> **or** <u>for some or all of the costs of such action</u> in an administrative or judicially approved settlement may seek contribution from any person who is not a party to a settlement referred to in paragraph (2).

42 U.S.C. §9613(f)(3)(B) (emphasis added). "The simple reading of this subsection is that the initial phrase refers to expenses incurred in the course of a liable party's direction of a site's cleanup [*e.g.*, Plaintiffs' Count I] while the second phrase refers to reimbursement of cleanup costs incurred under the government's hegemony." *United Technologies Corp. v. Browning-Ferris Indus., Inc.,* 33 F.3d 96, 102 (1st Cir. 1994), cited with approval, *Atlantic Research,* 127 S.Ct. 2338 n.6. The First Circuit in *United Technologies* held that compelled "first-instance" costs pursuant to a consent decree were recoverable, if at all, under §113, but that the plaintiffs were time-barred under §113(g)(3)(B)'s 3-year statute of limitations and could not use §107's limitations period found in §113(g)(2). <u>Id.</u> at 101, 102. Citing statements from the Senate and House Committees that formulated CERCLA, the First Circuit elaborated that "[t]hese statements show beyond serious question that the drafters intended contribution, as that term is used in section 9613, to cover parties' disproportionate payments of first-instance costs as well as parties' disproportionate payments of reimbursed costs." <u>Id</u>.

Plaintiffs "first-instance" response costs fall within the first phrase of §113(f)(3)(B). These costs, which Plaintiffs admit were incurred pursuant to the CACO (Exh. A, ¶34), are no different than the "first-instance" response costs mandated by the consent decree in *United Technologies.* Even the CACO itself states that "[i]t is the intent of the Parties that this Consent Order: (a) constitutes an administrative settlement within the meaning of Section 113(f)(3)(B) of the CERCLA." <u>See</u> Exh G, ¶15. In other words,

6

Plaintiffs have clearly pleaded themselves outside the procedural situation that §107 covers and into the

realm of §113 based on its plain language.[6]

3.    **The Sixth Circuit's Decision In** *Centerior Serv. Co.* **Addressed This Exact Issue and Held That Administratively Compelled Work Costs May Not Be Recovered Under §107.**

The Sixth Circuit in *Centerior Serv. Co. v. Acme Scrap Iron & Metal Corp.*, 153 F.3d 344

(6th Cir. 1998) held that administratively compelled costs are not recoverable under §107.  The conclusion

of the Sixth Circuit's opinion states:

> [P]arties who themselves are PRPs, potentially liable under CERCLA and compelled to initiate a hazardous waste site cleanup, may **not** bring an action for joint and several cost recovery [under §107], but are limited to actions for contribution governed by the mechanisms set forth in CERCLA §113(f).

*Id.* at 356 (emphasis added).[7]  This fits neatly within the holdings of *Atlantic Research* that (1) §113 and

§107 apply to "persons in different procedural circumstances," (2) a "PRP cannot simultaneously seek to

recover the same expenses under §107(a) [and §113]," and (3) §107 applies to "costs incurred voluntarily."

127 S.Ct. at 2338, n.6.  To the extent that *Atlantic Research* suggests without deciding that there could be

some "overlap" in this situation, such overlap does not exist in this Circuit.[8]  In other words, the Supreme

Court's footnote 6 left open the very question that *Centerior* and other federal circuits already resolved –

---

[6] As it turns out, Plaintiffs cannot make out a claim for §113 either (see infra, §IV(B)), and the fact that Plaintiffs are outside the scope §107 does not give them a free pass on a §113 claim, especially after the Sixth Circuit's decision in *ITT Industries, Inc. v. BorgWarner*, 506 F.3d 452 (6th Cir. 2007) (rehearing en banc denied).

[7] This affirmed the district court's ruling that "plaintiffs' original complaints pleading joint and several cost recovery actions under §107(a) would be construed as asserting a contribution claim under §113(f)." Id. at 347.

[8] Such reference to any possible "overlap" is *dicta* in any event since Atlantic Research had only incurred voluntary response costs, unlike Plaintiffs here.

i.e., that compelled costs pursuant to a consent order or decree must be recovered, if at all, under §113.[9]

Moreover, every single post-*Atlantic Research* decision addressing this issue comes out the same way.[10]

It is undisputed that Plaintiffs are seeking to recover costs incurred *involuntarily* as a result

of the CACO and that they are in the "procedural circumstances" of a §113 claim. *Atlantic* Research, 127

S.Ct. at 2338. Under controlling precedent in *Atlantic Research* and *Centerior*, and other circuit and district

court cases that have addressed this issue both before and after *Atlantic Research* was decided, and

especially given the plain language of §113, these Plaintiffs cannot state a claim for cost recovery under

CERCLA §107.

**B.    Plaintiffs Cannot State a CERCLA §113 Contribution Claim (Count II) Since The CACO Did Not "Resolve" Their CERCLA Liability And, In Any Event, Their §113 Claim Is Time Barred Under §113(g)(3)(B).**

Because Plaintiffs allege they have been "subjected to a civil action by the State of

Michigan" (Exh. A, ¶49) and have incurred and will continue to incur response costs "at the SRA Property

pursuant to the CACO" (Id., ¶¶46-47, and 50), as discussed above, Plaintiffs must resort to §113(f) if they

---

[9] See, e.g., *United Technologies*, supra at 103; *United States v. Colorado & Eastern R. Co.*, 50 F.3d 1530, 1534-36 (10th Cir. 1995). Nothing in the *Atlantic Research* opinion impugns the core holding of *Centerior*, which remains binding precedent for PRPs compelled to incur response costs. Although *Atlantic Research* did overrule cases that were decided solely on the basis that a PRP could never assert a Section 107 claim, *Centerior* was not one of these cases. And like *Centerior*, *Atlantic Research* did not overrule *United Technologies* and *Colorado & Eastern R. Co.*, which held that claims for costs incurred in performing a cleanup pursuant to a judicial or administrative settlement are limited to a contribution action under Section 113(f).

