UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| FORD MOTOR COMPANY, a Delaware Corporation; SEVERSTAL NORTH AMERICA, INC., a Delaware Corporation,<br><br>      Plaintiffs,<br>v.<br><br>MICHIGAN CONSOLIDATED GAS COMPANY, a Michigan Corporation,<br><br>      Defendant. | Civil Case No. 2:08cv13503<br><br>Hon. Robert H. Cleland |

_____/

| | |
|---|---|
| PEPPER HAMILTON LLP<br> Scott L. Gorland (P28237)<br> Thomas P. Wilczak (P36415)<br> Mark A. Erman (P71351)<br>Attorneys for Defendant<br>100 Renaissance Center, Suite 3600<br>Detroit, MI 48243<br>(313) 259-7110<br>gorlands@pepperlaw.com<br>wilczakt@pepperlaw.com<br>ermanm@pepperlaw.com | DICKINSON WRIGHT PLLC<br> D. Lee Khachaturian (P59966)<br> Tammy L. Helminski (P69431)<br>Attorneys for Ford Motor Company<br>500 Woodward Avenue, Suite 4000<br>Detroit, MI 48226<br>(313) 223-3500<br>dkhachaturian@dickinsonwright.com<br>thelminski@dickinsonwright.com |
| DRIGGERS, SCHULTZ & HERBST, P.C.<br> William C. Schaefer (P26495)<br> Barbara D. Urlaub (P38290)<br>Co-Counsel for Severstal North America, Inc.<br>2600 W. Big Beaver Rd. Suite 550<br>Troy, MI 48084<br>(248) 649-6000<br>wschaefer@driggersschultz.com<br>burlaub@driggersschultz.com | ECKERT SEAMANS CHERIN & MELLOTT, LLC<br> Robert V. Campedel (P47828)<br>Attorneys for Severstal North America, Inc.<br>600 Grant Street, 44th Floor<br>Pittsburgh, PA 15219-2788<br>(412) 566-6000<br>rcampedel@eckertseamans.com |

_____/

**FIRST AMENDED COMPLAINT**

Plaintiffs Ford Motor Company and Severstal North America, Inc., by and through their respective counsel Dickinson Wright PLLC, Eckert Seamans Cherin & Mellott, LLC, and Driggers, Schultz & Herbst, P.C., bring this civil action against Michigan Consolidated Gas Company, and support their allegations as follows:

## PARTIES AND JURISDICTION

1. Plaintiff Ford Motor Company ("Ford") is a Delaware corporation with its principal place of business located in Dearborn, Michigan.

2. Plaintiff Severstal North America, Inc. ("Severstal") is a Delaware corporation with its principal place of business located in Dearborn, Michigan.

3. Defendant Michigan Consolidated Gas Company ("MichCon") is a Michigan corporation with its principal place of business located in Detroit, Michigan.

4. This case, in part, arises under a federal statute; i.e., the Comprehensive Environmental Responsibility, Compensation and Liability Act, 42 U.S.C. § 9601 *et seq.* (hereinafter "CERCLA").

5. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331.

6. This Court has pendent jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367 because they are so related to Plaintiffs' CERCLA claims that they form part of the same case or controversy.

7. Venue is proper in the Eastern District of Michigan pursuant to 28 U.S.C. § 1391(b) and 42 U.S.C. § 9613 because the claims arose within this district.

8.    Notice of this action has been provided to the State of Michigan and MichCon pursuant to Mich. Comp. Laws § 324.20135.

## **GENERAL ALLEGATIONS**

9.    The Detroit Gas Company owned and operated a manufactured gas plant and conducted other manufacturing operations from at least the mid-1920's until the mid 1950's on the west side of the Rouge River in the City of Melvindale, Michigan, hereinafter referred to as the "MGP Site."

10.   In 1938, Ford acquired approximately 26 acres of land on the east side of the River, across from the MGP Site. Because the river divided the property owned by the Detroit Gas Company and Ford, each owned to the mid-point of the river along their respective property boundaries. (So, this approximately 26 acres of land included land owned by Ford both on the east side of the River and under the River.)

11.   The manufactured gas plant operations at the MGP Site included the production of by-products, such as oils and tars.

12.   At least some of these oil and tar by-products were dumped in surface impoundments at the MGP Site adjacent to what was then the western bank of the Rouge River (the "River").

