# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

FORD MOTOR COMPANY, ET AL.,

      Plaintiffs,

v.                                    Case No. 08-CV-13503-DT

MICHIGAN CONSOLIDATED GAS COMPANY,

      Defendant.

_____/

## ORDER DENYING AS MOOT DEFENDANT'S OCTOBER 30, 2008 MOTION TO DISMISS AND GRANTING IN PART AND DENYING IN PART DEFENDANT'S DECEMBER 31, 2008 MOTION TO DISMISS

Pending before the court are two motions to dismiss filed by Defendant Michigan Consolidated Gas Company ("MichCon"). The court conducted a hearing on the motions on May 12, 2009. For the reasons stated below the court will deny the first motion as moot and deny in part and grant in part the second motion.

## I. BACKGROUND[1]

Plaintiffs Ford Motor Company ("Ford") and Severstal North America, Inc. ("Severstal") filed this action against MichCon seeking recovery of costs that Plaintiffs have incurred and will continue to incur in connection with environmental impacts allegedly caused by MichCon and its predecessors at a manufactured gas plant on the west side of the Rouge River in the City of Dearborn, Michigan (the "MGP Site").

The complaint alleges that from the 1920s through the 1950s, the Detroit Gas Company conducted manufacturing operations at the MGP Site. (Am. Compl. ¶ 9.)

_____

[1]Unless otherwise noted, the following facts are taken almost verbatim from Plaintiffs' amended complaint and are accepted as true for purposes of these motions.

According to the complaint, in 1938, Ford acquired 26 acres of land on the east side of the River, across from the MGP Site.  (*Id.* ¶ 10.)  The manufactured gas plant operations at the MGP Site included the production of by-products, such as oils and tars, at least some of which were dumped in surface impoundments at the MGP Site adjacent to what was then the western bank of the Rouge River  (the "River").  (*Id.* ¶¶ 11-12.)

The Detroit Gas Company became part of MichCon in 1949.  As a result, MichCon is the successor in interest to the Detroit Gas Company and, according to Plaintiffs, is liable for the debts, liabilities, duties, and obligations of its predecessor.  (*Id.* ¶ 13.)  Manufactured gas plant operations ceased at the MGP Site in or around 1954. (*Id.* ¶ 14.)

In the late 1960s, the United States Army Corps of Engineers realigned the River, and the realignment resulted in the MGP Site straddling the east and wide sides of the River.  (*Id.* ¶ 15.)   In connection with the realignment of the River in 1967 and 1968, the United States Army Corps of Engineers identified potential free-phase oil, tar, or oily material in the areas of the former surface impoundments of the manufactured gas plant operations, including areas on the newly-created east side of the River.  (*Id.* 16.)   In 1968, Ford acquired title to a portion of the MGP Site, specifically, 22 acres on the east side of the River.  (*Id.* ¶ 17.)

The principal property at issue in this litigation is referred to as the Schaefer Road Area Property ("SRA Property"), and is 48 acres located entirely on the east side of the River. The SRA Property consists of the 26 acres Ford acquired in 1938, and the 22 acres acquired in 1968.  (*Id.* ¶ 18).  In 1989, Ford sold the 48-acre SRA Property to

the Rouge Steel Company, and in 2004, Severstal purchased the assets of the Rouge

Steel Company, including the SRA Property, in a bankruptcy proceeding.

(*Id.* ¶ 19).  Several phases of remedial investigations (collectively "Remedial

Investigations") have been performed by Ford and Severstal at the SRA Property and

on adjoining property along the riverbank not owned by Ford or Severstal, under the

oversight of the Michigan Department of Environmental Quality (the "MDEQ").

(*Id.* ¶ 20).

The results of the Remedial Investigations show that there are thirteen types of

volatile organic chemicals ("VOCs") and twenty-two types of semi-volatile organic

chemicals ("SVOCs") present in the subsurface at the SRA Property.  (*Id.* ¶ 21). The

Remedial Investigations revealed that the highest concentrations of VOCs

and SVOCs were present in the subsurface beneath the former manufactured gas plant

surface impoundments, located on the property that previously had been part of the

MGP Site that Ford acquired from MichCon in 1968.  (*Id.* ¶ 22).  Additionally, the

Remedial Investigations revealed that high concentrations of nineteen different metals,

free-phase dense non-aqueous phase liquid ("DNAPL"), and polychlorinated biphenyls

("PCBs") were also present in the subsurface beneath the former manufactured gas

plant surface impoundments, located on the property that previously had been part of

the MGP Site that Ford acquired from MichCon in 1968.  (*Id.* ¶ 23).

To address these issues at the SRA Property, in November 2007 the SRA site

was officially added to a Corrective Action Consent Order ("CACO") entered into by

Ford and Severstal with the State of Michigan.  (*Id.* ¶ 24).  In conducting the response

activities at, and associated with, the SRA Property required under the CACO, Ford and Severstal have incurred costs and will continue to incur costs.  (*Id.* ¶ 26).

Plaintiffs Ford and Severstal initiated this action on August 13, 2008, asserting seven counts against MichCon: Count I, entitled "Cost Recovery Pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. § 9607" ("CERCLA"); Count II, entitled "Contribution Pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. § 9613"; Count III, entitled "Cost Recovery Pursuant to the Michigan Natural Resources and Environmental Protection Act"; Count IV, entitled "Violation of the Michigan Environmental Protection Act"; Count V, entitled "Negligence"; Count VI, entitled "Common Law Indemnification and Contribution"; and Count VII, entitled "Public and Private Nuisance."  In lieu of filing an answer, Defendant MichCon filed a motion to dismiss on October 30, 2008. Thereafter, Plaintiffs filed a "First Amended Complaint," which Defendant moved to dismiss on December 31, 2008.

The First Amended Complaint retains four claims from the original complaint, but does not include three counts which were asserted in the original complaint, the Michigan Environmental Protection Act claim (previously Count IV), the negligence claim (previously Count V), the contribution claim (previously a portion of Count VI) and the public and private nuisance claim (previously Count VII).  The First Amended Complaint also adds a count for contribution under Michigan's Natural Resources and Environmental Protection Act ("NREPA").  In its two motions, Defendant asserts that all of the counts in both complaints should be dismissed.

4

## II. STANDARD[2]

When ruling on a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must construe the complaint in a light most favorable to the plaintiff and accept all the factual allegations as true. *Evans-Marshall v. Board of Educ.,* 428 F.3d 223, 228 (6th Cir. 2005); *Rossborough Mfg. Co. v. Trimble,* 301 F.3d 482, 489 (6th Cir. 2002). In doing so, "the court must draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). Yet, the court "need not accept as true legal conclusions or unwarranted factual inferences." *Gregory v. Shelby County*, 220 F.3d 433, 466 (6th Cir. 2000).

Though decidedly generous, this standard of review does require more than the bare assertion of legal conclusions. *Lillard v. Shelby County Bd. of Educ.*, 76 F.3d 716, 726 (6th Cir. 1996).

---

[2] Defendant brings its motion as a motion pursuant to Rule 12(b)(6), although both parties refer to documents attached to Plaintiffs' complaint and the parties' briefs. A Rule 12(b)(6) analysis generally forbids a court from considering documents outside the pleadings, *Gunasekera v. Irwin*, 551 F.3d 461, 469 n.4 (6th Cir. 2009); however, when "a document is referred to in the complaint and is central to the plaintiff's claim . . . , the defendant may submit an authentic copy to the court to be considered on a motion to dismiss," *Greenberg v. Life Insurance Co. of Virginia*, 177 F.3d 507, 514 (6th Cir. 1999) (quoting 11 James Wm. Moore et al., Moore's Federal Practice § 56.30[4] (3d ed. 1998)) (internal quotation marks omitted). In this case, the court will refer to documents appearing on the public docket and documents referred to in the complaint, but such documents nonetheless are allowed in considering a Rule 12(b)(6) motion. *See Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001) ("In determining whether to grant a Rule 12(b)(6) motion, the court primarily considers the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint, also may be taken into account.") (emphasis omitted) (quoting *Nieman v. NLO, Inc.*, 108 F.3d 1546, 1554 (6th Cir. 1997)). Further, even if the court were to address Defendant's motion under Federal Rule of Civil Procedure 56 summary judgment standard, based on what has been submitted to the court, the court's conclusion would remain the same.

> [A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do. Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the complaint's allegations are true.

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted).

Further, the complaint must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (abrogated on different grounds by *Twombly*, 550 U.S. 544). In application, a "complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under *some* viable legal theory." *Lillard*, 76 F.3d at 726 (citation omitted). A court cannot grant a motion to dismiss under Rule 12(b)(6) based upon its disbelief of a complaint's factual allegations. *Wright v. MetroHealth Med. Ctr.*, 58 F.3d 1130, 1138 (6th Cir. 1995).

