**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

FORD MOTOR COMPANY, et al.,

    Plaintiffs,

v.                                                           Case No. 08-CV-13503-DT

MICHIGAN CONSOLIDATED GAS COMPANY,

    Defendant.
                                                /

**OPINION AND ORDER GRANTING PLAINTIFFS' PARTIAL MOTION TO DISMISS**

Before the court is a partial motion to dismiss Defendant's counterclaim, filed by Plaintiffs Ford Motor Company ("Ford") and Severstal North American, Inc. ("Severstal"). Defendant Michigan Consolidated Gas Company ("MichCon") opposes the motion, and the matter has been fully briefed. The court conducted a hearing on the matter on August 26, 2010. For the reasons stated below, the court will grant the motion.

**I. BACKGROUND**

Plaintiffs Ford and Severstal filed this action against MichCon on August 13, 2008, seeking recovery of costs that Plaintiffs have incurred and will continue to incur in connection with environmental impacts allegedly caused by MichCon and its predecessors at a manufactured gas plant ("MGP") on the west side of the Rouge River in the City of Dearborn, Michigan. The property at issue in this litigation is referred to by the parties as the Schaefer Road Area Property ("SRA Property").

The initial complaint against MichCon asserted seven counts, but Plaintiffs subsequently filed an amended complaint asserting only four counts: Count I, entitled

"Cost Recovery Pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. § 9607" ("CERCLA"); Count II, entitled "Contribution Pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. § 9613"; Count III, entitled "Cost Recovery Pursuant to the Michigan Natural Resources and Environmental Protection Act" ("NREPA"); Count IV, "Contribution under Michigan's [NREPA]"; and Count V, entitled "Common Law Indemnification." On MichCon's motion, the court has dismissed Counts II and V.

On October 30, 2009, MichCon filed its counterclaim, asserting four counts against Ford and Severstal: two counts for contribution under CERCLA (Count I) and Michigan's NREPA (Count III) and two counts for cost recovery under CERLCA (Count II) and NREPA (Count IV). Plaintiffs filed a partial motion to dismiss on November 25, 2009, seeking dismissal of the cost recovery claims.[1]

## II. STANDARD

When ruling on a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must construe the complaint in a light most favorable to the plaintiff and accept all the factual allegations as true. *Evans-Marshall v. Bd. of Educ.,* 428 F.3d 223, 228 (6th Cir. 2005); *Rossborough Mfg. Co. v. Trimble,* 301 F.3d 482, 489 (6th Cir. 2002). In doing so, "the court must draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). Yet, the court "need not accept as true legal conclusions or unwarranted factual inferences." *Gregory v. Shelby County*, 220 F.3d 433, 466 (6th Cir. 2000).

---

[1]Shortly after the motion to dismiss was filed, the parties voluntarily agreed to stay the case in order to pursue settlement negotiations. Negotiations recently ended, unsuccessfully, and the motion has now been fully briefed.

Though decidedly generous, this standard of review does require more than the bare assertion of legal conclusions. *Lillard v. Shelby County Bd. of Educ.*, 76 F.3d 716, 726 (6th Cir. 1996).

> [A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do. Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the complaint's allegations are true.

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). Further, the complaint must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (abrogated on different grounds by *Twombly*, 550 U.S. 544). In application, a "complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under *some* viable legal theory." *Lillard*, 76 F.3d at 726 (citation omitted). A court cannot grant a motion to dismiss under Rule 12(b)(6) based upon its disbelief of a complaint's factual allegations. *Wright v. MetroHealth Med. Ctr.*, 58 F.3d 1130, 1138 (6th Cir. 1995).

