UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FORD MOTOR COMPANY, a
Delaware Corporation; SEVERSTAL
NORTH AMERICA, INC., a Delaware
Corporation,

        Plaintiffs/Counter-Defendants,

Civil Case No. 2:08cv13503
Hon. Robert H. Cleland

vs.

MICHIGAN CONSOLIDATED
GAS COMPANY, a Michigan
Corporation,

        Defendant/Counter-Plaintiff
        Third-Party Plaintiff,

vs.

UNITED STATES OF AMERICA,

        Third-Party Defendant.
_____/

## THIRD-PARTY COMPLAINT OF MICHIGAN CONSOLIDATED GAS COMPANY

Defendant/Counter-Plaintiff/Third-Party Plaintiff Michigan Consolidated Gas Company ("MichCon") for its Third-Party Complaint against the United States of America hereby alleges as follows:

### THE PARTIES

1. Defendant/Counter-Plaintiff/Third-Party Plaintiff MichCon is a corporation incorporated under the laws of Michigan, with its principal place of business located in Detroit, Michigan.

2. Plaintiff/Counter-Defendant Ford Motor Company ("Ford") is a Delaware corporation with its principal place of business located in Dearborn, Michigan.

3. Plaintiff/Counter-Defendant Severstal North America, Inc. ("Severstal") is a Delaware corporation with its principal place of business located in Dearborn, Michigan.

4. Third-Party Defendant United States of America ("United States") is a governmental entity responsible for the activities of various federal agencies including the United States Army Corps of Engineers (the "Army Corps"), and is a "person" as defined under Section 101(21) of the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"). 42 U.S.C. § 9601(21). The United States routinely and systematically conducts its affairs within the Eastern District of Michigan, and, as more fully described below, performed services through the Army Corps within this District.

5. The Army Corps is a division of the United States Government under the direct jurisdiction of the Department of the Army.

## JURISDICTION AND VENUE

6. The Court has exclusive and original jurisdiction over the claims stated herein under Section 113(b) of CERCLA, 42 U.S.C. Section 9613(b), and 28 U.S.C. Section 1331.

7. Venue is proper in this Court under §113(b) of CERCLA, 42 U.S.C. § 9613(b), and 28 U.S.C. Section 1391(e), in that the activities giving rise to this lawsuit, the release or threatened release of hazardous substances, and the resultant damages that give rise to these claims, occurred in this District.

## GENERAL ALLEGATIONS

8. In the late 1910s, the Rouge Manufacturing Complex ("RMC") was constructed in Dearborn, Michigan by Ford Motor Company ("Ford") as a vertically integrated automotive production plant. Ford began operations at the RMC around 1919. The operations performed at the RMC were comprehensive and encompassed all phases of production, from the processing of raw materials through the manufacture and assembly of finished automobiles.

9. Upon information and belief, operations at the RMC included among other things, dock facilities, blast furnaces, open-hearth steel mills, foundries, a rolling mill, metal stamping facilities, an

-3-

engine plant, a glass manufacturing building, a tire plant, and its own power house supplying steam and electricity.

10. Upon information and belief, the RMC also engaged in coke oven production involving the destructive distillation of coal from 1919 through 1987, producing gas and by-products. These by-products resulted from Ford's operation of up to 183 coke ovens from 1919-1987.

11. The RMC is currently regulated as an active and ongoing corrective action facility under the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. §6901 *et seq.* and Part 111 of the Natural Resources and Environmental Protection Act ("NREPA"), Mich. Comp. Laws § 324.11101 *et seq.*

12. MichCon or its predecessor formerly owned a parcel of property located immediately west of the RMC and the original River channel.

13. In 1968, prior to a planned rechannelization of the River, MichCon sold 22 acres of this property to Ford, which comprises a portion of the SRA property.

14. From approximately 1969 through 1973, the Army Corps rechanneled the River in response to a record flood that occurred in April 1947, which caused MichCon's former property to be on the east side of the current River, whereas it had previously been west of the old River channel.

15. MichCon retained ownership of property to the west of the new River channel.

16. During the project, the Army Corps excavated through an open dump operated by the City of Melvindale, a portion of MichCon's former wastewater ponds, sediments in the former River channel, and one of Ford's SRA sludge ponds that Ford had operated since 1954. The Army Corps' activities disrupted, displaced, and relocated substantial volumes of contaminated material that was then used as fill at the SRA.

17. The Army Corps exacerbated any contamination through such activities and also through the installation of a concrete channel, pea gravel bed, dewatering pipe and pressure relief vents

(PRVs) which, upon information and belief, created a preferential pathway in which contamination could more easily migrate.

18. The movement and release of hazardous substances by or at the direction of the Army Corps at a CERCLA "facility" makes the United States a liable party under CERCLA.

