UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

FORD MOTOR COMPANY, a
Delaware Corporation; SEVERSTAL
DEARBORN, LLC,

        Plaintiffs/Counter-Defendants,

           v.

MICHIGAN CONSOLIDATED GAS
COMPANY, a Michigan Corporation,

        Defendant/Counter-Plaintiff/
        Cross-Plaintiff,

           v.

UNITED STATES OF AMERICA,

        Defendant/Cross-Defendant.

Civil Case No. 2:08cv13503
Hon. Robert H. Cleland

_____/

## THIRD AMENDED COMPLAINT

Plaintiffs Ford Motor Company, by and through its counsel Dickinson Wright PLLC, and Severstal Dearborn, LLC, by and through its counsel Eckert Seamans Cherin & Mellott, LLC and Driggers, Schultz & Herbst, P.C., bring this civil action against Michigan Consolidated Gas Company and the United States of America, and support their allegations as follows:

### PARTIES AND JURISDICTION

1.      Plaintiff Ford Motor Company ("Ford") is a Delaware corporation with its principal place of business located in Dearborn, Michigan.

2.      Plaintiff Severstal Dearborn, LLC ("Severstal") is a Delaware limited liability company with its principal place of business located in Dearborn, Michigan. At the time this action was filed, Severstal was known as Severstal North America, Inc. Subsequently, Severstal

North America, Inc. was renamed as Severstal Dearborn, Inc., and then in December 2010, Severstal Dearborn, Inc. was converted to Severstal Dearborn, LLC.

3.      Defendant Michigan Consolidated Gas Company ("MichCon") is a Michigan corporation with its principal place of business located in Detroit, Michigan.

4.      Defendant the United States of America ("United States") includes the Department of Defense, part of which is the Department of the Army, which in turn includes the United States Army Corps of Engineers ("Army Corps"), which conducted operations in this district.

5.      This case, in part, arises under a federal statute; i.e., the Comprehensive Environmental Responsibility, Compensation and Liability Act, 42 U.S.C. § 9601 *et seq.* (hereinafter "CERCLA").

6.      This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331.

7.      This Court has pendent jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367 because they are so related to Plaintiffs' CERCLA claims that they form part of the same case or controversy.

8.      Venue is proper in the Eastern District of Michigan pursuant to 28 U.S.C. § 1391(b) and 42 U.S.C. § 9613 because the claims arose within this district.

9.      Notice of this action was provided to the State of Michigan and MichCon pursuant to Mich. Comp. Laws § 324.20135.

## GENERAL ALLEGATIONS

10.      The Detroit Gas Company owned and operated a manufactured gas plant and conducted other manufacturing operations from at least the mid-1920s until the mid-1950s on the

2

west side of the Rouge River in the City of Melvindale, Michigan, hereinafter referred to as the "MGP Site."

11.     In 1938, Ford acquired approximately 26 acres of land on the east side of the River, across from the MGP Site.  Because the river divided the property owned by the Detroit Gas Company and Ford, each owned to the mid-point of the river along their respective property boundaries.  (So, this approximately 26 acres of land included land owned by Ford both on the east side of the River and under the River.)

12.     The manufactured gas plant operations at the MGP Site included the production of by-products, such as oils and tars.

13.     At least some of these oil and tar by-products were dumped in surface impoundments at the MGP Site adjacent to what was then the western bank of the Rouge River (the "River").

14.     The Detroit Gas Company became part of MichCon in 1949.  As a result, MichCon is the successor to the Detroit Gas Company and is liable for the debts, liabilities, duties and obligations of its predecessor.  (Hereinafter, reference to MichCon includes, where appropriate, reference to the Detroit Gas Company.)

15.     Manufactured gas plant operations ceased at the MGP Site in or around 1954.

16.     In the early 1970s, the United States Army Corps of Engineers realigned a portion of the River, as part of a Congressionally-authorized flood control project.  The new River channel was created west of the original river channel, such that it cut through MichCon's MGP Site.  This realignment resulted in the MGP Site straddling the east and west sides of the new River channel.

