**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

FORD MOTOR COMPANY, et al.,

    Plaintiffs,

v.                                                   Case No. 08-CV-13503-DT

MICHIGAN CONSOLIDATED GAS COMPANY,

    Defendant.

                                                    /

**OPINION AND ORDER GRANTING PLAINTIFF'S
MOTION FOR ENTRY OF A CONSENT DECREE**

Before the court is a "Motion for Entry of a Consent Decree," filed by Plaintiffs Ford Motor Company ("Ford") and Severstal North American, Inc. ("Severstal"), supported by the United States of America, and opposed by Defendant Michigan Consolidated Gas Company ("MichCon"). The matter has been fully briefed, and the court heard oral argument on May 2, 2012. For the reasons stated below, the court will grant the motion.

**I. INTRODUCTION**

Plaintiffs Ford and Severstal filed this action against MichCon on August 13, 2008, seeking recovery of costs that Plaintiffs have incurred and will continue to incur in connection with environmental impacts allegedly caused by MichCon and its predecessors at a manufactured gas plant ("MGP") on the west side of the Rouge River in the City of Dearborn, Michigan. The property at issue in this litigation is referred to by the parties as the Schaefer Road Area Property ("SRA Property").

In the current motion, Plaintiffs request the court to enter the Schaefer Road Area Consent Decree ("SRA CD"), which Plaintiffs contend reflects a full and final settlement

of their claims against the United States. The SRA CD provides that the United States will pay Plaintiffs $4,250,000 for its share of response costs, a release of liability, and the risks of future response costs and environmental uncertainties at the SRA Settlement Area. In return, the SRA CD provides the United States with a complete release, a covenant not to sue, and contribution protection under CERCLA. According to Plaintiffs, the SRA CD is the result of several years of vigorous, arms-length negotiations, after consultation with experts, reviews of extensive historical and technical information, and multiple rounds of mediation with a specialized mediator. The United States, obviously, supports Plaintiffs request and, along with Plaintiffs, asserts that the SRA CD is fair, reasonable, and consistent with CERCLA's statutory goals.

MichCon does not generally oppose settlement as it relates to the SRA, but argues that the contribution bar language in the SRA CD goes too far, as it bars claims related not just to the SRA, but also to claims related to the Rouge River. (MichCon Resp. at 1.) MichCon argues that the settlement amount is not reasonable, because there is no disclosure to the court or to MichCon as to what portion of the settlement amount relates to the River, as opposed to the SRA. Further, MichCon argues that because the River is included in the settlement, the SRA CD is prejudicial to MichCon as it will bar MichCon from recovering costs from the United States should any state or federal agency seek to recover cleanup costs related to the River from MichCon in the future. (*Id.* at 2.) MichCon asserts that as to liability that has not yet arisen, Plaintiffs and the United States must execute a private indemnification agreement, rather than a

consent decree which this court would enter and which would in turn strip MichCon, or others, from the exercise of future rights.

## II.  BACKGROUND

### A.  Procedural Background

The initial complaint against MichCon asserted seven counts, but Plaintiffs subsequently filed an amended complaint asserting only five:  Count I, entitled "Cost Recovery Pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. § 9607" ("CERCLA"); Count II, entitled "Contribution Pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. § 9613"; Count III, entitled "Cost Recovery Pursuant to the Michigan Natural Resources and Environmental Protection Act" ("NREPA"); Count IV, "Contribution under Michigan's [NREPA];" and Count V, entitled "Common Law Indemnification."  On MichCon's motion, the court has dismissed Counts II and V. Pursuant to a stipulated order, Plaintiffs filed a Third Amended Complaint on December 21, 2011.

