UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FORD MOTOR COMPANY, a
Delaware Corporation; SEVERSTAL
DEARBORN, LLC, a Delaware
Corporation,

    Plaintiffs/Counter-Defendants,    Civil Action No.: 08-CV-13503

    vs.    District Judge Paul D. Borman

    Magistrate Judge Mona K. Majzoub

MICHIGAN CONSOLIDATED
GAS COMPANY, a Michigan
Corporation,

    Defendant/Counter-Plaintiff
    Third-Party Plaintiff

    vs.

UNITED STATES OF AMERICA,

    Third-Party Defendant.

_____/

## OPINION AND ORDER DENYING DEFENDANT'S MOTION TO COMPEL [127] WITHOUT PREJUDICE

This matter comes before the Court on Defendant Michigan Consolidated Gas Company's ("MichCon") Motion to Compel Discovery from Plaintiffs Ford Motor Company ("Ford") and Severstal Dearborn, LLC ("Severstal") and non-party Conestoga Rovers and Associates ("CRA"). (Docket no. 127.) Plaintiffs and CRA filed a Response (docket no. 120), and Defendant filed a Reply (docket no. 135). The Parties filed a Joint Statement of Resolved and Unresolved Issues, which indicated that the Parties had not resolved any of the issues in Defendant's Motion. (Docket no. 136.) The motion has been referred to the undersigned for decision. (Docket no. 131.) The

Court held a hearing on this matter at 10:00 a.m. on September 11, 2013, and the parties participated in a conference call with the Court at 10:00 a.m. on September 27, 2013. Pursuant to it's on-the-record decision at the September 11, 2013 hearing, the Court now issues this Opinion and Order.

I.      **Background**

Plaintiffs Ford and Severstal filed this action alleging that MichCon is largely responsible for costs incurred by Plaintiffs in their efforts to perform the environmental cleanup of a parcel of property located in Melvindale, Michigan, referred to throughout this litigation as "the Schaefer Road Area," or "SRA." (*See* docket no. 127 at 7.) The SRA is located between Schafer Road and the Rouge River. (*Id*.)

From 1925 through the early 1950s, MichCon operated a manufactured gas plant along the Rouge River on a parcel of land that included what is now the SRA. MichCon's plant included the use of tar ponds on a portion of the property. (*Id*. at 8.) In the 1960s, the Rouge River was re-routed by the U.S. Army Corps of Engineers, and following the re-routing, the Rouge River effectively bisected MichCon's property. In 1966, Ford (which had a manufacturing plant located across the Rouge River before its re-routing, purchased the property that is now the SRA from MichCon with the intent to use it for a wastewater treatment plant as part of an agreement with the Water Resources Commission. (*See* docket no. 130 at 9.) Ford then constructed the wastewater treatment plant and its primary polishing lagoon on the SRA through a wholly owned subsidiary known as Rouge Steel. (*See* docket no. 127 at 9.) In 1989, Ford sold Rouge Steel to a company that ultimately merged into the Rouge Steel Company. (*See* docket no. 130 at 9.) As part of that sale, Ford agreed to be responsible for any hazardous substances "existing or occurring on or prior to" the closing date of the sale. (*Id.*) Plaintiff Severstal purchased the Rouge Steel Company assets (including the SRA and the wastewater treatment plant) out of bankruptcy in 2004. (*Id.* at 10.)

**Environmental Investigations, CRA, and "The CACO"**

In or around 1988, visible contamination of the Rouge River adjacent to the SRA was discovered. (*See* docket no. 130 at 8.) This led to investigation and evaluation of the property by two federal agencies, the Environmental Protection Agency ("EPA") and the Agency for Toxic Substances and Disease Registry ("ATSDR") and one State agency, the Michigan Department of Natural Resources ("MDNR"). (*Id.* at 8-9.)

Ten years later, in or around 1998, Rouge Steel was the subject of a multimedia inspection by the EPA. And in 1999, Ford received notice from the EPA that its entire Rouge Manufacturing Complex (which included Rouge Steel and the SRA) was a "high priority" for environmental cleanup. (*Id.* at 10.) Thus, Ford and Rouge Steel approached the State of Michigan and voluntarily entered into an agreement whereby Ford and Rouge Steel would investigate the contamination and resolve the issues to satisfy the requirements of the Resource Conservation and Recovery Act ("RCRA"). The State of Michigan accepted the proposal and asked the EPA to hand over regulatory authority for this site to the Michigan Department of Environmental Quality ("MDEQ"). (*Id.* at 130.) This agreement was finalized in May 2000 in the form of a Corrective Action Consent Order (the "CACO"). (*Id.* at 11.)

