UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FORD MOTOR COMPANY, and
SEVERSTAL NORTH AMERICA, LLC,

    Plaintiffs/Counter-Defendants,     Case No. 08-13503

v.     Paul D. Borman
    United States District Court

MICHIGAN CONSOLIDATED GAS
COMPANY ("MICHCON")

    Defendant/Counter-Plaintiff,
    Cross-Plaintiff,

v.

UNITED STATES OF AMERICA,

    Defendant/Cross-Defendant.
_____/

## OPINION AND ORDER DENYING
## UNITED STATES' MOTION TO DISMISS MICHCON'S THIRD PARTY COMPLAINT AGAINST THE UNITED STATES (Dkt. No. 120)

### I. INTRODUCTION AND PROCEDURAL HISTORY

Now before the Court is the United States' Motion to Dismiss the Third-party Complaint pursuant to Rule 12(b)(6) filed by Michigan Consolidated Gas Company ("MichCon"). (Dkt. No. 120). MichCon filed its Response to the United States' Motion to Dismiss on February 11, 2013. (Dkt. No. 123). The United States filed its Reply on February 21, 2013. (Dkt. No. 124). Plaintiffs Ford Motor Company and Severstal North America, LLC. (collectively "Plaintiffs") also filed a Reply entitled "Joinder in the United States' Request for Certification under Fed. R.

Civ. P. 54(b)." (Dkt. No. 125). A hearing on this matter was held on December 6, 2013.[1]

The underlying CERCLA action was originally filed by Plaintiffs Ford and Severstal against MichCon on August 13, 2008. (Dkt. No. 1). MichCon then filed a Counterclaim against both Plaintiffs. (Dkt. No. 40). Thereafter, United States District Judge Robert H. Cleland granted Plaintiffs' Motion to Partially Dismiss MichCon's Counterclaim. (Dkt. No. 55). MichCon then filed a Motion for Reconsideration (Dkt. No. 58) seeking leave to Amend the Counterclaim, and sought leave to file a Third-Party Complaint. Judge Cleland granted this Motion for Reconsideration on May 5, 2011. (Dkt. No. 69). Accordingly, Defendant MichCon filed its Amended Counterclaim against Plaintiffs and a Third-Party Complaint against the United States on May 11, 2011. (Dkt. Nos. 70 & 71).

In an earlier, separate case before Judge Bernard A. Friedman, *Ford Motor Co. v. United States*, No. 04-72018 ("*Ford I*"), Ford and the United States were engaged in settlement negotiations regarding the Rouge Manufacturing Complex ("RMC"). Eventually, Severstal was also included in the negotiations. (*See* Dkt. No. 115, Opinion and Order Granting Consent Decree, at 6). These negotiations in *Ford I* also revealed issues related to MichCon's potential liability regarding the Schaefer Road Area ("SRA"). (*Id.*). Thereafter, Plaintiffs filed the underlying action against MichCon ("*Ford II*"). (*Id.*).

Plaintiffs contend that MichCon was involved in the mediation and given the same "factual SRA Settlement Area information that Ford, Severstal and the United States had exchanged in earlier mediations." (*Id.* at 6-7). Thus, two proposed consent decrees were agreed

---

[1] Pursuant to the Court's instructions at the hearing, this Opinion and Order does not address the issue of certification pursuant to Fed. R. Civ. P. 54(b). This issue will be addressed separately.

2

upon by Ford, Severstal and the United States. (*Id*. at 7). While the first consent decree regarding the RMC was approved and entered by Judge Friedman in *Ford I*, he declined to enter the second consent decree regarding the SRA ("SRA CD") because it is the subject of this litigation and directed the parties to file the SRA CD in this action. (*Id*.).

Thereafter, Plaintiffs filed a Second Amended Complaint (Dkt. No. 100) and then on December 21, 2011, Plaintiffs filed a Third Amended Complaint in this matter (both pursuant to stipulations). (Dkt. No. 105). Both the Second and the Third Amended Complaints asserted claims by Plaintiffs against the United States, in addition to MichCon. Plaintiffs then filed a Motion for Entry of a Consent Decree (the SRA CD). (Dkt. No. 106). MichCon opposed the entry of the SRA consent decree in a Response and Sur-Reply. (Dkt. Nos. 110 &113).