[10] In *Niagara Mohawk Power Corp. v. Consol. Rail Corp.*, 2008 WL 2746912 (N.D.N.Y. July 16, 2008) (Exh. J), the court stated that "NiaMo began cleanup and remedial action pursuant to consent orders with the [State] Department of Environmental Conservation." Id. at *3. "*The issue here is whether, under Atlantic Research, NiaMo, a PRP who has incurred costs involuntarily, can sue pursuant to § 107(a) to recover its response costs.*" Id. at *2. Concluding in the negative, the court stated that "nothing in *Atlantic Research* provides authority [to depart from governing Second Circuit authority that a party incurring expenditures under a consent order] may only recover from other PRPs via a contribution action pursuant to § 113(f)(1)." Id. (citing *Consolidated Edison Co. v. UGI Utils. Inc.*, 423 F.3d 90, 100 (2nd Cir. 2005). In *New York v. Next Millennium Realty LLC*, 2008 WL 1958002 (E.D.N.Y. May 2, 2008) (Exh. J), the court similarly held: "There is no evidence that the [cross-plaintiffs] are seeking to recover necessary response costs that they themselves have **voluntarily** incurred.... Inasmuch as the [cross-plaintiffs] have not demonstrated that they incurred necessary costs of response within the meaning of § 107(a), **the [cross-plaintiffs] have failed to state a claim for cost recovery upon which relief can be granted.**" Id. at *6-7 (citations omitted) (emphasis added).

have <u>any</u> claim under CERCLA. However, in order for Plaintiffs to state a contribution claim under §113(f),

they <u>must</u> allege that they have:

> **resolved** [their] liability to the United States or a State for some or all of a
> response action or for some or all of the costs of such action in an
> administrative or judicially approved settlement.

42 U.S.C. 9613(f)(3)(B) (emphasis added). Nowhere in Count II of the Complaint do Plaintiffs allege that

they "resolved" their CERCLA liability, nor can they amend to do so in good faith after the Sixth Circuit in

2007 decided *ITT Industries, Inc. v. BorgWarner* ("*ITT*"), 506 F.3d 452 (6th Cir. 2007) (rehearing en banc

denied). In *ITT*, a case that is factually similar to this one, the Sixth Circuit affirmed the Western District of

Michigan's <u>12(b)(6) dismissal</u> of the plaintiff's (ITT Industries) §113 claim since the administrative order by

consent ("AOC") did not actually "resolve" ITT Industries' CERCLA liability to the U.S. Environmental

Protection Agency ("EPA"). The big picture holding of *ITT* is that a party can no longer "resolve" its

CERCLA liability (for purposes of triggering a §113 claim) by summarily stating in a settlement agreement

with the government that "this is an administrative settlement within the meaning of §113(f)(3)(B)" or "this

settlement is intended to resolve liability under CERCLA" – whether CERCLA liability was actually

"resolved" depends on the *content* of the entire order and, especially, an analysis of whether any

reservations of rights, carve-outs, and other reopeners contained in the settlement negate the conclusion

that CERCLA liability was "resolved." <u>See id.</u> at 459-60.

1.    **The Plaintiffs' CACO Contains <u>The Same</u> Reservations and Carve-Outs As The AOC In *ITT*.**

The Sixth Circuit in *ITT* identified four elements of ITT Industries' AOC that negated the

conclusion that CERCLA liability was "resolved." These elements are listed below, along with the

corresponding provision in the CACO:

| | Provision of AOC In *ITT* | Provision of CACO |
|---|---|---|
| 1 | "EPA expressly reserves its rights to legal action to adjudicate the plaintiff's liability <u>for failure to comply with the AOC</u>, for costs of response (past, present or future), for costs of injunctive relief or enforcement, criminal liability, and other damages." *ITT*, 506 F.3d at 459 (emphasis added). | "The MDEQ reserves all of its statutory and regulatory powers...both legal and equitable, which may pertain to the <u>failure of RSC and Ford to comply with any of the requirements of this Consent Order</u>....The Consent Order shall not be construed as a covenant not to sue, release, waiver, or limitation of any rights, remedies, powers, and/or authorities, civil or criminal, which the MDEQ has under Part 111 of the NREPA, or any other statutory, regulatory, or common law enforcement authority...." Exh. C, §16.3 at 45 (emphasis added). |
| 2 | "Such a resolution of liability, however, is undermined by the fact that <u>should the EPA disapprove</u> of Plaintiff's SRI/FFS Work Plan, 'U.S. EPA retains all of its rights under this Consent Order and CERCLA, including, but not limited to, the right to terminate this Consent Order, complete all SRI/ FFS activities, <u>and obtain reimbursement</u>....'" *ITT*, 506 F.3d at 459-60 (emphasis added). | "[T]he MDEQ expressly reserves all rights and defenses that it may have, including the right both to <u>disapprove of work</u> performed by Severstal and Ford pursuant to this Consent Order and <u>to request that Severstal and Ford perform tasks in addition</u> to those stated in this Consent Order." Exh. G, ¶5 at 3-4 (emphasis added).<br><br>"If, after thirty (30) days written notice, Severstal and/or Ford fail to perform any work or action requested by the MDEQ, then the MDEQ may exercise its authority...to undertake any corrective actions....The <u>MDEQ reserves its rights to seek reimbursement</u> from Severstal and Ford for such additional costs incurred by the State....Except as specifically provided in Paragraph 16.11 of this Consent Order,[11] <u>Severstal and Ford are not released from liability, if any, for the costs of any corrective actions...taken or authorized by the MDEQ.</u> Exh. H, ¶10 at 5-6 (emphasis added) |
| 3 | ITT's "participation in this Consent Order did not constitute an admission of liability or of U.S. EPA's Findings of Facts or Conclusions of Law and Determinations contained in this Consent Order." *ITT*, 506 F.3d at 460. | "Severstal, Ford, and the MDEQ agree that the signing of this Consent Order is for settlement purposes only and that the Consent Order and any settlement of liability herein do not constitute an admission by Severstal and/or Ford that any law has been violated or an admission of any |

---

[11] Paragraph 16.11 merely states that the release from CERCLA liability applies only to the extent of the work actually "performed in compliance with [the CACO]." To the extent that the CACO's "release" is expressly limited to work actually performed, this provision alone is enough to defeat a §113 claim inasmuch as an identical provision was the basis for the court's 12(b)(6) dismissal in *City of Gary v. Shafer*, 2007 U.S. Dist. LEXIS 75503, at *21-22 (N.D. Ind. Oct. 4, 2007).

| | Provision of AOC In *ITT* | Provision of CACO |
|---|---|---|
| | | factual allegation or legal conclusion stated or implied in this Consent Order." Exh. G, ¶2 at 2-3. |
| 4 | A settlement entered pursuant to CERCLA §122(a) does not trigger the right to §113 contribution – only administratively approved settlements entered under §122(g) and (h) are. *ITT*, 506 F.3d at 459-60. The AOC was entered under §122(a). Id. at 460. | "It is the intent of the Parties that this Consent Order: (a) constitutes an administrative settlement within the meaning of . . . Sections 122(a) and (h) of CERCLA." Exh. H, ¶15 at 8 (emphasis added). Although the CACO purports to be a settlement under both §122(a) *and* §122(h), it cannot be a §122(h) settlement since (1) MDEQ was not authorized by EPA to settle federal CERCLA liability and (2) Plaintiffs did not comply with the public notice and comment procedures in §122(i).[12] |