13.   The Detroit Gas Company became part of MichCon in 1949. As a result, MichCon is the successor to the Detroit Gas Company and is liable for the debts, liabilities, duties and obligations of its predecessor. (Hereinafter, reference to MichCon includes, where appropriate, reference to the Detroit Gas Company).

14.   Manufactured gas plant operations ceased at the MGP Site in or around 1954.

15. In the late 1960's, the United States Army Corps of Engineers realigned the River. The new River channel was created west of the original river channel, such that it cut through MichCon's MGP Site. This realignment resulted in the MGP Site straddling the east and wide sides of the new River channel.

16. In connection with the realignment of the River in 1967 and 1968, the United States Army Corps of Engineers identified potential free-phase oil, tar, or oily material in the areas surrounding the former surface impoundments of the manufactured gas plant operations, prior to the realignment and prior to Ford acquiring the property, including areas that subsequently became the newly-created east side of the River.

17. In 1968, Ford acquired title to a portion, approximately 22 acres, of the MGP Site. These 22 acres included that portion of the MGP site that had become located on the east side of the new River channel as a result of the realignment.

18. The Schaefer Road Area Property ("SRA Property"), which is the principal property at issue in this litigation, is approximately 48 acres, is entirely on the east side of the new River channel, and includes the original river channel and a portion of the former MGP site. The 48 acres consists of the 26 acres Ford acquired in 1938 (*see* ¶ 10), and the 22 acres acquired in 1968 (*see* ¶ 17).

19. In 1989, Ford sold the 48-acre SRA Property to the Rouge Steel Company, and in 2004, Severstal purchased the assets of the Rouge Steel Company, including the SRA Property, in a bankruptcy proceeding.

20. Several Phases of Remedial Investigations (collectively "Remedial Investigations") have been performed by Ford and Severstal at the SRA Property, and on

adjoining property along the riverbank not owned by Ford or Severstal, under the oversight of the Michigan Department of Environmental Quality (the "MDEQ").

21.     The results of the Remedial Investigations show that there are thirteen types of volatile organic chemicals ("VOCs") and twenty-two types of semi-volatile organic chemicals ("SVOCs") present in the subsurface at the SRA Property.

22.     The Remedial Investigations revealed that the highest concentrations of VOCs and SVOCs were present in the subsurface under the former manufactured gas plant surface impoundments located on the property that previously had been part of the MGP Site that Ford acquired from MichCon in 1968.

23.     Additionally, the Remedial Investigations revealed that high concentrations of nineteen different metals, free-phase dense non-aqueous phase liquid ("DNAPL"), and polychlorinated biphenyls ("PCBs") were also present in the subsurface under the former manufactured gas plant surface impoundments located on the property that previously had been part of the MGP Site that Ford acquired from MichCon in 1968.

24.     To address these issues at the SRA Property, in November 2007, at Plaintiffs' initiative, the SRA Property was added via a fifth amendment to a Corrective Action Consent Order ("CACO") that Ford and Severstal's predecessor voluntarily had entered into with the State of Michigan in 2000. (The original CACO addressed corrective action at the neighboring Rouge Manufacturing Complex, a separate facility which is not at issue in this case.)

25.     The Fifth Amendment to the CACO not only added the SRA Property as a facility to the CACO, it resolved Severstal's and Ford's liabilities to the State of Michigan under Part 201

of the Natural Resources and Environmental Protection Act ("NREPA"), Mich. Comp. Laws 324.20101 – 20142 ("Part 201"), and CERCLA as it related to the SRA Property.

26. In conducting the response activities at, and associated with, the SRA Property in accordance with the CACO and its amendments, Ford and Severstal have incurred costs and will continue to incur costs.

## COUNT I
## COST RECOVERY PURSUANT TO THE COMPREHENSIVE ENVIRONMENTAL RESPONSE, COMPENSATION, AND LIABILITY ACT, 42 U.S.C. § 9607

27. Ford and Severstal incorporate by reference the preceding paragraphs as though fully set forth herein.

28. MichCon is liable for cost recovery to Ford and Severstal pursuant to CERCLA 42 U.S.C. § 9607, as alleged in the following paragraphs.

29. MichCon falls under the definition of "person" as that term is defined in 42 U.S.C. § 9601(21).

30. While MichCon owned and/or conducted operations at the MGP Site, including property that became the SRA Property, it deposited, discharged, stored, released and/or disposed of chemical substances onto and into the soil at the SRA Property, including but not limited to manufactured gas production by-products such as tar substances.