Under Federal Rule of Civil Procedure 56, summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "In deciding a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor." *Sagan v. United States*, 342 F.3d 493, 497 (6th Cir. 2003). "Where the moving party has carried its burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record, construed favorably to the non-moving party, do not raise a genuine issue of material fact for trial, entry of summary judgment is appropriate." *Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir. 1987) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)).

6

The court does not weigh the evidence to determine the truth of the matter, but rather, to determine if the evidence produced creates a genuine issue for trial.  *Sagan*, 342 F.3d at 497 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). The moving party must first show the absence of a genuine issue of material fact.  *Plant v. Morton Int'l, Inc.*, 212 F.3d 929, 934 (6th Cir. 2000) (citing *Celotex*, 477 U.S. at 323). The burden then shifts to the nonmoving party, who "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  They must put forth enough evidence to show that there exists a genuine issue to be decided at trial.  *Plant*, 212 F.3d at 934 (citing *Anderson*, 477 U.S. at 256).  Summary judgment is not appropriate when "the evidence presents a sufficient disagreement to require submission to a jury." *Anderson*, 477 U.S. at 251-52 (1986).

## III.  DISCUSSION

### A.  The Original Complaint

As an initial matter, the court finds that Plaintiffs acted within their rights by filing an amended complaint.  Federal Rule of Civil Procedure 15 allows a party to amend its complaint once as a matter of course any time before being served with a responsive pleading.  Fed. R. Civ. P. 15(a)(1)(A).  Motions and pleadings are differentiated by Rule 7, which defines pleadings, exclusively, as complaints (including third party complaints); answers; answers to crossclaims, counterclaims, and third party complaints; and, if the court orders one, a reply to an answer.  Fed. R. Civ. P. 7(a); *see also Yuhasz v. Brush Wellman, Inc.,* 341 F.3d 559, 569 (6th Cir. 2003) (finding that Rule 7 distinguishes between pleadings and motions in determining what qualifies as "responsive pleadings"

7

under Rule 15).  Thus, "[a] motion to dismiss is not considered a responsive pleading

under Rule 15(a)."  *Winget v. JP Morgan Chase Bank, N.A.,* 537 F.3d 565, 574 (6th Cir.

2008) (citing *Ohio Cas. Ins. Co. v. Farmers Bank of Clay*, 178 F.2d 570, 573 (6th Cir.

1949)).  As applied in this case, therefore, Plaintiffs were free to file an amended

complaint without leave of court, even after Defendant moved to dismiss the original

complaint, because no answer has been filed.  *See id.* ("Winget does indeed correctly

interpret Rule 15(a) to allow a plaintiff to file an amended complaint without leave of

court when the defendant has not filed a responsive pleading."); *Youn v. Track, Inc.*,

324 F.3d 409, 416 n.6 (6th Cir.  2003) ("Motions to dismiss are not 'responsive

pleadings' within the meaning of Rule 15(a)." (citations omitted)); *see also Yuhasz,* 341

F.3d at 569 ("In this case, [the defendant] never filed an answer.  Consequently, [the

plaintiff] was free to file an amended complaint at any time prior to the district court's

entry of judgment.").

Because Plaintiffs were free to file their amended complaint without leave of

court, the original complaint is no longer active, and Defendant's October 30, 2008

motion to dismiss will be denied as moot.

### B.  The First Amended Complaint

As stated above, after Plaintiffs filed their First Amended Complaint, Defendant

filed a second motion to dismiss on December 31, 2008.  The motion incorporates

Defendant's argument from its initial motion to dismiss on Counts I, II, III, and V of the

First Amended Complaint, which are almost identical to Counts I, II, III, and IV of the

original complaint, respectively.  The only exception is that Plaintiffs' new Count V,

entitled "Common Law Indemnification," dropped the claim for common law contribution

that was previously contained within the original complaint's Count IV. The second motion to dismiss also includes an argument that the new Count IV should be dismissed for failure to state a claim. The court will address each count in turn.

### 1. Count I:  Cost Recovery Pursuant to CERCLA § 107

Much of the parties' dispute in these motions revolves around the intersection of two provisions of CERCLA: § 113(f), which authorizes contribution claims between potentially responsible parties ("PRPs"), and § 107(a), which authorizes cost recovery actions against PRPs.  Section 113(f) gives PRPs only a right to contribution, that is, the "right to collect from others responsible for the same tort after the tortfeasor has paid more than his or her proportionate share, the shares being determined as a percentage of fault." *United States v. Atlantic Research Corp.*, 55 U.S. 128, 127 S.Ct. 2331, 2338 (2007) (quoting Black's Law Dictionary 353 (8th ed. 1999)).  Thus, "PRPs right to contribution under §113(f)(1) is contingent upon an inequitable distribution of common liability among liable parties." *Id.*  Conversely, "§ 107(a) permits recovery of cleanup costs but does not create a right to contribution.  A private party may recover under § 107(a) without any establishment of liability to a third party." *Id.*  However, under § 107(a), a party "may recover only the costs it has 'incurred' in cleaning up a site." *Id.* (citing 42 U.S.C. § 9607(a)(4)(B)).  Courts have historically struggled with the intersection of these two provisions.  Indeed, when CERLCA was first enacted, it provided only for cost recovery under § 107.  CERCLA was later amended through the Superfund Amendments and Reauthorization Act ("SARA") to create an express right to contribution under § 113.  Plaintiffs have asserted claims against Defendant under both the contribution provision, § 113(f), and the cost recovery provision, § 107(a).

9

Defendant first argues that Plaintiffs cannot maintain a CERCLA § 107 claim because according to the allegations in the complaint, Plaintiffs did not incur their costs voluntarily.  Under § 107(a), a potentially responsible party ("PRP") is liable for "all costs of removal or remedial action incurred by the United States Government or a State or an Indian tribe not inconsistent with the national contingency plan."  42 U.S.C. § 9607(a)(4)(A).  A PRP is also liable to other PRPs for "any other necessary costs of response incurred by any other person consistent with the national contingency plan."  42 U.S.C. § 9607(a)(4)(B).   According to Defendant, in order to assert a cause of action under § 107, Plaintiff must have incurred its costs voluntarily.  Defendant asserts that Plaintiffs must seek recovery of involuntarily incurred costs through CERCLA § 113(f).  In support of its position, Defendant relies upon *United States v. Atlantic Research Corp.*, 55 U.S. 128, 127 S.Ct. 2331 (2007).

In *Atlantic Research*, the Supreme Court held that CERCLA § 107 allows a PRP to recover from other PRPs costs incurred in voluntarily cleaning up a contaminated site.  *Atlantic Research Corp.*, 127 S.Ct. at 2336.  While holding that a PRP could recover *voluntarily* incurred clean-up costs, the Supreme Court in *Atlantic Research* did not specifically address whether *compelled* clean-up costs are recoverable.  Defendant argues that the plain language of CERCLA, Sixth Circuit precedent, and non-binding authority all preclude Plaintiffs' cause of action under § 107.  Plaintiffs, on the other hand, argue that no case cited by Defendant actually holds that only voluntarily incurred costs can be recovered.  Moreover, Plaintiffs assert that even if Defendant's argument is correct, Plaintiffs in fact incurred their costs voluntarily.

10

The parties agree that *Atlantic Research* did not address the issue.  Defendant cites various authorities in purported support of its argument that § 107 may only be utilized to obtain voluntarily incurred costs but none of these cases are directly on point.

For example, Defendant relies heavily on *Centerior Serv. Co. v. Acme Scrap Iron & Metal Corp.*, 153 F.3d 344 (6th Cir. 1998).  In *Centerior*, the Sixth Circuit held that cost recovery actions brought by PRPs are "necessarily actions for contribution, and are therefore governed by the mechanisms set forth in § 113(f)."  *Id.* at 350.  Plaintiff contends that this holding was overruled nine years later by the Supreme Court in *Atlantic Research*.  The court is persuaded by Plaintiffs' argument that *Centerior's* analysis does not survive *Atlantic Research*.  The *Atlantic Research* Court held that PRPs could maintain a cause of action under either § 107(a) or § 113(f), depending on the particular "procedural circumstance[]."  *Atlantic Research*, 127 S.Ct. at 2338.  The Court held:

> [T]he remedies available in §§ 107(a) and 113(f) complement each other by providing causes of action "to persons in different procedural circumstances." *Consolidated Edison*, 423 F.3d, at 99; *see also E.I. DuPont de Nemours*, 460 F.3d, at 548 (Sloviter, J., dissenting). Section 113(f)(1) authorizes a contribution action to PRPs with common liability stemming from an action instituted under § 106 or § 107(a). And § 107(a) permits cost recovery (as distinct from contribution) by a private party that has itself incurred cleanup costs. Hence, a PRP that pays money to satisfy a settlement agreement or a court judgment may pursue § 113(f) contribution. But by reimbursing response costs paid by other parties, the PRP has not incurred its own costs of response and therefore cannot recover under § 107(a). As a result, though eligible to seek contribution under § 113(f)(1), the PRP cannot simultaneously seek to recover the same expenses under § 107(a).