### III. DISCUSSION

MichCon's counterclaim has asserted four counts against Ford and Severstal. Under Count I, MichCon asserts a claim for contribution under CERCLA § 113(f), 42 U.S.C. § 9613(f). Under Count II, MichCon seeks cost recovery under CERCLA § 107, 42 U.S.C. § 9607. MichCon also asserts the corresponding Michigan claims under NREPA Part 201: a claim for contribution (Count III) and a claim for cost recovery (Count IV). In their motion, Plaintiffs attack only the cost recovery claims, arguing that

3

MichCon has failed to adequately allege facts upon which relief could be granted under Counts II and IV.

### A. Count II: Cost Recovery Under CERCLA § 107

To assert a prima facie case for CERCLA recovery under § 107(a), MichCon must allege (1) the property at issue is a "facility"; (2) there has been a "release" or "threatened release" of a hazardous substance; (3) the release has caused MichCon to incur "necessary costs of response" that are "consistent" with the National Contingency Plan (the "NCP"); and (4) Ford and Severstal are in one of four categories of potentially responsible parties. *Reg'l Airport Auth. of Louisville v. LFG, LLC*, 460 F.3d 697, 703 (6th Cir. 2006) (citing *Franklin County Convention Facilities Auth. v. Am. Premier Underwriters, Inc.*, 240 F.3d 534, 541 (6th Cir. 2001)). Plaintiffs here argue that MichCon has failed to adequately allege the third element: whether MichCon has incurred "necessary costs of response."

#### 1. "Necessary Costs of Response"

Under CERCLA, "response" is defined as "remove, removal, remedy, and remedial action," including "enforcement activities related thereto." 42 U.S.C. § 9601(25). Thus, the definition of "response" relies on the definitions of "remove" or "removal," and "remedy" or "remedial action."

> CERCLA defines the terms "remove" or "removal" as:
>
> the cleanup or removal of released hazardous substances from the environment, such actions as may be necessary taken in the event of the threat of release of hazardous substances into the environment, *such actions as may be necessary to monitor, assess, and evaluate the release or threat of release of hazardous substances*, the disposal of removed material, or the taking of such other actions as may be necessary to prevent, minimize, or mitigate damage to the public health or welfare or to

4

> the environment, which may otherwise result from a release or threat of release . . . .

42 U.S.C. § 9601(23) (emphasis added). "[R]emedy" or "remedial action" means:

> those actions consistent with permanent remedy taken instead of or in addition to removal actions in the event of a release or threatened release of a hazardous substance into the environment, to prevent or minimize the release of hazardous substances so that they do not migrate to cause substantial danger to present or future public health or welfare or the environment. The term includes, but is not limited to, such actions at the location of the release as storage, confinement, perimeter protection using dikes, trenches, or ditches, clay cover, neutralization, cleanup of released hazardous substances and associated contaminated materials, recycling or reuse, diversion, destruction, segregation of reactive wastes, dredging or excavations, repair or replacement of leaking containers, collection of leachate and runoff, onsite treatment or incineration, provision of alternative water supplies, and any monitoring reasonably required to assure that such actions protect the public health and welfare and the environment. . . .

42 U.S.C. § 9601(24). Pursuant to these definitions, in order to sustain a claim for cost recovery under CERCLA, MichCon must have incurred "necessary costs of response," including costs of removal or remedial action. Most pertinent to this motion, costs of removal may include "such actions as may be necessary to monitor, assess, and evaluate the release or threat of release of hazardous substances." 42 U.S.C. § 9601(23)

Consistent with these definitions, under Sixth Circuit law, while investigative costs *may* be recoverable, they must still be *necessary*, or tied to an actual cleanup, and not merely conducted for litigation purposes. For example, the Sixth Circuit has held that "[m]onitoring and evaluation costs may be recovered as 'removal' costs under CERCLA if they were reasonable, and the activities were not scientifically deficient or unduly costly." *Village of Milford v. K-H Holding Corp.*, 390 F.3d 926, 933 (6th Cir. 2004) (citing *Johnson v. James Langley Operating Co.*, 226 F.3d 957, 963-64 (8th Cir. 2000) and

5

*Lansford-Coaldale Joint Water Auth. v. Tonolli Corp.*, 4 F.3d 1209, 1219 (3d Cir. 1993)). Thus, investigative costs may, under certain circumstances, be recovered as "necessary costs of response." *Id.* at 935.