19. Hazardous substances including, but not limited to, volatile organic carbon compounds ("VOCs"), semi-volatile organic compounds ("SVOCs"), polychlorinated biphenyls ("PCBs"), and metals have been detected on the SRA in excess of applicable cleanup criteria making the SRA a "Facility" within the meaning of CERCLA, Section 101(9), 42 U.S.C. Section 9601(9).

20. The MichCon property is downgradient of the SRA; therefore, groundwater flows in an east to west direction, from the SRA toward MichCon's property.

21. Both the groundwater at the SRA and the River near the SRA are recharged by several sources, including groundwater from the RMC and the area north of Butler Road, groundwater precipitation at the SRA and wastewaters discharging from the leaking wastewater treatment ponds and lagoons to groundwater, all of which are impacted by historical and ongoing disposal activities and releases.

22. As more fully described below, MichCon has incurred necessary response costs associated with the aforementioned releases, the SRA Property, and related remedial measures, including, but not limited to, costs to investigate and evaluate the nature and source of releases of hazardous substances at and from the SRA Property, the migration of any contamination and its potential impact on the current MichCon property and the ability of any proposed remedial actions to adequately and cost-effectively address the sources of contamination requiring remediation.

23. Ford and Severstal have filed claims against MichCon seeking cost recovery and contribution from MichCon for costs they allege to have incurred in relation to response activities at the SRA. A copy of the First Amended Complaint is attached as Exhibit A.

24. The United States is liable to MichCon for all or a portion of Ford and Severstal's claims against MichCon.

### COUNT I:  CONTRIBUTION UNDER CERCLA §113(f), 42 U.S.C. §9613(f)

25. MichCon repeats and realleges the preceding allegations as though fully set forth herein.

26. The United States is a "Person" within the meaning of CERCLA Section 101(21), 42 U.S.C. Section 9601(21).

27. The SRA is a "Facility" within the meaning of CERCLA, Section 101(9), 42 U.S.C. Section 9601(9).

28. The United States has released, exacerbated prior releases, and caused continuing releases of hazardous substances at, from, and around the SRA Property when it rechanneled the River, and has arranged for the disposal or treatment of hazardous substances at the SRA Property.

29. The United States is liable and responsible as a former operator of the SRA Property and as a person who arranged for the disposal or treatment of hazardous substances at the SRA Property under Section 107(a) of CERCLA, 42 U.S.C. §9607(a).

30. In the event MichCon is held liable for any costs or damages sought by Ford and Severstal in their Complaint against MichCon, MichCon is entitled to contribution under section 113(f)(1) of CERCLA, 42 U.S.C. Section 9613(f)(1), from the United States of an equitable share (all or some portion) of liability resulting from its releases of hazardous substances at, from, and around the SRA and nearby properties caused by the rechannelization project.

-6-

## COUNT II:  COST RECOVERY UNDER CERCLA §107, 42 U.S.C. §9607

31.     MichCon repeats and realleges the preceding allegations as though fully set forth herein.

32.     The United States is a "Person" within the meaning of CERCLA Section 101(21), 42 U.S.C. Section 9601(21).

33.     The SRA Property is a "Facility" within the meaning of CERCLA, Section 101(9), 42 U.S.C. Section 9601(9).

34.     The United States released, exacerbated prior releases, and caused continuing releases of hazardous substances at, from, and around the SRA Property when it rechanneled the River, and has arranged for the disposal or treatment of hazardous substances at the SRA Property.

35.     The United States is liable and responsible as a former operator of the SRA Property and as a person who arranged for the disposal or treatment of hazardous substances at the SRA Property under Section 107(a) of CERCLA, 42 U.S.C. §9607(a).

36.     The United States' releases and arrangements for the disposal of hazardous substances have caused MichCon to incur necessary costs of response that are consistent with the purposes and intent of the National Contingency Plan, as set forth in 40 C.F.R. Part 300.

37.     MichCon will continue to incur response costs in the future.

38.     The costs incurred by MichCon are of the nature defined in CERCLA Section 101(25), 42 U.S.C. Section 9601(25), including removal costs, as defined in CERCLA Section 101(23), 42 U.S.C. Section 9601(23), to monitor, assess, and evaluate the release or threat of release of hazardous substances at the SRA Property, and those defined in CERCLA Section 101(24), 42 U.S.C. Section 9601(24), including remedial costs consistent with the a permanent remedy to prevent or minimize the

release of hazardous substances so they do no migrate to cause substantial danger to present or future public health or welfare or the environment.

39. The response costs incurred by MichCon include the retention of environmental consultants, who, to date have been called upon to (1) analyze the SRA property, (2) analyze nearby properties, (3) analyze the extent of the contamination at or emanating from the SRA and nearby properties, (4) investigate and evaluate the nature and source of releases and the cause of contamination at the SRA and nearby properties requiring remediation as a result of releases by the United States and other parties, (5) evaluate any migration to MichCon's current property, (6) analyze potential remedial measures, (7) analyze response activities proposed by Ford and Severstal consisting of a bentonite slurry wall and a pump-and-treat system (the "Proposed Remedy") in light of MichCon's investigations as to the nature and source of any releases requiring remediation, and (8) provide comments to the Michigan Department of Natural Resources and Environment ("MDNRE") on the scope and adequacy of the investigations and effectiveness of the Proposed Remedy.