3

17.     In 1967 and 1968, prior to the realignment of the River, the Army Corps identified potential free-phase oil, tar, or oily material in the areas surrounding the former surface impoundments of the manufactured gas plant operations, including areas that subsequently became the newly-created east side of the River.

18.     During the realignment of the River, the Army Corps excavated through land that formerly had been, among other things, surface impoundments of the manufactured gas plant operations.

19.     During the realignment of the River, the Army Corps also arranged for the disposal of soils containing hazardous substances at the SRA Property by contracting for backfill of most of the former River channel and depositing contaminated soils as fill in other portions of the SRA Property (defined in paragraph 22, below).

20.     These actions, together with installation of a 30-inch dewatering line with surrounding porous materials and pressure relief vents beneath the lined River channel have resulted in releases of hazardous substances, which have migrated to lower elevations of a subsurface clay layer, groundwater and surface water.

21.     In 1968, Ford acquired title to a portion, approximately 22 acres, of the MGP Site. These 22 acres included that portion of the MGP Site that later became located on the east side of the new River channel as a result of the realignment.

22.     The Schaefer Road Area Property ("SRA Property"), which is the principal property at issue in this litigation, is approximately 48 acres, is entirely on the east side of the new River channel, and includes the original river channel and a portion of the former MGP site.

4

The 48 acres consists of the 26 acres Ford acquired in 1938 (*see* ¶ 11), and the 22 acres acquired in 1968 (*see* ¶ 21).

23.     In 1989, Ford sold the 48-acre SRA Property to the Rouge Steel Company, and in 2004, Severstal purchased the assets of the Rouge Steel Company, including the SRA Property, in a bankruptcy proceeding.

24.     Several Phases of Remedial Investigations (collectively "Remedial Investigations") have been performed by Ford and Severstal at the SRA Property, and on adjoining property along the riverbank not owned by Ford or Severstal, under the oversight of the Michigan Department of Environmental Quality (the "MDEQ").

25.     The results of the Remedial Investigations show that there are thirteen types of volatile organic chemicals ("VOCs") and twenty-two types of semi-volatile organic chemicals ("SVOCs") present in the subsurface at the SRA Property.

26.     The Remedial Investigations revealed that the highest concentrations of VOCs and SVOCs were present in the subsurface under the former manufactured gas plant surface impoundments located on the property that previously had been part of the MGP Site that Ford acquired from MichCon in 1968.

27.     Additionally, the Remedial Investigations revealed that high concentrations of nineteen different metals, free-phase dense non-aqueous phase liquid ("DNAPL"), and polychlorinated biphenyls ("PCBs") were also present in the subsurface under the former manufactured gas plant surface impoundments located on the property that previously had been part of the MGP Site that Ford acquired from MichCon in 1968.

5

28.     To address these issues at the SRA Property, in November 2007, at Plaintiffs'
initiative, the SRA Property was added via a fifth amendment to a Corrective Action Consent
Order ("CACO") that Ford and Severstal's predecessor voluntarily had entered into with the
State of Michigan in 2000.  (The original CACO addressed corrective action at the neighboring
Rouge Manufacturing Complex, a separate facility which is not at issue in this case.)

29.     The Fifth Amendment to the CACO not only added the SRA Property as a facility
to the CACO, it resolved Severstal's and Ford's liabilities to the State of Michigan under Part
201 of the Natural Resources and Environmental Protection Act ("NREPA"), Mich. Comp. Laws
324.20101 – 20142 ("Part 201"), and CERCLA as it related to the SRA Property.

30.     In conducting the response activities at, and associated with, the SRA Property in
accordance with the CACO and its amendments, Ford and Severstal have incurred costs and will
continue to incur costs.

## COUNT I
## COST RECOVERY PURSUANT TO THE COMPREHENSIVE ENVIRONMENTAL
## RESPONSE, COMPENSATION, AND LIABILITY ACT, 42 U.S.C. § 9607
## (MICHCON)

31.     Ford and Severstal incorporate by reference the preceding paragraphs as though
fully set forth herein.

32.     MichCon is liable for cost recovery to Ford and Severstal pursuant to CERCLA
42 U.S.C. § 9607, as alleged in the following paragraphs.