On October 30, 2009, MichCon filed its counterclaim, asserting four counts against Ford and Severstal: two counts for contribution under CERCLA (Count I) and Michigan's NREPA (Count III) and two counts for cost recovery under CERLCA (Count II) and NREPA (Count IV).  Plaintiffs filed a partial motion to dismiss on November 25, 2009, seeking dismissal of the cost recovery claims.  Shortly after the motion to dismiss was filed, the parties voluntarily agreed to stay the case in order to pursue settlement negotiations.  After negotiations concluded without success, the motion was fully briefed and oral argument was held on August 26, 2010.  The court granted the motion on

August 27, 2010, and dismissed MichCon's Count II and Count IV. Thereafter, MichCon moved for leave to amend the counterclaim, and for leave to file a Third Party Complaint against the United States of America, asserting claims for contribution and for cost recovery under CERCLA. The court granted that motion on May 5, 2011.

### B. Factual Background

The relevant facts underpinning this CERCLA action are relatively undisputed, at least as relates to this instant motion. These facts are provided as general background information, and shall not be treated as binding on the parties in subsequent proceedings.

From 1925 until the early 1950s, MichCon, or its predecessor in interest Detroit Gas Company, operated a manufactured gas plant (the "Rouge MGP") in Melvindale, Michigan. MichCon's property was bounded to the east by the Rouge River channel as the channel originally existed. As part of a flood control project that began in the late 1960s, the Rouge River was re-routed by the United States Army Corps of Engineers ("Army Corps"). The re-channeling straightened a portion of the river and moved it from the east boundary of MichCon's property to the middle of it, so that the river effectively bisected the property, and was constructed over MichCon's former wastewater ponds.

In 1968, prior to the re-channeling, MichCon sold the 22 acre portion to the east of the new river channel to Ford. Those 22 acres, along with 26 acres Ford had acquired from a different property owner in 1938, all lying entirely on the east side of the Rouge River, comprise what has been referred to in Plaintiffs' various complaints as the Schaefer Road Area ("SRA") property. Plaintiffs are in the process of remediating the SRA pursuant to a Corrective Action Consent Order ("CACO") issued by the Michigan

Department of Environmental Quality ("MDEQ"). Specifically, the SRA was added to the property at issue in the CACO pursuant to the Fifth Amendment of the CACO, dated November 9, 2007. (Pls." Mot. at 3.) Plaintiffs are the only parties to the CACO with the MDEQ and are, according to Plaintiffs, the only parties engaging in response actions. (*Id.*)

In the SRA CD, the SRA Settlement Area is larger than simply the SRA. It also includes "other small portions of land not currently or previously owned by Ford or Severstal, and the segment of the Rouge River adjacent to the 48-acre parcel." (Pls.' Mot. at 2.) MichCon contends that Plaintiffs claims against it have never involved the Rouge River, that the River has been absent from any previous discussions or references to the SRA either in the CACO or in this litigation, and that the first appearance of the Rouge River in this case was in the Plaintiffs' Third Amended Complaint – the pleading that was filed to facilitate this settlement. According to MichCon, even in the Third Amended Complaint, the only claims against MichCon relate to the SRA, and not the River. MichCon also contends that the CACO does not include the River as part of the area subject to the required remediation. Instead, MichCon asserts, the CACO describes the SRA as "the property located in the County of Wayne, City of Dearborn, State of Michigan, approximately to the west of Schaefer Road, *north and east of the Rouge River*, east of the City of Dearborn Department of Public Works Yard on Greenfield Road and south of Butler Road, which includes the Schaefer Road Waste Water Treatment Plant." (Def.'s Ex. 2 at 6 (emphasis added).)

According to MichCon, the inclusion of the River in the Consent Decree, along with a purported absence of documentation supporting the Consent Decree, precludes its entry.

### C. The Proposed Consent Decree

#### 1. Negotiations

Negotiations leading to the SRA CD initially arose, according to Plaintiffs in connection with Ford's 2004 lawsuit against the United States, *Ford Motor Co. v. United States*, Case No. 2:04-cv-72018, before the Honorable Bernard A. Friedman. In that action, Ford asserted that wartime and post-war activities of the United States contributed to the existence and release of hazardous substances at the RMC, and that the United States was liable for a share of the response actions required by MDEQ in the form of cost recovery and contribution. In May 2008, Ford and the United States engaged in significant mediation efforts in connection with Judge Friedman's case. Although they made significant progress, they eventually recognized the need to include Severstal in their negotiations.