While negotiating the CACO, Ford contracted with non-party CRA, an environmental consultant. (*Id.* at 11.) Ford contracted with CRA to help negotiate the CACO, to prepare environmental reports in an effort to comply with the CACO, and in an effort to ultimately assist Ford and Rouge Steel to clean up the Rouge Manufacturing Complex and the SRA. (*Id.*; docket no. 127 at 11.)

**Defendant's Discovery Requests and Plaintiffs' Responses**

As part of its discovery in this matter, Defendant served Plaintiffs and CRA with various

discovery requests. At issue in this matter are: (1) Defendant's Rule 34 Request served on Ford; (2) Defendant's Rule 34 Request served on Severstal; (3) Defendant's Rule 33 Interrogatories served on Ford; and (4) Defendant's Rule 45 Subpoena Duces Tecum served on CRA. (*See* docket no. 127 at 11 n.3.) As set forth by Defendant, its requests cover (in relevant part) three general areas[1]:

1. Environmental Investigation Documents, which include (by way of example) dialogue between CRA and Plaintiffs; internal deliberative documents about environmental concerns, issues, and options; and preliminary conclusions and draft reports, notes, and observations from CRA and Plaintiffs;

2. Remedy Assessment Documents, which include (by way of example) notes, internal memoranda, calculations, costs, models, and communications regarding remedial options that were available to Plaintiffs other than the remedial option that Plaintiffs ultimately chose; and

3. Allocation Documents, which Defendant contends would show how Plaintiffs allocated (in the case of the U.S. Government) and intend to allocate (in the case of MichCon, Ford, Rouge Steel, and Severstal) the percentage of liability in this matter, including the $4.25 million settlement by the U.S. Government.

(Docket no. 127 at 11-14.) In response, Ford produced approximately 4,200 documents, Severstal produced approximately 5,400 documents, and CRA produced "several disks containing documents." (*Id.* at 11.) But Plaintiffs and CRA also produced privilege logs, which individually listed "nearly 8,000 responsive documents" that Plaintiffs and CRA would not produce. (*Id.*)

---

[1] Because of Plaintiffs' broad claims of privilege as discussed herein, Defendant did not note which specific discovery requests are at issue; indeed, it appears that Plaintiffs (and CRA) raised their various arguments, at least in part, in response to each of Defendant's individual requests.

Plaintiffs and CRA argue that these documents are protected by either (1) the work product doctrine; (2) attorney-client privilege; (3) the joint-defense doctrine; or (4) the common-interest doctrine. In some instances, Plaintiffs assert that individual documents are protected under multiple theories. Defendant filed its instant motion arguing that (1) Plaintiffs and CRA are not entitled to the asserted protection; (2) even if they are, they have waived the privileges;[2] and (3) as a separate issue, the documents that Defendant did receive were not produced properly.

## II.    Governing Law

The scope of discovery under the Federal Rules of Civil Procedure is traditionally quite broad. *Lewis v. ACB Bus. Servs.*, 135 F.3d 389, 402 (6th Cir. 1998). Parties may obtain discovery on any matter that is not privileged and is relevant to any party's claim or defense if it is reasonably calculated to lead to the discovery of admissible evidence. Fed.R.Civ.P. 26(b)(1). "Relevant evidence" is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed.R.Evid. 401. But the scope of discovery is not unlimited. "District courts have discretion to limit the scope of discovery where the information sought is overly broad or would prove unduly burdensome to produce." *Surles ex rel. Johnson v. Greyhound Lines, Inc.*, 474 F.3d

---

[2]Defendant asserts that to support their claims, Plaintiffs must show the Court that the costs they seek to recover are "necessary costs of response and are closely tied to the actual cleanup" and that Plaintiffs cannot meet this burden without using the information in the documents. (Docket no. 127 at 22.) Additionally, Defendant argues, Plaintiffs cannot show the extent to which Ford, Severstal, Rouge Steel, and the U.S. government are responsible for contamination and costs without Ford and CRA's allocation documents. Plaintiffs assert that (1) Defendant has failed to meet its burden with respect to showing waiver; (2) Plaintiffs will prove their claims without the subject matter contained in the documents they have claimed as protected; and (3) Defendant has been provided with documents necessary to make out its defenses. Because the Court has narrowed the issues through the instant Motion, will order Plaintiffs to resubmit a new privilege log, and will allow Defendant to file a renewed Motion to Compel (if necessary), the Court will not address Defendant's waiver argument.