On September 28, 2012, Judge Cleland issued an Opinion and Order granting Plaintiffs' Motion for Entry of a Consent Decree. (Dkt. No. 115). The Consent Decree was entered on October 9, 2012. (Dkt. No. 116).

The United States filed the present motion seeking to dismiss MichCon's Third-party Complaint on January 17, 2013. (Dkt. No. 120). On March 20, 2013, Judge Cleland entered an Order of Disqualification in this matter and the case was transferred to this Court. (Dkt. No. 128).

## II. BACKGROUND

**A. History of The Rouge Manufacturing Complex and The Schaefer Road Area**

In the late 1910s, Ford Motor Company ("Ford") built the Rouge Manufacturing Complex ("RMC") in Dearborn, Michigan. The RMC was a vertically integrated automotive production plant. The operations at the plant were "comprehensive and encompassed all phases

of production, from the processing of raw materials through the manufacture and assembly of finished products."  (Third-party Complaint ("T-P Complaint"), Dkt. No. 71, ¶ 8).

Among other things, the RMC engaged in coke oven production (utilizing up to 183 coke ovens) involving the destructive distillation of coal from 1919 through 1987.  (T-P Compl. ¶ 10).  The operation of these coke ovens resulted in the production of gas and by-products.  (T-P Compl. ¶ 10).  Currently, the RMC is being regulated as an "active and ongoing corrective action facility under the Resource Conservation and Recovery Act ("RCRA") and the Natural Resources and Environmental Protection Act ("NREPA").  (T-P Compl. ¶ 11).

MichCon, or its predecessor, once owned a parcel of land located immediately west of the RMC and the original River channel.  (T-P Compl. ¶ 12).  From 1968 until 1973, the Army Corps of Engineers ("Army Corps") rechanneled the River in response to a 1947 flood.  (T-P Compl. ¶ 14).  In 1968, prior to the River being rechanneled, MichCon sold 22 acres of its land parcel to Ford.  (T-P Compl. ¶ 13).  Prior to the rechanneling project, these 22 acres were located on the west side (the "MichCon" side) of the original River channel, however, the rechanneling caused those acres to be relocated on the east side (the "Ford" side) of the new River channel.  (T-P Compl. ¶ 14).  The 22 acres are now part of a larger area known in this litigation as the Schaefer Road Area ("SRA").[2]  (T-P Compl. ¶ 13).  MichCon retains ownership

---

[2] Although "SRA" is used in MichCon's Third-party Complaint, it is not defined. However, MichCon attaches and refers to Plaintiffs' First Amended Complaint in its Third-party Complaint as Exhibit A.  (*See* T-P Compl. ¶ 23, Ex. A).  As the First Amended Complaint defines the SRA, the Court relies upon that definition for purposes of this motion.  "The [SRA] Property, which is the principal property at issue in this litigation, is approximately 48 acres, is entirely on the east side of the new River channel, and includes the original river channel and a portion of the former [Manufactured Gas Plant] site.  The 48 acres consists of the 26 acres Ford acquired in 1938 [] and the 22 acres acquired in 1968 []."  (Pls.' First Amend. Compl. ¶ 18).

of the land to the west of the new River channel. (T-P Compl. ¶ 15).

MichCon alleges that during the rechanneling of the River, the Army Corps "excavated through an open dump operated by the City of Melvindale, a portion of MichCon's former waste water ponds, sediments in the former River channel, and one of Ford's SRA sludge ponds that Ford had operated since 1954." (T-P Compl. ¶ 16). MichCon contends that the Army Corps' activities "disrupted, displaced, and relocated substantial volumes of contaminated material" and that contaminated material was then used as "fill" in other areas of the SRA. (T-P Compl. ¶ 16). MichCon further alleges that the Army Corps installed a concrete channel, pea gravel bed, dewatering pipe and pressure relief vents that created a "preferential pathway" which allowed contamination to more easily migrate. (T-P Compl. ¶ 17). MichCon asserts that due to the detection of hazardous substances and metals being detected on the SRA in excess of applicable cleanup criteria, the SRA is a "facility" under CERCLA, § 101(9).