Another case that addressed whether CERCLA liability was actually "resolved" is *City of Waukesha v. Viacom International Inc.*, 404 F.Supp.2d 1112 (E.D. Wisc. 2005). As in *ITT*, the provisions of the *City of Waukesha* settlement are strikingly similar to the CACO.[13] Notably, the Wisconsin Department of Natural Resources' ("WDNR") covenant not to sue in the settlement agreement was contingent on the City of Waukesha (the contribution plaintiff) "*satisfactorily* perform[ing] the work specified in the agreement, . . . including unspecified 'additional remedial actions to protect human health and the environment.'" Id. at 1116 (internal citation omitted). In addition, the reservation of rights expressly preserved WDNR's right to "take any action pursuant to CERCLA" for "work which is agreed to but has not yet been performed." Id. The court concluded that because of these carve-outs, the agreement did not resolve the City's CERCLA liability. Similar provisions in the CACO compel the same result.[14]

---

[12] This issue is discussed in more detail infra at §IV(B)(2)(a) and (b), respectively.

[13] This case was cited by Chief District Judge Robert Holmes Bell in his opinion dismissing ITT Industries' §113(f) claim. *ITT Indus. v. Borgwarner, Inc.* ("*ITT I*"), 2006 U.S. Dist. LEXIS 59877, at *20; 2006 WL 2460793 (W.D. Mich. Aug. 22, 2006) (Exh. J).

[14] "This covenant is conditioned upon Severstal and Ford's satisfactory performance of their obligations under this Consent Order." Exh. H, ¶13 at 7. "[T]he covenant not to sue does not apply to response actions or response activities for all hazardous substances associated with the release..., but instead is limited to response actions and response activities actually

(continued...)

2.     **The Plaintiffs' CACO Cannot Be A §122(h) Settlement, As Required By** *ITT*.

a.     **The CACO Was Not A 122(h) Settlement Since EPA Never Authorized MDEQ To Settle Federal CERCLA Liability On Its Behalf.**

CERCLA §122(h) (titled "*Cost recovery settlement authority*"), subsection (1) ("*Authority to settle*") provides:

> The head of any department or agency with authority to undertake a response action under this chapter pursuant to the national contingency plan may consider, compromise, and settle a claim under section 9607 of this title for **costs incurred by the United States Government** if the claim has not been referred to the Department of Justice for further action. In the case of any facility where the total response costs exceed $500,000 (excluding interest), **any claim referred to in the preceding sentence may be compromised and settled only with the prior written approval of the Attorney General**.

42 U.S.C. 9622(h) (emphasis added).  A valid §122(h) settlement can only occur where "costs [were] incurred by the United States" and with "approval of the [U.S.] Attorney General." Id.  The Complaint did not allege these items – indeed, MDEQ (not EPA) compelled the response activities in the CACO and the U.S. Attorney General did not approve the settlement.  The text of §122(h) does not enable a *state agency* and a PRP to create a release from *federal* liability absent EPA's authorization to do so, which it did not do here.  The case law in this area reinforces this point.

In *City of Waukesha*, in holding that the WDNR settlement could not possibly "resolve" CERCLA liability, the court stated that "absent an express delegation by the EPA, a state has no CERCLA authority." 404 F.Supp.2d at 1117 (quoting *W.R. Grace & Co.-Conn. v. Zotos International, Inc.*, 2005 WL 1076117, *4 (W.D.N.Y., May 3, 2005) (Exh. J)); see also *Niagara Mohawk Power v. Consolidated Rail*

_____

(continued...)

performed pursuant to and in compliance with [the CACO]." Id. (emphasis added).  "MDEQ reserves the right to require Ford or Severstal to pursue further response activities at the Schaefer Road Area Facility to comply with Part 201." Exh. H, ¶11 at 6 (emphasis added).  "MDEQ expressly reserves...the right both to disapprove of work performed by Severstal and Ford...and to request that Severstal and Ford perform tasks in addition to those stated in this Consent Order." Exh. G, ¶5 at 3-4 (emphasis added).

*Corp.* 436 F.Supp.2d 398, 402 (N.D.N.Y. 2006) (Exh. J). The court in *ASARCO, Inc. v. Union Pacific R.R. Co.*, 2006 WL 173662, at *7 (D.Ariz., Jan. 24, 2006) explained that "[i]t makes little sense that an agreement with a state agency based on state law without any authorization from federal authorities could serve as a springboard for a CERCLA contribution claim." The Court in *ASARCO* continued:

> This is especially true where Congress has set forth specific guidelines for state involvement in CERCLA enforcement. As discussed above, before a state can enter into a CERCLA settlement, it must receive authorization from the EPA. 42 U.S.C. § 9604(d)(1)(A). To allow an agreement between a state and a private entity that lacks EPA backing to serve as a basis for a CERCLA contribution claim would effectively circumvent the requirement that states need to seek authorization from the EPA in order to participate in the CERCLA process.

Id. The CACO in this case is no different from the settlement in *City of Waukesha*, *W.R. Grace*, and the many other cases that have addressed the "delegation" issue. Since EPA never expressly delegated authority to Michigan or MDEQ to settle CERCLA liability on its behalf and the U.S. Attorney General did not approve the settlement, the CACO cannot give rise to a CERCLA contribution claim.[15] Despite Plaintiffs' efforts (see, e.g., Exh. H, ¶¶15, 16 at 8), there is no drafting around this.

b.    **A Valid Section 122(h) Settlement Must Comply With The Public Notice And Comment Procedures In §122(i).**

In addition to the CACO's failure to meet the *ITT* standard and MDEQ's lack of delegated CERCLA authority, a third independent basis for dismissing Plaintiffs' §113 claim is that proper administrative settlements under §122(h) require compliance with the procedural requirements of §122(i). *ITT Industries, Inc. v. BorgWarner*, 2006 WL 2460793, at *15; 2006 U.S. Dist. LEXIS 59877 (W.D. Mich.,

---

[15] Although EPA-Region 5 entered two Memoranda of Understanding ("MOU") with MDEQ, these MOUs merely require EPA to abstain from taking an enforcement action against certain categories of covered parties. Exhibit I, "MOUs", available on MDEQ's webpage at: http://www.michigan.gov/deq/0,1607,7-135-3311_4109_4217-9768--,00.html. Nowhere in the MOUs does EPA authorize MDEQ to release parties from CERCLA liability on its behalf. Moreover, the court in *City of Waukesha* specifically held that absent an express delegation, a "cooperation agreement" will not suffice. 404 F.Supp.2d at 1118.