31. These by-products included "hazardous substances" as that term is defined in 42 U.S.C. § 9601(14).

32. The SRA Property constitutes a "facility" within the meaning of 42 U.S.C. § 9601(9) because it is a place where MichCon created a pit, pond, lagoon, impoundment, ditch

and/or landfill and where MichCon deposited, stored, disposed of, and/or placed hazardous substances.

33. The storage, disposal, release, placement, and/or discharge of hazardous substances including but not limited to VOCs, SVOCs, DNAPL, and metals at the SRA Property constitutes or has resulted in the release or threatened release of hazardous substances and has resulted in a hazardous condition at the MGP Site, including property that became the SRA Property, necessitating the incurrence of response costs to address the conditions at the SRA Property and on adjacent property.

34. Ford and Severstal have incurred and will continue to incur response costs to remedy the condition of the SRA Property including, but not limited to:

    a. the costs of obtaining samples at the SRA Property and adjacent property to determine both the extent of the release at the SRA property and the hydrogeological characteristics of the soils and groundwater at the SRA Property and adjacent property;

    b. the laboratory costs of analyzing samples obtained at the SRA Property and adjacent property for a determination of the concentrations of hazardous substances;

    c. the costs associated with the assessment of any potential hazards at the SRA Property resulting from incidental exposure to the soil or inhalation of ambient air;

    d. the cost of analyzing the impact of the release to the soil and groundwater;

    e. the costs of developing an appropriate remedy to successfully reduce the risk of contamination or hazard to human health and the environment;

    f. the cost of implementing any and all remediation required at the SRA Property and any associated adjacent property;

    g. the cost of paying the State of Michigan, among other things, oversight costs associated with the SRA Property;

    h. any other necessary response costs consistent with the National Contingency Plan as specified at 40 C.F.R. part 300.

- 8 -

35. The incurrence of the response costs described in Paragraph 34 above is necessary to ensure the effective remediation (as will be determined by MDEQ under the terms of the CACO and applicable statutes and regulations) of the SRA Property, and of associated property as may be required by MDEQ.

36. The response costs Plaintiffs have incurred, and will incur, include both costs for "removal" as that term is defined in 42 U.S.C. § 9601(23) and "remedial action" as that term is defined in 42 U.S.C. § 9601(24).

37. The incurrence of the response costs described in Paragraph 34 above is consistent with the purposes and intent of the National Contingency Plan as set forth in 40 C.F.R., Part 300.

38. Under 42 U.S.C. § 9607(a)(4), MichCon is liable for response costs identified in Paragraph 34.

39. MichCon is liable for Plaintiffs' actual attorneys' fees and other costs in bringing and prosecuting this action.

Wherefore, Ford and Severstal demand a judgment in their favor against MichCon, in an amount to be determined, together with interests, costs, attorneys' fees and any additional relief this Court may deem appropriate.

## COUNT II
## CONTRIBUTION PURSUANT TO THE COMPREHENSIVE ENVIRONMENTAL RESPONSE, COMPENSATION, AND LIABILITY ACT, 42 U.S.C. § 9613

40. Ford and Severstal incorporate by reference the preceding paragraphs as though fully set forth herein.

41. MichCon is liable for cost recovery to Ford and Severstal pursuant to CERCLA 42 U.S.C. § 9613, as alleged in the following paragraphs.

42. MichCon falls under the definition of "person" as that term is defined in 42 U.S.C. § 9601(21).

43. While MichCon owned and/or conducted operations at the MGP Site, including property that became the SRA Property, it deposited, discharged, stored, released and/or disposed of chemical substances onto and into the soil at the SRA Property, including but not limited to manufactured gas production by-products such as tar substances.

44. These by-products included "hazardous substances" as that term is defined in 42 U.S.C. § 9601(14).

45. The SRA Property constitutes a "facility" within the meaning of 42 U.S.C. § 9601(9) because it is a place where MichCon created a pit, pond, lagoon, impoundment, ditch and/or landfill and where MichCon deposited, stored, disposed of, and/or placed hazardous substances.