*Atlantic Research Corp.,* 127 S.Ct. at 2338.  The Court, however, recognized that

factual situations will not always fit neatly into either the § 107 category or the § 113

category.  The Court noted:

> We do not suggest that §§ 107(a)(4)(B) and 113(f) have no overlap at all.
> *Key Tronic Corp. v. United States*, 511 U.S. 809, 816, 114 S.Ct. 1960, 128
> L.Ed.2d 797 (1994) (stating the statutes provide "similar and somewhat
> overlapping remed[ies]"). For instance, we recognize that a PRP may
> sustain expenses pursuant to a consent decree following a suit under §
> 106 or § 107(a). *See, e.g., United Technologies Corp. v. Browning-Ferris
> Industries, Inc.*, 33 F.3d 96, 97 (C.A.1 1994). In such a case, the PRP
> does not incur costs voluntarily but does not reimburse the costs of
> another party. We do not decide whether these compelled costs of
> response are recoverable under § 113(f), § 107(a), or both. For our
> purposes, it suffices to demonstrate that costs incurred voluntarily are
> recoverable only by way of § 107(a)(4)(B), and costs of reimbursement to
> another person pursuant to a legal judgment or settlement are recoverable
> only under § 113(f).

*Id.* at 2338 n.6.[3]  The facts in the instant case fall within this gray area, where Plaintiff

seeks recovery of funds it paid pursuant to the CACO.  Defendant suggests that since

this case falls within the gray area, the court should look back to *Centerior*, decided

before *Atlantic Research*.  Defendant argues that "[t]o the extent that *Atlantic*

*Research* suggests without deciding that there could be some 'overlap' in this situation,

such overlap does not exist in this Circuit.  In other words, the Supreme Court's footnote

6 left open the very question that *Centerior* and other federal circuits already resolved –

i.e., that compelled costs pursuant to a consent order or decree must be recovered, if at

---

[3]Because the *Atlantic Research* Court itself recognized the possibility of an
overlap, the court is not persuaded by Defendant's argument that since the CACO
references § 113(f), and since the costs sought here are potentially recoverable under §
113(f), then Plaintiffs *necessarily* are foreclosed from seeking recovery under § 107.  In
Defendant's opening brief, it argues that Plaintiffs' costs (potentially) fit within the
confines of § 113(f).  (Def.'s 10/30/08 Br. at 6.)  While this may be true, it does not mean
that Plaintiffs' costs may not also fall within the scope of § 107.

all, under § 113." (Def.'s 10/30/08 Br. at 7-8.) Plaintiff counters that no portion of

*Centerior* survived *Atlantic Research.* Plaintiff argues:

> In *Centerior,* the Sixth Circuit analyzed what circumstances permitted a party to seek cost recovery under § 107(a) and what circumstances permitted a party to seek contribution under § 113. In other words, *Centerior* addressed the very issue addressed in *Atlantic Research.* The *Centerior* court concluded that PRPs seeking costs from other PRPs "are necessarily actions for contribution" and therefore had to be brought under § 113. *Centerior Service* Co., 153 F.3d at 350. In analyzing whether plaintiffs' claim was a contribution action, the court looked to the common-law definition of contribution. *Id.* at 350-51. In particular, it observed that contribution arose when one party who has a legal obligation to rectify a harm seeks to recover from another liable party that portion of the harm for which the other party is liable. In *Centerior,* plaintiff PRPs had a legal obligation to cleanup and were seeking relief from other PRPs. According to the court, this was a "quintessential" action for contribution, and therefore, plaintiffs had to proceed under § 113. *Id.* at 351.
>
> *Atlantic Research* turned *Centerior* on its head. *Atlantic Research* held that in determining whether an action constitutes a contribution action under CERCLA § 113, a court must look at the types of costs the party bringing suit seeks to recover. If a party incurs **direct** costs that it is suing to recover, it may bring a claim under § 107. If a party incurs **indirect** costs that it is suing to recover-that is, costs incurred in the context of reimbursing a party who itself directly paid response costs-then it has to bring a contribution action under § 113. Thus, contrary to *Centerior's* holding, the analysis of which CERCLA provision is applicable to a particular cost recovery effort centers on the nature of the costs sought by the party, not on the liability of the party seeking recovery.
>
> In short, *Atlantic Research* rendered *Centerior's* entire contribution analysis-which led to and formed the foundation for its holding as it related to when a party could bring a claim under § 107 and § 113-inapposite. That is, given *Atlantic Research, Centerior's* contribution analysis as it relates to the circumstances under which a party can bring a claim under § 107 and § 113 is neither relevant nor viable. Therefore, *Centerior* provides no legal basis upon which a § 107 claim must turn on the voluntary or involuntary nature of the response costs paid.

(Pl's 12/11/08 Resp. at 10-11.) The court is persuaded by Plaintiffs' argument that the

*Atlantic Research* holding is not compatible with *Centerior's* analysis. In particular, the

court agrees that the focus of the *Atlantic Research* court's reasoning is determining the type of costs sought to be recovered. If the party is seeking recovery of direct costs incurred in cleaning a site, the claim must be brought under § 107. If the party is seeking to recover indirect costs incurred in reimbursing another party for their costs, the claim must be brought under § 113. *See Atlantic Research*, 127 S.Ct. at 2338.[4]

---

[4]After the hearing on this motion occurred, Defendant filed a "Notice of Supplemental Authority," and submitted the Western District of Michigan's recent decision, on remand, in *ITT Industries, Inc. v. BorgWarner, Inc.,* 615 F. Supp. 2d 640 (W.D. Mich. Mar. 31, 2009) (Bell, J.) In Judge Bell's March 31 opinion, he held that *Atlantic Research* did not overrule all of the analysis in *Centerior. Id.* at 647. Even though this court's interpretation of *Atlantic Research*'s effect is somewhat broader than Judge Bell's, it is not necessarily conflict with Judge Bell's analysis. Judge Bell focused his conclusion on the fact that, if a party is seeking costs incurred pursuant to a judicial or administrative settlement and those costs could have been sought under § 113(f) if they had been timely brought, that party cannot maintain a suit under § 107. *Id.* at 646-47. Specifically, Judge Bell found:

> *Atlantic Research* held that "the remedies available in §§ 107(a) and 113(f) complement each other by providing causes of action 'to persons in different procedural circumstances.' " 127 S.Ct. at 2338 (quoting *Consol. Edison*, 423 F.3d at 99). Consistent with the language of the statute and the case law, the relevant procedural circumstances are whether the plaintiff has been subject to an enforcement action under § 106 or § 107. If it has, then the plaintiff is limited to a § 113(f) contribution claim. If it has not, then the plaintiff can bring a § 107 claim.

*Id.* at 647. Even under Judge Bell's formulation of the issue, which is different but not necessarily inconsistent with this court's, Plaintiffs would be allowed to maintain their § 107 claim. As will be set forth in great detail, *infra*, the CACO did not constitute an administrative settlement under CERCLA and therefore Plaintiffs cannot maintain a contribution action. Moreover, there is no indication or allegation in the First Amended Complaint that Plaintiffs have been subject to an enforcement action under CERCLA § 106 or § 107. While the original complaint contained such an allegation (*See* Comp. ¶ 49 ("Ford and Severstal have been subjected to a civil action by the State of Michigan for their liability, or potential liability, under 42 U.S.C. § 9607(a)(4) for the response costs identified in Paragraph 33."), the amended complaint specifically deleted this allegation. Accordingly, even under the analysis articulated by Judge Bell, Plaintiffs' ¶ 107 claim survives.