Unlike investigative costs, however, "[a]ttorney's fees for litigation-related activities are [generally] not recoverable under CERCLA." *Id.* (citing *Key Tronic Corp. v. United States*, 511 U.S. 809, 819 (1994)). Even so, "some lawyers' work that is closely tied to the actual cleanup may constitute a necessary cost of response in and of itself under the terms of [CERCLA] § 107(a)(4)(B)." *Id.* (quoting *Key Tronic Corp*, 511 U.S. at 820). The rule in the Sixth Circuit is that "[a] CERCLA plaintiff may recover attorney's fees if the activities for which the fees are incurred could have been performed by a non-attorney, are closely tied to an actual cleanup, are not related to litigation, and are otherwise necessary." *Id.* at 936.

While there is no clear definition of "necessary" costs, the Sixth Circuit has explained that "[g]enerally speaking, legal fees and litigation-related costs 'are not recoverable'; *only 'work that is closely tied to the actual cleanup . . . may constitute a necessary cost of response.*'" *Ellis v. Gallatin Steel Co.,* 390 F.3d 461, 482 (6th Cir. 2004) (emphasis added) (quoting *Franklin County Convention Facilities Auth.*, 240 F.3d at 549). The Sixth Circuit has also held that "[c]osts are 'necessary' if incurred in response to a threat to human health or the environment." *Regional Airport Authority of Louisville*, 460 F.3d at 703 (citations omitted). "Conversely, costs incurred at a time when the plaintiff was unaware of any threat to human health or the environment are not 'necessary.'" *Id.* In *Regional Airport*, the Sixth Circuit cited with approval the following

6

language from *G.J. Leasing Co. v. Union Elec. Co. ("G.J. Leasing I")*, 854 F.Supp. 539, 562 (S.D. Ill. 1994):

> A theoretical threat is not enough. For response costs to be "necessary", [sic] plaintiffs must establish that an actual and real public health threat exists prior to initiating a response action. To show that costs incurred were "necessary" under CERCLA, a party must show (1) that the costs were incurred in response to a threat to human health or the environment, and (2) that the costs were necessary to address the threat. Also, CERCLA liability attaches only where a release or threatened release of a hazardous substance "causes the incurrence of response costs." In this case the evidence established that plaintiffs had other business reasons for undertaking site investigations and abatement actions. To the extent that these actions were taken for purposes other than responding to an actual and real public health threat, there is no CERCLA liability.

*Regional Airport Authority of Louisville*, 460 F.3d at 705-06 (quoting *G.J. Leasing I*, 854 F.Supp. at 562 (internal citations omitted)).

The Tenth Circuit has similarly required "some nexus between the alleged response cost and an actual effort to respond to environmental contamination" in order for costs to be deemed "necessary" to the containment and cleanup of hazardous releases. *Young v. United States,* 394 F.3d 858, 863 (10th Cir. 2005) (citing *United States v. Hardage*, 982 F.2d 1436, 1447 (10th Cir. 1992)). Thus, for a response cost to be necessary, there must be some link or nexus between the response cost and some effort to respond to an actual or a risk of contamination. See *Johnson v. James Langley Operating Co., Inc.*, 226 F.3d 957, 964 (8th Cir. 2000) ("Testing and sampling expenses are necessary only if the party seeking to recover costs has an objectively reasonable belief that the defendant's release or threatened release of hazardous substances would contaminate his or her property."); *Lansford-Coaldale Joint Water Auth. v. Tonolli Corp.*, 4 F.3d 1209, 1219 (3d Cir. 1993) (stating that in order to recover monitoring and evaluation expenses there must have been "a reasonable risk (although one that may

7

not materialize) that the defendant's release or threatened release of hazardous substances would contaminate the plaintiff's property").