40. The response costs are related to the releases or the threat of releases at the SRA and are closely tied to any actual cleanup of the SRA, as the analyses undertaken by MichCon's consultants have enabled, and will, in the future, enable MichCon (1) to comment to Ford, Severstal and MDNRE on the efficacy of the Proposed Remedy in whole, and on specific aspects of the remedial investigation and Proposed Remedy, and (2) to propose alternative remedial investigations or measures that may more effectively and cost efficiently address the releases and the migration of the releases.

41. These response costs were necessary to respond to the actual threat to human health and the environment caused by the releases. Both the releases and the nature of the remedial measures designed to address the releases directly impact MichCon because, as a former owner (in part) of the SRA, MichCon faces potential exposure for damages that the releases may cause to other parties, if not properly abated. MichCon, as a former owner, has also been called upon by Ford and Severstal to

fund the remedial measures. Further, as a current owner of neighboring property directly downgradient from the SRA, MichCon faced and continues to face an actual risk that the contamination, if not properly contained or abated, has or could migrate to its property.

42. The response costs sought by MichCon were not incurred for litigation purposes.

43. Based upon the analyses performed by the professionals that MichCon retained, MichCon has already submitted comments to MDNRE explaining, among other things, that the remedial investigation findings that underpin the Proposed Remedy fail to account for ongoing contamination caused by the leaking wastewater treatment ponds and lagoons that are currently operated on the SRA.

44. If the Proposed Remedy, in fact, fails to contain the releases at the SRA Property, the contamination will not be properly abated.

45. MichCon's costs were reasonable, and the activities were neither scientifically deficient nor unduly costly. The analyses performed to date were performed by qualified, trained environmental consultants utilizing industry-recognized scientific procedures. The time spent by the consultants did not and will not exceed the time necessary to conduct a thorough and meaningful analysis, and the rates charged by the consultants are consistent with those charged by similarly situated hydrogeologists.

46. Pursuant to Section 113(g)(2), 42 U.S.C. Section 9613(g)(2), MichCon is also entitled to a declaratory judgment establishing the liability of the United States for all future response costs.

WHEREFORE, Defendant MichCon respectfully requests that the Court enter judgment in its favor against Third-Party Defendant United States, awarding:

(1) Damages in excess of $75,000, including the amount of (i) an equitable share (all or some portion) of any response costs or other damages for which MichCon may be adjudged liable to Plaintiffs in this lawsuit, and (ii) any and all costs (including response costs), damages, and liability incurred

by MichCon as a result of any release or threatened release of hazardous substances by Third-Party Defendant.

(2) A declaratory judgment establishing (i) a final equitable allocation of any liability at the SRA between Counter-Defendants, MichCon, Third-Party Defendant United States, and any other potentially responsible party ("PRP") for any past and future response costs at the SRA, and (ii) that MichCon is entitled to recover all future response costs from Third-Party Defendant United States.

(4) Prejudgment interest at the maximum rate allowed by law.

(5) All costs of this action, including attorneys' fees.

(6) Such other or further relief as the Court deems just and proper.

Respectfully submitted,

/s/ Matthew J. Lund
MATTHEW J. LUND (P48632)
THOMAS P. WILCZAK (P36415)
Pepper Hamilton LLP
100 Renaissance Center, 36th Floor
Detroit, MI 48243
(313) 259-7110
lundm@pepperlaw.com
wilczakt@pepperlaw.com
Attorneys for Defendant MichCon

Dated: May 11, 2011

#12928954 v9 (105125.29)

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FORD MOTOR COMPANY, a
Delaware Corporation; SEVERSTAL
NORTH AMERICA, INC., a Delaware
Corporation,

               Plaintiffs,

vs.                                                                                              Civil Case No. 2:08cv13503
                                                                                                 Hon. Robert H. Cleland
MICHIGAN CONSOLIDATED
GAS COMPANY, a Michigan
Corporation,

               Defendant.
_____/

## CERTIFICATE OF SERVICE

I hereby certify that on May 11, 2011, I served a true and correct copy of the foregoing Third-Party Complaint of Michigan Consolidated Gas Company to the parties of record through the Court's electronic filing system.

Respectfully submitted,

/s/ Matthew J. Lund
MATTHEW J. LUND (P48632)
THOMAS P. WILCZAK (P36415)
Pepper Hamilton LLP
100 Renaissance Center, 36th Floor
Detroit, MI 48243
(313) 259-7110
lundm@pepperlaw.com
Dated: May 11, 2011                                 wilczakt@pepperlaw.com
Attorneys for Defendant MichCon

-10-