33.     MichCon falls under the definition of "person" as that term is defined in 42 U.S.C.
§ 9601(21).

34.     While MichCon owned and/or conducted operations at the MGP Site, including
property that became a portion of the SRA Property, it deposited, discharged, stored, released

6

and/or disposed of chemical substances at the MGP Site and the SRA Property, including but not limited to manufactured gas production by-products such as tar substances.

35.     These by-products included "hazardous substances" as that term is defined in 42 U.S.C. § 9601(14).

36.     The SRA Property constitutes a "facility" within the meaning of 42 U.S.C. § 9601(9) because it is a place where MichCon created a pit, pond, lagoon, impoundment, ditch and/or landfill and where MichCon deposited, stored, disposed of, and/or placed hazardous substances.

37.     The storage, disposal, release, placement, and/or discharge of hazardous substances including but not limited to VOCs, SVOCs, DNAPL, and metals at the SRA Property constitutes or has resulted in the release or threatened release of hazardous substances and has resulted in a hazardous condition at the MGP Site, including property that became a portion of the SRA Property, necessitating the incurrence of response costs to address the conditions at the SRA Property and on adjacent property.

38.     Ford and Severstal have incurred and will continue to incur response costs to remedy the condition of the SRA Property including, but not limited to:

   a.     the costs of obtaining samples at the SRA Property and adjacent property to determine both the extent of the release at the SRA property and the hydrogeological characteristics of the soils and groundwater at the SRA Property and adjacent property;

   b.     the laboratory costs of analyzing samples obtained at the SRA Property and adjacent property for a determination of the concentrations of hazardous substances;

   c.     the costs associated with the assessment of any potential hazards at the SRA Property resulting from incidental exposure to the soil or inhalation of ambient air;

   d.     the cost of analyzing the impact of the release to the soil and groundwater;

7

e.   the costs of developing an appropriate remedy to successfully reduce the risk of contamination or hazard to human health and the environment;

f.   the cost of implementing any and all remediation required at the SRA Property and any associated adjacent property;

g.   the cost of paying the State of Michigan, among other things, oversight costs associated with the SRA Property;

h.   any other necessary response costs consistent with the National Contingency Plan as specified at 40 C.F.R. part 300.

39.   The incurrence of the response costs described in Paragraph 38 above is necessary to ensure the effective remediation (as will be determined by MDEQ under the terms of the CACO and applicable statutes and regulations) of the SRA Property, and of associated property as may be required by MDEQ.

40.   The response costs Plaintiffs have incurred, and will incur, include both costs for "removal" as that term is defined in 42 U.S.C. § 9601(23) and "remedial action" as that term is defined in 42 U.S.C. § 9601(24).

41.   The incurrence of the response costs described in Paragraph 38 above is consistent with the purposes and intent of the National Contingency Plan as set forth in 40 C.F.R., Part 300.

42.   Under 42 U.S.C. § 9607(a)(4), MichCon is liable for past and future response costs identified in Paragraph 38.

43.   MichCon is liable for Plaintiffs' actual attorneys' fees and other costs in bringing and prosecuting this action.

Wherefore, Ford and Severstal respectfully request a declaratory judgment pursuant to 42 U.S.C. § 9613(g)(2), finding that MichCon is liable to Ford and Severstal for all past and future response costs incurred in connection with the SRA Property; a judgment against MichCon in the amount of all past response costs Ford and Severstal incurred in connection with the SRA

8

Property, together with interest, costs, attorneys' fees; and any additional relief this Court may deem appropriate.

**COUNT II**
**CONTRIBUTION PURSUANT TO THE COMPREHENSIVE ENVIRONMENTAL RESPONSE, COMPENSATION, AND LIABILITY ACT, 42 U.S.C. § 9613**
**(MICHCON)**

44.     Ford and Severstal incorporate by reference the preceding paragraphs as though fully set forth herein.

45.     MichCon is liable for contribution to Ford and Severstal pursuant to CERCLA 42 U.S.C. § 9613, as alleged in the following paragraphs.