After Severstal began participating in the settlement efforts, the parties engaged in two more mediation sessions in the Fall of 2009, which included voluminous, voluntary document exchanges and mediation reports. These sessions revealed issues related to MichCon's potential liability. Thus, according to Plaintiffs, the consent decree related to the RMC became linked to a separate consent decree relating to the SRA Settlement Area.

The parties continued their mediation efforts, culminating in a mediation session in June of 2010. Plaintiffs contend that the parties performed additional voluminous

6

document and information exchanges, shared position papers, and MichCon was given the same "factual SRA Settlement Area information that Ford, Severstal and the United States had exchanged in earlier mediations." (Pl.'s Mot. at 7.) The mediation session was not successful with respect to MichCon, but the remaining parties were able to resolve the issues.

Thus, Ford, Severstal, and the United States signed two consent degrees: the RMC CD and the SRA CD. Ford filed its unopposed motion to enter the both consent decrees in front of Judge Friedman. Judge Friedman agreed to enter the RMC CD, but found that the SRA CD should be presented to this court.

### 2. The SRA CD

The SRA CD is between Ford, Severstal, and the United States, and becomes effective upon entry by the court. The SRA CD is attached as Exhibit 1 to Plaintiffs' motion and its terms speak for themselves. Briefly, with respect to the defined "Covered Matters," the United States agrees to pay Plaintiffs $4,250,000 under the SRA CD in exchange for a covenant not to sue the United States for any claims associated with the defined "Covered Matters." The United States correspondingly agrees not to sue Ford or Severstal for "Covered Matters," but reserves the right to assert certain claims against them regarding the SRA Settlement Area. Ford and Severstal reserve applicable defenses to those claims.

The SRA CD provides for a warranty against double recovery, and provides contribution protection to the United States. It specifies that its terms shall not be construed as an admission of liability, and provides for a dismissal with prejudice of this action against the United States.

## II. STANDARD

When determining whether to approve and enter a proposed consent decree, the court must consider whether the decree is "'fair, adequate, and reasonable, as well as consistent with the public interest.'" *United States v. County of Muskegon*, 298 F.3d 569, 580-81 (6th Cir. 2002) (quoting *United States v. Jones & Laughlin Steel Corp.*, 804 F.2d 348, 351 (6th Cir. 1986)). In the context of CERCLA consent decrees, the Sixth Circuit has stressed that "the standard of fairness, reasonableness and consistency with the statute" as "our court's general test for consent decrees." *Lexington-Fayette Urban County Government*, 591 F.3d at 489 (quoting *United States v. Akzo Coatings of America, Inc.*, 949 F.2d 1409, 1426 (6th Cir. 1991)).

## III. DISCUSSION[1]

Having reviewed the briefs, heard argument from the parties, and considered the matter thoroughly, the court concludes that the SRA CD is fair, reasonable, and consistent with the CERCLA's goals as well as with the public interest. The court will therefore grant Plaintiffs' motion and enter the consent decree.

### A. Fairness

The bulk of the parties briefs are devoted to whether the SRA CD is fair. The court agrees with Plaintiffs and the United States that the SRA CD is procedurally and substantively fair. The Sixth Circuit "has deemed a number of considerations, including 'the strength of plaintiff[s'] case, the good faith efforts of the negotiators, the opinions of

---

[1] MichCon devotes a portion of its brief to expressing its discovery concerns should the motion be granted, and arguing that the court should not restrict discovery if the SRA CD is entered. The court agrees with the United States that this issue is not relevant to the issue before the court and should not impede entry of an otherwise proper consent decree.

8

counsel, and the possible risks involved in the litigation if the settlement is not approved,' to be relevant when determining whether a decree is fair." *Lexington-Fayette Urban County Government*, 591 F.3d at 489 (quoting *Akzo*, 949 F.2d at 1435 (alteration in original)).

The parties hotly contest this issue but the court is persuaded that the SRA CD is fair. First, and foremost, the decree is the result of literally years of mediation efforts between adverse parties in an effort to settle two hotly contested litigations. Voluminous records, reports, expert opinion, and historical and technical information was exchanged and considered. The parties had more than ample opportunity to hear the opposing party's position, debate the merits of their claims and defenses, and consider the risks and benefits of settling or pursuing litigation.