288, 305 (6th Cir. 2007).

Rules 33 and 34 allow a party to serve interrogatories and requests for production of documents on an opposing party. Fed.R.Civ.P. 33, 34. A party receiving these types of discovery requests has thirty days to respond with answers or objections. Fed.R.Civ.P. 33(b)(2), 34(b)(2)(A). If the receiving party fails to respond to interrogatories or RFPs, Rule 37 provides the party who sent the discovery the means to file a motion to compel. Fed.R.Civ.P. 37(a)(3)(B)(iii) and (iv). If a court grants a Rule 37 motion to compel, then the court must award reasonable expenses and attorney's fees to the successful party, unless the successful party did not confer in good faith before the motion, the opposing party's position was substantially justified, or other circumstances would make an award unjust . Fed.R.Civ.P. 37(A)(5)(a).

**III.   Analysis**

   **A.   Work Product Doctrine**

Work-product protection applies when a document was created "in anticipation of litigation. *United States v. Roxworthy*, 457 F.3d 590, 593-94 (6th Cir. 2006.) That is, the document must be created (1) "because of a party's subjective anticipation of litigation, as contrasted with an ordinary business purpose," and (2) the party's subjective anticipation must be "objectively reasonable." *Id.* A document may, however, "be created for both use in the ordinary course of business and in anticipation of litigation without losing its work product privilege." *Id.* at 599.

Plaintiffs assert that "once [they] engaged CRA in connection with the CACO, Plaintiffs were operating under the specter of enforcement litigation," and therefore, any documents created after that date were, potentially, created in anticipation of litigation with the MDEQ or the EPA. (Docket no. 130 at 14.) Additionally, Plaintiffs assert that they approached Defendant in 2000 asking Defendant to pay a portion of the costs associated with cleanup of the SRA under the CACO

(the very costs it issue in this matter). (Docket no. 130 at 13-14.) And when they were unable to reach such an agreement, Plaintiffs contend, any documents created from that point on were created in anticipation of this lawsuit. (*See id.*)

For the reasons discussed on the record at the September 11, 2013 hearing, the Court finds that these assertions are overly broad. With regard to the MDEQ/EPA litigation, Plaintiffs' position relies on the assumption that Plaintiffs knew that they would (or that they intended to) fail in their efforts under the CACO; that is, that they would ultimately be in violation of some environmental act or policy, which would allow the MDEQ or the EPA to pursue them. This is always a threat; the documents at issue were created to *avoid* litigation, not in *anticipation* of litigation. And with regard to the instant litigation, Plaintiffs' contention is circular. If Plaintiffs are to be believed, they created a mountain of paperwork in anticipation of a lawsuit in which their ultimate goal was to obtain payment for creation of the same mountain of paperwork. Therefore, the Court finds that the potential litigation with the EPA, the MDEQ, or Defendant is not a sufficient basis under which to assert work-product protection. This finding, however, does not foreclose the possibility that Plaintiff may assert work-product protection under some other theory.[3]

### B. Attorney-Client Privilege

The attorney-client privilege applies where legal advice is sought from a legal advisor. *Reed*

---

[3]For example, during the Parties' September 27, 2013 conference call with the Court, Plaintiffs asserted that a decision was made to proceed with litigation against MichCon on March 6, 2006, and that any documents created from that date forward were created in direct connection with that litigation. Plaintiffs did not raise this specific issue in their initial response to Defendant's instant Motion and, instead, argued that all documents from "as early as 2000, [when] Plaintiff approached MichCon" were subject to protection. (*See* docket no. 130 at 13-14.) Thus, Defendant has not had an opportunity to respond to Plaintiffs' argument, and the Court will not address this argument herein. Plaintiffs may assert such protection in their amended privilege log, but Plaintiffs are cautioned that the viability of such protection may be subject to further inquiry.