MichCon alleges that it has incurred and will continue to incur "necessary response costs" including the retention of environmental consultants who have: (1) analyzed the SRA property; (2) analyzed nearby properties; (3) analyzed the extent of the contamination at or emanating from the SRA and nearby properties; (4) investigated and evaluated the releases and the causes of contamination at the SRA and nearby properties requiring the remediation as a result of releases by the United States and other parties; (5) evaluated any migration to MichCon's current property; (6) analyzed potential remedial measures; (7) analyzed response activities proposed by Ford and Severstal, and (8) provided comments to the Michigan Department of Natural Resources and Environment on the scope and adequacy of the investigations and effectiveness of the Proposed Remedy. (T-P Compl. ¶¶ 37, 39).

5

**B.      Ford and Severstal's Claims against MichCon and the United States**

Currently Ford and Severstal North America, Inc. ("Severstal") are involved in designing a permanent remedy for the contamination of the SRA and are under the oversight of the Michigan Department of Environmental Quality ("MDEQ"). (T-P Compl. ¶¶ 39, 40). Ford and Severstal are incurring and will continue to incur costs as a result these activities. (T-P Compl. ¶ 23; *see also* Ex. A, Pl.'s First Amend. Compl.). As a result, Ford and Severstal filed the underlying action against MichCon seeking cost recovery and contribution from MichCon under CERLCA §§ 107(a) and 113(f) and NREPA for these costs. (*Id*.). In response to Ford and Severstal's suit, MichCon filed a Counterclaim against them and also this Third-party Complaint against the United States seeking "contribution" under CERCLA, § 113(f) towards MichCon's potential liability to Ford and Severstal and "cost recovery" under CERCLA, § 107(a). (T-P Compl. ¶¶ 25-30).

In 2004, Ford also sought to recover response costs from the United States in the separate but related case mentioned *supra*, *Ford I*, No. 04-72018. A consent decree between Ford, Severstal and the United States was entered in *Ford I* on October 19, 2011. (United States' Br., Ex. 2). The *Ford I* consent decree resolved the United States' liability as to all liability regarding contamination at or emanating from the RMC *except* for the liability attributable to the Army Corps' rechanneling project. (United States' Br., Ex. 2).

On October 9, 2012 the SRA CD was entered in this action between the United States, Ford and Severstal. (Dkt. No. 116; *see also* United States' Br., Ex. 3). The SRA CD resolved all claims (whether asserted or not) by the Plaintiffs against the United States regarding the SRA in

*Ford II*.[3] (*Id.*).

## III. LEGAL STANDARD

FED. R. CIV. P. 12(b)(6) allows for the dismissal of a case where the complaint fails to state a claim upon which relief can be granted. When reviewing a motion to dismiss under Rule 12(b)(6), a court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *DirectTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). But the court "need not accept as true legal conclusions or unwarranted factual inferences." *Id.* (quoting *Gregory v. Shelby County*, 220 F.3d 433, 446 (6th Cir. 2000)). "[L]egal conclusions masquerading as factual allegations will not suffice." *Eidson v. State of Term. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007).

The Supreme Court explained that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level...." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). Dismissal is only appropriate if the plaintiff has failed to offer sufficient factual allegations that make the asserted claim plausible on its face. *Id.* at 570. In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) the Supreme Court clarified the concept of "plausibility" stating, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

---

[3] The Court notes that "[i]n the SRA CD, the SRA Settlement Area is larger than simply the SRA. It also includes 'other small portions of land not currently or previously owned by Ford or Severstal, and the segment of the Rouge River adjacent to the 48-acre parcel.'" (Dkt. No. 116, Opinion and Order Granting Plaintiff's Motion for Entry of a Consent Decree, at 5 (citation omitted).

7

misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Id*. at 678 (internal citations omitted).

Thus, "[t]o state a valid claim, a complaint must contain either direct or inferential allegations respecting all the material elements to sustain recovery under some viable legal theory." *Bredesen*, 500 F.3d at 527 (citing *Twombly*, 550 U.S. at 562).