Aug. 22, 2006);[16] *U.S. v. Alcan Aluminum Corp.* 990 F.2d 711, 725 (2nd Cir. 1993). Among other things, this includes public notice in the Federal Register, allowance for public comment, and due consideration to those comments. 42 U.S.C. 9622(i). Plaintiffs did not comply with these requirements, nor do they allege as much in the Complaint. Thus, contrary to Paragraph 50 of the Complaint, the CACO cannot be an administrative settlement under §122(h).[17] *ITT*, 506 F.3d at 460-61. Just like the AOC in *ITT*, the CACO is simply a private settlement with a state governmental agency that does not trigger the right to file a §113 contribution action.

### 3. Plaintiffs' §113 Contribution Claim Is Time-Barred By The Statute of Limitations In §113(g)(3)(B).

CERCLA §113(g)(3)(B) states that a §113 contribution action must be commenced within

**"3 years after . . . the date of an administrative order under** section 9622(g) of this title (relating to de minimis settlements) or **9622(h) of this title** (relating to cost recovery settlements) or entry of a judicially

---

[16] Here, Judge Bell stated:

> Moreover, all settlements under § 122(g) or § 122(h), must meet the notice-and comment procedures set forth in § 122(i), which require publication in the Federal Register and opportunity for persons who are not parties to the settlement to make comments. See 42 U.S.C. § 9622(i). Plaintiff does not assert that the § 122(i) procedures were followed for the administrative order at issue in the instant case. As a result, Plaintiff fails to allege the existence of an administrative settlement entitling it to seek contribution under § 113(f).

Id. at *15. In addition, any settlement in excess of $500,000 must be approved by the United States Attorney General. See 42 U.S.C. §9622(h)(1). Since the Plaintiffs chose to bypass the public notice and comment requirements of §122(h) and, to the extent that they request relief in excess of $500,000, failed to procure the Attorney General's approval, the CACO does not trigger §113 contribution rights. Indeed, the Plaintiffs do not even attempt to suggest that these procedural safeguards were met. 42 U.S.C. § 9622(i). This precludes the possibly that the CACO is an administrative settlement under § 122(g) or (h).

[17] The Complaint also alleges (¶49) that "Ford and Severstal have been *subjected* to a civil action by the State of Michigan for their [CERCLA] liability...." (emphasis added). Although it is unclear what "civil action" the Plaintiffs refer to, merely being "subjected" to liability is not enough to trigger contribution rights under §113(f). Just as a settlement must actually "resolve" CERCLA liability to trigger §113(f)*(3)* contribution under *ITT*, a party who seeks contribution "during or after a civil action" under §113(f)*(1)* must be adjudicated a liable party under CERCLA. See *Westinghouse Electric Company v. United States*, 2008 WL 2952759, *4 (E.D. Mo., July 29, 2008) ("[I]t makes no sense to apply [§113(f)(1)] where the civil action has been dismissed. CERCLA liability must have been established in a qualifying civil action for a party to either bring or maintain a § 113(f)(1) claim after that civil action has closed. See *Atlantic Research*, 127 S.Ct. at 2338. Put another way, if a party is sued pursuant to §106 or §107 but a 'judgment ... never occurs,' then the party may not bring or maintain a contribution action under §113(f)(1). See *Cooper Industries [v. Aviall Services, Inc.]* 543 U.S. [157,] 167 [2004]").

approved settlement with respect to such costs or damages." 42 U.S.C. 9613(g)(3)(B) (emphasis added).

In *ITT*, the Sixth Circuit confirmed that this is the applicable limitations period to Plaintiffs' §113 claim. 506

F.3d at 459, n.3 (affirming the district court's 12(b)(6) dismissal of ITT's §113(f) contribution claim for the

"NBIA Site," which was untimely since it was filed over three years after the date of the settlement).[18]

Applying §113(g)(3)(B) to this case, the "date of an administrative order under...9622(h)" can only be April

28, 2000, the date the CACO was entered.[19] Exh. C at 51-52. Three years from this date places the filing

deadline for Plaintiffs' §113 claim at April 28, 2003. Plaintiffs §113 claim is, therefore, more than five years

overdue.[20]

C. **Plaintiffs Count III (cost recovery under M.C.L. §324.20126a) Fails As M.C.L. §324.20126a Is Modeled After CERCLA §107(a) And as Such, Fails as a Matter of Law.**

Section 324.20126a of the Michigan Natural Resources and Environmental Protection Act

("NREPA") is "modeled after" CERCLA §107(a). *Hicks Family Ltd. Partnership v. 1st Nat. Bank of Howell*,

2008 WL 2744333, *2 (Mich. App., July 15, 2008) (Exh. J) (following *Atlantic Research* in dismissing

NREPA claim); *Genesco, Inc. v. Dep't of Environmental Quality*, 645 N.W.2d 319, 323 (Mich. App. 2002)

("Part 201 was modeled after the federal Comprehensive Environmental Response, Compensation, and

---

[18] The District Court's discussion here can be found at *ITT Indus. v. BorgWarner, Inc.*, 2006 U.S. Dist. LEXIS 59877, *17; 2006 WL 2460793, at *6 (W.D. Mich., Aug. 22, 2006). Severstal, as successor-in-interest to Rouge inherited an expired claim when it was substituted for Rouge in the Second Amendment to the CACO on January 28, 2004. Even if it is assumed that the Second Amendment was the "date of an administrative order" under §113(g)(3)(B), Severstal's §113 claim expired on January 28, 2007 – three years after the date of the Second Amendment (January 28, 2004).

[19] Plaintiffs may attempt to argue that the statute of limitations began to run from November 2007 when the "SRA site was officially added to [the]...CACO." Exh. A, ¶24. Contrary to paragraph 24 of the Complaint, the SRA Property was not "officially added" by the Fifth Amendment in 2007 – the SRA Property was addressed years prior in the original April 28, 2000 CACO. Exh. B, §3.5 at 6, §8.7 at 18-19. That Plaintiffs may have had a contribution right in 2000 and failed to exercise it until now should not have the effect of moving the "date of an administrative order" under §113(g)(3)(B) seven years after it really occurred. Certainly, a party should not be permitted to execute a settlement, then, when well outside the statute of limitations, execute an amendment to refresh the limitations period. If this were the case, contribution defendants would forever be subject to liability and the 3-year bar in §113(g)(3)(B) would be eviscerated.