46. The storage, disposal, release, placement, and/or discharge of hazardous substances including but not limited to VOCs, SVOCs, DNAPL, and metals at the MGP Site, including property that became the SRA Property, constitutes or has resulted in the release or threatened release of hazardous substances and has resulted in a hazardous condition at the SRA

Property necessitating the incurrence of response costs to address the conditions at the SRA Property.

47. Ford and Severstal entered into the Fifth Amendment to the CACO with the State of Michigan, which resolved Ford and Severstal's CERCLA liability in an administrative settlement within the meaning of 42 U.S.C. § 9613(f)(3)(B).

48. The United States Environmental Protection Agency delegated its authority to resolve CERCLA claims as it relates to the SRA Property (and other property) to the State of Michigan, which has been represented by the MDEQ and Michigan's Attorney General.

49. Ford and Severstal have incurred and will continue to incur response costs to remedy the condition of the SRA Property.

50. Ford and Severstal have paid and will continue to pay the response costs incurred by third parties to remedy the condition of the SRA Property.

51. The incurrence of these response costs is necessary to ensure the effective remediation (as will be determined by MDEQ under the terms of the CACO and applicable statutes and regulations) of the SRA Property.

52. The incurrence of the costs described in Paragraphs 49 and 50 above is consistent with the purposes and intent of the National Contingency Plan as set forth in 40 C.F.R., Part 300.

53. MichCon is liable to Ford and Severstal for contribution under 42 U.S.C. § 9613(f).

54. MichCon is liable for Plaintiffs' actual attorneys' fees and other costs in bringing and prosecuting this action.

Wherefore, Ford and Severstal demand a judgment in their favor against MichCon, in an amount to be determined, together with interests, costs, attorneys' fees and any additional relief this Court may deem appropriate.

## COUNT III
## COST RECOVERY PURSUANT TO THE MICHIGAN NATURAL RESOURCES AND ENVIRONMENTAL PROTECTION ACT, MICH. COMP. LAWS § 324.21026a

55. Ford and Severstal incorporate by reference the preceding paragraphs as though fully set forth herein.

56. The MGP Site, including property that became the SRA Property, is a "facility" as that term is defined in Mich. Comp. Laws § 324.20101 as it is an area, place, or property where a hazardous substance in excess of the concentrations set forth in Mich. Comp. Laws § 324.20120a(1)(a) or (17) has been released, deposited, disposed of, or otherwise comes to be located.

57. While MichCon owned and/or conducted operations at the SRA Property, they released, deposited and/or disposed or arranged for disposal of hazardous substances at the SRA Property and are responsible for activities causing a release or threat of release.

58. MichCon is a liable party for response activity costs at the SRA Property pursuant to Mich. Comp. Laws § 324.20126.

59. Ford and Severstal have incurred and will continue to incur the costs set forth in paragraph 34 relating to the selection and implementation of response activities at the SRA Property and adjacent property as a result of MichCon's operations.

60.     Under Mich. Comp. Laws § 324.20126a, MichCon is jointly and severally liable for all response costs, plus interest, incurred by Ford and Severstal in conjunction with the selection and implementation of response activities at the SRA Property.

Wherefore, Ford and Severstal demand a judgment in their favor against MichCon, in an amount to be determined, together with interests and costs, and any additional relief which is deemed appropriate.

### COUNT IV
### CONTRIBUTION PURSUANT TO THE MICHIGAN
### NATURAL RESOURCES AND ENVIRONMENTAL PROTECTION ACT,
### MICH. COMP. LAWS § 324.21029

61.     Ford and Severstal incorporate by reference the preceding paragraphs as though fully set forth herein.

62.     The MGP Site, including property that became the SRA Property, is a "facility" as that term is defined in Mich. Comp. Laws § 324.20101 as it is an area, place, or property where a hazardous substance in excess of the concentrations set forth in Mich. Comp. Laws § 324.20120a(1)(a) or (17) has been released, deposited, disposed of, or otherwise comes to be located.

63.     While MichCon owned and/or conducted operations at the SRA Property, it released, deposited and/or disposed or arranged for disposal of hazardous substances at the SRA Property and is responsible for activities causing a release or threat of release.

64.     MichCon is a liable party for response activity costs at the SRA Property pursuant to Mich. Comp. Laws § 324.20126.

- 13 -

65.     Ford and Severstal have paid and will continue to pay costs incurred relating to the selection and implementation of response activities at the SRA Property and adjacent property as a result of MichCon's operations.