Moreover, as Plaintiffs point out, there is nothing in the statute itself which confines liability to costs voluntarily incurred.  (Pls.' 1/26/09 Resp. at 4.)  Rather, under § 107(a), a PRP is liable to the United States Government or a State or an Indian tribe for "all costs of removal or remedial action."  42 U.S.C. § 9607(a)(4)(A).  Under the next subparagraph, which is applicable here, a PRP is liable to other PRPs for "*any other necessary costs of response* incurred by any other person consistent with the national contingency plan."  42 U.S.C. § 9607(a)(4)(B) (emphasis added).  This broad language does not, on its face, limit recovery to only voluntarily-incurred costs, but allows recovery for "any other necessary costs."  Indeed, the court's conclusion is further bolstered by the reasoning of the Second Circuit, in a case decided after the parties had concluded their briefing in this matter.  In *W.R. Grace & Co.-Conn. v. Zotos Intern., Inc.,* 559 F.3d 85, 92 (2d Cir. 2009), the court held:

> Under the plain language of the statute, the fact that a party enters into a consent order before beginning remediation is of no legal significance with respect to whether or not the party has incurred response costs as required under section 107(a). Our reliance on the statutory language conforms with the Supreme Court's emphasis on the text of CERCLA in interpreting section 107(a). *See e.g. Atl. Research*, 127 S.Ct. at 2336 (stating that the structural relationship of the text must "be read as a whole," and that the "plain language of subparagraph (B) authorizes cost-recovery actions by any private party, including PRPs" (emphasis added)). Indeed, the Court concluded that "[b]ecause the plain terms of § 107(a)(4)(B) allow a PRP to recover costs from other PRPs, the statute provides Atlantic Research with a cause of action." *Id.* at 2339. In the same manner that section 107(a) is not limited solely to "innocent" parties, see id., section 107(a) does not specify that only parties who "voluntarily" remediate a site have a cause of action.

*W.R. Grace & Co.-Conn. v. Zotos Intern., Inc.,* 559 F.3d at 92.  The Second Circuit also noted that "[w]hile it is 'ultimately the provisions of our laws rather than the principal concerns of our legislators by which we are governed,' *Cohen v. JP Morgan Chase &*

*Co.*, 498 F.3d 111, 122 (2d Cir. 2007) (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 79 (1998)), in this instance the text of the law mandates a statutory interpretation that also supports the principal congressional concerns of ensuring that those responsible promptly clean up and pay for removal of hazardous waste." *Id.* at 94. The Second Circuit's interpretation, as well as this court's, acknowledges CERCLA's purpose of encouraging "private parties to assume the financial responsibility of cleanup by allowing them to seek recovery from others." *Id.* (quoting *Key Tronic Corp. v. United States*, 511 U.S. 809, 819 n.13 (1994) (quoting *FMC Corp. v. Aero Indus., Inc.*, 998 F.2d 842, 847 (1993)). Additionally, the Second Circuit reasoned:

> CERCLA was established with the intent that the federal and state governments would cooperate in order to remediate environmental hazards expeditiously and appropriately. *See United States v. Colorado*, 990 F.2d 1565, 1575 (10th Cir. 1993); *Manor Care, Inc. v. Yaskin*, 950 F.2d 122, 125-26 (3d Cir. 1991) (Alito, J.). We find no basis for interpreting CERCLA in a way that would discourage parties from entering agreements with the states to ensure a proper cleanup. To disallow a party who has entered into a consent order with an administrative agency to seek recovery of expenditures from other PRPs would discourage cooperation with state agencies. While potentially liable parties might still attempt to clean up a contaminated site, we see no practical or statutory purpose in discouraging parties from remediating contaminated sites in a manner that provides agency oversight of the remediation. Moreover, interpreting the statute such that a potentially liable party, like Zotos, bears no financial responsibility for remediation costs, while the party that actually consented without litigation to remediate a contaminated site bears the total financial burden of the remediation, does not comport with the intended purposes of the statute.

*Id.* at 95. The court agrees with this reasoning and finds that recoverable costs under § 107 are not necessarily limited to those voluntarily incurred.

Finally, even if recovery were limited to voluntarily-incurred costs, the court is not persuaded that the First Amended Complaint admits that the costs incurred were

16

involuntary.  Indeed, Plaintiffs dispute this interpretation of the First Amended

Complaint.  (Pls.' 1/26/09 Resp. at 7.)  Plaintiffs contend that they "asked the State of

Michigan to allow them to voluntarily cleanup the Rouge site, then the SRA Property.

This initiative resulted in the CACO and its subsequent amendments."  (*Id.* (footnote

omitted).)  Plaintiffs thus argue that "this is not a case in which the State of Michigan or

the federal government sued Plaintiffs, issued Plaintiffs a unilateral administrative order

under CERCLA, or otherwise compelled Plaintiffs to take response action with respect

to the SRA Property."  (*Id.* at 7-8 (footnotes omitted).)  Construing the amended

complaint in a light most favorable to Plaintiffs, the court finds this argument could, after

discovery, reasonably support a finding that the costs were voluntarily incurred.[5]  *See*

*Evans-Marshall,* 428 F.3d at 228.

---

[5]  Defendant argues that in 1990, EPA issued a unilateral administrative order
("UAO") requiring Ford to clean up a facility which encompassed the SRA property. In
response, Plaintiffs contend that the UAO has no relevance to this case because
Plaintiffs are not seeking costs related to the UAO.  Moreover, Plaintiffs assert, and the
court agrees, that by raising the issue of the UAO and basing its argument on outside
materials, Defendant has exceeded the confines of Federal Rule of Civil Procedure
12(b)(6).  Defendant has, perhaps, raised a factual issue, but under Rule 12 the court is
restricted in viewing matters outside the pleadings.   It is true that "[i]n addition to the
allegations in the complaint, the court may also consider other materials that are integral
to the complaint, are public records, or are otherwise appropriate for the taking of
judicial notice."  *Wyser-Pratte Management Co., Inc. v. Telxon Corp.,* 413 F.3d 553, 560
(6th Cir. 2005) (citing *Bovee v. Coopers & Lybrand C.P.A.*, 272 F.3d 356, 360-61 (6th
Cir. 2001), *New England Health Care Employees Pension Fund v. Ernst & Young, LLP*,
336 F.3d 495, 501 (6th Cir. 2003)).  In this case, however, Defendant attempts to rely
not only on the UAO but on additional facts and interpretations which spring from their
proposed construction of the UAO.  The court is not persuaded it can appropriately
consider these factual matters in the current proceedings.  In any event, given the
court's conclusion that the voluntariness of Plaintiffs' actions is not determinative, this
issue is moot.

Accordingly, the court will deny Defendant's motion with respect to Count I and allow Plaintiffs to proceed on their claim for cost recovery under CERCLA § 107.

### 2. Count II: Contribution Pursuant to CERCLA § 113

Defendant next argue that Plaintiffs claim for contribution under Count II must be dismissed because (1) the CACO did not "resolve" their liability as required under CERCLA § 113, (2) the CACO is not an "administrative or judicially approved settlement" under CERCLA § 113 and (3) in any event, the § 113 claim is time-barred under § 113(g)(3)(B).

### a. Whether the CACO "resolved" Plaintiffs' liability

Defendant argues that the CACO does not "resolve" Plaintiffs' liability because the original CACO contains reservations of rights similar to those found in *ITT Industries, Inc. v. BorgWarner, Inc.,* 506 F.3d 452 (6th Cir. 2007). In *ITT Industries,* the Sixth Circuit held that, largely because of carve-outs or reservations of rights, the administrative order by consent ("AOC") at issue did not "resolve" the plaintiff's CERCLA liability under § 113. *Id.* In response, Plaintiffs contend that they have resolved their liability with the state, and the CACO, and in particular the Fifth Amendment of the CACO, does not contain the same type of carve-outs as did the AOC in *ITT Industries.* The court agrees with Plaintiffs.

The CACO's Fifth Amendment makes clear the parties intent to settle CERCLA liability. (*See* CACO Fifth Amend. ¶¶ 1, 13, 15, 16 (stating intent to settle Ford's and Severstal's liability under CERCLA).) The Fifth Amendment also contemplates that the CACO could form the basis of a later contribution action under CERCLA § 113. (*Id.* ¶ 15.) Defendant contends that, despite this, the CACO, as amended, contains too many

18

carve-outs and limitations so as to "resolve" Plaintiffs' liability.  This issue turns on the

Sixth's Circuit's decision in *ITT Industries.*

     In *ITT Industries*, the Sixth Circuit held that the administrative order by consent

(the "AOC") at issue did not "resolve" ITT Industries's liability in two respects.  First, the

EPA in *ITT Industries* "expressly reserve[d] its rights to legal action to adjudicate [the

p]laintiff's liability for failure to comply with the AOC, for costs of response (past, present

or future), for costs of injunctive relief or enforcement, criminal liability, and other

damages."  *ITT Industries, Inc.,* 506 F.3d at 459.  If the EPA disapproved of ITT

Industries's work plan, it "retain[ed] all of its rights under [the AOC] and CERCLA,

including, but not limited to, the right to terminate [the AOC], complete all SRI/FFS[6]

activities, and obtain reimbursement."  *Id.* at 459-60 (citations to AOC omitted).