### 2. MichCon's Allegations

Plaintiffs contend that MichCon's counterclaim contains no allegations, or factual averments, which link any of MichCon's alleged costs to any effort by MichCon to respond to the contamination at the SRA Property. Instead, based on the allegations in the counterclaim, Plaintiffs argue that "it is just as likely MichCon seeks to recover costs it has incurred in anticipation of defending itself against claims brought by Plaintiffs, which are clearly not recoverable." (Pl.'s Mot. at 6.) According to Plaintiffs, "MichCon's failure to allege the facts necessary to demonstrate that the costs it has incurred in connection with the SRA Property are connected to an actual cleanup or an effort to respond to environmental contamination in, on, under or released from the SRA Property renders its CERCLA cost recovery action deficient as a matter of law." After a thorough review of MichCon's counterclaim, the court agrees that its bare-bones allegations are insufficient to withstand Plaintiffs' motion to dismiss.

In *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009), the Supreme Court held that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S.Ct. at 1949.

Plaintiffs' motion alleges that MichCon's counterclaim is practically devoid of allegations relating to MichCon's possible "necessary costs of response." Indeed, in response to Plaintiffs' motion to dismiss, MichCon has identified three paragraphs of

8

"detailed allegations" with respect to MichCon's simple averment that SRA is a facility, twenty-three paragraphs about Plaintiffs' releases or threatened releases, eighteen paragraphs as to why Plaintiffs are PRPs, seven paragraphs about MichCon's connection to the SRA, but only <u>two</u> paragraphs about how such releases caused MichCon to incur necessary response costs (paragraphs 76 and 87, discussed below). (Def.'s Resp. at 6.) MichCon's counterclaim contains over 70 paragraphs of general allegations relating to the history of the SRA Property, its operations, its transfer of ownership, its contamination, and efforts taken, or not taken, by *Plaintiffs* to clean up the property. The general averments, however, contain only one paragraph devoted to MichCon's removal costs, found in the final paragraph of the general averments: "MichCon has incurred response costs associated with the SRA Property including, but not limited to, costs to investigate and evaluate the source of releases of hazardous substances at and from the SRA Property." (Countercl. at ¶ 76.) There are no further factual averments related to this allegation which would support or better explain this conclusory allegation.

Even in the six paragraphs devoted to the CERCLA cost recovery count, MichCon contains only one general averment related to its costs of response:

> Ford and Severstal's releases of hazardous substances at, from, and around the SRA Property have caused MichCon to incur response costs as defined in CERCLA Section 101(25), 42 U.S.C. Section 9601(25), including the retention of various professionals to analyze the SRA Property and nearby properties, the extent and cause of contamination, and potential remedial measures, including the Proposed Remedy.

(Countercl. at ¶ 87.) While these allegations allege, generally, that MichCon incurred "costs of response," nowhere in the general averments, or in the Count II, does

9

MichCon specifically allege that the response costs were "necessary," which is required to sustain a CERCLA claim for cost recovery. *See Regional Airport Authority of Louisville*, 460 F.3d at 703. Indeed, the only allegations with respect to the necessity of the costs of response is found in Count IV, which is the claim for cost recovery under Michigan's NREPA. (Countercl. ¶ 101 ("MichCon has incurred necessary costs of response activity as a result of releases or threatened releases of hazardous substances form the SRA Property.") Even if it were proper to import this allegation, which is specifically averred under the state law claim, into the CERCLA claim, the allegations are nonetheless insufficient to sustain a CERCLA cost recovery claim, because there are no factual allegations in support of the necessity requirement.

As Plaintiffs' argue, MichCon's conclusory allegations, without further supporting averments, are far too general to state a claim under applicable pleading standards. "The pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 129 S.Ct. at 1949 (quoting *Twombly*, 550 U.S. at 570). MichCon's allegations that it incurred costs of recovery, without more, constitute such unadorned, conclusory allegations of legal violations.