46.     MichCon falls under the definition of "person" as that term is defined in 42 U.S.C. § 9601(21).

47.     While MichCon owned and/or conducted operations at the MGP Site, including property that became a portion of the SRA Property, it deposited, discharged, stored, released and/or disposed of chemical substances onto the MGP Site and the SRA Property, including but not limited to manufactured gas production by-products such as tar substances.

48.     These by-products included "hazardous substances" as that term is defined in 42 U.S.C. § 9601(14).

49.     The SRA Property constitutes a "facility" within the meaning of 42 U.S.C. § 9601(9) because it is a place where MichCon created a pit, pond, lagoon, impoundment, ditch and/or landfill and where MichCon deposited, stored, disposed of, and/or placed hazardous substances.

9

50. The storage, disposal, release, placement, and/or discharge of hazardous substances including but not limited to VOCs, SVOCs, DNAPL, and metals at the MGP Site, including property that became a portion of the SRA Property, constitutes or has resulted in the release or threatened release of hazardous substances and has resulted in a hazardous condition at the SRA Property necessitating the incurrence of response costs to address the conditions at the SRA Property.

51. On May 11, 2011, MichCon filed its First Amended Counterclaim against Ford and Severstal seeking, among other things, cost recovery pursuant to 42 U.S.C. § 9607 for costs it allegedly incurred in connection with response activities at the SRA Property and nearby properties.

52. To the extent Ford and Severstal are found liable for cost recovery damages sought by MichCon, Ford and Severstal are entitled to contribution from MichCon under 42 U.S.C. § 9613(f)(1).

WHEREFORE, Ford and Severstal respectfully request that the Court enter a declaratory judgment against MichCon finding MichCon liable in contribution for its equitable share of all past and future response costs MichCon allegedly incurs in connection with the SRA Property and nearby properties; enter a judgment against MichCon in the amount of its equitable share of any cost recovery damages MichCon recovers from Ford and Severstal in this action; and award such other relief as the Court deems necessary and appropriate.

10

## COUNT III
## COST RECOVERY PURSUANT TO THE COMPREHENSIVE ENVIRONMENTAL RESPONSE, COMPENSATION, AND LIABILITY ACT, 42 U.S.C. § 9607
## (UNITED STATES)

53.     Ford and Severstal incorporate by reference the preceding paragraphs as though fully set forth herein.

54.     Ford and Severstal previously resolved claims against the United States pursuant to a Consent Decree in Ford Motor Company v. United States of America, 04-CV-72018, in the United States District Court for the Eastern District of Michigan, pursuant to which Ford and Severstal have resolved certain claims against the United States, as set forth in the Consent Decree, but which resolution did not include claims by Ford and Severstal against the United States based on activities conducted by the Army Corps in property bounded by the midlines of the Greenfield Road, Butler Road, Schaefer Highway/Road, and the southern bank of the Rouge River from the midline of the Schaefer Road Bridge to the midline of the Greenfield Road Bridge ("Schaefer Road Realignment Area").

55.     The United States is liable for cost recovery to Ford and Severstal pursuant to CERCLA, 42 U.S.C. § 9607, as alleged in the following paragraphs.

56.     The United States falls under the definition of "person" as that term is defined in 42 U.S.C. § 9601(21).

57.     The United States conducted flood control project operations at the Schaefer Road Realignment Area and arranged for the disposal of soils containing hazardous substances at the SRA Property by excavating, placing, transporting, releasing, and disposing of chemical substances at the SRA Property, including but not limited to MichCon's manufactured gas production by-products such as tar substances.

11

58.    These by-products included "hazardous substances" as that term is defined in 42 U.S.C. § 9601(14).

59.    The SRA Property and the Schaefer Road Realignment Area constitute a "facility" within the meaning of 42 U.S.C. § 9601(9).

60.    The excavating, placing, transporting, releasing, and disposing of hazardous substances -- including but not limited to VOCs, SVOCs, DNAPL, and metals -- at the SRA Property constitutes or has resulted in the release or threatened release of hazardous substances and has resulted in a hazardous condition at the SRA Property, necessitating the incurrence of response costs to address the conditions at the SRA Property and on adjacent property.