According to Plaintiffs, "[t]he alleged floor (*i.e.*, the minimum) for past and anticipated future costs at the time of settlement, not including potential contingencies, was estimated at $17,000,000 for the SRA Settlement Area." (Pls.' Br. at 15.) A settlement of $ 4,250,000 in the face of a potential floor of $17 million is substantively reasonable and a legitimate business choice for the parties in this case.

The Sixth Circuit has stated that "[w]hile we are to "eschew any rubber stamp approval in favor of an independent evaluation," *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir.1974), we may not substitute our own judgment for that of the parties to the decree." *Akzo*, 949 F.2d at 1435 (*United States v. Jones & Laughlin Steel Corp.*, 804 F.2d 348 (6th Cir.1986) (a reviewing court may not modify but only approve or reject a consent decree)). The court has explained that "Fairness should be evaluated from the standpoint of signatories and nonparties to the decree." *Akzo*, 949

F.2d at 1435 (citation omitted). However, while "[t]he effect on non-settlers should be considered, . . . [it] is not determinative in the court's evaluation." *Id.* (citation omitted).

Here, the settlement represents a rational, sound business decision about which the court has no ground to criticize. It is "fair."

### B. Reasonableness

"One of the most important considerations when evaluating whether a proposed consent decree is reasonable is "the decree's likely effectiveness as a vehicle for cleansing" the environment." *Lexington-Fayette Urban County Government*, 591 F.3d at 489 (quoting *Akzo*, 949 F.2d at 1437). Here, there does not appear to be any significant dispute that the SRA CD will effectuate the continued clean-up of the SRA Settlement Area. This area is being remediated by Ford and Severstal at the direction of the MDEQ pursuant to the CACO, as amended. The United States substantial payment under the SRA CD will help facilitate the continued actions of Ford and Severstal. An effective settlement is commonly a "reasonable" settlement. Such is the case here.

### C. Consistency with the Goals of CERLCA

"[P]ublic policy generally supports 'a presumption in favor of voluntary settlement' of litigation." *Lexington-Fayette Urban County Government*, 591 F.3d at 490 (quoting *Akzo Coatings*, 949 F.2d at 1436). The parties to the SRA CD have engaged in years of intense, arms-length negotiations to arrive at this mutually advantageous settlement. The settlement, additionally, will further benefit the public interest. "In evaluating the public interest, the district court must consider whether the decree is 'consistent with the public objectives sought to be attained by Congress.'" *Lexington-Fayette Urban County*

*Government*, 591 F.3d at 490 (quoting *Williams v. Vukovich*, 720 F.2d 909, 923 (6th Cir. 1983)). "We have stated before that one of CERCLA's main goals is "the prompt cleanup of hazardous waste sites." *Akzo Coatings*, 949 F.2d at 1436 (citing *Walls v. Waste Resource Corp.*, 761 F.2d 311, 318 (6th Cir.1985)). Not only is the SRA CD consistent with the objective of effectuating environmental cleanup, but it is also consistent with Congress's objective of encouraging settlements. *Id.* at 1450. These attributes support a finding that it is also consistent with the public interest.

The SRA CD being fair, reasonable, and consistent with the objectives CERCLA, *Lexington-Fayette Urban County Government,* 591 F.3d at 489, Plaintiffs' motion will be granted. The court will enter the SRA CD.

## IV.  CONCLUSION

IT IS ORDERED that Plaintiffs' "Motion for Entry of a Consent Decree" [Dkt. # 106] is GRANTED.


      S/Robert H. Cleland
      ROBERT H. CLELAND
      UNITED STATES DISTRICT JUDGE

Dated:  September 28, 2012

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, September 28, 2012, by electronic and/or ordinary mail.

      S/Lisa Wagner
      Case Manager and Deputy Clerk
      (313) 234-5522

S:\Cleland\CHD\Orders and Opinions\08-13503.FORD.MICHCON.ConsentDecree.wpd