*v. Baxter*, 134 F.3d 351, 355-56 (6th Cir. 1998). The key inquiry is whether the communication was made "for the purpose of obtaining legal advice *from a lawyer*." *United States v. Koval*, 296 F.2d 918, 922 (2d Cir. 1961) (emphasis added). And while this privilege typically only applies to communications between a client and his attorney, the privilege can also apply to communications between an environmental consultant and an attorney when the communication is made to assist the attorney in giving legal advice to the client. *In re Grand Jury Matter*, 147 F.R.D. 82, 85 (E.D. Pa. 1992). In either situation, however, an attorney must be involved in the communication.

Plaintiffs argue that any communications between Plaintiffs and their attorneys or CRA and Plaintiffs' attorneys is privileged. (Docket no. 130 at 18-19.) Plaintiffs also suggest, however, that any emails sent in connection with the CACO are, by their nature, seeking legal advice because any action taken in connection with the CACO was in anticipation of litigation, even if these communications were sent between Plaintiffs or between Plaintiffs and CRA. Again, Plaintiffs' assertions are overly broad.

Having discussed this matter with the Parties during the September 11, 2013 hearing, the Court finds that any communications sent, for the purpose of obtaining legal advice, (1) from CRA to Plaintiffs' attorneys, (2) from Plaintiff's attorneys to CRA, (3) from Plaintiffs' to their attorneys, or (4) from Plaintiffs' attorneys to Plaintiffs are protected under the attorney-client privilege. The Court further finds that any documents sent (1) from CRA to Plaintiffs, (2) from Plaintiffs to CRA, (3) from Ford to Severstal, or (4) from Severstal to Ford are not protected by the privilege.[4]

### C. Joint Defense and Common Interest Privileges

"The joint-defense doctrine, also called the co-client privilege, allows communications

---

[4] Documents sent from Ford to Severstal or from Severstal to Ford may, however, be subject to the common-interest privilege as set forth *infra*.

between one client (e.g., a defendant) and his attorney to be shared with a co-defendant without waiving the privilege *where both are represented by the same attorney.*" *State Farm Mut. Auto. Ins. Co. v. Hawkins*, No. 08-10367, 2010 WL 2287454, *8 (E.D. Mich. June 04, 2010) (Cleland J.) (emphasis added) (citing 24 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 5493 n. 91.; Restatement (Third) of the Law Governing Lawyers § 75). The doctrine is "an extension of the attorney-client privilege [that applies] to confidential communications shared between co-defendants which are part of an ongoing and joint effort to set up a common defense strategy." *United States v. Moss*, 9 F.3d 543, 550 (6th Cir. 1993). Communications between two parties are not protected by the joint-defense doctrine merely because the parties are attempting to formulate a common defense strategy. As an extension of the attorney-client privilege, for the doctrine to apply, the shared communications must already be protected by the attorney-client privilege.

As discussed on the record at the September 11, 2013 hearing, Plaintiffs Ford and Severstal are not currently represented by a shared attorney. Plaintiffs' counsel also informed the Court that they did not believe Ford and Severstal had ever been represented by a shared attorney. Therefore, the Joint Defense Doctrine does not apply in this matter.

The common-interest doctrine applies "where the parties are represented by separate attorneys but share a common legal interest." *Hawkins*, 2010 WL 2287454 at *8. Under the doctrine, privileged communication can be exchanged without waiving the privilege, provided that the parties have "'an identical legal interest with respect to the subject matter of the communication.'" *MPT, Inc. v. Marathon Labels, Inc.*, 2006 WL 314435 slip copy at *6 (N.D. Ohio Feb. 9, 2006) (quoting Libbey Glass, Inc. v. Oneida, Ltd., 197 F.R.D. 342, 347 (N.D. Ohio 1999)). The weight of authority holds that litigation need not be actual or imminent for communications to

be within the common interest doctrine. *United States v. BDO Seidman, LLP*, 492 F.3d 806, 816 n.6 (7th Cir. 2007). But like the joint-defense doctrine, for the common-interest doctrine to apply, the underlying shared communication *must be privileged*. Restatement (Third) of the Law Governing Lawyers § 76.

Plaintiffs contend that much of the communication between Ford and Severstal was made with the common legal interest of apportioning and recovering costs related to the CACO. Plaintiffs claim that this protection extends back to 1989, when Ford agreed to work with Rouge Steel (Severstal's predecessor in interest) toward the cleanup of the SRA. Plaintiffs are correct. Any communication between Ford and Severstal is protected by the common-interest privilege, provided that such communication contains privileged information and that Ford and Severstal's legal interest was identical. The current privilege log, however, is not sufficiently detailed for the Court to determine whether Plaintiffs' asserted protection in this matter is overly broad. Therefore, the Court will allow Plaintiffs' to assert such protection in the updated privilege log as ordered herein.