Defendant has brought its motion pursuant to Rule 12(b)(6) but both parties refer to documents attached to the parties' briefs and the Third-party Complaint. All of these attached documents: Plaintiffs' First Amended Complaint, SRA CD, and the RMC Consent Decree are documents that are available on the public docket. "[D]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in a plaintiff's complaint and are central to her claim." *Weiner v. Klais and Co., Inc*., 108 F.3d 86, 89 (6th Cir. 1997). Further, in a motion to dismiss, a court may also rely upon matters of public record. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd*., 551 U.S. 308, 322 (2007); *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). Therefore, these attached documents are properly considered in evaluating this motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6).

## IV. ANALYSIS

MichCon's Third-party Complaint sets forth two claims under the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9601, *et seq*. The first claim is a claim for contribution under § 113(f), and the second is a claim for

recovery of costs under § 107(a).[4] In its Response to the United States' Motion to Dismiss, MichCon concedes its contribution claim, pursuant to § 113(f), is barred by the October 9, 2012 Consent Decree entered in this action between Plaintiffs and the United States. (MichCon's Br. at 1). Therefore, the only matter before the Court is whether MichCon' cost recovery claim pursuant to § 107(a) should be dismissed.

A.   **CERCLA History and Framework**

The Sixth Circuit has explained that CERCLA, "facilitates cleanup and remediation of contaminated lands, and shifts the financial burden of such environmental response actions to the parties responsible for releasing hazardous substances." *ITT Industries, Inc. v. BorgWarner, Inc.*, 505 F.3d 452, 456 (6th Cir. 2007) (citation omitted). To this end, § 107(a) of CERCLA imposes strict liability for environmental contamination based on four categories of parties subject to liability (also commonly referred to as potentially responsible parties, or "PRPs"):

> (1) the owner and operator of a vessel or a facility; (2) any previous owner or operator during any time in which hazardous substances were disposed at a waste facility; (3) any person who arranged for disposal or treatment of hazardous substances at the waste facility; and (4) any person who transported hazardous substances to a waste facility.

*Id.*, (citing *Centerior Serv. Co. v. Acme Scrap Iron & Metal Corp.*, 153 F.3d 344, 347 n. 8 (6th Cir. 1998)); *see also Burlington N. and Santa Fe Ry. Co. v. United States*, 556 U.S. 599, 608 (2009) (recognizing that the liability imposed by CERCLA is "strict"). Section 107(a) further provides that those PRPs "shall be liable" for "all costs of removal or remedial action incurred by the United States Government or State or an Indian Tribe" and also for "any other necessary costs of response incurred by an other person." CERCLA, § 107(a)(4)(A)-(B). Therefore, under

---

[4] Except otherwise noted, section references are to the provisions of CERCLA.

9

§ 107(a)(4)(A) the government can recoup costs from PRPs while subsection (B) creates "an implied private right of action to recover 'necessary costs of response.'" *ITT Industries*, 506 F.3d at 456 (citation omitted).

As CERCLA was originally enacted, there was no provision which explicitly provided for a right of action for contribution. However, a number of courts held that although "CERCLA did not mention the word 'contribution' such a right arose either impliedly from provisions of the statute, or as a matter of federal common law." *Cooper Industries, Inc. v. Aviall Serv., Inc.*, 543 U.S. 157, 162 (2004) (collecting cases and noting that such a conclusion was "debatable" given the Supreme Court's refusal to recognize other implied rights to contribution in other federal statutes). CERCLA was amended in 1986 with the passage of the Superfund Amendments and Reauthorization Act of 1986 ("SARA"). *Id*. This amendment provided an express cause of action for contribution in certain circumstances, codified as CERCLA § 113(f)(1) and § 113(f)(3)(B). Therefore, "after SARA, CERCLA provided for a right to cost recovery in certain circumstances, § 107(a), and separate rights to contribution in other circumstances, §§ 113(f)(1), 113(f)(3)(B)." *Id*. at 163.

However, courts interpreting CERCLA after the passage of SARA began to expand the reach of § 113(f) by providing an exclusive remedy to PRPs and shrink the parameters of § 107(a) by providing cost recovery only to those 'innocent parties'. *United States v. Atlantic Research Corp.*, 551 U.S. 128, 132 (2007) (citation omitted). "But as courts prevented PRPSs from suing under § 107(a), they expanded § 113(f) to allow PRPs to seek 'contribution' even in the absence of a suit under § 106 or § 107(a)." *Id*.