[20] To the extent that the Court credits Plaintiffs' allegation that the CACO is a §122(h) settlement (see Exh. A, ¶50; Exh. H, ¶15 at 8), the limitations period in §113(g)(3)(B) should apply since it expressly encompasses §112(h) settlements.

Liability Act (CERCLA)"). Since Michigan courts rely on federal CERCLA jurisprudence when interpreting M.C.L. §324.20126a, Count III should be dismissed for the reasons set forth in Section IV(A), *supra*.

> ### D.    Counts IV, V, and VII Are Time-Barred Under Michigan Law.

Count IV, which alleges a violation of the Michigan Environmental Protection Act ("MEPA"), was filed decades outside the applicable statute of limitations. Since MEPA does not specify a statute of limitations, the default limitations period in M.C.L. §600.5813 applies, which is 6 years after the claim "accrues." M.C.L. §600.5813; *Attorney General v. Harkins*, 669 N.W.2d 296, 300 (Mich. App. 2003). "Accrual" is defined in M.C.L. §600.5827, which provides:

> Accrual of Claim: Except as otherwise expressly provided, the period of limitations runs from the time the claim accrues. The claim accrues at the time provided in sections 5829 to 5838, <u>and in cases not covered by these sections the claim accrues at the time the wrong upon which the claim is based was done regardless of the time when damage results</u>.

<u>Id</u>. (emphasis added). Since "sections 5829 to 5838" do not cover the accrual time of a MEPA claim, the limitations period commences at the "time of the wrong." <u>Id</u>. The "time of the wrong," according to Paragraph 59 of the Complaint, was during MichCon's ownership of the SRA Property when MichCon allegedly "polluted…natural resources of the State of Michigan by its conduct of storing, disposing and/or discharging hazardous substances at the MGP Site, including property that became the SRA Property." Exh. A, ¶59. Because MichCon sold the property to Ford in 1968, the "wrong upon which the claim is based" and, thus, the accrual date was, at the very latest, 1968. Therefore, the MEPA claim expired no later than 1974, six years after the sale.

Moreover, the phrase "regardless of the time when damage results" in M.C.L. §600.5827 precludes any application of the continuing violation/wrong doctrine. The Michigan Supreme Court confirmed this in 2005 in *Garg v. Macomb Cty. Mental Health Authority* ("*Garg*"), 696 N.W.2d 646 (Mich. 2005), holding that the "continual harmful effects caused by a completed original act" does not toll the "time of accrual" in M.C.L. §600.5827 and that "the 'continuing violations' doctrine…has no continued place in the

jurisprudence of this state." Id. at 662.  The common law discovery doctrine was also abolished in 2007 in Trentadue v. Buckler Automatic Lawn Sprinkler Co. ("Trentadue"), 479 Mich 378, 388-89, 393 (2007); Terlicki v. Stewart, 278 Mich. App. 644, 652 (2008) (citing Trentadue).  Without the common law continuing violation/wrong and discovery doctrines, the "time of accrual" was locked in no later than 1968.  Any other conclusion would run afoul of Garg and Trentadue.

The "time of accrual" of Plaintiffs' negligence (Count V) and public nuisance and private nuisance (Count VII) claims is the same as the MEPA claim – no later than 1968.  Since these claims fall under the three-year limitations period in M.C.L. §600.5805(10), they expired no later than 1971 – three years after the 1968 sale to Ford.[21]

The 1968 sale to Ford, which marks the latest date at which Counts IV, V, and VII could have accrued, is also the accrual date for Severstal by operation of Michigan law.  Under M.C.L. §600.5841,[22] when Rouge purchased the SRA Property from Ford in 1989, Rouge inherited Ford's stale claims, which were subsequently passed to Severstal when it purchased the Property from Rouge in 2004.  Exh. A, ¶19.  Therefore, as "predecessor" to Severstal, Ford's "time of accrual" becomes Severstal's – no later than 1968.  Consequently, both Ford's and Severstal's claims in Count IV were extinguished by 1974 and by 1971 for Counts V and VII.

---

[21] Hicks Family Ltd. Partnership v. 1st Nat. Bank of Howell, 2006 WL 2818514, at *8 (Mich. App., Oct. 3, 2006) (Exh. J) (holding, in an action alleging cost recovery under NREPA Part 201 and various torts, that "Plaintiff's claims of trespass, private and public nuisance . . . are subject to the general three-year limitations period for actions to recover damages to property. M.C.L. 600.5805(10); Traver Lakes Community Maintenance Ass'n v. Douglas Co., 224 Mich.App. 335, 340, 346, 568 N.W.2d 847 (1997) (negligence and trespass); Davis v. Chrysler Corp., 151 Mich.App. 463, 473 n. 10, 391 N.W.2d 376 (1986) (nuisance)").

[22] M.C.L. §600.5841 (titled "Accrual of claim; to person other than person bringing action") provides:

> If the claim first accrues to an ancestor, predecessor, or grantor of the person who brings the action or makes the entry, or to any other person from or under whom he claims, the periods of limitations shall be computed from the time when the claim first accrued to the ancestor, predecessor, grantor, or other person, except as otherwise provided by law.

E.    **Plaintiffs' MEPA Claim Is Barred As A Sham, Plaintiffs Lack Standing, And The MEPA Claim Is Preempted.**

1.    **Plaintiffs' MEPA Claim Is A Sham.**

On the validity of Plaintiffs' MEPA Claim, this Court's holding in *Zoufal v. Amoco Oil Co.*, 1993 WL 208812 (E.D. Mich., Mar. 19, 1993) (Exh. J) is particularly instructive:

> Although plaintiffs' prayer for relief is couched in language indicating injunctive and declaratory relief, plaintiffs have raised no issue of fact which suggests that they are seeking other than monetary damages. Since MEPA does not provide for monetary damages, Count [IV] of plaintiffs' complaint must be dismissed as a matter of law.

*Id*. at *4. Count IV requests the exact same kind of damages disguised as "equitable relief" as in *Zoufal*. Count IV's prayer for relief "request[s] that this court award them equitable relief, <u>apportion the costs of remediation of the SRA Property and associated adjacent property to MichCon as appropriate</u>...." Exh. A at 11 (emphasis added).

Other than requesting apportionment of "the costs of remediation" from MichCon, which is clearly a remedy at law that is not authorized by MEPA, a MEPA injunction is not requested and is not appropriate in this case. MichCon ceased manufactured gas plant operations in or around 1954 (Exh. A, ¶14) and sold the SRA Property to Ford in 1968 (Exh. A, ¶17) and, therefore, cannot enter the Property to abate an activity that has not occurred in 54 years on property it no longer owns or controls. MichCon is not aware of any Michigan case that has ordered, under MEPA, the kind of relief Plaintiffs are requesting under even remotely similar circumstances.