66.     Ford and Severstal have resolved their liabilities to the State of Michigan for some or all of the response activity at the SRA Property through an administratively approved consent order.

67.     Under Mich. Comp. Laws § 324.20129, MichCon is liable in contribution to Ford and Severstal for certain of the costs set forth in paragraph 65. MichCon was responsible for causing the release and/or threat of release at the SRA Property, equity demands MichCon be liable in contribution to Ford and Severstal for these costs incurred on behalf of the SRA Property, and MichCon exercised no degree of care with regard to the hazardous substances at the MGP Site, including that which became the SRA Property.

Wherefore, Ford and Severstal demand a judgment in their favor against MichCon, in an amount to be determined, together with interests and costs, and any additional relief which is deemed appropriate.

### COUNT V
### COMMON LAW INDEMNIFICATION

68.     Ford and Severstal incorporate by reference the preceding paragraphs as though fully set forth herein.

69.     Ford and Severstal have incurred costs for the study and remediation of the SRA Property and associated adjacent property, and Ford and Severstal will continue to incur such costs.

70.  MichCon released solid and/or hazardous waste and/or hazardous and dangerous substances onto and into the ground at the MGP Site, including property that became the SRA Property.

71.  Ford and Severstal's incurrence of costs at the SRA Property arises from the conduct of MichCon alleged in Paragraph 70.

Wherefore, Ford and Severstal request a judgment for indemnification against MichCon for those costs incurred and yet to be incurred by Ford and Severstal with regard to the SRA Property and associated adjacent property.

DICKINSON WRIGHT PLLC

By: s/D. Lee Khachaturian
    D. Lee Khachaturian (P59966)
    Tammy L. Helminski (P69431)
Attorneys for Ford Motor Company
500 Woodward Avenue, Suite 4000
Detroit, MI 48226
(313) 223-3500
dkhachaturian@dickinsonwright.com
thelminski@dickinsonwright.com

DRIGGERS, SCHULTZ & HERBST, P.C.

By: s/with consent of William C. Schaefer
    William C. Schaefer (P26495)
    Barbara D. Urlaub (P38290)
Co-Counsel for Severstal North America, Inc.
2600 W. Big Beaver Rd. Suite 550
Troy, MI 48084
(248) 649-6000
wschaefer@driggersschultz.com
burlaub@driggersschultz.com

ECKERT SEAMANS CHERIN & MELLOTT, LLC

By: s/with consent of Robert V. Campedel
    Robert V. Campedel (P47828)
Attorneys for Severstal North America, Inc.
600 Grant Street, 44th Floor
Pittsburgh, PA 15219-2788
(412) 566-6000
rcampedel@eckertseamans.com

Dated: December 11, 2008

## CERTIFICATE OF SERVICE

I hereby certify that on <u>December 11, 2008</u> I electronically filed the foregoing document with the Clerk of the Court using the ECF system which will send notice of such filing upon all counsel of record:

ECKERT SEAMANS CHERIN & MELLOTT, LLC
Robert V. Campedel (P47828)
Attorneys for Severstal North America, Inc.
600 Grant Street, 44th Floor
Pittsburgh, PA 15219-2788
(412) 566-6000
rcampedel@eckertseamans.com

PEPPER HAMILTON LLP
Scott L. Gorland (P28237)
Mark A. Erman (P71351)
Attorneys for Defendant
100 Renaissance Center, Suite 3600
Detroit, MI 48243
(313) 259-7110
gorlands@pepperlaw.com
ermanm@pepperlaw.com

DRIGGERS, SCHULTZ & HERBST, P.C.
William C. Schaefer (P26495)
Barbara D. Urlaub (P38290)
Co-Counsel for Severstal North America, Inc.
2600 W. Big Beaver Rd. Suite 550
Troy, MI 48084
(248) 649-6000
wschaefer@driggersschultz.com
burlaub@driggersschultz.com

Respectfully submitted,

DICKINSON WRIGHT PLLC

By:   /s/ D. Lee Khachaturian
D. Lee Khachaturian (P59966)
Tammy L. Helminski (P69431)
Attorneys for Ford Motor Company
500 Woodward Avenue, Suite 4000
Detroit, MI  48226
(313) 223-3500
dkhachaturian@dickinsonwright.com
thelminski@dickinsonwright.com

Dated: December 11, 2008