Second, ITT Industries, the plaintiff, did not concede liability and the AOC itself

expressly stated that ITT Industries had not conceded liability.  *Id.* at 460.  For these two

reasons, collectively, the Sixth Circuit held that the AOC could not form the basis of a

contribution action. *Id.*  The Sixth Circuit stated, "In view of these reservations, it is clear

that the AOC does not resolve the question of [ITT Industries's] liability with respect to

contamination at the [relevant site].  Thus, the AOC may not serve as a basis for a

contribution action pursuant to § 113(f)(3)(B)."  *Id.*

     Likewise, here, the CACO contains some of the carve-outs that the Sixth Circuit

found important in *ITT Industries.*  However, a careful reading of the CACO, as

compared to the AOC in *ITT Industries*, reveals that the carve-outs in the CACO are not

---

     [6]  In the AOC, "SRI/FFS"referred to "streamlined remedial investigation and
focused feasibility study."  *ITT Industries, Inc.,* 506 F.3d at 452.

nearly as broad as those found in the AOC.  Both documents contain a reservation of

rights to legal action in order to adjudicate any liability for failure to comply with the

relevant contract.  This carve-out, however, is simply a statement of what is obvious

under the law: if a party breaches a contract the non-breaching party may sue for

breach of contract.  The AOC, however, also contained a provision that the EPA

reserved its rights to adjudicate liability with respect to "costs of response (past, present,

or future)."  *Id.* at 459.  The scope of this carve-out alone is enough to question, as did

the Sixth Circuit, any "resolution" of CERCLA liability.  Additionally, the AOC contained a

provision that allowed the EPA to terminate the AOC should the EPA disapprove of the

plaintiff's work.  *Id.*  After terminating the AOC, the EPA could then complete the

necessary response actions and obtain reimbursement for those actions.  This

provision, combined with the fact that the EPA reserved the right to adjudicate the

plaintiff's liability with respect to "past, present, or future" response costs effectively

eviscerated any "resolution" of liability which would have otherwise been found in the

AOC.

        Such is not the case with the CACO.  While there are some similar provisions,

the critical provisions found in the AOC are not present in the CACO.  The CACO, as

amended, does contain a retention of the right to seek legal relief should RSC

(Severstal's predecessor) or Ford fail to comply with its duties under the CACO.  Again,

however, this provision is simply an iteration of the right to pursue a breach of contract

claim.  Moreover, while the CACO contains a provision allowing the MDEQ to

disapprove the work performed by Severstal and Ford (CACO, 4th Amend. at § 16.3,

Def.'s 10/30/08 Mot. at Ex. G), it does not allow the MDEQ to unilaterally terminate the

contract due to its disapproval.  Additionally, the CACO contains an express CERCLA

release for work performed pursuant to and in compliance with the CACO.  (CACO, 5th

Amend. at § 16.11, Def.'s 10/30/08 Mot. at Ex. H.)  Contrary to Defendant's argument,

the AOC did not contain a similar release.  The AOC provided that the EPA "covenants

not to sue . . . under . . . CERCLA . . . for recovery of Oversight Costs incurred by the

United States in connection with this action or this Consent Order."  (AOC at 22, Def.'s

2/9/09 Reply at Ex. C.)  This covenant not to sue, however, is expressly subject to the

other provisions in the AOC, including the reservation of rights stating that nothing in the

AOC "constitutes a satisfaction or release from any claim or cause of action against the

Respondent . . . for any liability such person may have under CERCLA . . . ."  (*Id.* at 21.)


    Finally, there are various provisions which allow the MDEQ to seek additional

recovery for additional work, but those provisions do not nullify the "resolution" of the

work performed and covered by the CACO.  (CACO, 4th Amend. at § 16.3, Def.'s

10/30/08 Mot. at Ex. G (allowing the MDEQ to request Severstal and Ford to perform

tasks *in addition* to those stated in the Consent Order), CACO, 5th Amend. at § 16.3

Def.'s 10/30/08 Mot. at Ex. H (allowing the MDEQ to perform necessary emergency

work and seek recovery for those *additional* costs incurred for the work).)[7]  In short,

unlike the AOC in *ITT Industries*, the CACO resolves a certain degree of Plaintiffs'

---

[7]This particular "carve-out" is equivalent to any type of cautionary clause in a
contract that allows parties to seek additional action or additional compensation if
unforeseen, or "emergency," events occur.  *See, e.g., R.J. Wildner Contracting Co., Inc.
v. Ohio Turnpike Com'n,* 913 F. Supp. 1031, 1038 (N.D. Ohio 1996) ("Other parts of the
contract provide for compensation for an increase in the quantity of work and for extra
work, which is defined in part as 'unforeseen work.'").

liability, for the standard recovery costs detailed in the CACO. This resolution is enough

to maintain a contribution action under CERCLA §113.[8]

### b. Whether the CACO is an "administrative or judicially approved settlement" under CERCLA § 113

Plaintiffs seek relief under CERCLA § 113(f)(3)(B), which provides that "[a]

person who has resolved its liability to the United States or a State for some or all of a

response action or for some or all of the costs of such action in an administrative or

judicially approved settlement may seek contribution from any person who is not party

to a settlement . . . ." 42 U.S.C. § 9613(f)(3)(B). Plaintiffs argue that the CACO is a

state administrative settlement under CERCLA.

Defendant, again relying on *ITT Industries*, argues that Plaintiffs cannot sustain a

contribution action because the CACO, like the AOC, does not "constitute an

'administrative or judicially approved settlement' within the meaning of § 113(f)(3)(B)."

*ITT Industries, Inc.*, 506 F.3d at 460. In *ITT Industries*, the Sixth Circuit held that

---

[8]The court rejects Defendant's argument that any minor differences between the two contracts should not control the court's decision, in view of the large number of similarities between the contracts. It is true that the contracts have similar but not identical releases and reservations and include similar disclaimers that the parties do not admit liability. However, it is the differences, not the similarities, between the contracts that control the court's conclusion. The court recognizes that this is a close question, but finds that the differences between the contracts are vital, particularly because the court in *ITT Industries* based its conclusion on the aggregate of the releases and reservations found in the AOC. *ITT Industries, Inc.*, 506 F.3d at 460 (holding, after noting all the carve-outs and reservations that "[i]n view of these reservations, it is clear that the AOC does not resolve the question of Plaintiff's liability."). Because the CACO does not contain an equivalent aggregation of releases and carve-outs, the court cannot conclude, as did the court in *ITT Industries*, that the relevant contract does not resolve *any* of Plaintiffs' liability. As even *ITT Industries* noted, CERCLA "allows for contribution based on agreements which *partially* resolve CERCLA liability." *Id.* at 459.

agreements under § 122(a) do not qualify as an "administrative or judicially approved

settlement," but that "an 'administrative or judicially approved settlement' includes

settlements pursuant to §§ 122(h) and 122(g) of CERCLA.  *Id.* (citing *Cooper Indus.,*

*Inc. v. Aviall Servs., Inc.*, 543 U.S. 157, 167 (2004); 42 U.S.C. § 9613(g)(3)).

     The court agrees.  Under Sixth Circuit law, in order to constitute an administrative

or judicially approved settlement sufficient to give rise to a right to seek contribution

under CERCLA § 113, the CACO must be a settlement under § 122(g) or § 122(h).

While there may be some law in other circuits or districts which lend support to Plaintiffs'

position, in this Circuit only settlements under § 122(g) or § 122(h) qualify as

administrative settlements under CERCLA.  The Sixth Circuit confronted this issue in

*ITT Industries* and, relying on the Supreme Court's decision in *Cooper Industries*,

analyzed as follows:

> Section 113(f) does not define the phrase "administrative or judicially
> approved settlement."  We have yet to construe an Administrative Order
> by Consent under this section and district courts which have considered
> the question have come to differing results. *Compare ITT Industries I*,
> 2006 WL 2460793, at *5 (AOC not an administrative settlement for
> purposes of § 113(f)(3)(B)), *with Responsible Environmental Solutions*
> *Alliance v. Waste Management, Inc.*, 493 F. Supp. 2d 1017 (S.D.Ohio
> 2007) (finding that an AOC under § 122 between the plaintiffs and the
> EPA constituted a settlement for purposes of § 113(f)(3)(B)).

> To resolve such questions, *Cooper Industries* directs courts to read the
> phrase "administrative or judicially approved settlement" in concert with
> subsection (g), which establishes time limitations applicable to contribution
> actions. *See Cooper Industries*, 543 U.S. at 167, 125 S.Ct. 577 (looking to
> the whole of § 113, and specifically § 113(g), to discern the meaning of §
> 113(f)). Section 113(g)(3) provides that-

> > No action for contribution for any response costs or
> > damages may be commenced more than 3 years after ... (B)
> > the date of an administrative order under section 9622(g) of
> > this title (relating to de minimis settlements) or 9622(h) of

> this title (relating to cost recovery settlements) or entry of a
> judicially approved settlement with respect to such costs or
> damages.
>
> 42 U.S.C. § 9613(g)(3). Thus, an "administrative or judicially approved
> settlement" includes settlements pursuant to §§ 122(h) and 122(g) of
> CERCLA. *See Cooper Industries*, 543 U.S. at 167, 125 S.Ct. 577; 42
> U.S.C. § 9613(g)(3).