Essentially, MichCon has only recited the elements of a cost recovery claim,[2] but "a pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). "Nor does a

---

[2]Moreover, MichCon's recitation itself is deficient, as it does not allege that the response costs were "necessary."

complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).[3]

Even before *Twombly*, the Sixth Circuit recognized the importance of alleging adequate facts in a CERCLA complaint. *McGregor v. Indus. Excess Landfill, Inc.*, 856 F.2d 39 (6th Cir. 1988). Quoting a First Circuit decision, the court stated that "[a] plaintiff will not be thrown out of court for failing to plead facts in support of every arcane element of his claim. But when a complaint omits facts that, if they existed, would clearly dominate the case, it seems fair to assume that those facts do not exist." *Id.* at 42 (quoting *O'Brien v. DiGrazia*, 544 F.2d 543, 546 n.3 (1st Cir. 1976)). The Sixth Circuit held that dismissal was proper, noting:

> In the instant case, plaintiffs pled with specificity both the response costs and response actions undertaken by the federal government and the State of Ohio but failed to allege any similar factual basis for their conclusory allegation that they had personally incurred response costs consistent with the National Contingency Plan. The district court was not, therefore, required to presume facts that would turn plaintiffs' apparently frivolous claim under Section 107 of CERCLA into a substantial one.

*Id.* at 43.

This same analysis applies here. It is simply not enough to allege that MichCon incurred costs of response, without detailing *any* factual allegations in support of the statement; without alleging that the costs were necessary and explaining–even

---

[3]MichCon is certainly aware that this court will not allow bare allegations of legal conclusions to survive a motion to dismiss, as this court granted, in part, MichCon's motion to dismiss Plaintiffs' complaint on this basis. (*See* 9/29/09 Order at 28 ("Given that any federal delegation is essential to maintain a § 113 contribution claim, a one-sentence, conclusory allegation in the complaint is insufficient to meet the requirements of *Twombly* and *Iqbal*.").) In filing its counterclaim one month after the court's opinion was issued, MichCon should have included more detailed allegations in its counterclaim.

briefly–why they were necessary; or without otherwise enhancing the bare recitation of the element of a cost recovery claim. *See Iqbal*, 129 S.Ct. at 1949. As the Supreme Court explained in *Iqbal*,

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." [*Twombly*, 550 U.S. at 570.] A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. [*Id.* at 556.] The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid.* Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" [*Id.* at 557.]

*Id.* at 1949. In other words, the counterclaim must allege "enough factual matter (taken as true) to suggest that" the response costs were "necessary." *See Twombly*, 550 U.S. at 556 ("In applying these general standards to a § 1 claim, we hold that stating such a claim requires a complaint with enough factual matter (taken as true) to suggest that an agreement was made. Asking for plausible grounds to infer an agreement does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement."). MichCon does not plead enough facts, or any facts, to suggest that the response costs incurred were necessary.

This is particularly true where, as here, the remaining allegations of the counterclaim are specifically detailed, thus suggesting that facts in support of a "necessary" cost of response do not exist. *See McGregor*, 856 F.2d at 42-43; *see also General Cable Indus., Inc. v. Zurn Pex, Inc.*, 561 F. Supp. 2d 653, 658-59 (E.D. Tex. 2006) (dismissing complaint where Plaintiff alleged generally that it "incurred costs to investigate and monitor the contamination of its Property" and that it had "expended

response costs consistent with the [NCP] . . . including costs to monitor, assess, and evaluate the release or threat of release of hazardous substances into the environment" but "failed to allege any similar factual basis for its conclusory allegation that it expended response costs consistent with the National Contingency Plan."). The court will grant Plaintiffs' motion and dismiss Count II.