61.    Ford and Severstal have incurred and will continue to incur response costs to remedy the condition of the Schaefer Road Realignment Area including, but not limited to:

a.    the costs of obtaining samples at the SRA Property and adjacent property to determine both the extent of the release at the SRA property and the hydrogeological characteristics of the soils and groundwater at the SRA Property and adjacent property;

b.    the laboratory costs of analyzing samples obtained at the SRA Property and adjacent property for a determination of the concentrations of hazardous substances;

c.    the costs associated with the assessment of any potential hazards at the SRA Property resulting from incidental exposure to the soil or inhalation of ambient air;

d.    the cost of analyzing the impact of the release to the soil and groundwater;

e.    the costs of developing an appropriate remedy to successfully reduce the risk of contamination or hazard to human health and the environment;

f.    the cost of implementing any and all remediation required at the SRA Property and any associated adjacent property;

g.    the cost of paying the State of Michigan, among other things, oversight costs associated with the SRA Property;

h.    any other necessary response costs consistent with the National Contingency Plan as specified at 40 C.F.R. part 300.

12

62.     The incurrence of the response costs described in Paragraph 61 above is necessary to ensure the effective remediation (as will be determined by MDEQ under the terms of the CACO and applicable statutes and regulations) of the Schaefer Road Realignment Area, and of associated property as may be required by MDEQ.

63.     The response costs Plaintiffs have incurred, and will incur, include both costs for "removal" as that term is defined in 42 U.S.C. § 9601(23) and "remedial action" as that term is defined in 42 U.S.C. § 9601(24).

64.     The incurrence of the response costs described in Paragraph 61 above is consistent with the purposes and intent of the National Contingency Plan as set forth in 40 C.F.R., Part 300.

65.     Under 42 U.S.C. § 9607(a)(4), the United States is liable for past and future response costs identified in Paragraph 61 with respect to Army Corps activities at the Schaefer Road Realignment Area.

Wherefore, Ford and Severstal respectfully request a declaratory judgment pursuant to 42 U.S.C. § 9613(g)(2), finding that the United States is liable to Ford and Severstal for all past and future response costs incurred in connection with the Schaefer Road Realignment Area, as it relates to activities conducted by the Army Corps at the Schaefer Road Realignment Area; a judgment against the United States in the amount of all past response costs Ford and Severstal incurred in connection with the Schaefer Road Realignment Area as it relates to activities conducted by the Army Corps at the Schaefer Road Realignment Area, together with interest; and any additional relief this Court may deem appropriate.

13

<u>COUNT IV</u>
<u>CONTRIBUTION PURSUANT TO THE COMPREHENSIVE ENVIRONMENTAL</u>
<u>RESPONSE, COMPENSATION, AND LIABILITY ACT, 42 U.S.C. § 9613</u>
(UNITED STATES)

66.     Ford and Severstal incorporate by reference the preceding paragraphs as though fully set forth herein.

67.     The United States is liable for contribution to Ford and Severstal pursuant to CERCLA 42 U.S.C. § 9613, as alleged in the following paragraphs.

68.     The United States falls under the definition of "person" as that term is defined in 42 U.S.C. § 9601(21).

69.     The United States conducted flood control project operations at the Schaefer Road Realignment Area and arranged for the disposal of soils containing hazardous substances at the SRA Property, by excavating, placing, transporting, releasing, and disposing of chemical substances at the SRA Property, including but not limited to MichCon's manufactured gas production by-products such as tar substances.

70.     These by-products included "hazardous substances" as that term is defined in 42 U.S.C. § 9601(14).

71.     The SRA Property and the Schaefer Road Realignment Area constitute a "facility" within the meaning of 42 U.S.C. § 9601(9).

72.     The United States' excavating, placing, transporting, releasing, and disposing of hazardous substances -- including but not limited to VOCs, SVOCs, DNAPL, and metals at the SRA Property -- constitutes or has resulted in the release or threatened release of hazardous substances and has resulted in a hazardous condition at the SRA Property necessitating the

14

incurrence of response costs to address the conditions at the SRA Property and on adjacent property.