### D. The Form of Plaintiff's Production

As an ancillary issue, Defendant argues that Ford violated Rule 34 when it produced voluminous documents in response to Defendant's Requests for Production without disclosing which documents were responsive to which requests. With the exception of the documents at issue in Plaintiffs' privilege log, Defendant does not assert that the requested documents have not been produced. Rather, Defendant asks the Court to order Ford to label the documents. As Ford asserts, however, "once a party demonstrates that it has produced documents as they are kept in the usual course of business, it has no further duty under Rule 34 or otherwise . . . to organize and label the documents." *Valeo Elec. Sys. v. Cleveland Die & Mfg. Co*, No. 08-12486, 2009 WL 1803216, *8 (E.D. Mich, June 17, 2009) (Pepe, M.J.). Because Ford has produced the documents as they are kept

in the usual course of business, the Court will deny Defendant's Motion in this regard.

**IT IS THEREFORE ORDERED** that Defendant's Motion to Compel [127] is **GRANTED IN PART AND DENIED IN PART** as follows:

   a. Ford is ordered to produce no later than October 28, 2013, any documents responsive to Defendant's Requests for Production that are not subject to protection pursuant to this Order;

   b. Ford is ordered to submit an updated privilege log no later than November 4, 2013, pursuant to this Order;

   c. Severstal is ordered to produce no later than October 31, 2013, any documents responsive to Defendant's Requests for Production that are not subject to protection pursuant to this Order;

   d. Severstal is ordered to submit an updated privilege log no later than November 7, 2013, pursuant to this Order;

   e. CRA is ordered to produce, on a rolling basis, any documents responsive to Defendant's Requests for Production that are not subject to protection pursuant to this Order; CRA is ordered to make such rolling production on or before November 11, 2013, November 26, 2013, and December 6, 2013, with all documents having been produced no later than December 6, 2013;

   f. Severstal is ordered to submit an updated privilege log no later than December 13, 2013;

   g. Plaintiffs' and CRA's updated privilege logs are subject to the following:

   1. Plaintiffs and CRA are permitted to raise the work-product doctrine, but any potential litigation with Defendant beginning in the year 2000 or with the

        EPA or the MDEQ is not a sufficient basis under which to assert such protection;

2. Plaintiffs and CRA are permitted to raise the attorney-client privilege, but only for communications sent for the purpose of obtaining legal advice (1) from CRA to Plaintiffs' attorneys, (2) from Plaintiff's attorneys to CRA, (3) from Plaintiffs' to their attorneys, or (4) from Plaintiffs' attorneys to Plaintiffs.

3. Plaintiffs and CRA are not permitted to raise the attorney-client privilege for any communications sent (1) from CRA to Plaintiffs, (2) from Plaintiffs to CRA, (3) from Ford to Severstal, or (4) from Severstal to Ford, unless such communications are protected by the common-interest privilege.

4. Plaintiffs and CRA are not permitted to raise the joint-defense privilege unless they can show that they were represented by the same attorney at the time that the communication was sent; and

5. Plaintiffs and CRA are permitted to raise the common-interest privilege, but the underlying communication must be of a privileged nature, and their legal interest in the underlying matter must have been identical; and

    h. Defendant's request that Ford label its responsive documents is denied.

**IT IS FURTHER ORDERED** that, if necessary, Defendant will be permitted to file a renewed Motion to Compel following receipt of Plaintiffs' and CRA's updated privilege logs and responsive documents as ordered herein.

<u>**NOTICE TO THE PARTIES**</u>

Pursuant to Federal Rule of Civil Procedure 72(a), the parties have a period of fourteen days

from the date of this Order within which to file any written appeal to the District Judge as may be permissible under 28 U.S.C. § 636(b)(1).


Dated:  September 27, 2013        s/ Mona K. Majzoub
                                  MONA K. MAJZOUB
                                  UNITED STATES MAGISTRATE JUDGE


**PROOF OF SERVICE**

I hereby certify that a copy of this Order was served upon Counsel of Record on this date.

Dated: September 27, 2013         s/ Lisa C. Bartlett
                                  Case Manager