In more recent case law, the Supreme Court attempted to flesh out the interplay between

CERCLA provisions § 107(a) and § 113(f) which are so often at loggerheads. In *Cooper Industries*, the Supreme Court held that pursuant to the plain language of the statute, a private party may only pursue contribution under § 113(f)(1) from other PRPs subject to certain conditions, namely "during or following" a civil action under § 106 or § 107. *Cooper Industries*, 543 U.S. at 161, 166. The Supreme Court's narrow reading of the § 113(f)(1) caused certain courts to "revisit" the issue of whether PRPs could sue for cost recovery under § 107(a) or whether a PRP's exclusive cause of action was through § 113(f). *Atlantic Research*, 551 U.S. at 133 (citations omitted).

Three years later, in *Atlantic Research*, the Supreme Court addressed the issue and held that "§ 107(a) provides so-called potentially responsible parties (PRPs) [] with a cause of action to recover costs from other PRPs." *Id.* at 131. The Supreme Court explained that "costs incurred voluntarily are recoverable only by way of § 107(a)(4)(B), and costs of reimbursement to another person pursuant to a legal judgment or settlement are recoverable only under § 113(f). Thus, at a minimum, neither remedy swallows the other..." *Id*. at 139 n. 6.

The *Atlantic Research* decision did not, however, resolve the tension between § 107(a) and § 113(f) but rather created a new playing field for these issues to unfold. Indeed, the Supreme Court left at least three critical questions unanswered in *Atlantic Research*: (1) the Supreme Court "assume[d] without deciding that § 107(a) provides for joint and several liability" (*Id*. at 140 n. 7); and (2) the Supreme Court declined to decide whether a PRP who sustains expenses pursuant to a consent decree or following a § 106 or § 107(a) suit (described as "compelled costs") could recover those costs through §§ 107(a), 113(f) or both (*Id*. at 139 n. 6.); and (3) the Supreme Court noted that "[b]ecause § 107(a) expressly permits PRPs to seek cost

recovery, we need not address the alternative holding of the Court of Appeals that § 107(a) contains an additional implied right to contribution for PRPs who are not eligible for relief under § 113(f)" (*Id*. at 141 n. 8).

**B.      Claim for Cost Recovery**

The Court now turns to the instant case and the novel issue presented: whether MichCon's claim for cost recovery under § 107(a) is barred by the SRA CD, which does not bar cost recovery claims by its plain terms. The SRA CD, states in relevant part:

> The Parties agree, and by entering this Consent Decree this Court finds, that the United States is entitled, as of the Effective Date, to <u>protection from Contribution actions or claims as provided by Section 113(f)(1) of CERCLA, 42 U.S.C. 9613(f)(1), or as may be otherwise provided by law, for "matters addressed" in this Consent Decree</u>. The "matters addressed" in this Consent Decree are Covered Matters as defined in Paragraph 4(b) hereof. Any rights the United States may have to obtain contribution or otherwise recover costs or damages from persons not party to this Decree are preserved.

(Dkt. No. 116, SRA CD, ¶7, emphasis added). "Covered Matters" are then defined in the SRA CD as:

> any and all past or future claims, including any contractual or Tort Claims, that were, could now be or hereafter could be asserted against the United States, to the extent that they arise from or are directly related to BOTH:
>
> (A)   Activities conducted by the Army Corps of Engineers in the Schaefer Road Settlement Area on or before the Effective Date; AND
> (B)   Pollutants, contaminants, solid wastes, Hazardous Wastes, and Hazardous Substances: (1) at or on the Schaefer Road Settlement Area on or before the Effective Date; (2) at or on the Schaefer Road Settlement Area on or before the Effective Date, but which have come to be, or will after the Effective Date ... come to be, located in any [other] place; or (3) that arise out of any conditions at the Schaefer Road Settlement Area, on or before the Effective Date.

(SRA CD, ¶4(b)).