2.    **As A PRP, Plaintiffs Lack Standing.**

MichCon's position is further buttressed by *Wacker Chem. Corp. v. Bayer Cropscience*, 2006 U.S. Dist. LEXIS 61483 at *4-7 (E.D Mich., Aug. 18, 2006) (Exh. J). In *Wacker*, this Court granted a Rule 12(b)(6) motion on a MEPA claim because a PRP cannot sue another PRP for allocation of common liability for contamination. *Id*. at *7 ("Plaintiff's claim that Defendant should be ordered to either reimburse it

for remediation of the Adrian site, or fund the remediation itself, is not the relief contemplated by Part 17").[23]

As PRPs, Plaintiffs cannot sue MichCon under MEPA.[24]

### 3.    Plaintiffs' MEPA Claim Is Preempted By CERCLA.

Yet another independent basis for dismissing Count IV is that MEPA is preempted by

CERCLA.  A state law claim is preempted when it is "duplicative of or in conflict with CERCLA."  *W.R.*

*Grace & Co.-Conn. v. Zotos International, Inc.* ("*W.R. Grace*"), 2005 WL 1076117, at *11 (W.D.N.Y. 2005)

(Exh. J); *New York v. Next Millennium Realty, LLC*, 2008 WL 1958002, at *9-10, (E.D.N.Y. 2008) (Exh. J).

The MEPA claim is duplicative of and conflicts with CERCLA §113.  Count IV's prayer for relief seeks

equitable apportionment of the costs of remediation of the SRA Property – an analysis that is already

required by §113(f).  In fact, since CERCLA was enacted in 1980, the bulk of the federal case law

interpreting CERCLA's provisions deal specifically with how best to apportion cleanup costs among PRPs.

See *Kalamazoo River Study Group v. Rockwell Intern.*, 258 F.Supp.2d 736, 753 (W.D. Mich. 2002) (citing

---

[23] MEPA was designed to "protect natural resources before they become scarce." *Nemeth v Abonmarche Dev, Inc*, 576 N.W.2d 641, 650 (Mich. 1998).  Moreover, it cannot be argued in good faith that the SRA Property, which has been owned and operated by Ford, Rouge, and then Severstal since 1898 exclusively for industrial purposes, is a protected "natural resource" within the meaning of M.C.L. 324.1701(1).  Michigan courts typically use the "*Portage* factors" to determine what "natural resources" are protected under MEPA.  These factors include:

> (1) whether the natural resource involved is rare, unique, endangered, or has historical significance, (2) whether the resource is easily replaceable (for example, by replanting trees or restocking fish), (3) whether the proposed action will have any significant consequential effect on other natural resources (for example, whether wildlife will be lost if its habitat is impaired or destroyed), and (4) whether the direct or consequential impact on animals or vegetation will affect a critical number, considering the nature and location of the wildlife affected.

*Preserve the Dunes, Inc v. Department of Envtl Quality*, 690 N.W.2d 487, 491 n.3 (Mich. App. 2004).  No comparison can be drawn to a "critically protected sand dune" (*e.g.*, *Preserve the Dunes*) and the SRA Property.  See, *e.g.*, *West Michigan Environmental Action Council v. Natural Resources Comm.*, 275 N.W.2d 538, 542 (Mich. 1979) (upholding MEPA claim because the drilling of exploratory oil and gas wells "will have some adverse impact upon some wildlife, particularly elk, bobcat and bear").

[24] Neither Ford nor Severstal can allege that they are not PRPs in this case.  Any current owner or operator of property where there is a release of hazardous substances, regardless of when the release occurred, is a PRP under §107(a)(1) of CERCLA.  Thus, Severstal, as the current owner and operator of the SRA Property (Exh. A¶19 at 4) where a release occurred (Exh. A, ¶32), is a PRP.  Ford is also a PRP as a former owner at the time of a release under §107(a)(2) of CERCLA because during its ownership and operation of the SRA Property, it disposed of hazardous wastes.  Exh. B, at 8-9.

*Centerior*, 153 F.3d at 354, and applying the "Gore factors," which are used in this Circuit to equitably

allocate cleanup costs).[25]

Thus, the Plaintiffs have failed to state a MEPA claim because it is a sham (*Zoufal*),

Plaintiffs' lack MEPA standing as a PRP (*Wacker*), and the claim is preempted by CERCLA (*W.R. Grace*).

These are all independent bases for dismissal as a matter of law.

F.   **Plaintiffs' Cannot State A Negligence Claim Since Former Property Owners Do Not Owe A Duty To Their Successor Owner.**

The U.S. District Court for the Western District of Michigan in *Busch Oil Co., Inc. v. Amoco*

*Oil Co.* best summarized the "no duty to successor owners" rule as applied to an environmental action as

here:

> Under Michigan law, a landowner has no duty to successor owners to maintain property in a particular condition. As noted above, the Michigan Supreme Court in *Christy* [*v. Prestige Builders*], 415 Mich. [684,] 694, 329 N.W.2d 748 [(1982)] stated: 'Under the common law, a land vendor who surrenders title, possession, and control of property shifts all responsibility for the land's condition to the purchaser. Caveat Emptor prevails in land sales, and the vendor, with two exceptions,[26] is not liable for any harm due to defects existing at the time of sale.'

*Busch Oil Co., Inc. v. Amoco Oil Co.*, 1996 WL 33143114, at *8-9 (W.D. Mich., Feb. 20, 1996) (Exh. J).

See also *Zoufal v. Amoco Oil Co.*, 1993 WL 208812, at *7 (E.D. Mich., Mar. 19, 1993) (Exh. J) (dismissing

the plaintiff's negligence claim, holding that "[t]his Court, however, is aware of no legal authority which

would support the imposition of a duty on an owner of land to maintain his or her property in a certain

condition or to refrain from any activity affecting the property which would extend to future owners of the

---

[25] Preemption is discussed in more detail *infra* at §IV(G) with respect to Plaintiffs' Count VI for common law indemnification and contribution.

[26] "The first exception is the vendor's duty to disclose to the purchaser any concealed condition known to him which involves an unreasonable danger...The second exception is that a vendor is liable to those outside the land for a dangerous condition on the land after the sale until the purchaser discovers or should have discovered it." Id. at *7. Neither of these exceptions apply when a current owner of contaminated property sues a former owner for negligence. Id. at *9 ("Busch Oil's negligence claim does not fit neatly within either of *Christy's* exceptions, which are really in the nature of claims for fraud and premises liability for an undisclosed dangerous condition.")

land") (internal citation omitted).[27]  Absent a legal duty, Count V must be dismissed for failure to state a claim.