*ITT Industries*, 506 F.3d at 460. The Sixth Circuit therefore has interpreted *Cooper*

*Industries* to hold that what constitutes an "administrative or judicially approved

settlement" is controlled by CERCLA's statute of limitations provision, which provides for

a three year limitations period for cases based on administrative settlements under §

122(g) or § 122(h).[9]

Here, Plaintiffs do not attempt to classify the CACO under any specific CERCLA

provision, instead arguing generally that the CACO constitutes an administrative

settlement. Plaintiffs do, however, agree that the relevant statute of limitations is found

at 42 U.S.C. § 9613(g)(3). (Pls.' 12/11/08 Br. at 21.) That provision, as noted by *ITT*

*Industries* qualifies "administrative settlements" as only those found in § 122(g) or

§ 122(h). The Fifth Amendment of the CACO states that it is an administrative

settlement within the meaning of CERCLA "including, without limitation, . . . Sections

122(a) and (h)." (Def.'s 10/30/08 Br. at Ex. H.) *ITT Industries* explicitly held that

settlements under § 122(a) do not qualify as administrative settlements. *ITT Industries*,

---

[9]Plaintiffs argue that such a construction of CERCLA is inconsistent with
CERCLA's intent and even the plain language of § 113 because it effectively provides
no incentive for parties to settle their liability with states. (Pls.' 1/26/09 Br. at 14.) Even
if such is the case, however, the court is bound by the Sixth Circuit's decision in *ITT
Industries* and, contrary to Plaintiffs' argument, the court finds that the court's decision
in *ITT Industries* applies in this case, notwithstanding that fact that this is not a case in
which the United States was a party to the settlement.

506 F.3d at 461.  Thus, the only possible section under which the CACO might have

been entered is § 122(h).  Plaintiffs, however, go to great lengths to argue that "Section

122(h) is inapposite to this case."  (Pls.' 12/11/08 Br. at 18.)  Indeed, as Plaintiffs so

aptly state "[c]ritically, Section 122(h) **solely** addresses 'costs incurred by the United

States' and therefore, does not at all address CERCLA costs incurred by a state."  (*Id.*

(emphasis in Pls.' Br.).)

Despite arguing the inapplicability of § 122(h) to the CACO, Plaintiffs include

three sentences, in a footnote, in their December 11, 2008 response brief which

appears to suggest, as an alternative argument offered without elaboration, that

Plaintiffs have adequately pleaded that the CACO qualifies as an administrative

settlement under CERCLA § 122(h).  Specifically, Plaintiffs state:

> To the extent § 113(f)(3)(B) requires resolution of federal CERLCA liability,
> Plaintiffs have pled that MDEQ was authorized to settle the Environmental
> Protection Agency's CERLCA claims, which is sufficient to survive a Rule
> 12(b)(6) motion.  FA Compl. § 48, *Nader,* 545 F.3d at 470.  Significantly,
> this issue is not being raised in the context of a summary judgment motion
> such that evidence outside the pleadings may be considered.
> Nonetheless, at the very least, Exhibit I to Def.'s Br. supports Plaintiffs'
> allegation.

(Pl.'s 12/11/08 Br. at 18, n.15.)  The court finds, however, that Plaintiffs have failed to

sufficiently plead such a claim.  The only statement in the First Amended Complaint

which addresses this issue is found in paragraph 48, which states, in its entirety, "The

United States Environmental Protection Agency delegated its authority to resolve

CERCLA claims as it relates to the SRA Property (and other property) to the State of

Michigan, which has been represented by the MDEQ and Michigan's Attorney General."

(Pls.' Am. Comp. ¶ 48.)  The court finds that this singular allegation is insufficient to

withstand a motion under Federal Rule of Civil Procedure 12(b)(6).

The Supreme Court, revisiting the standard applicable in motions filed under

Federal Rule of Civil Procerdure 12(b)(6), in *Bell Atlantic v. Twombly,* held that:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not
> need detailed factual allegations, . . .  a plaintiff's obligation to provide the
> "grounds" of his "entitle[ment] to relief" requires more than labels and
> conclusions, and a formulaic recitation of the elements of a cause of
> action will not do . . . .  Factual allegations must be enough to raise a right
> to relief above the speculative level . . . on the ASSUMPTION THAT ALL
> THE allegations in the complaint are true (even if doubtful in fact) . . . .

*Twombly,* 550 U.S. at 555-556 (emphasis in original).  The Court elaborated on

*Twombly* in *Ashcroft v. Iqbal,* 129 S.Ct.1937, 1949-50 (2009), stating:

> Two working principles underlie our decision in *Twombly*. First, the tenet
> that a court must accept as true all of the allegations contained in a
> complaint is inapplicable to legal conclusions. Threadbare recitals of the
> elements of a cause of action, supported by mere conclusory statements,
> do not suffice. *Id*., at 555, 127 S.Ct. 1955 (Although for the purposes of a
> motion to dismiss we must take all of the factual allegations in the
> complaint as true, we "are not bound to accept as true a legal conclusion
> couched as a factual allegation" (internal quotation marks omitted)).  Rule
> 8 marks a notable and generous departure from the hyper-technical,
> code-pleading regime of a prior era, but it does not unlock the doors of
> discovery for a plaintiff armed with nothing more than conclusions.
> Second, only a complaint that states a plausible claim for relief survives a
> motion to dismiss.  *Id*., at 556, 127 S.Ct. 1955.  Determining whether a
> complaint states a plausible claim for relief will, as the Court of Appeals
> observed, be a context-specific task that requires the reviewing court to
> draw on its judicial experience and common sense. 490 F.3d, at 157-158.
> But where the well-pleaded facts do not permit the court to infer more than
> the mere possibility of misconduct, the complaint has alleged--but it has
> not "show[n]"--"that the pleader is entitled to relief."  Fed. Rule Civ. Proc.
> 8(a)(2).

*Iqbal*, 129 S.Ct. at 1949-50 (2009).  Here, Plaintiffs' bare-bones allegation that the EPA

delegated its authority to resolve CERCLA claims is insufficient, especially combined

with Plaintiffs' vigorous contention that § 122 does not apply to the CACO, to withstand a Rule 12(b)(6) motion.

It is true that, in some circumstances, the United States may delegate to the states its authority to resolve federal liability.  *See* 42 U.S.C. § 9604(d)(1)(A).  The delegation must be site-specific.  42 U.S.C. § 9604(d)(1)(A).  Further, for claims over $500,000, "any claim . . . may be compromised and settled only with the prior written approval of the Attorney General."  42 U.S.C. § 9622(h)(1).   Missing in Plaintiffs' amended complaint are any facts to support their conclusory statement that the EPA delegated authority to settle CERCLA claims to Michigan.   While Plaintiffs allege, generally, that the EPA delegated its authority to resolve CERCLA claims, Plaintiffs do not allege that the EPA specifically delegated its authority to resolve *federal* CERCLA claims, nor do they allege how or when that delegation occurred.[10]  Nor do Plaintiffs even allege in their First Amended Complaint that the CACO constituted a settlement under CERCLA § 122(h).[11]  Further, Plaintiffs do not allege that the Attorney General

---

[10]In response to Defendant's motion to dismiss, Plaintiffs still do not extrapolate as to how any such delegation occurred, other than to cite generally to one of *Defendant's* exhibits.  (*See* Pl.'s 12/11/08 Br. at 18, n.15 (citing Defendant's Exhibit I).)  Attached to Defendant's October 30, 2008 motion as Exhibit I are two Memoranda of Understanding ("MOU").  Having reviewed these two MOUs, the court is unable to find any express delegation of authority sufficient to support Plaintiffs' claim.  Instead, these MOUs appear to be statements regarding the EPA and MDEQ's mutual cooperation on environmental matters and a general understanding that the EPA will not take certain enforcement actions against certain parties under certain conditions.  These MOUs do not, on their face, contain any delegations of authority for MDEQ to settle federal CERCLA liability.