## B. Count IV: Cost Recovery Under Michigan's NREPA

Plaintiffs also argue that, for the same reasons, MichCon's state law claim for cost recover must also be dismissed. Both parties recognize that CERCLA and NREPA are similar in nature, and both parties rely on their arguments with respect to the CERCLA claim as to why the NREPA should, or should not be dismissed. (*See* Def.'s Resp. at 8 ("For the reasons discussed above [under the CERCLA section], MichCon's cost recovery claims are proper and not subject to dismissal."); Pls' Mot. at 8 (asserting that because NREPA is modeled after CERCLA, the NREPA claim should be dismissed for the same reasons as set forth in Plaintiffs' CERCLA argument).) In its prior order, this court has already recognized the overlap between NREPA and CERCLA and that Michigan courts generally follow federal CERCLA law in interpreting NREPA:

> Part 201 was modeled after the federal Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), 42 U.S.C. 9601 et seq. *Flanders Industries, Inc. v. Michigan*, 203 Mich.App. 15, 21, 512 N.W.2d 328 (1993). Both the federal and state statutes provide for identification of contaminated sites and for prompt remediation. *Port Huron v. Amoco Oil Co., Inc.*, 229 Mich.App. 616, 622, 583 N.W.2d 215 (1998). Both part 201 and the CERCLA create a private cause of action to establish liability for costs of investigation and remediation of contaminated sites. *Pitsch v. ESE Michigan, Inc.*, 233 Mich.App. 578, 589, 593 N.W.2d 565 (1999). Both statutes generally defer to administrative agencies to determine the appropriate response to contaminated sites and limit preenforcement judicial review. MCL 324.20137 (4); 42 U.S.C. 9613(h).

*Genesco, Inc. v. Michigan Dep't of Envtl Quality,* 645 N.W.2d 319, 323 (Mich. Ct. App. 2002). In *Pitsch v. ESE Michigan, Inc.*, 593 N.W.2d 565 (Mich. Ct. App. 1999), the Michigan Court of Appeals noted that that Michigan courts deviate from federal decisions interpreting the CERCLA when "the clear language of the [the predecessor of NREPA] compels a different result." 593 N.W.2d at 574.

Here, there is no indication that the language of NREPA compels a different result than the court's analysis under CERCLA. NREPA provides liability for "[a]ny other necessary costs of response activity incurred by any other person consistent with rules relating to the selection and implementation of response activity promulgated under this part." Mich. Comp. Laws § 324.20126a(1)(b). This language directly tracks that of CERCLA, requiring that the costs of response be "necessary." *See City of Detroit v. Simon*, 247 F.3d 619, 630 (6th Cir. 2001) ("Similarly, NREPA provides . . . that recoverable costs must be 'necessary.' See M.C.L. § 324.20126a(1)(b). *As NREPA (formerly MERA) was patterned after CERCLA, it should be construed in accordance with the federal statute.*" (emphasis added) (citations omitted)).

As with the CERCLA count, MichCon includes only one, bare-bones factual allegation relating to the necessity of response costs under NREPA: "MichCon has incurred necessary costs of response activity as a result of releases or threatened releases of hazardous substances from the SRA Property." (Countercl. ¶ 101.) As with the CERCLA count, this allegation is not enough under *Twombly* and *Iqbal* to withstand a motion to dismiss. The court will therefore dismiss Count IV for the reasons further discussed above.

## IV. CONCLUSION

IT IS ORDERED that Plaintiffs' "Joint Motion to Dismiss Defendant's Counterclaim" [Dkt. # 42] is GRANTED and MichCon's Count II and Count IV are DISMISSED.

        S/Robert H. Cleland
        ROBERT H. CLELAND
        UNITED STATES DISTRICT JUDGE

Dated: August 27, 2010

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, August 27, 2010, by electronic and/or ordinary mail.

        S/Lisa Wagner
        Case Manager and Deputy Clerk
        (313) 234-5522

S:\Cleland\JUDGE'S DESK\C3 ORDERS\08-13503.FORD.MICHCON.DismissCounterclaim.wpd