73. Ford and Severstal entered into the Fifth Amendment to the CACO with the State of Michigan, which resolved Ford and Severstal's CERCLA liability to the State of Michigan in an administrative settlement within the meaning of 42 U.S.C. § 9613(f)(3)(B).

74. Ford and Severstal have incurred and will continue to incur response costs to remedy the condition of the Schaefer Road Realignment Area.

75. Ford and Severstal have paid and will continue to pay the response costs incurred by third parties to remedy the condition of the Schaefer Road Realignment Area.

76. The incurrence of these response costs is necessary to ensure the effective remediation (as will be determined by MDEQ under the terms of the CACO and applicable statutes and regulations) of the Schaefer Road Realignment Area, and of associated property as may be required by MDEQ.

77. The incurrence of the costs described in Paragraphs 74 and 75 above is consistent with the purposes and intent of the National Contingency Plan as set forth in 40 C.F.R., Part 300.

78. The United States is liable to Ford and Severstal for contribution under 42 U.S.C. § 9613(f).

WHEREFORE, Ford and Severstal respectfully request that the Court enter a declaratory judgment against the United States finding the United States liable in contribution for its equitable share of any and all past and future response costs incurred by Ford and Severstal, as it relates to activities conducted by the Army Corps at the Schaefer Road Realignment Area; enter a judgment against the United States in the amount of its equitable share of all past response

15

costs Ford and Severstal have incurred, as it relates to activities conducted by the Army Corps at the Schaefer Road Realignment Area, and all applicable interest; and award such other relief as the Court deems necessary and appropriate.

**COUNT V**
**COST RECOVERY PURSUANT TO THE MICHIGAN**
**NATURAL RESOURCES AND ENVIRONMENTAL PROTECTION ACT,**
**MICH. COMP. LAWS § 324.21026a**
**(MICHCON)**

79.     Ford and Severstal incorporate by reference the preceding paragraphs as though fully set forth herein.

80.     The MGP Site, including property that became the SRA Property, is a "facility" as that term is defined in Mich. Comp. Laws § 324.20101 as it is an area, place, or property where a hazardous substance in excess of the concentrations set forth in Mich. Comp. Laws § 324.20120a(1)(a) or (17) has been released, deposited, disposed of, or otherwise has come to be located.

81.     While MichCon owned and/or conducted operations at the MGP Site and SRA Property, it released, deposited and/or disposed or arranged for disposal of hazardous substances at the MGP Site and SRA Property and is responsible for activities causing a release or threat of release.

82.     MichCon is a liable party for response activity costs at the SRA Property pursuant to Mich. Comp. Laws § 324.20126.

83.     Ford and Severstal have incurred and will continue to incur the costs described in Mich. Comp. Laws § 324.20126a(1) with respect to the SRA Property and adjacent property as a result of MichCon's operations, including but not limited to the costs set forth in paragraph 38.

16

84.     Under Mich. Comp. Laws § 324.20126a, MichCon is jointly and severally liable for all response costs, plus interest, incurred by Ford and Severstal in conjunction with the selection and implementation of response activities at the SRA Property.

Wherefore, Ford and Severstal respectfully request a declaratory judgment finding that MichCon is liable to Ford and Severstal for all past and future response costs incurred in connection with the SRA Property; a judgment against MichCon in the amount of all past response costs Ford and Severstal incurred in connection with the SRA Property, together with interests, costs, attorneys' fees; and any additional relief this Court may deem appropriate.

## COUNT VI
## CONTRIBUTION PURSUANT TO THE MICHIGAN
## NATURAL RESOURCES AND ENVIRONMENTAL PROTECTION ACT,
## MICH. COMP. LAWS § 324.21029
## (MICHCON)

85.     Ford and Severstal incorporate by reference the preceding paragraphs as though fully set forth herein.

86.     The MGP Site, including property that became the SRA Property, is a "facility" as that term is defined in Mich. Comp. Laws § 324.20101 as it is an area, place, or property where a hazardous substance in excess of the concentrations set forth in Mich. Comp. Laws § 324.20120a(1)(a) or (17) has been released, deposited, disposed of, or otherwise has come to be located.