As explained above, MichCon concedes that Count I of its Third-party Complaint which seeks contribution under § 113(f) is barred due to the plain language of the SRA CD. However, MichCon maintains that it has a viable claim against the United States for the voluntary costs it incurred in relation to the SRA property under § 107(a).

As an initial matter, the Court notes that the United States has not asserted that MichCon fails to set forth a prima facie claim for cost recovery.[5] Rather, the pertinent issue before the Court is whether a consent decree between the United States and Plaintiffs can foreclose a § 107(a) claim for voluntary costs incurred by MichCon for the reason that such a claim "shares sufficient attributes of common law contribution claims to fall within the scope of the [] "Protection Against Claims" provision of the [SRA CD]". (United States Br. 14 n.5). The Court finds that it does not.

Not surprisingly, the issue at hand is one regarding the rights of a PRP under § 107(a) and § 113(f)(1). Unlike the other multitude of cases which attempt to reconcile (or skirt) the overlap between § 107(a)(4)(B) and § 113(f)(1), the added wrinkle in this case is whether the United States can bar a cost recovery claim on the basis of a consent decree that prohibits contribution claims by non-settlors.

The United States contends that MichCon's status as a PRP (ergo liable under CERCLA) prevents it from invoking joint and several liability under § 107(a) for the costs it incurred. The

---

[5] To assert a prima facie claim for cost recovery pursuant to § 107(a), a party must set forth four elements: (1) the property at issue is a "facility"; (2) there has been a "release" or "threatened release" of a hazardous substance; (3) the release has caused the plaintiff to incur "necessary costs of response" that are "consistent" with the NCP [National Contingency Plan]; and (4) the defendant is in one of four categories of potentially responsible parties." *Reg'l Airport Auth. of Louisville v. LFG, LLC*, 460 F.3d 697, 703 (6th Cir. 2005). There is no dispute that all four of these elements have been set forth in MichCon's Third-party Complaint.

United States argues "the [§ 107] claim fundamentally remains one for contribution because MichCon admits its own liability for the contamination being addressed that it shares with other PRPs for the Schaefer Road Area, which is being cleaned up at the behest of, and under the strict oversight of, the MDEQ."[6] (United States Br. at 12). Therefore, the United States concludes that any costs MichCon seeks to recover (voluntary or otherwise) must be apportioned among all PRPs and cannot be recovered from just one party through § 107(a). The United States' argument can be reduced to this: (1) MichCon's § 107(a) claim must be construed as a contribution claim because its status as PRP mandates that it cannot invoke joint and several liability and (2) therefore MichCon's claim is barred by the SRA CD which prohibits a contribution claim "as may otherwise provided by law".

The reasoning behind United States' argument is inapposite to the holding in *Atlantic Research*. The Supreme Court recognized in *Atlantic Research* that under certain circumstances PRPs can recover under both § 107(a)(4)(B) and § 113(f)(1) but the two sections "provide two clearly distinct remedies." *Id*. at 137-38 (internal quotation marks and citation omitted). Specifically, "CERCLA provide[s] for a *right to cost recovery* in certain circumstances, § 107(a), and *separate rights to contribution* in other circumstances, §§ 113(f)(1), 113(f)(3)(B)." *Id*. at 138 (emphasis in original) (quotation marks and citation omitted). The Supreme Court has explained:

---

[6] The Court recognizes that MichCon vigorously disputes that it has admitted liability under CERCLA. However, whether MichCon's allegations in its Third-party Complaint amount to an admission of liability under CERCLA's strict liability framework is not an issue that need be decided at this time because even assuming MichCon's liability, the United States' argument fails (discussed *infra*). *See Burlington N.*, 556 U.S. at 608 (recognizing that the liability imposed by CERCLA is "strict").

> the remedies available in §§ 107(a) and 113(f) complement each other by providing causes of action "to persons in different procedural circumstances." Section 113(f)(1) authorizes a contribution action to PRPs with common liability stemming from an action instituted under §106 or §107(a). And § 107(a) permits cost recovery (as distinct from contribution) by a private party that has itself incurred cleanup costs. Hence, a PRP that pays money to satisfy a settlement agreement or a court judgment may pursue a § 113(f) contribution. But by reimbursing response costs paid by other parties, the PRP has not incurred its own costs of response and therefore cannot recover under § 107(a). As a result, though eligible to seek contribution under §113(f)(1), the PRP cannot simultaneously seek to recover the same expenses under § 107(a).