     **G.**     **Both Common Law Indemnification And Contribution (Count VI) Are Preempted By CERCLA.**

     The same preemption analysis that applies to the MEPA claim also applies to Plaintiffs' Count VI for common law indemnification[28] and contribution:  a state law claim is preempted when it is "duplicative of or in conflict with CERCLA."  *W.R.* Grace, 2005 WL 1076117, at *11 (W.D.N.Y. 2005) (Exh. J).  Plaintiffs' common law claims for indemnification and contribution, by their very nature, are duplicative of and conflict with CERCLA and, therefore, must be preempted.  See *New York v. Next Millennium Realty, LLC,* 2008 WL 1958002, at *9 (E.D.N.Y. 2008) (Exh. J) ("outside these specified conditions under which a private party may seek contribution from a PRP under CERCLA, a party's state law remedies of contribution and indemnification that are premised on a defendant's CERCLA liability under §113 are preempted by the comprehensive settlement and contribution scheme set forth by Congress in §113 of CERCLA") (citing *Bedford Affiliates,* 156 F.3d 416, 427 (2nd Cir. 1998)) (holding that the plaintiff's common law indemnification and restitution claims were preempted because these claims "would bypass [CERCLA's] carefully crafted settlement system, creating an actual conflict therefore between CERCLA and state common law causes of action").[29]

---

[27] See also *Sanyo North America Corporation v. Avco Corporation,* 2008 U.S. Dist. LEXIS 51354, at *16 (S.D. Ind., July 3, 2008) (imposition of a duty in this situation would be unreasonable "because such future owners may not be known or even contemplated at the time the landowner creates or maintains a condition on his or her property").

[28] In addition to preemption, another reason that Plaintiffs cannot state a common law indemnification claim is that such a claim requires an allegation that the Plaintiffs were 100% innocent, which is not the case here. *Skinner v. D-M-E-Corp.,* 124 Mich. App. 580 (1983); *Pontious v. EQ Bilss Co.,* 102 Mich. App. 718 (1981); *Peeples v. Detroit,* 99 Mich. App. 285 (1980).  The Plaintiffs did not, and indeed cannot, plead that they were 100% innocent with respect to the contamination at the SRA Property given that they are PRPs. See supra n.24; *Scheid v. Fanny Farmer Candy Shops, Inc.,* 859 F.2d 434, 437 (6th Cir. 1988) ("when a complaint omits facts that, if they existed, would clearly dominate the case, it seems fair to assume that those facts do not exist").

[29] See also *M & M Realty Co. v. Eberton Terminal Corp.,* 977 F.Supp. 683, 689 (M.D.Pa., 1997) ("Common law claims for contribution are preempted by CERCLA" and a common law indemnity claim is likewise preempted since it is "in reality

(continued...)

The above cases make clear that a party cannot avoid preemption by creatively pleading a common law contribution and indemnification *around CERCLA* by grounding these claims in another state law cause of action. Exh. A, ¶68 (requesting indemnification or contribution because "MichCon released solid and/or hazardous waste...<u>in a negligent manner, as described in Count V above</u>") (emphasis added).

Nor can Plaintiffs argue that they have a right to raise these state law claims as a fall-back in case their CERCLA claims are dismissed. CERCLA preemption applies – regardless of the validity of the Plaintiffs' CERCLA claims. <u>See</u> *W.R.* Grace, <u>supra</u> at *12 (Exh. J). In *W.R. Grace*, the court held that neither of plaintiff's two "administrative consent orders" with the New York Department of Conservation triggered rights to §113 contribution since these settlements did not "resolve" federal CERCLA liability. <u>Id.</u> at *4-7. In preempting W.R. Grace's state law contribution claim, the court stated that W.R. Grace "is bound by the limitations on contribution actions imposed by CERCLA. Grace cannot circumvent those express limitations by seeking CERCLA-based contribution under New York's contribution statute." <u>Id.</u> at *10.[30] Simply put, Plaintiffs cannot use the common law to outmaneuver the federal scheme set in place by Congress.

---

(continued...)

merely another attempt to obtain contribution") (citing *In re Reading Co.*, 115 F.3d 1111, 1117 (3d Cir. 1997); *New York State Elec. & Gas Corp. v. FirstEnergy Corp.*, 2007 WL 1434901, at *11 (N.D.N.Y., May 11, 2007) (Exh. J) ("Because resort to a contribution claim under section 1401 [New York's statutory contribution provision] would potentially undermine this scheme and permit the recovery of duplicate damages, or contribution *where none is available under CERCLA*, the contribution claims under that statute are precluded by conflict of preemption.") (emphasis added); *Coeur D'Alene Tribe v. Asarco Inc.*, 2001 WL 34139603, at *9 (D.Idaho, Mar. 30, 2001) (Exh. J) ("The Court finds that CERCLA's provisions for contribution prevent common law actions for indemnification or contribution.").

[30] *W.R. Grace*'s preemption analysis is relied heavily on in *PMC, Inc. v. Sherwin-Williams Co.*, 151 F.3d 610 (7th Cir.1998), which is also on point here. In *PMC*, the plaintiff was denied contribution under §113(f)(1) because it failed to submit its proposed cleanup method for public comment as required by the NCP. <u>Id.</u> at 616-17. After denying the plaintiff CERCLA contribution, the district court went on to award it contribution under the Illinois Contribution Act. <u>The Seventh Circuit reversed</u>, noting CERCLA's express limitations on the right of contribution and rejecting the plaintiff's argument that CERCLA's savings clause permitted it to utilize the state's contribution provisions to obtain contribution predicated on CERCLA liability in an attempt to "nullify the sanction that Congress imposed" (*i.e.*, forfeiture of the §113(f) claim) for failing to provide public comment. <u>Id.</u> at 618; <u>see also</u> *W.R. Grace* 2005 WL 1076117, at *12 (summarizing *PMC*).