[11]Indeed, in their original complaint, Plaintiffs made the specific allegation that "[u]nder the authority of 42 U.S.C. § 9622(h), Ford and Severstal have entered into a settlement agreement with the MDEQ for past response costs."  (Comp. ¶ 50.)  This allegation, however, does not appear in the First Amended Complaint.

gave the required written approval to settle the CERCLA claims implicated in this action, or when such approval may have occurred.  Given that any federal delegation is essential to maintain a § 113 contribution claim, a one-sentence, conclusory allegation in the complaint is insufficient to meet the requirements of *Twombly* and *Iqbal.*  "[A] complaint [does not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'  *Iqbal,* 129 S.Ct. at 1949 (citing *Twombly*, 550 U.S. at 557).

Because Plaintiffs have failed to plead facts sufficient to show that the CACO qualifies as an administrative settlement, their contribution claim must be dismissed.[12]

### 3.  Count III: Cost Recovery Pursuant to the Michigan Natural Resources and Environmental Protection Act ("NREPA")

Defendant argues that Plaintiffs' claim under the NREPA for cost recovery should be dismissed for the same reasons that Plaintiffs' CERCLA § 107 claim should be dismissed.  Because the court has rejected Defendant's arguments in this regard, the court will also reject Defendant's argument with respect to Count III and allow Plaintiffs to proceed on this claim.

### 4.  Count IV: Contribution under Michigan's Natural Resources and Environmental Protection Act

Defendant argues that Plaintiffs' claim under NREPA for contribution should be dismissed for the same reasons that Plaintiffs' CERCLA § 113 claim should be dismissed, namely, because the CACO did not "resolve" Plaintiffs' liability and this state law claim is barred by the statute of limitations.  As to the latter question, the parties

---

[12]For this reason, the court will not address Defendant's alternative argument that any contribution action under § 113 is barred by the relevant statute of limitations.

disagree as to the applicable statute of limitations, whether it is CERCLA's three-year statute or a six-year state statute.[13]

### a. Whether the CACO resolved Plaintiffs' NREPA liability

Under Michigan's NREPA, "[a] person who has resolved his or her liability to the state for some or all of a response activity in an administrative or judicially approved consent order may seek contribution from any person who is not a party to the consent order described in subsection (5)." *See* Mich. Comp. Laws § 324.20129 (8). Michigan courts hold that NREPA (Part 201) was modeled after CERCLA, and Michigan courts generally follow federal CERCLA law in interpreting NREPA.

> Part 201 was modeled after the federal Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), 42 U.S.C. 9601 et seq. *Flanders Industries, Inc. v. Michigan*, 203 Mich.App. 15, 21, 512 N.W.2d 328 (1993). Both the federal and state statutes provide for identification of contaminated sites and for prompt remediation. *Port Huron v. Amoco Oil Co., Inc.*, 229 Mich.App. 616, 622, 583 N.W.2d 215 (1998). Both part 201 and the CERCLA create a private cause of action to establish liability for costs of investigation and remediation of contaminated sites. *Pitsch v. ESE Michigan, Inc.*, 233 Mich.App. 578, 589, 593 N.W.2d 565 (1999). Both statutes generally defer to administrative agencies to determine the appropriate response to contaminated sites and limit preenforcement judicial review. MCL 324.20137 (4); 42 U.S.C. 9613(h).

*Genesco, Inc. v. Michigan Dep't of Envtl Quality,* 645 N.W.2d 319, 323 (Mich. Ct. App. 2002); *see also Pitsch v. ESE Michigan, Inc.*, 593 N.W.2d 565, 574 (Mich. Ct. App. 1999) (noting that Michigan courts deviate from federal decisions interpreting the

---

[13]The court allowed supplemental briefs by both parties as to the applicable statute of limitations. Throughout the course of the briefing, the parties appear to have refined their statute of limitations arguments.

CERCLA when "the clear language of the [the predecessor of NREPA] compels a different result.").

Based on this precedent, Defendant asserts that Plaintiffs' NREPA contribution claim should be dismissed for the same reasons that Plaintiffs' CERCLA contribution claim should be dismissed.  Although the court has accepted Defendant's argument that Plaintiffs' CERCLA claim should be dismissed, the court finds that Defendant has failed to show that the court's CERCLA conclusion *compels* the same conclusion for Plaintiffs' state-law NREPA claim.  In making its argument, Defendant first asserts, in one paragraph of its December 31, 2008 motion, that Plaintiffs have failed to show that they "resolved" their liability in an administrative order, as is required by NREPA, Mich. Comp. Laws § 324.20129(8).  Defendant contends that Plaintiffs' NREPA claim fails to meet the requirements of *ITT Industries*, in the same way that Plaintiffs' CERCLA claim failed to do so.  In support of this argument, Defendant cites to its October 30, 2008 order, pages 8 through 14.  (12/31/08 Mot. Br. at 7.)  Defendant makes no attempt to tailor its CERCLA argument, incorporated by reference, to the text of the NREPA itself, other than to bold the word "resolved."  (*Id.*)  The court is inclined to reject Defendant's argument in this regard for a failure to adequately brief the issue.

Because the court rejects the argument on the merits, however, the court will briefly note that Defendant's argument is not well-founded.  The court did not accept Defendant's argument that the amended CACO did not "resolve" Plaintiffs' liability with respect to CERCLA liability.  Defendant's attempt to incorporate this argument into its NREPA argument, therefore, is misguided.  Indeed, the court finds that Plaintiffs' First Amended Complaint, as well as the provisions of the CACO, has sufficiently pleaded

30

that Plaintiffs' liability was resolved by the CACO.  (*See* Am. Comp. ¶¶ 61-67; *See*

Def.'s 10/30/08 Mot. at Ex. H, CACO Fifth Amend, ¶¶ 1, 13, 15, 16 (stating intent to

settle Ford and Severstal's liability under Part 201).)

Moreover, the court does not accept Defendant's attempt to import, without any

analysis, *ITT Industries*'s hyper-technical statutory construction regarding

"administrative order" into the NREPA.  The Sixth Circuit's analysis, requiring any

administrative order to be fashioned under CERCLA § 122(h) or § 122(g), does not

apply under NREPA.  The Sixth Circuit based this analysis on the language of

CERCLA's statute of limitations, which provides for a three year limitations period for

cases based on administrative settlements under § 122(g) or § 122(h).  *ITT Industries*,

506 F.3d at 460.  Here, there is no corresponding statute of limitations nor is there any

corresponding § 122(g) or § 122(h).  Thus, the fact that the CACO does not meet

CERCLA's requirements as a settlement under § 122(g) or § 122(h) does not bar

Plaintiffs' NREPA contribution claim.

### b.  Whether Plaintiffs' timely filed their NREPA contribution claim

### i.  Which statute of limitations applies

Defendant next argues that, because the NREPA does not itself contain a statute

of limitations, the court should import the three-year statute of limitations from CERCLA

§ 113(g).  Defendant then contends that Plaintiffs failed to meet this deadline, because

the limitations period runs from the time in which Plaintiffs became obligated to incur

costs which, according to Defendants, was when the original 2000 CACO was

executed.

In response, Plaintiffs argue in their March 23, 2009 supplemental brief that the applicable limitations period is six years, under Michigan's "catch-all" statute of limitations. *See* Mich. Comp. Laws § 600.5813 ("§ 5813"). Further, Plaintiffs argue that no matter which statute is applicable, the relevant date is not the date that the original CACO was executed, but the date on which the Fifth Amendment of the CACO was executed, in November of 2007.

First, the court agrees with Plaintiffs that the relevant statute of limitations is six years under § 5813. The parties agree that the NREPA itself does not contain a statute of limitations for contribution claims. The Michigan Court of Appeals has held that "a civil cause of action arising from a statutory violation [rather than arising under the common law] is subject to the six-year limitation period found in § 5813, if the statute itself does not provide a limitation period." *DiPonio Const. Co., Inc. v. Rosati Masonry Co., Inc.,* 631 N.W.2d 59, 66 (Mich. Ct. App. 2001). This is the exact situation at issue here: a statutory cause of action that does not include a statute of limitations. The court will therefore apply the limitations period found in § 5813. Indeed, another Michigan Court of Appeals decision applied § 5813 to a claim brought under the NREPA, albeit under Part 303 rather than, as here, under Part 201. *See Attorney General v. Harkins*, 669 N.W.2d 296, 300 (Mich. Ct. App. 2003). The court in *Harkins* noted that there was no applicable statute of limitation set forth under the NREPA and that, citing *DiPonio,* Michigan law provides that in such situations the six-year period set forth in § 5813 applies. *Id.* The court held, "There being no period of limitations expressly applicable to actions brought under the NREPA, the general limitation provisions of § 5813 apply."

*Id.* at 571. The court agrees with this reasoning and will apply a six year statute of limitations to Plaintiffs' NREPA claim.