87.     While MichCon owned and/or conducted operations at the MGP Site and SRA Property, it released, deposited and/or disposed or arranged for disposal of hazardous substances at the MGP Site and SRA Property and is responsible for activities causing a release or threat of release.

17

88.    MichCon is a liable party for response activity costs at the SRA Property pursuant to Mich. Comp. Laws § 324.20126.

89.    On May 11, 2011, MichCon filed its First Amended Counterclaim against Ford and Severstal seeking, among other things, cost recovery pursuant to Mich. Comp. Laws § 324.20126 for costs it allegedly incurred in connection with response activities at the SRA Property and nearby properties.

90.    Ford and Severstal have incurred and will continue to incur the costs described in Mich. Comp. Laws § 324.20126a(1) with respect to the SRA Property and adjacent property as a result of MichCon's operations, including but not limited to the costs set forth in paragraph 38.

91.    Ford and Severstal have resolved their liabilities to the State of Michigan for some or all of the response activity at the SRA Property through an administratively approved consent order.

92.    Under Mich. Comp. Laws § 324.20129, MichCon is liable in contribution to Ford and Severstal for certain of the costs set forth in Paragraph 90. MichCon was responsible for causing the release and/or threat of release at the SRA Property, equity demands MichCon be liable in contribution to Ford and Severstal for these costs incurred on behalf of the SRA Property, and MichCon exercised no degree of care with regard to the hazardous substances at the MGP Site, including that which became the SRA Property.

WHEREFORE, Ford and Severstal respectfully request that the Court enter a declaratory judgment against MichCon finding MichCon liable in contribution for its equitable share of (a) any and all past and future response costs incurred by Ford and Severstal, as set forth above, and (b) all past and future response costs MichCon allegedly incurs in connection with the SRA

18

Property and nearby properties; enter a judgment against MichCon in the amount of its equitable

share of (a) all past response costs Ford and Severstal have incurred, as set forth above, (b) any

damages MichCon recovers from Ford and Severstal in this action, plus (c) all applicable interest,

costs, and attorneys' fees; and award such other relief as the Court deems necessary and

appropriate.

Respectfully submitted,

DICKINSON WRIGHT PLLC
By: /s/ D. Lee Khachaturian
    Kathleen A. Lang (P34695)
    D. Lee Khachaturian (P59966)
Attorneys for Ford Motor Company
500 Woodward Avenue, Suite 4000
Detroit, MI 48226
(313) 223-3500
klang@dickinsonwright.com
dkhachaturian@dickinsonwright.com

ECKERT SEAMANS CHERIN &
MELLOTT, LLC
By: /s/ with consent of David A. Rockman
    Scott R. Dismukes (P61811)
    David A. Rockman
Attorneys for Severstal Dearborn, LLC
600 Grant Street, 44th Floor
Pittsburgh, PA 15219-2788
(412) 566-6000
sdismukes@eckertseamans.com
drockman@eckertseamans.com

DRIGGERS, SCHULTZ & HERBST, P.C.
By: /s/ with consent of Barbara D. Urlaub
    William C. Schaefer (P26495)
    Barbara D. Urlaub (P38290)
Co-Counsel for Severstal North America, Inc.
2600 W. Big Beaver Rd. Suite 550
Troy, MI 48084
(248) 649-6000
wschaefer@driggersschultz.com
burlaub@driggersschultz.com

Dated: December 21, 2011

CERTIFICATE OF SERVICE

I hereby certify that on December 21, 2011 I electronically filed the foregoing document with the Clerk of the Court using the ECF system which will send notice of such filing upon all counsel of record.

Respectfully submitted,
DICKINSON WRIGHT PLLC
By: ___/s/ D. Lee Khachaturian_____
Kathleen A. Lang (P34695)
D. Lee Khachaturian (P59966)
Attorneys for Ford Motor Company
500 Woodward Avenue, Suite 4000
Detroit, MI 48226
(313) 223-3500
klang@dickinsonwright.com
dkhachaturian@dickinsonwright.com
thelminski@dickinsonwright.com

Dated: December 21, 2011

DETROIT 18260-2504 1224955v6