*Id*. at 139 (internal quotation marks and citations omitted). Therefore, a PRP that who alleges it voluntarily incurred cleanup costs can recover those expenses "only by way of § 107(a)(4)(B)", while "costs of reimbursement to another person pursuant to a legal judgment or settlement are recoverable only under § 113(f)." *Id*. at 139 n.6.

In this action, the United States relies upon a string of cases (all issued prior to *Atlantic Research*) for the proposition that PRP remedies under § 107(a)(4)(B) sound in "contribution." (United States Br. at 12 n.4). The primary case the United States relies on for this proposition is *Centerior*, a CERCLA case in which the United States Court of Appeals for the Sixth Circuit held a party seeking an apportionment of costs attributable to contamination for which all parties were liable was a "quintessential" claim for contribution. *Id*., 153 F.3d at 351. The Sixth Circuit explained in *Centerior* that cost recovery actions under § 107(a) brought by PRPs were "necessarily action for contribution, and are therefore governed by the mechanisms set forth in § 113(f)." *Id*. at 350. However, as Judge Cleland explained in a previous Opinion and Order in this case the analysis in *Centerior* "does not survive" *Atlantic Research*, and therefore, to determine whether a party's claim was one of contribution, <u>a court must look to what type of cost was incurred rather than the nature of the liability at issue</u>. (Dkt. No. 36 at 13-14) (emphasis

15

added). Further, the Sixth Circuit has recognized the abrogation of *Centerior* in a more recent decision, explaining that,

> contrary to *Centerior's* interdependent construction of [CERCLA], *Atlantic Research* reiterated that the remedies provided under CERCLA are 'clearly distinct.' Therefore, the appropriateness of a § 107(a) cost recovery or § 113(f) contribution action varies depending on the circumstances leading up to the action, not the identity of the parties.

*ITT Indus.*, 506 F.3d at 458. Therefore, the United States' argument that MichCon's cost recovery claim must be recast as one for contribution is based on an argument that did not and cannot survive the analysis in *Atlantic Research*.

Further, the Supreme Court noted in *Atlantic Research* that the government "use[d] the word 'contribution' as if it were synonymous with any apportionment of expenses among PRPs ... [and] [t]his imprecise usage confuses the complementary yet distinct nature of the rights established in §§ 107(a) and 113(f)." *Atlantic Research*, 551 U.S. at 138 (internal citations omitted). This "imprecise usage" is at the heart of the United States' current (and apparently recycled) argument that MichCon's very status as a PRP (liable under CERCLA) prohibits it from asserting a cost recovery claim against another PRP. Following the United States' reasoning, any action by a PRP against another PRP will be one that "sounds" in contribution, where all PRPs are strictly liable under the framework of CERCLA. *See* CERCLA § 107(a)(1)-(4); *see Atlantic Research*, 551 U.S. at 138 (noting same parenthetically). As *Atlantic Research* held a PRP can bring a cost recovery claim pursuant to § 107(a) against another PRP this reasoning is no longer sound. Therefore, the United States' contention that this Court should restyle MichCon's cost recovery claim into a claim for contribution due to the fact MichCon shares liability with other PRPs would obviate any distinction between a § 107(a) claim and a

16

contribution claim under § 113(f).

After arguing that the § 107(a) claim must be found to be a contribution claim masquerading in a sheep's clothing (or as a cost recovery claim as it were), the United States goes on to argue that the Protection Against Claims Provision in the SRA CD bars such a claim and that to allow otherwise would wrongfully deprive it of the primary benefit of settling with Plaintiffs. (United States' Br. at 16). The United States relies upon federal common law to make this connection contending that the language "or as may be otherwise provided by law, for 'matters addressed' in this Consent Decree" recognizes "the common law protection affirmed in the Protection Against Claims Provision".[7] (United States' Reply Br. at 4). The United States relies upon the maritime case of *McDermott, Inc. v. Amclyde*, 511 U.S. 202, 210-11 (1994) for the proposition that federal common law provides that private settlements between less than all the defendants and set forth in consent decrees offer protection against contribution claims regarding matters addressed in those settlements.[8]

---

[7] There is no dispute that MichCon's claim would fall within the "matters addressed" in the SRA CD.