H.    **Plaintiffs Fail To State A Claim For Public and Private Nuisance (Count VII) Because A Private Nuisance Claim Cannot Be Brought Against One's Predecessor And Plaintiffs Lack The Requisite Standing To Raise A Public Nuisance Claim.**

1.    **A Private Nuisance Claim Cannot Be Brought Against One's Predecessor.**

Private nuisance claims are not available by a future landowner against a prior owner. *Weaver v. United States*, 809 F. Supp. 527, 534 (E.D. Mich. 1992) (applying Michigan law, "[a] defendant may not be found liable for a nuisance in the absence of the right to possession or control of the land in which the nuisance is located"); *Zoufal v. Amoco Oil Co.*, 1993 WL 208812, at *7 (E.D.Mich. 1993) (Exh. J) (citing *Wellesley Hills Realty Trust v. Mobil Oil Corp.*, 747 F.Supp. 93, 98-99 (D.Mass. 1990)); *Busch Oil Co., Inc. v. Amoco Oil Co.*, 1996 WL 33143114, at *9 (W.D.Mich. 1996) (Exh. J).[31]  As a past owner of the SRA Property, MichCon is not susceptible to suit by Ford and Severstal for private nuisance as a matter of law.

2.    **Plaintiffs Lack Standing To Raise A Public Nuisance Claim**

The Michigan Court of Appeals in *Cloverleaf Car Co. v. Phillips Petroleum Co.* set forth the requirements for a public nuisance claim:

---

[31] The court in *Busch Oil Co., Inc.* summarized the Michigan law on this issue:

> The Michigan Supreme Court in *Adkins* [v. *Thomas Solvent Co.*], 440 Mich. at 307-08 n. 17, 487 N.W.2d 715, observed that 'courts have typically refused to allow a successor landowner to seek damages under a nuisance theory because the landowner's claim does not involve an interference with adjoining land.' Further, a defendant is not responsible to abate a nuisance where the defendant does not have a right to possess or control the nuisance. *Oxenrider v. Gvoic*, 340 Mich. 591, 66 N.W.2d 80 (1954); *Detroit Bd. of Educ. v. Celotex Corp. (on remand)*, 196 Mich.App. 694, 493 N.W.2d 513 (1992), *lv. den.*, 444 Mich. 908, 512 N.W.2d 318 (1993); *McSwain v. Township of Redford*, 173 Mich.App. 492, 434 N.W.2d 171 (1988); *Lipka v. Macomb County Bd. of Road Comm'rs*, 155 Mich.App. 624, 400 N.W.2d 698 (1986), *lv. den.* 430 Mich. 879, 423 N.W.2d 573 (1988).

Id. at *9; see also *Philadelphia Elec. Co. v. Hercules, Inc.*, 762 F.2d 303, 314-15 (3d Cir. 1985), cited with approval, *Adkins, supra* at 721 n.11 ("Nuisance historically has only been used to resolve conflicts between neighboring, contemporaneous land uses, for conditions existing on the land transferred where the doctrine of *caveat emptor* applies would 'negate the market's allocation of resources and risks' and would 'extend private nuisance beyond its historical role'").

> **A public nuisance is an unreasonable interference with a common
> right enjoyed by the general public**, and includes conduct which: (1)
> significantly interferes with the public's health, safety, peace, comfort, or
> convenience; (2) is proscribed by law; or (3) was known or should have
> been known by the actor to be of a continuing nature which produces a
> permanent or long-lasting significant effect on the public's rights. **A
> private citizen may pursue an action for a public nuisance if he can
> show that he suffered a type of harm different from that of the
> general public**.

540 N.W.2d 297, 300 (Mich. App. 1995) (emphasis added) (citing *Adkins v. Thomas Solvent Co.,* 487

N.W.2d 715, 721 n.11 (Mich. 1992)).  Plaintiffs have not alleged in their Complaint any interference with a

"common right enjoyed by the general public" or a "type of harm different from the general public."  Indeed

they cannot do so since Plaintiffs only seek reimbursement for expenses incurred in cleaning up the SRA

Property, which is really only a special harm to Plaintiffs in the exercise of their private property rights, as

explained by the Third Circuit in *Philadelphia Elec. Co. v. Hercules, Inc.,* 762 F.2d 303, 315 (3d Cir. 1985)

(*cert. denied*) (citing Restatement (Second) of Torts §821C(1)).  See *Adkins,* 487 N.W.2d at 721 n.11 (citing

*Hercules* with approval).

   In *Philadelphia Elec. Co.,* although the court held that a jury could properly find that the

leaching of chemicals into a river was a public nuisance, the expense incurred in cleaning up the chemical

waste alleged only special harm to plaintiff in the exercise of its private property rights and, therefore, the

plaintiff had suffered no particular damage in the exercise of a public right to have pure water.  762 F.2d at

315-16.  The court, in so finding, noted that the plaintiff had not claimed that it used the waters of the river

or that it was directly harmed in any way by the river's polluted state.

## V.    CONCLUSION AND RELIEF REQUESTED

For all of the reasons set forth above, Defendant respectfully requests that its motion to dismiss be granted and that Plaintiffs' Complaint be dismissed in its entirety with prejudice.

Respectfully submitted,


/s/ Scott L. Gorland
SCOTT L. GORLAND (P28237)
THOMAS P. WILCZAK (P36415)
MARK A. ERMAN (P71351)
Pepper Hamilton LLP
100 Renaissance Center, 36th Floor
Detroit, MI 48243
(313) 259-7110
Dated:  October 30, 2008         gorlands@pepperlaw.com
wilczakt@pepperlaw.com
ermanm@pepperlaw.com
Attorneys for Defendant MichCon

#10201891 v8

25

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

FORD MOTOR COMPANY, a
Delaware Corporation; SEVERSTAL
NORTH AMERICA, INC., a Delaware
Corporation,

                Plaintiffs,

vs.                                  Civil Case No. 2:08cv13503
                                            Hon. Robert H. Cleland

MICHIGAN CONSOLIDATED
GAS COMPANY, a Michigan
Corporation,

                Defendant.

_____/

### CERTIFICATE OF SERVICE

        I hereby certify that on October 30, 2008, I served a true and correct copy of the foregoing Defendant's Motion to Dismiss, Brief in Support of Defendant's Motion to Dismiss and Exhibits to the parties of record through the Court's electronic filing system.

                                      Respectfully submitted,

                                      */s/ Scott L. Gorland*_____
                                      SCOTT L. GORLAND (P28237)
                                      THOMAS P. WILCZAK (P36415)
                                      MARK A. ERMAN (P71351)
                                        Pepper Hamilton LLP
                                      100 Renaissance Center, 36th Floor
                                      Detroit, MI 48243
                                      (313) 259-7110
Dated:  October 30, 2008            gorlands@pepperlaw.com
                                      wilczakt@pepperlaw.com
                                      ermanm@pepperlaw.com
                                      Attorneys for Defendant MichCon

#10211888 v1 (105125.29)