In so holding, the court rejects Defendant's argument that the CERCLA limitations period should apply.  Defendant cites only to cases that hold generally that federal CERCLA law is instructive in interpreting the NREPA and one additional case which, it contends, directly supports its position that the CERCLA limitations period should be imported into the NREPA.  (Def.'s Supp. Br. at 1-2.)  Specifically, Defendant cites an unpublished case from this district, *Detrex Corp. v. Ashland Chemical Co.*, No. 01-CV-71201, 2002 WL 32351496 (E.D. Mich. May 23, 2002), which was affirmed by the Sixth Circuit, 85 F. App'x 462 (6th Cir. 2003), for the reasons stated by the district court.  Defendant contends that the district court in *Detrex* applied the three year statute of limitations from CERCLA to the plaintiff's NREPA claim and then dismissed it.  The court disagrees with Defendant's reading.  After dismissing the plaintiff's CERCLA claims, the court in *Dextrex* exercised its discretion under 28 U.S.C. § 1367, to dismiss *without prejudice* the state law claim under NREPA.  Although the section in which the court dismissed the NREPA claim is indeed entitled "Statute of Limitations under NREPA,"[14] it is clear to this court that this was either a drafting error, or simply a

_____

[14]The entirety of the relevant section in *Detrex* reads as follows:

C. Statute of Limitations under NREPA

"Generally, if the federal claims are dismissed before trial . . . the state claims should be dismissed as well." *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir.1993). Because the federal claims are dismissed, the state law claim for contribution under Part 201 of the NREPA will also be dismissed without prejudice to Plaintiff refiling the action in state court. The same analysis applies to the term "contribution"

33

description of the parties' argument, which the court did not address.  Further, while

there is a brief mention that "the same analysis" applicable to the word "contribution"

applies under both statutes, there is no indication that this statement refers to any

dispositive limitations period.  *Id.* at *8.  Contrary to Defendant's argument, the section

does not provide any substantive analysis on a statute of limitations argument, nor can

this court glean any support for Defendant's assertion that the *Dextrex* court imported

the CERCLA limitations period into the NREPA to dismiss it.  Rather, the court simply

dismissed the NREPA claim without prejudice to the right to bring the claim in state

court, which it could not do if the dismissal had been under a statute of limitations.  *Id.* at

* 8.

Inasmuch as Defendant has failed to provide any authority for its position and,

instead, Plaintiff has provided the court with persuasive case law in support of a six year

limitations period, the court rejects Defendant's argument and applies the limitations

period under § 5813.[15]

### ii. Whether Plaintiffs are time-barred from bringing their NREPA claim

under the NREPA as stated above.

*Detrex Corp.,* 2002 WL 32351496, at *7-8.

[15]The court also rejects Defendant's alternative argument that the one-year
statute of limitations period for common law contributions claims should apply.  *See*
Mich. Comp. Laws. § 600.2925c.  Defendant provides no case law support for this
proposition and the court is more persuaded by *Harkins*.  *Harkins*, 669 N.W.2d at 300.
Moreover, the court also notes that, even if the one-year period were accepted,
Plaintiffs' NREPA claim is nonetheless timely.  As will be discussed below, the
limitations period began to run in November of 2007, and this case was filed in August
of 2008, within the one-year period.  Although the NREPA contribution claim was not
added until December of 2008, the First Amended Complaint relates back to the earlier
filing date.  *See* Fed. R. Civ. P. 15(c)(1)(B).

The parties also dispute whether the statute of limitations began to run with the original 2000 CACO, or the November 9, 2007 Fifth Amendment, which added the SRA Property to the CACO.  If the former, Plaintiffs claim is time-barred, if the latter, it is not.

Under Michigan's NREPA, "[a] person who has resolved his or her liability to the state for some or all of a response activity in an administrative or judicially approved consent order may seek contribution from any person who is not a party to the consent order described in subsection (5)."  *See* Mich. Comp. Laws § 324.20129(8).  A cause of action therefore accrues under the NREPA when a party has "resolved" its liability, that is, on the date in which the party enters into the administrative order.  In this case, under the allegations in the complaint and the accompanying documents, Plaintiffs' cause of action did not accrue until the Fifth Amendment of the CACO.

Defendant argues that the relevant date should be the date of the original CACO because that is the date in which Plaintiffs began to incur costs.  However, the original CACO contained an express exclusion as to the SRA Property.  (*See* Def.'s Ex. C, ¶ 8.7 at 18-19.)  It was not until the Fifth Amendment that the SRA Property was included within the scope of the CACO, and Plaintiffs thus did not "resolve" any liability with respect to the SRA Property until that date.  If their liability was not resolved, then no cause of action had yet accrued.[16]  The court agrees with Plaintiffs that they did not resolve any of their Part 201 liability with respect to the SRA Property until the November 9, 2007 Amendment, and their instant action is therefore timely.

---

[16]Indeed, Defendant maintains that Plaintiffs have yet to "resolve" their liability. The court questioned counsel on this point at the hearing, and, under Defendant's interpretation, the statute of limitations has already run now, before any cause of action has yet accrued.  The court rejects such a strained interpretation of the NREPA.

35

### 5.  Count V: Common Law Indemnification

Under Count V of the First Amended Complaint, Plaintiffs assert a claim for common law indemnification, which constitutes a portion of Plaintiffs' previous Count IV of the original complaint.  Defendant argues that Plaintiffs' common law claim for contribution is preempted by the comprehensive settlement and contribution scheme set forth by Congress under CERCLA § 113.  (*See* Def.'s Mot. Br. at 21-21.)

CERCLA has a "savings clause" which provides that "[n]othing in this chapter shall affect or modify in any way the obligations or liabilities of any person under other Federal or State law, including common law, with respect to releases of hazardous substances or other pollutants or contaminants."  42 U.S.C.A. § 9652(d). Defendant asserts, and this court agrees, that, courts have routinely interpreted this savings clause to hold that state law claims are nonetheless preempted by CERCLA when they are "duplicative of or in conflict with CERCLA."  *W.R. Grace & Co.-Conn. v. Zotos Intern., Inc.,* No. 98-CV-838S, 2005 WL 1076117 at *11 (W.D.N.Y. May 3, 2005), rev'd in part on other grounds in *W.R. Grace & Co.-Conn. v. Zotos Intern., Inc.*, 559 F.3d 85 (2nd Cir. 2009); *see also Bedford Affiliates v. Sills*, 156 F.3d 416, 427 (2d Cir. 1998) ("[I]t can easily be seen that instituting common law restitution and indemnification actions in state court would bypass this carefully crafted settlement system, creating an actual conflict therefore between CERCLA and state common law causes of action.  Consequently, CERCLA preempts the state law remedies of restitution and indemnification.") (implied overruling on other grounds recognized in *W.R. Grace & Co.-Conn.*, 559 F.3d 85).

36

Plaintiffs do not dispute this line of authority but instead argue that their claim is not preempted by CERCLA because "[i]ndemnification is pled as an alternate and additional theory of liability. It is not an end-run around CERCLA but is in addition to Plaintiffs' CERCLA claims." (Pls.' 1/26/09 Resp. Br. at 19.) Plaintiffs assert that "CERCLA allows recovery only for certain costs" and that "Plaintiffs' indemnification claim covers costs that fall outside those recoverable under CERCLA and is thus not preempted." (*Id.* at 19, 20.) Plaintiffs, however, have failed to articulate in their First Amended Complaint or in their response briefs how any of the costs they are seeking under their common law indemnification claim fall outside those costs which are potentially recoverable under CERCLA. Rather, it appears that Plaintiffs have asserted a common law indemnification claim as a fallback in the event their CERCLA claims are dismissed as improper or untimely. However, the state law claims cannot be asserted to circumvent CERCLA's statutory requirements. *See W.R. Grace & Co.-Conn.,* 2005 WL 1076117 at *12. Here, the court is persuaded by Defendant's argument, to which Plaintiffs have failed to meaningfully respond. Plaintiffs seek identical relief under both CERCLA and the state law indemnification claim. Accordingly, the court finds that the state law claim is preempted and will dismiss Count V.

## IV.  CONCLUSION

IT IS ORDERED that Defendant's October 30, 2008 motion to dismiss [Dkt. # 13]

is DENIED as moot and its December 31, 2008 motion to dismiss [Dkt. # 21] is

GRANTED in part and DENIED in part.  It is GRANTED with respect to Counts II and V,

and DENIED with respect to Counts I, III, and IV.


 S/Robert H. Cleland
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated:  September 29, 2009


I hereby certify that a copy of the foregoing document was mailed to counsel of record
on this date, September 29, 2009, by electronic and/or ordinary mail.

 S/Lisa Wagner
Case Manager and Deputy Clerk
(313) 234-5522

S:\Cleland\JUDGE'S DESK\C3 ORDERS\08-13503.FORD.MICHCON.DismissAmendedComplaint.CERCLA.chd.wpd