[8] The Court notes that *McDermott* is a maritime case upon which the Sixth Circuit has never relied for any point of federal common law. Further, the Court notes that there is no case law, binding or otherwise, on point for this particular issue (that a CERCLA consent decree may bar a cost recovery claim asserted by a non-settling party). In *McDermott*, the issue presented was whether "the liability of the nonsettling defendants should be calculated with reference to the jury's allocation of proportionate responsibility, or by giving the nonsettling defendants a credit for the dollar amount of the settlement." *Id*. at 204. The Supreme Court evaluated three alternative approaches to determining the liability and held that following the proportionate approach was the correct path. *Id*. As the United States accurately describes, the Supreme Court did reject a settlement approach that would have preserved the rights to a contribution claim for nonsettling defendants, finding that "it discourages settlement, because settlement can only disadvantage the settling defendant." *Id*. at 210-11. Further, the Supreme Court noted the claims for contribution would burden the courts with additional litigation. *Id*. The Supreme Court went on to find that the although the other two approaches (pro tanto and proportionate

17

The inconvertible fact remains that MichCon's claim is not a contribution claim, but one for cost recovery. The United States' argument that federal common law works to bar MichCon's claim hangs on the assumption that the Court can refashion MichCon's cost recovery claim into a contribution claim. As set forth *supra*, the United States' argument based on MichCon's alleged status as a PRP cannot bridge that gap. Therefore, to the extent that the United States argues that MichCon's § 107(a) claim must be found to be a "contribution" claim because of MichCon's status as a PRP, the argument is rejected.[9]

## V. CONCLUSION

---

share) were closely matched, the proportionate share approach won the day because it was more consistent with a previous maritime decision, *United States v. Reliable Transfer Co.*, 421 U.S. 387, 409 (1975). *Id.* at 217 (The Court also recognized that it had previously abandoned the rule of "divided damages" in *Reliable Transfer*, therefore, being consistent with this new case law was one of the "paramount" considerations in evaluating the possible alternatives.).

While the Court recognizes that there are CERCLA cases which bar *contribution claims* of parties against private settling defendants based on judicial economy and consistency with CERCLA's objectives to obtain quick cleanups, the United States did not cite and this Court could not find, any case law in any district barring cost recovery claims of private settling defendants for these reasons. *See Resp. Envtl. Solutions Alliance v. Waste Mgmt., Inc.*, No. 04-013 2001 WL 382617 (S.D. Ohio, Feb. 3, 2011); *Foamseal, Inc. v. Dow Chem. Co.*, 991 F. Supp. 883 (E.D. Mich. 1998).

[9] MichCon has asserted in its Third-party Complaint that its costs were voluntary such that the costs are not the result of a judgment, settlement or administrative order regarding the SRA. (Compl. 22). The United States argues that MichCon's costs were not actually voluntarily incurred because they are in response to Ford and Severstal's cleanup which is compelled pursuant to a state administrative order. (United States Br. at 14). This issue is one that implicates a question left open by the Supreme Court in *Atlantic Research*; whether costs compelled by an administrative order or judicial settlement are recoverable under §§ 107(a), 113(f) or both. *Atl. Research*, 551 U.S. at 139 n.6. To the extent the United States argues that the costs should be viewed as compelled rather than voluntary, this inquiry is not well suited to a motion to dismiss. This ruling is not on a motion for summary judgment and the Court will not become involved in the weighing of allegations regarding the necessity of these costs. MichCon has pled that these costs were necessary and Judge Cleland specifically rejected Plaintiffs' arguments to the contrary. (*See* Dkt. No. 69).

For all these reasons, the Court DENIES the United States' Motion to Dismiss the Third-party Complaint (Dkt. No. 120).

**IT IS SO ORDERED.**

s/Paul D. Borman
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated:  January 23, 2014

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on January 23, 2014.

s/Deborah Tofil
Case Manager