UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FORD MOTOR COMPANY, and
AK STEEL CORPORATION,

       Plaintiffs/Counter-Defendants,             Case No. 08-13503

v.                                              Paul D. Borman
                                              United States District Court

MICHIGAN CONSOLIDATED GAS
COMPANY,

       Defendant/Counter-Plaintiff,
       Cross-Plaintiff,

v.

UNITED STATES OF AMERICA,

       Defendant/Cross-Defendant.

_____/

## OPINION AND ORDER GRANTING UNITED STATES' MOTION FOR JUDGMENT ON THE PLEADINGS (ECF NO. 162) AND GRANTING PLAINTIFFS' AND UNITED STATES' MOTION TO CERTIFY THE SCHAEFER ROAD AREA CONSENT DECREE FOR APPEAL (ECF NO. 154)

### I.  INTRODUCTION AND PROCEDURAL HISTORY

Now before the Court is the United States' Motion for Judgment on the Pleadings pursuant to Federal Rule of Civil Procedure 12(c) which was filed on June 4, 2014.  (ECF No. 162).  Previously, on January 23, 2014, this Court denied the United States' Motion to Dismiss MichCon's Third-Party Complaint.  (ECF No. 148).  Thereafter, the United States filed its Answer and a Counterclaim to MichCon's Third-Party Complaint.  (ECF No. 159)

On June 18, 2014, Michigan Consolidated Gas Company ("MichCon") filed a Motion to Strike the United States' Motion for Judgment on the Pleadings contending the motion was

duplicitous of its previous motion to dismiss. (ECF No. 165). After briefing, the Court issued an

Opinion and Order denying MichCon's Motion to Strike and establishing a briefing schedule.

(ECF No. 171). MichCon filed a Response to the Motion for Judgment and the United States

filed its Reply. (ECF Nos. 175, 178).

Also before the Court is the United States' request that the Court certify the Schaefer

Road Area Consent Decree for appeal pursuant to FED. R. CIV. P. 54(b). (ECF No. 120). The

United States made the request in its previous motion to dismiss pursuant to FED. R. CIV. P.

12(b)(6). The Court declined to address the issue at that time. Plaintiffs Ford Motor Company

and AK Steel Corporation have filed a separate motion also seeking to certify that decree for

appeal.[1] (ECF No. 154). MichCon filed a response and Plaintiffs thereafter filed a reply. (ECF

Nos. 156, 157).

## II. BACKGROUND

The Court previously set forth a brief recitation of the history of the Rouge

Manufacturing Complex and Schaefer Road Area relevant to these proceedings:

> In the late 1910s, Ford Motor Company ("Ford") built the Rouge
> Manufacturing Complex ("RMC") in Dearborn, Michigan. The RMC was a
> vertically integrated automotive production plant. The operations at the plant
> were "comprehensive and encompassed all phases of production, from the
> processing of raw materials through the manufacture and assembly of finished
> products." (Third-party Complaint ("T-P Complaint"), Dkt. No. 71, ¶ 8).
>
> Among other things, the RMC engaged in coke oven production (utilizing

---

[1] On January 12, 2015, the parties filed a "Stipulated Order to Amend Caption". (ECF
No. 179). Pursuant to that stipulation, "AK Steel Corporation, a Delaware corporation" has been
substituted in the place of "Severstal Dearborn, LLC" as a plaintiff in this action. This change
reflects AK Steel Corporation's purchase of Severstal Columbus Holdings, LLC's membership
interest in Severstal Dearborn, LLC and Severstal Dearborn, LLC's merger with and into AK
Steel Corporation. (*Id.*).

up to 183 coke ovens) involving the destructive distillation of coal from 1919 through 1987. (T-P Compl. ¶ 10). The operation of these coke ovens resulted in the production of gas and by-products. (T-P Compl. ¶ 10). Currently, the RMC is being regulated as an "active and ongoing corrective action facility under the Resource Conservation and Recovery Act ("RCRA") and the Natural Resources and Environmental Protection Act ("NREPA"). (T-P Compl. ¶ 11).

MichCon, or its predecessor, once owned a parcel of land located immediately west of the RMC and the original River channel. (T-P Compl. ¶ 12). From 1968 until 1973, the Army Corps of Engineers ("Army Corps") rechanneled the River in response to a 1947 flood. (T-P Compl. ¶ 14). In 1968, prior to the River being rechanneled, MichCon sold 22 acres of its land parcel to Ford. (T-P Compl. ¶ 13). Prior to the rechanneling project, these 22 acres were located on the west side (the "MichCon" side) of the original River channel, however, the rechanneling caused those acres to be relocated on the east side (the "Ford" side) of the new River channel. (T-P Compl. ¶ 14). The 22 acres are now part of a larger area known in this litigation as the Schaefer Road Area ("SRA").[2] (T-P Compl. ¶ 13). MichCon retains ownership of the land to the west of the new River channel. (T-P Compl. ¶ 15).

MichCon alleges that during the rechanneling of the River, the Army Corps "excavated through an open dump operated by the City of Melvindale, a portion of MichCon's former waste water ponds, sediments in the former River channel, and one of Ford's SRA sludge ponds that Ford had operated since 1954." (T-P Compl. ¶ 16). MichCon contends that the Army Corps' activities "disrupted, displaced, and relocated substantial volumes of contaminated material" and that contaminated material was then used as "fill" in other areas of the SRA. (T-P Compl. ¶ 16). MichCon further alleges that the Army Corps installed a concrete channel, pea gravel bed, dewatering pipe and pressure relief vents that created a "preferential pathway" which allowed contamination to more easily migrate. (T-P Compl. ¶ 17). MichCon asserts that due to the detection of hazardous substances and metals being detected on the SRA in excess of applicable cleanup criteria, the SRA is a "facility" under CERCLA, § 101(9).

---

[2] Although "SRA" is used in MichCon's Third-party Complaint, it is not defined. However, MichCon attaches and refers to Plaintiffs' First Amended Complaint in its Third-party Complaint as Exhibit A. (*See* T-P Compl. ¶ 23, Ex. A). As the First Amended Complaint defines the SRA, the Court relies upon that definition for purposes of this motion. "The [SRA] Property, which is the principal property at issue in this litigation, is approximately 48 acres, is entirely on the east side of the new River channel, and includes the original river channel and a portion of the former [Manufactured Gas Plant] site. The 48 acres consists of the 26 acres Ford acquired in 1938 [] and the 22 acres acquired in 1968 []." (Pls.' First Amend. Compl. ¶ 18).

MichCon alleges that it has incurred and will continue to incur "necessary response costs" including the retention of environmental consultants who have: (1) analyzed the SRA property; (2) analyzed nearby properties; (3) analyzed the extent of the contamination at or emanating from the SRA and nearby properties; (4) investigated and evaluated the releases and the causes of contamination at the SRA and nearby properties requiring the remediation as a result of releases by the United States and other parties; (5) evaluated any migration to MichCon's current property; (6) analyzed potential remedial measures; (7) analyzed response activities proposed by Ford and [AK Steel], and (8) provided comments to the Michigan Department of Natural Resources and Environment on the scope and adequacy of the investigations and effectiveness of the Proposed Remedy. (T-P Compl. ¶¶ 37, 39).

(Opinion and Order, ECF No. 148, *3-5).

## A.    Ford and AK Steel's Claims against MichCon

Ford and AK Steel (collectively, "Plaintiffs") are involved in designing a permanent remedy for the contamination of the SRA and are under the oversight of the Michigan Department of Environmental Quality ("MDEQ"). (T-P Compl. ¶¶ 39, 40). Plaintiffs are incurring and will continue to incur costs as a result these activities. (T-P Compl. ¶ 23; *see also* Ex. A, Pl.'s First Am. Compl.). To this end, in 2000, Ford entered in to a Corrective Action Consent Order ("CACO") with the MDEQ to address the contamination at the SRA. (*Id*. at ¶ 28).

In August 2008, Plaintiffs filed the underlying action against MichCon (and the genesis of all litigation between the Plaintiffs, MichCon and the United States since) seeking, in relevant part, cost recovery and contribution pursuant to the sections 107(a) and 113(f) of Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. §§ 9607(a), 9613(f)[3], from MichCon relating to the remediation of contamination at the SRA in accordance

_____

[3] For ease of reference, citations to CERCLA throughout this opinion will generally not provide the parallel U.S. Code citation. However, in general, CERCLA § 1xx can be found at 42

with the CACO.  (ECF No. 1).  In December 2011, in the face of MichCon's first motion to dismiss (ECF No. 13), Plaintiffs amended their complaint and set forth claims for cost recovery and contribution from MichCon under CERLCA §§ 107(a), 113(f), claims of contribution and cost recovery pursuant to NREPA, as well as a claim of common law indemnification all relating to Plaintiffs' costs incurred in the clean up of the SRA.  (ECF No. 16).  After Plaintiffs' amended their complaint, MichCon filed a second motion to dismiss arguing that Plaintiffs could not seek cost recovery pursuant to CERCLA, § 107 (and its Michigan counterpart, NREPA) because its costs were not incurred "voluntarily".  (ECF No. 21).  MichCon also argued that Plaintiffs' contribution claims pursuant to CERCLA, § 113 (and its Michigan counterpart, NREPA) should be dismissed because the CACO did not qualify as a judicial or administrative settlement pursuant to § 113(f)(3)(B).

On September 29, 2009, United States District Judge Robert Cleland issued an Opinion and Order ("the 2009 Opinion") that mooted MichCon's first motion to dismiss, and granted in part its second motion to dismiss.  *See* 2009 Opinion, No. 08-13503, 2009 WL 3190418 (E.D. Mich. Sept. 29, 2009) (available on the docket at ECF No. 36).  In its Opinion, the Court examined the then recent Supreme Court decision of *Atlantic Research*, stating that the Supreme Court had held that potentially responsible parties under CERCLA "could maintain a cause of action under either § 107(a) or § 113(f), depending on the particular 'procedural circumstance[ ]'."  *Id.* at * 5 (quoting *United States v. Atlantic Research Corp*., 551 U.S. 128, 131 (2008).  Significantly, the Court held that Plaintiffs' cost recovery claim pursuant to CERCLA § 107(a) could continue, finding that

---

U.S.C. § 96xx, *i.e.*, CERCLA § 113 is found at 42 U.S.C. § 9613.

5

the focus of the *Atlantic Research* court's reasoning is determining the type of
costs sought to be recovered.  If the party is seeking recovery of direct costs
incurred in cleaning a site, the claim must be brought under § 107.  If the party is
seeking to recover indirect costs incurred in reimbursing another party for their
costs, the claim must be brought under § 113.

*Id*. at *7 (citing *United States v. Atl. Research Corp*., 551 U.S. 128, 139 (2007)).  In a footnote,

the Court also harmonized its reasoning with *ITT Industries, Inc. v. BorgWarner, Inc*., 615

F.Supp.2d 640 (W.D. Mich. Mar. 31, 2009) (Bell, J.) (hereinafter "*ITT Industries II*").  2009

Opinion, at *7 n. 4.

In *ITT Industries II*, United States District Judge Robert Holmes Bell explained:

*Atlantic Research* held that "the remedies available in §§ 107(a) and 113(f)
compliment each other by providing causes of action 'to persons in different
procedural circumstances.' Consistent with the language of the statute and the
case law, the relevant procedural circumstances are whether the plaintiff has been
subject to an enforcement action under § 106 or § 107.  If it has, then the plaintiff
is limited to a § 113(f) contribution claim.  If it has not, the plaintiff can bring a §
107 claim.

*Id*. at 647 (internal citation omitted).  Judge Cleland acknowledged this reasoning and

harmonized it with its finding, noting that in the present action "there was no indication" that

Plaintiffs had been subject to a § 107 claim, therefore, Plaintiffs' own § 107 claim was not

foreclosed by Judge Bell's reasoning.  *Id*.  Judge Cleland also found there was nothing in the text

of CERCLA that indicated that a party could not seek non-voluntary costs in addition to

voluntary costs through a § 107(a) claim, and that construing the Amended Complaint in a light

most favorable to Plaintiffs, Plaintiffs had adequately alleged that they had incurred voluntary

costs in cleaning up the SRA that were not a result of the CACO.  2009 Opinion, at *8-9.

Judge Cleland also held in the 2009 Opinion that Plaintiffs' contribution claim failed to

state a claim upon which relief could be granted because Plaintiffs failed to plead facts sufficient

6

to show that the Plaintiffs' agreement with the State regarding the clean up of the SRA qualified as a judicial or administrative settlement pursuant to CERLCA. *See* 2009 Opinion, at *11-14. Specifically, the Court found that the Sixth Circuit's holding in *ITT Industries, Inc. v. BorgWarner, Inc*., 506 F.3d 452 (6th Cir. 2007) (hereinafter "*ITT Industries I*"), that held an agreement pursuant to § 122(a) did not qualify as an "administrative or judicially approved settlement". 2009 Opinion, at *11 (quoting *ITT Industries I*, 506 F.3d at 460). Judge Cleland noted that this reasoning was also consistent with Judge Bell's recent *ITT Industries* holding because in this instance where the Plaintiffs did not have a § 113(f) claim but had adequately pleaded their § 107 claim, there was no potential for overlap in recoveries for Plaintiffs. 2009 Opinion, at *7 n. 4.

**B.      MichCon's Counterclaim against Ford and AK Steel**

On October 30, 2009, MichCon filed its Counterclaim against the Plaintiffs (ECF No. 40). In its counterclaim, MichCon set forth a contribution claim pursuant to CERCLA §113(f), a cost recovery claim pursuant to CERCLA § 107, and the corresponding NREPA provisions. (*Id*.). Thereafter, on November 15, 2009, Plaintiffs filed a partial motion to dismiss MichCon's Counterclaims. (ECF No. 42).

In December 2009, the parties attempted private facilitation, but the attempt was not fruitful. On August 27, 2010, Judge Cleland issued an opinion and order granting Plaintiffs' partial motion to dismiss MichCon's Counterclaims. (ECF No. 55). However, following a motion for reconsideration, the Court allowed MichCon to file an Amended Counterclaim against the Plaintiffs which reasserted its CERLCA claims and corresponding NREPA claims. (ECF Nos. 69, 70).

C.      **Consent Decrees and claims against the United States**

In an earlier, separate case before United States District Judge Bernard A. Friedman in 2004, *Ford Motor Co. v. United States*, No. 04-72018 (E.D. Mich.) ("*Ford I*"), Ford and the United States engaged in settlement negotiations regarding the Rouge Manufacturing Complex ("RMC") and the Schaefer Road Area ("SRA").  (Dkt. No. 115, Opinion and Order Granting Consent Decree at 6-7).  Two proposed consent decrees were agreed upon by Ford, AK Steel and the United States.  (*Id*.).  The *Ford I* consent decree resolved the United States' liability as to all liability regarding contamination at or emanating from the RMC *except* for the liability attributable to the Army Corps' rechanneling project.  (ECF No. 120, Ex. 2).  This consent decree regarding the RMC was approved and entered by Judge Friedman in *Ford I*.  However, Judge Friedman declined to enter the second consent decree addressing the SRA because it is the subject of this litigation, and he directed the parties to file the consent decree regarding the SRA in this action. (*Id*.).

It appears that settlement discussions between Ford, AK Steel, the United States, as well as MichCon were on-going at the end 2009 and throughout 2010.  However, MichCon was unable to settle its issues with the Plaintiffs or the United States.  Therefore, MichCon was granted leave to file a third-party complaint in this action which set forth a contribution claim and a cost recovery claim pursuant to CERCLA against the United States for their alleged involvement in exacerbating pollution in the SRA.  (ECF Nos. 61, 62).

Eventually through a series of stipulations in December 2011, the Plaintiffs filed a Third Amended Complaint (which is the currently pending and still live complaint in this matter) against MichCon *and* the United States.  (ECF No. 105).  Plaintiffs asserted a § 107(a) cost

recovery claim against MichCon and also asserted a new contribution claim pursuant § 113(f)(1) against MichCon based on MichCon's § 107 counterclaim against the Plaintiffs.  (ECF No. 105, Third Am. Compl. at ¶¶ 44-52).  Plaintiffs also asserted cost recovery and contribution claims under CERCLA against the United States.  The same day Plaintiffs filed their Third Amended Complaint, they contemporaneously filed a motion for entry of the SRA consent decree.  (ECF No. 106). The Court granted Plaintiffs' motion to enter the consent decree (over MichCon's objections) on September 28, 2012 (ECF No. 115), and on October 9, 2012, the Consent Decree ("SRA CD") was entered in this action between the United States, Ford and AK Steel (ECF No. 116 *see also* ECF No. 120, Ex. 3).  The SRA CD resolved all claims (whether asserted or not) by the Plaintiffs against the United States regarding the SRA in this action.[4]  (ECF No. 116).

D.     **MichCon's Third-party Complaint against the United States**

Prior to the entry of the SRA CD, on May 11, 2011, MichCon filed its Third-party Complaint against the United States.  (ECF No. 71).  In its Third-Party Complaint, MichCon asserted a contribution claim under CERCLA, § 113(f) and a cost recovery claim under CERCLA § 107(a) against the United States.  (T-P Compl.  ¶¶ 25-30).  The United States originally sought to dismiss MichCon's Third-party Complaint based on the argument that MichCon's claims were barred under the SRA CD.  MichCon conceded in previous briefing that its § 113 contribution claim against the United States was barred under the SRA CD.  (*See* ECF No. 123).  However, MichCon argued, and this Court agreed, that its § 107 claim against the

_____

[4] The Court notes that "[i]n the SRA CD, the SRA Settlement Area is larger than simply the SRA.  It also includes 'other small portions of land not currently or previously owned by Ford or [AK Steel], and the segment of the Rouge River adjacent to the 48-acre parcel.'"  (ECF No. 116, Opinion and Order Granting Plaintiff's Motion for Entry of a Consent Decree, at 5 (citation omitted)).

United States was not barred by the terms of the SRA CD.  (S*ee* ECF No. 148).

     As stated previously, the United States has since answered MichCon's Third-party complaint and filed its own counterclaim against MichCon.  (ECF No. 155).  The United States asserts  a contribution claim against MichCon pursuant to § 113(f)(1), asking the Court that to the extent it determines that the United States is liable under § 107(a) as asserted by MichCon, that the Court then allocate the costs assessed among PRPs pursuant to § 113(f)(1).  (ECF No. 155).

### III. STANDARD OF REVIEW

     "Motions for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) are analyzed under the same de novo standards as motions to dismiss pursuant to Rule 12(b)(6)."  *Sensations, Inc. v. City of Grand Rapids*, 526 F.3d 291, 295 (6th Cir. 2008) (citing *Penny/Ohlmann/Nieman, Inc. v. Miami Valley Pension Corp*., 399 F.3d 692, 697 (6th Cir. 2005)).  Indeed, "the legal standards for adjudicating Rule 12(b)(6) and Rule 12(c) motions are the same ..."  *Lindsay v. Yates*, 498 F.3d 434, 437 n. 5 (6th Cir. 2007).  Therefore, "all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment."  *Poplar Creek Dev. Co. v. Chesapeake*, 636 F.3d 235, 240 (6th Cir. 2011) (citation omitted). The Sixth Circuit has explained that:

> Although a complaint need not contain "detailed factual allegations," it does require more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Thus, a complaint survives a motion to dismiss if it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009).  And, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Hensley Mfg. v. ProPride, Inc*., 579 F.3d 603, 609 (6th Cir. 2009) (quoting *Iqbal*, 129 S.Ct. at 1949).

*Reilly v. Vadlamudi*, 680 F.3d 617, 622-23 (6th Cir. 2012).

# IV. ANALYSIS

## A. Motion for Judgment on the Pleadings pursuant to Rule 12(c)

1.    CERCLA Framework

The Sixth Circuit has explained that CERCLA, "facilitates cleanup and remediation of contaminated lands, and shifts the financial burden of such environmental response actions to the parties responsible for releasing hazardous substances." *ITT Industries I*, 506 F.3d at 456 (6th Cir. 2007) (citation omitted).  To accomplish this goal, § 107(a) of CERCLA imposes strict liability for environmental contamination based on four categories of parties subject to liability (also commonly referred to as potentially responsible parties, or "PRPs"):

> (1) the owner and operator of a vessel or a facility; (2) any previous owner or operator during any time in which hazardous substances were disposed at a waste facility; (3) any person who arranged for disposal or treatment of hazardous substances at the waste facility; and (4) any person who transported hazardous substances to a waste facility.

*Id.* (citing CERCLA § 107(a)(1)-(4); 42 U.S.C. § 9607(a)(1)-(4) and *Centerior Serv. Co. v. Acme Scrap Iron & Metal Corp*., 153 F.3d 344, 347 n. 8 (6th Cir. 1998)); *see also Burlington N. and Santa Fe Ry. Co. v. United States*, 556 U.S. 599, 608 (2009) (recognizing that the liability imposed by CERCLA is "strict").  To assert a *prima facie* claim for cost recovery pursuant to § 107(a), a party must set forth four elements:

> (1) the property at issue is a "facility"; (2) there has been a "release" or "threatened release" of a hazardous substance; (3) the release has caused the plaintiff to incur "necessary costs of response" that are "consistent" with the NCP [National Contingency Plan]; and (4) the defendant is in one of four categories of potentially responsible parties.

11

*Reg'l Airport Auth. of Louisville v. LFG, LLC*, 460 F.3d 697, 703 (6th Cir. 2005) (citation omitted). There is no dispute that all four of these elements have been set forth in MichCon's Third-party Complaint.

In its recent decision, *Hobart Corp. v. Waste Management of Ohio, Inc.*, 758 F.3d 757 (6th Cir. 2014), the Sixth Circuit attempted to unwind CERCLA's "complicated network of cost-shifting provisions, which apply depending on who pays what and why." *Id*. at 762. The Sixth Circuit explained that under CERLCA the government has the ability to clean up a site itself pursuant to § 104, or it may compel a PRP to clean up the site through § 106, or the government may chose to enter into an agreement with a PRP pursuant to § 122 wherein the PRP must clean up the site. *Id*. "If the government removes the waste and remediates the site, it may recover its response costs from PRPs under § 107(a)(4); if a private party actually incurs response costs rehabilitating the site, it may partially recover those response costs under § 107(a)(4)(B)." *Id*. (citing *United States v. Atlantic Research Corp*., 551 U.S. 128, 131 (2007)). A party sued pursuant to a § 106 or § 107 action brought by either the government or a private party may then, in response, seek contribution from other PRPs by bringing a § 113(f)(1) contribution claim, "so that the recovery costs can be distributed in an equitable fashion." *Id*. (citing *Cooper Industries, Inc. v. Availl Servs., Inc*., 542 U.S. 157, 161 (2004)).[5]

The framework of CERCLA is better understood with some context and background.

_____

[5] In *Hobart,* the Sixth Circuit also noted that while the Supreme Court assumed without deciding whether § 107(a) imposes joint-and-several liability upon PRPs in *Atlantic Research*, in a later case, *Burlington Northern*, the Supreme Court held that "joint-and-several liability is not appropriate in every case; rather, liability must be divided according to its common-law principles." 758 F.3d at 762 n. 1 (citing *Burlington Northern*, 556 U.S. at 613-14). The Sixth Circuit also expressly declined to address the issue of whether a § 107(a)(4) imposes joint-and-several liability on PRPs in all cases. *Id*.

Originally, when CERCLA was enacted, there was no provision which explicitly provided a right of contribution. However, a number of courts held that although "CERCLA did not mention the word 'contribution' such a right arose either impliedly from provisions of the statute, or as a matter of federal common law." *Cooper Indus.*, 543 U.S. at 162 (collecting cases and noting that such a conclusion was "debatable" given the Supreme Court's refusal to recognize other implied rights to contribution in other federal statutes). CERCLA was amended in 1986 with the passage of the Superfund Amendments and Reauthorization Act of 1986 ("SARA"). *Id.* This amendment provided an express cause of action for contribution in certain circumstances, codified as CERCLA § 113(f)(1) and § 113(f)(3)(B). Therefore, "after SARA, CERCLA provided for a right to cost recovery in certain circumstances, § 107(a), and separate rights to contribution in other circumstances, §§ 113(f)(1), 113(f)(3)(B)." *Id.* at 163.

However, courts interpreting CERCLA after the passage of SARA began to expand the reach of § 113(f) (providing an exclusive remedy to PRPs) and by the same token shrink the scope of § 107(a) (providing cost recovery only to those 'innocent parties'); "[b]ut as courts prevented PRPSs from suing under § 107(a), they expanded § 113(f) to allow PRPs to seek 'contribution' even in the absence of a suit under § 106 or § 107(a)." *Atl. Research*, 551 U.S. at 132 (citation omitted).

In more recent case law, the Supreme Court has attempted to delineate the hazy, troublesome boundaries between CERCLA provisions § 107(a) and § 113(f). Indeed, as the Sixth Circuit noted recently "[n]o one accuses CERCLA of being a well-drafted or easy-to-follow statute." *Hobart*, 758 F.3d at 772 (citations omitted). In *Cooper Industries*, the Supreme Court held that pursuant to the plain language of the statute, a private party may only pursue

13

contribution under § 113(f)(1) from other PRPs subject to certain conditions, namely "during or following" a civil action under § 106 or § 107. *Cooper Industries, Inc.*, 543 U.S. at 166. That decision caused some courts to revisit the issue of whether PRPs could sue for cost recovery under § 107(a) or whether a PRP's exclusive cause of action was through § 113(f). *Atl. Research*, 551 U.S. at 133 (citations omitted).

Three years later, in *Atlantic Research*, the Supreme Court resolved an issue left open in *Cooper Industries*, finding that "§ 107(a) provides so-called potentially responsible parties (PRPs) [] with a cause of action to recover costs from other PRPs." *Id.* at 131. The Supreme Court reiterated that "§§ 107(a) and 113(f) provide two 'clearly distinct' remedies" (*Id.* at 138 (quoting *Cooper Indus.*, 543 U.S. at 162 n. 3)) and explained that:

> Section 113(f) explicitly grants PRPs a right to contribution. ... The statute authorizes a PRP to seek contribution "during or following" a suit under § 106 or § 107(a). 42 U.S.C. § 9613(f)(1).[] Thus, § 113(f)(1) permits suit before or after the establishment of common liability. In either case, a PRP's right to contribution under § 113(f)(1) is contingent upon an inequitable distribution of common liability among liable parties.
>
> By contrast, § 107(a) permits recovery of cleanup costs but does not create a right to contribution. A private party may recover under § 107(a) without any establishment of liability to a third party. Moreover, § 107(a) permits a PRP to recover only the costs it has "incurred" in cleaning up a site. 42 U.S.C. § 9607(a)(4)(B). When a party pays to satisfy a settlement agreement or a court judgment, it does not incur its own costs of response. Rather it reimburses other parties for costs that those parties incurred.
>
> Accordingly the remedies available in § 107(a) and § 113(f) complement each other by providing cause of action "to persons in different procedural circumstances."

*Atl. Research*, 551 U.S. at 138-39 (internal citation and footnote omitted). The Supreme Court recognized that it was not settling the question of whether "compelled" costs (costs that a PRP sustains pursuant to a consent decree or after a § 106 or § 107 action) would be recoverable as

under § 107(a), § 113(f) or both. *Id*. at 139 n. 6.  Rather, the Supreme Court merely noted that

for its "purposes" it was enough that "costs incurred voluntarily are recoverable only by way of §

107(a)(4)(B), and costs of reimbursement to another person pursuant to a legal judgment or

settlement are recoverable only under § 113(f).  Thus, at a minimum, neither remedy swallows

the other ...". *Id*.

**2.      The Parties' Arguments**

As set forth in detail *supra*, Plaintiffs originally brought §§ 107(a) and 113(f)(3)(B)

claims against MichCon regarding their costs (past and continuing) in cleaning up the SRA site.

(ECF No. 1).  In response, MichCon filed its Amended Counterclaim against Plaintiffs seeking

cost recovery under § 107 for MichCon's voluntary response costs related to monitoring the

SRA site and a contribution claim pursuant to § 113 for any potential liability stemming from

Plaintiffs' § 107(a) claim against MichCon.[6]  (ECF No. 70).  MichCon then filed a third-party

complaint against the United States seeking to recover its voluntary costs incurred under §

107(a) and also asserting a § 113(f)(1) contribution claim against the United States claiming that

to the extent MichCon is found liable for the response costs sought by Plaintiffs, the United

States would be liable as a PRP to MichCon for its equitable share of costs related to the clean

up of SRA site.  (ECF No. 71).

After the Court entered the consent decree between the Plaintiffs and the United States,

MichCon acquiesced in previous briefing that its § 113(f) contribution claim against the United

---

[6] In its most recent Third Amended Complaint, Plaintiffs continue to seek § 107 response costs for the costs they incurred remediating the SRA site as well asserting a § 113(f)(1) claim against MichCon seeking contribution in anticipation of any liability pursuant to MichCon's pending § 107 counterclaim against Plaintiffs.  (ECF No. 105).

15

States was barred by the language of the Consent Decree.   Now before the Court is the question

of whether MichCon's § 107(a) claim may continue against the United States.

     a.     United States' Argument

The United States moves for this Court to dismiss MichCon's § 107 claim arguing that

MichCon is foreclosed from asserting a § 107 claim against the United States because at the time

MichCon asserted that claim, it was subject to Plaintiffs' pending § 107(a) claim and therefore it

was entitled to *only* bring a § 113(f)(1) contribution claim against the United States.  The United

States accurately notes what the Sixth Circuit has recently concluded: that § 107(a)(4)(B) and §

113(f) provide for "mutually exclusive remedies" and "[e]very one of our sister circuits to reach

this issue" has held the same.[7]  *Hobart*, 758 F.3d at 768 (collecting cases).

     b.     MichCon's Arguments

MichCon makes two counter arguments.  First, MichCon argues that the large body of

case law the United States relies upon is distinguishable on its face because MichCon actually

incurred "voluntary" costs rather than "compelled costs" attributable to an "administrative or

judicially approved settlement" or as a result of a previous § 106 or § 107 action.  MichCon

attempts to distinguish its costs by arguing that it is seeking two separate types of costs from the

---

[7] The Sixth Circuit in *Hobart* also noted that *Atlantic Research* "focused upon § 113(f)(1)'s interaction with § 107(a) but the Court also repeatedly minimized the differences between § 113(f)(1) and (f)(3)(B)."  *Hobart*, 758 F.3d at 767 n. 8 (citation omitted).  Therefore, the Sixth Circuit concluded that there was no "logical distinction between the two subsections" and treated the Supreme Court's pronouncements regarding the relationship of § 113(f)(1) with § 107(a) as if it were a pronouncement regarding § 113(f)(3)(B)'s relationship with § 107(a).  *Id*. Therefore, while the *Hobart* opinion focuses on a § 113(f)(3)(B) claim rather than a § 113(f)(1) claim, this Court finds that there is "no logical distinction" between the two subsections and treats the Sixth Circuit's pronouncements regarding the mutual exclusivity of § 113(f)(3)(B) as conclusions regarding § 113(f)(1).

United States: (1) the costs MichCon may be liable for as a result of Plaintiffs' pending § 107 claim based on "past and planned response activities conducted by [Plaintiffs] at the SRA as required by the CACO", and (2) the voluntary costs MichCon itself has already incurred independent from the CACO.[8]  (MichCon Resp. at 8).  MichCon notes that it cannot seek recovery for the first group of costs, because those costs were barred by the Consent Decree. (*Id.*).  However, MichCon argues that the second set of costs, which it incurred voluntarily do not meet the statutory prerequisites under § 113(f) and therefore it is allowed to seek recovery for those costs against the United States pursuant to § 107.

Perhaps recognizing the rising and irrefutable tide of current case law, MichCon's second argument is that the law of this case (namely Judge Cleland's 2009 Opinion) and *Atlantic Research* dictate that this Court must evaluate the claims asserted not by the "procedural circumstances" of a party but rather on the type of costs asserted.  Therefore, MichCon argues that because it is seeking purely "voluntary costs" that were not compelled by a consent decree or as a result of a § 106 or § 107 action, it still has a viable § 107 claim against the United States.

3.    Mutual Exclusivity of CERCLA § 107(a) and § 113(f) Claims

In *Hobart*, the Sixth Circuit was confronted with the issue of whether a party "may choose under which section to proceed or whether CERCLA limits them to a certain cause of

---

[8] MichCon states that it has incurred response costs related to evaluating and investigating the nature and source of releases of hazardous substances at and originating from the SRA, the migration of contamination and evaluation of its potential impact on MichCon's adjacent property, and "the ability of any proposed remedial actions to adequately and cost-effectively address the sources of contamination to prevent further migration.  (MichCon's Resp. at 8; *see also* T-P Compl. ¶¶ 22, 38, 39, & 41).

17

action." 758 F.3d at 767. More specifically, in *Hobart*, the district court concluded that the appellants could not bring a cost recovery action under § 107(a) because the signing of the Administrative Settlement Agreement and Order on Consent ("ASAOC") with the EPA allowed the appellants to bring a § 113(f)(3)(B) contribution action. *Id*. at 763-65. The appellants "did not contest the notion that § 107(a)(4)(B) and § 113(f)(3)(B) are mutually exclusive remedies" but rather argued that the ASAOC did not constitute an administrative settlement pursuant to § 113(f)(3)(B) and therefore it was never eligible to bring a claim pursuant to § 113(f)(3)(B). *Id*. at 766-67. The Sixth Circuit, in upholding the district court's conclusion that the ASAOC constituted a settlement agreement pursuant to CERCLA, also discussed the relationship between § 107(a) and § 113(f) and explicitly held that "CERCLA's text and structure lead us to conclude that PRPs must proceed under § 113(f) if they meet one of that section's statutory triggers."[9] *Hobart*, 758 F.3d at 767.

The first "trigger", or statutory prerequisite, is found in §113(f)(1) which states: "[a]ny person may seek contribution from any other person who is liable or potentially liable under section [107(a)], during or following any civil action under section [106] or under section

---

[9] MichCon attempts to argue that *Hobart's* conclusion that § 107 and § 113 are mutually exclusive remedies is merely dicta and therefore are not binding on this Court. However, MichCon's argument is undercut by the Sixth Circuit's language and depth of analysis on this issue. While the parties in *Hobart* did not contest this issue of whether the aforementioned CERCLA provisions are mutually exclusive, the Sixth Circuit set forth an entire subsection of its opinion devoted to finding that those provisions *are* mutually exclusive. In fact, the Sixth Circuit stated that "the question is whether Appellants may choose under which section to proceed or whether CERCLA limits them to a certain cause of action"; "[i]n holding that § 107(a)(4)(B) and § 113(f)(3)(B) provide mutually exclusive remedies we are saying nothing new or controversial," and "we adopt the position ..." *Hobart*, 758 F.3d at 767, 768 (emphasis added). Therefore, while the fact that the parties did not contest the issue may render the Sixth Circuit's analysis as dicta, the Sixth Circuit's treatment of the issue undermines any argument that the Court can ignore the Sixth Circuit's reseasoning or find it unpersuasive.

[107(a)]."  42 U.S.C. § 9613(f)(1).  The second statutory trigger is found in § 113(f)(3)(B) which provides that "[a] person who has resolved its liability to the United States or a State for some or all of a response action or for some or all of the costs of such action in an administrative or judicially approved settlement may seek contribution from any person who is not party to a settlement" referred to in subsection (f)(2).  42 U.S.C. § 9613(f)(3)(B).

The Sixth Circuit reasoned that a PRP must demonstrate that one of those two prerequisites are met before it can proceed under § 113(f) (*see Cooper Industries*, 543 U.S. at 165-66) but, "[i]f § 113(f)'s enabling language is to have bite, though, it must also mean that a PRP, eligible to bring a contribution action, can bring only a contribution action."  *Hobart*, 758 F.3d at 767 (citation omitted).  The Sixth Circuit noted that given a choice, any PRP would rather file a § 107(a) action because it "provides a broader avenue for recovery" and a longer statute of limitations than § 113(f) actions.  *Id*. (citation omitted).  Accordingly, the Sixth Circuit held "it is sensible and consistent with the text to read § 113(f)'s enabling language to mean that if a party is able to bring a contribution action, it must do so under § 113(f), rather than § 107(a)."  *Id.*

The Sixth Circuit's reasoning in *Hobart* is in line with virtually every Circuit Court decision regarding whether § 107(a) and § 113(f) provide for mutually exclusive remedies.  *See NCR Corp. v. George A. Whiting Paper Co.*, 768 F.3d 682, 691 (7th Cir. 2014) (holding that "like our sister circuits" a plaintiff is restricted to asserting a § 113 contribution action when they are available.) ; *Bernstein v. Bankert*, 733 F.3d 109, 206 (7th Cir. 2013) (holding that a "plaintiff is limited to a contribution remedy when one is available".); *Solutia, Inc. v. McWane, Inc*., 672 F.3d 1230, 1237 (11th Cir. 2012) (holding that where a party was entitled to pursue a §

19

113(f)(3)(B) claim it cannot also pursue a § 107(a) claim); *Morrison Enters., LLC v. Dravo Corp.*, 638 F.3d 594, 603-04 (8th Cir. 2011) (holding that "§ 113(f) provides the exclusive remedy for a liable party compelled to incur response costs pursuant to an administrative or judicially approved settlement under § 106 or § 107."); *Agere Sys. Inc. v. Advanced Envt'l Tech. Corp.*, 602 F.3d 204, 225 (3d Cir. 2010) (holding that the parties had § 107(a) claim where they had paid into a settlement but were never part of a § 106 or § 107(a) action and did not have a § 113(f) claim); *Niagara Mohawk Power Co. v. Chevron U.S.A, Inc.*, 596 F.3d 112, 127-28 & n. 18 (2d Cir. 2010) (holding that the plaintiff had a contribution claim pursuant to § 113(f)(3)(B) because the plaintiff had resolved its liability pursuant to an administrative settlement and therefore could not also have a § 107(a) claim because to allow a § 107(a) claim would "nullify the SARA amendment and abrogate the requirements Congress placed on contribution claims under § 113".).

MichCon argues that each of these cases, including *Hobart*, are inapplicable to the present case because unlike the parties in the cited cases, MichCon actually incurred "voluntary costs" that were not attributable to the CACO, a consent decree, or the "result" of a § 106 or § 107 action. Therefore, MichCon claims that the factual scenario of *Atlantic Research*, where the party seeking costs under § 107(a) actually incurred voluntary costs rather than "compelled costs", is most applicable to its circumstances.

MichCon's argument fails on two fronts. First, MichCon's argument that the case law cited is inapplicable oversimplifies the issue. In *NCR*, *Bernstein*, *Morrison*, and *Hobart*, each court generally addressed § 107(a) and § 113(f) and held that a party must proceed with a § 113(f) claim when one of those "triggers" are pulled before those courts turned to applying the

general statutory analysis to the specific settlement construction at issue in the case. *See NCR*, 769 F.3d at 691 ("a party that has not been subjected to an enforcement or liability action, and that is not a party to a settlement may proceed under § 107(a)"); *Bernstein*, 733 F.3d at 201-02 ("each CERCLA right of action carries with it its own statutory trigger, and each is a distinct remedy available to person in different procedural circumstances."); *Morrison*, 638 F.3d at 602-04 (explaining that '[t]o ensure the continued vitality of the precise and limited right to contribution Congress set forth in § 113, we have held the right to bring a cost-recovery action under § 107 'is available to parties who have incurred necessary costs of response, but have neither been sued nor settled their liability under §§ 106 or 107'" before finding that the party's costs were not recoverable under § 107(a) because it had been previously sued under § 107(a) and entered into administrative settlements that compelled its remedial actions); *Hobart*, 758 F.3d at 766-68 (holding it is "sensible and consistent with the text to read § 113(f)'s enabling language to mean that if a party is able to bring a contribution action, it must do so under § 113(f), rather than § 107(a)" before turning to the issue of whether the settlement at issue qualified as an administrative settlement under CERCLA).

In *Solutia* and *Niagara Mohawk*, the courts' analyses of § 107 and § 113(f) were centered on the specific settlement at issue, however, in both cases the courts' analyses were based on the same concerns, case law, and reasoning echoed in *Hobart, NCR, Bankert*, and *Morrison*. *See Solutia*, 672 F.3d at 1235 (in holding that a party who incurs direct cleanup costs pursuant to a consent decree following a § 106 or § 107 action cannot bring an action to recover those costs under § 107(a), the court held that it "must deny the availability of a § 107(a) remedy under these circumstances in order to 'ensure the continued vitality of the precise and limited right to

21

contribution.'" (quoting *Morrison*, 638 F.3d at 603)); *accord Niagara Mohawk*, 596 F.3d at 127-28 (holding that NiMo could not also proceed with a § 107(a) claim explaining "to allow NiMo to proceed under § 107(a) would in effect nullify the SARA amendment and abrogate the requirements Congress placed on contribution claims under § 113.").[10]  Therefore, despite MichCon's attempt to construe the case law as distinguishable, the inescapable fact is the courts are overwhelmingly consistent in finding that § 107(a) and § 113(f) claims are mutually exclusive to ensure the continued vitality of a § 113(f) contribution claim and consistent in concluding that the type of CERCLA claim available to a party is dependant upon their procedural circumstance.

Moreover, MichCon's argument that *Atlantic Research* is analogous is easily dispatched. It is true that MichCon has adequately pleaded that it incurred costs that were not a result of the CACO (or other administrative settlement) or as the *result* of a § 106 or § 107 action.  Similarly, in *Atlantic Research*, the party incurred voluntary direct response costs that were not compelled from these sources either.  However, critically, the party in *Atlantic Research* was never sued by any party pursuant to § 106 or § 107.  Here, MichCon was sued by Plaintiffs pursuant to § 107(a) in 2008 regarding its common liability regarding the contamination of the SRA site.  Thus, <u>at that time</u> the statutory trigger under § 113(f)(1) was pulled, and MichCon was able to assert contribution claims against other PRPs (namely the Plaintiffs and the United States).  This conclusion is supported by *Atlantic Research*, wherein the Supreme Court stated: "[t]he statute [§ 113(f)] authorizes a PRP to seek contribution '<u>during or following</u>' a suit under § 106 or §

---

[10] The Third Circuit in *Agere* is the only Circuit not to explicitly conclude that allowing parties to proceed under both § 113(f) and § 107(a) would nullify the SARA amendment.

107(a).  42 U.S.C. § 9613(f)(1).  Thus, § 113(f)(1) permits suit <u>before or after</u> the establishment

of common liability."  *Atl. Research*, 551 U.S. at 138 (emphasis added).  MichCon argues that its

voluntary costs have not pulled any statutory trigger because they were not a "result" of a § 106

or § 107 action.  This is a faulty premise.  The plain language of the statute (as reiterated by the

Supreme Court in *Atlantic Research*) clearly states that a PRP has a contribution claim "during

or following" a § 107(a) action and such a claim is permitted before common liability is

established (*i.e.* before there is any judicial settlement as a result of the § 107(a) claim).

Additionally, MichCon has set forth no case law to buttress its argument that a party who

is currently subject to a § 107(a) claim regarding the common liability of a site can bring a

separate § 107(a) claim against another PRP for recovery costs related to the same site.

MichCon has also not directed this Court to any case law in which a party who has incurred

voluntary costs and faces potential liability for further costs in relation to a single hazardous cite

can "slice and dice" the costs into separate claims.  *See NCR Corp. v. George A. Whiting Paper

Co.*, 768 F.3d 682, 692 (7th Cir. 2014) (finding a § 107(a) claim was not available because the

party could seek contribution under § 113(f) during or following a § 106 or § 107 action, and

rejecting NCR's argument that certain voluntary costs predated a settlement order and observing

that "slicing and dicing of costs incurred under the same administrative order makes little sense

when a party's liability for all of those costs will ultimately be determined in the enforcement

action."); *see also Bankert*, 733 F.3d at 208-09 (rejecting the argument that the operative

distinction is voluntary versus compelled costs and finding no support in case law or statute for

that proposition).

Indeed, it does not appear that this support exists.  In those few cases in which courts

23

have found that a PRP has a valid § 107(a) claim for voluntary costs against another PRP, none of those parties was previously subject to an action pursuant to § 106 or § 107(a) regarding the same site or pollution. *See Alt. Research*, 551 U.S. at 133 (allowing § 107(a) claim where party incurred voluntary response cases and had not been subject to a previous § 106 or § 107(a) claim); *Kotrous v. Goss-Jewett Co. of N. Cal.*, 523 F.3d 924, 933 (9th Cir. 2008) (remanding after finding that the PRP appellees were entitled to bring § 107(a) claims and noting that "[u]nder *Atlantic Research*, a PRP such as Kotrous or Adobe that incurs costs voluntarily, without having been subject to an action under § 106 or § 107, may bring a suit for recovery of its costs under § 107(a)....").

While not cited by MichCon, there appear to be two non-binding district court cases that are relevant to the present action. In *Appleton Papers, Inc. v. George A. Whiting Paper Co.*, 572 F.Supp.2d 1034 (E.D. Wisc. 2008) the plaintiffs sought recovery of "other costs" that were related to adverse proceedings and a previous consent decree but which the plaintiffs believed were outside the scope of that litigation and consent decree and therefore were "voluntarily" incurred. *Id*. at 1041. The district court framed the issue as "should the focus be on the nature of the costs themselves or on the procedural status of the party seeking to recover those costs?" *Id.* at 1042. The *Appleton Papers* court ultimately held that the "operative principle appears to be that § 107(a) is available to recover payments only in cases where § 113(f) is not. In cases where a claim for contribution can be asserted under § 113(f), § 107(a) cannot be used." *Id*. at 1043. The *Appleton Papers* court also noted that the plaintiffs could have recovered their "voluntary" costs through a § 113(f) action because "[a]ny payments made to discharge a common liability in excess of the plaintiff's own fair share are recoverable." *Id*. at 1044 (citation omitted).

24

Significantly, the *Appleton Papers* court also observed that the moniker of "voluntary" is a peculiar one when addressing response costs incurred by PRPs:

> The notion that any of the response costs paid by API and NCR were voluntary is curious, to say the least.  API and NCR are not philanthropic organizations devoted to cleaning up environmental messes created by other companies.  Their contributions to the response effort to the PCB contamination of the Lower Fox River resulted from their recognition that they were at least in part responsible for the contamination.  In this respect, payments made prior to the enforcement action are no more or less voluntary than payments made pursuant to the consent decree they voluntarily entered with the state and federal government.

*Id.* at 1043 n. 8.

In the more recent district court decision of *Whittaker Corp. v. United States*, No. 13-1741, 2014 WL 631113, (C.D. Cal., Feb. 10, 2014), the plaintiff brought a § 107(a) action for response costs that it incurred voluntarily pursuant to California Department of Toxic Substances Control directives and outside the scope of a previous § 107(a) action.  *Id.* at *5.  Like MichCon and the plaintiffs in *Appleton Papers*, the plaintiff in *Whittaker* attempted to argue that its voluntary costs were separate from any other liability incurred or potentially incurred at the site, and claimed that the fact the costs were voluntary was the determinative issue regarding the type of CERCLA claim it could assert.  The *Whittaker* court held that the procedural circumstances of the parties determined what CERCLA claims a party could assert.  *Id.* at *7.  Further, the court noted that while the costs the plaintiff sought to recover may have predated or fallen outside the scope of the previous judicial settlement, those same costs fell <u>within</u> the common liability at issue in the previous § 107(a) action.  *Id.*  The court explained that the previous settlement "implicated the entire cleanup of the Site" and because a § 113(f)(1) claim is not limited by the scope of a settlement once the previous §  107(a) action was filed, "plaintiff was free to proceed under § 113(f)(1) to seek contribution for all costs incurred to remediate contamination at the

25

Site." *Id*. at *8.

Both of these cases, while not binding, illustrate situations where parties have attempted to assert a cost recovery claim pursuant to § 107(a) on the basis that the costs at issue were divisible or capable of being parsed into "voluntary" or "compelled" costs.  Both courts disposed of these arguments by pointing out the common liability at issue in either the previous § 107(a) claim or the previous settlement agreement.  Similarly, here, MichCon claims that its costs are divisible and separate based on whether the costs can be defined as "voluntary".  MichCon, however, fails to note that these voluntary costs are still part and parcel of the *same common liability* at issue in Plaintiffs' § 107(a) action regarding the remediation of the SRA. Accordingly, MichCon is presently part of a lawsuit that encompasses and will eventually apportion the costs related to cleaning up the SRA pursuant to a § 107(a) action and therefore, MichCon is foreclosed from asserting a § 107(a) claim against the United States based on that same common liability.

Finally, as an aside, MichCon argues that this is not a situation where it is attempting to "repackage" its § 113(f) claims as § 107(a) claims.  Yet, MichCon ignores the overriding consensus that the mutual exclusivity of § 113(f) and § 107(a) is premised not just on the fear that parties will exploit a longer statute of limitations but also premised on the need to preserve the vitality of § 113(f) contribution claims and the statutory framework of CERCLA itself.  *See Hobart*, 758 F.3d at 768 (noting that there would be "no reason to limit § 113(f)'s availability if PRPs have § 107(a)(4)(B) as a fall-back option, and we generally do not interpret congressional enactments to render certain parts of these enactments superfluous".);  *Morrison*, 638 F.3d at 603 (providing "[t]o ensure the continued vitality of the precise and limited right to contribution

26

Congress set forth in § 113, we have held that the right to bring a cost-recovery action under §

107" is available only to parties who have incurred "necessary costs of recovery, but have

neither been sued nor settled their liability under §§ 106 or 107" (quoting *Alt. Research*, 459

F.3d at 835)); *Niagara Mohawk*, 596 F.3d at 128 (holding that allowing otherwise would "in

effect nullify the SARA amendment and abrogate the requirements Congress placed on

contribution claims under § 113".).

4.    Jude Cleland's 2009 Opinion[11]

Having distinguished *Atlantic Research* from the present action, MichCon is left only

with a previous decision in this action regarding Plaintiffs' § 107(a) claim, the 2009 Opinion, to

anchor its claim.  *See* 2009 Opinion, 2009 WL 3190418.  MichCon argues (with little analysis)

that the "law of case" is such that Judge Cleland has already ruled upon the issue of how and

when a party may assert a § 107 cost recovery claim and held that the distinction must be made

based on the type of costs incurred rather than the procedural posture of a party.  MichCon

argues that Judge Cleland has clearly held that: "a party seeking recovery of directly incurred

costs must do so under § 107."  (MichCon Resp. at 20).  Therefore, MichCon asserts that

because it is seeking voluntary costs it can assert a § 107 claim against the United States.

"The 'law of the case' doctrine precludes a court from 'reconsideration of identical

issues.' 'Issues decided at an early stage of the litigation, either explicitly or by necessary

inference from the disposition, constitute the law of the case.'"  *Hanover Ins. Co. v. Am. Eng.*

*Co.*, 105 F.3d 306, 312 (6th Cir. 1997) (internal citations omitted).  "[T]he law of the case

---

[11] This case was transferred to this Court on March 20, 2013, when Judge Cleland recused himself from further proceedings in this case.  (ECF No. 128).

doctrine is discretionary 'when applied to a coordinate court or the same court's own decisions.'" *Bench Billboard Co. v. City of Covington, Ky.*, 547 F. App'x 695, 704 (6th Cir. 2013) (quoting *Bowles v. Russell*, 432 F.3d 668, 677 (6th Cir. 2005)).  The Sixth Circuit has instructed that the law of the case doctrine is "directed to a court's common sense and is not an inexorable command" and set forth three reasons when a court should reconsider a ruling: "(1) where substantially different evidence is raised on subsequent trial; (2) where subsequent contrary view of the law is decided by the controlling authority; or (3) where a decision is clearly erroneous and would work a manifest injustice." *Hanover Ins.*, 105 F.3d at 312 (citations and internal quotation marks omitted).  "Nevertheless, a court's power to reach a result inconsistent with a prior decision reached in the same case is to be exercised very sparingly, and only under extraordinary circumstances."  *In re Kenneth Allen Knight Tr.*, 303 F.3d 671, 677 (6th Cir. 2002) (citation and internal quotation marks omitted)).

The Court notes that the 2009 Opinion did not and could not speak to the "exact issue"of whether MichCon could assert a § 107(a) claim against the United States, for the reason that the United States was not a party to this action in 2009 and did not become a party until 2011. However, it is clear that since 2009 Opinion was issued the Sixth Circuit has more clearly spoken to the issue of when and how a party may assert a § 107 claim against another PRP.[12]

---

[12] The United States appears to argue that the Sixth Circuit decision of *ITT Industries I*, 506 F.3d 452 (6th Cir. 2007), set forth that the procedural circumstances of the parties dictated which CERCLA claims that could be asserted.  The Sixth Circuit explained in *ITT Industries I* that "the appropriateness of a § 107(a) cost recovery or § 113(f) contribution action varies depending on the circumstances leading up to the action, not the identity of the parties."  506 F.3d at 458 (citations and omitted).  However, the Sixth Circuit further noted that

> [t]o distinguish when a cost recovery action under § 107(a) is appropriate, as
> opposed to a contribution action under § 113(f), the [Supreme] Court noted that a

Accordingly, this Court would be remiss if it ignored the Sixth Circuit's instruction. *See Hobart*, 758 F.3d at 767-68; *Bankert*, 733 F.3d at 208-09 (rejecting voluntary versus compelled costs dichotomy).

Yet, the Court finds that it need not overturn "the law of the case" because the 2009 Opinion explicitly recognized and harmonized the rationale now set forth in *Hobart* as an alternative.  Indeed, the 2009 Opinion provided that Judge Bell's analysis in *ITT Industries II*, 615 F.Supp.2d 640 (W.D. Mich. 2009) was "different but not necessarily inconsistent" with its reasoning and observed that neither statutory trigger had been pulled such that Plaintiffs could not assert a § 107(a) claim, and therefore "even under the analysis articulated by Judge Bell, Plaintiffs' [§]107 claim survives."  2009 Opinion, 2009 WL 3190418, *7 n. 4.   Further, the 2009 Opinion acknowledges what the Sixth Circuit has now held to be determinative in asserting a CERCLA claim, stating "[t]he *Atlantic Research* Court held that PRPs could maintain a cause of action under either § 107(a) or § 113(f), depending on the particular 'procedural circumstance[].'" 2009 Opinion, 2009 WL 3190418, at *5 (citing *Alt. Research*, 551 U.S. at 138).  Therefore, moving forward this Court now formally adopts the reasoning of *Hobart* as harmonized in

---

§ 107(a) action may lie where a party has itself 'incurred' cleanup costs as opposed to reimbursing costs paid by other parties, which is more appropriately covered by § 113(f).  *See Atlantic Research Corp*., 127 S.Ct. at 2338.  To maintain the vitality of § 113(f), however, PRPs who have been subject to a civil action pursuant to §§ 106 or 107 or who have entered into a judicially or administratively approved settlement must seek contribution under § 113(f).  *Id*.; *but see* 127 S.Ct. at 2338 n. 6 (acknowledging possible overlap).

*Id*.  Beyond this brief summary, which itself acknowledged "possible overlap", the Sixth Circuit offered no other guidance on this issue and instructed the district court on remand to determine whether the plaintiff could assert a § 107(a) claim.  Given the Sixth Circuit's light treatment of the issue and its reservation of the issue for the district court, the United States' argument that the Sixth Circuit definitely resolved this issue in *ITT Industries I* is not correct.

footnote four of the 2009 Opinion and recognizes that "§ 107(a)(4)(B) and § 113(f)(3)(B)

provide mutually exclusive remedies" and "PRPs <u>must</u> proceed under § 113(f) if they meet one

of that section's statutory triggers." *Hobart*, 758 F.3d at 767, 768 (emphasis added).

MichCon next argues that if the Court "revise[s] the holdings of the 2009 Opinion" it

must revise the 2009 Opinion's conclusion that the CACO was not an administrative settlement

under CERCLA and accordingly find that the Plaintiffs cannot assert a § 113(f)(3)(B) claim

against MichCon. (MichCon's Resp. at 23). MichCon contends that prior to *Hobart*, both the

Sixth Circuit in *ITT Industries I* and Judge Cleland in the 2009 Opinion held that a § 122(a)

settlement did not fall within the scope of an administrative or judicially approved settlement

within the context of § 113(f)(3)(B).[13] *See ITT Industries I*, 506 F.3d at 460-61; 2009 Opinion,

2009 WL 3190418, at *11-14 (citing same)).

The Court rejects MichCon's invitation to unwind the litigation back to 2008. First, the

Court notes the Sixth Circuit's clarification in *Hobart* regarding the conflict between *ITT

Industries I* and *RSR Corporation v. Commercial Metals, Co.*, 496 F.3d 552 (6th Cir. 2007)

is not new authority that could justify overturning the law of a the case, but rather merely the

recognition that *RSR Corporation* is the earlier decided case and therefore the law of the circuit.

---

[13] In *Hobart*, the Sixth Circuit revisited the issue of CERCLA's statute of limitations and clarified in a footnote that:

> [t]o the extent that *ITT Industries* holds that § 113(g)(3) governs only contribution actions stemming from § 122(g) or (h) settlements, *see* 506 F.3d at 460-61, *RSR Corporation [v. Commercial Metals, Co.*, 496 F.3d 552 (6th Cir. 2007)] forecloses such a result. Under the law of the circuit, a three-judge panel cannot overrule a prior panel's published decision without an intervening United States Supreme Court decision or contrary decision by this court sitting en banc.

*Hobart*, 758 F.3d at 773 n. 12 (citation omitted).

Moreover, the Court finds that MichCon is judicially estopped from requesting this Court reinstate Plaintiffs' § 113(f)(3)(B) claim that was dismissed pursuant to MichCon's own motion.

The Sixth Circuit recently explained the equitable doctrine of judicial estoppel as preserving the "integrity of the courts by preventing a party from abusing the judicial process through cynical gamesmanship, achieving success on one position, then arguing the opposite to suit an exigency of the moment." *Bonkowski v. Allstate, Ins., Co.*, 544 F. App'x 597, 602 (6th Cir. 2013) (quoting *Teledyne Indus., Inc. v. Nat'l Labor Relations Board*, 911 F.2d 1214, 1217-18 (6th Cir. 1990)). "Where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." *Id.* (quoting *Lorillard Tobacco Co. v. Chester, Willcox & Saxe, LLP*, 546 F.3d 752, 757 (6th Cir. 2008)). The doctrine of judicial estoppel "bars a party from (1) asserting a position that is contrary to one that the party has asserted under oath in a prior proceeding, where (2) the prior court adopted the contrary position either as a preliminary matter or as part of a final disposition." *Id.* (citation omitted).

In the present action, MichCon is seeking to have to this Court reverse or reconsider its decision that was favorable to MichCon in 2009 and prompted by MichCon's own motion. Further, MichCon quoted and relied upon *RSR Corporation* in its arguments to Judge Cleland in seeking to have Plaintiffs' § 113(f) claim dismissed and failed to note that it contained a contrary interpretation of § 113(g) than the later decided *ITT Industries I*, 506 F.3d 452 (6th Cir. 2007). (*See* ECF No. 25, MichCon's Reply, at *5-7, attached to United States current Reply, Ex. 13). The Court finds in light of these particular facts, MichCon is judicially estopped from now

31

asserting the opposite legal argument that it espoused in 2009 and upon which the Court relied

upon in dismissing Plaintiffs' 113(f)(3)(B) claim.[14]

### B. The United States and Plaintiffs' Motion to Certify SRA CD for Appeal

The United States requested this Court certify the SRA CD for appeal pursuant to Fed. R.

Civ. P. 54(b).  (ECF No. 120).  MichCon argues that such a certification should be denied.  (ECF

Nos. 123, 156)[15].  Plaintiffs filed a "Joinder in the United States' request for Certification under

Fed. R. Civ. P. 54(b)" and also filed a separate motion to certify the SRA CD for immediate

appeal.  (ECF Nos. 125, 154).

Federal Rule of Civil Procedure Rule 54(b) provides that:

[w]hen an action present more than one claim for relief – whether as a claim,
counterclaim, crossclaim, or third-party claim – or when multiple parties are
involved, the court may direct entry of a final judgment as to one or more, but
fewer than all, claims or parties only if the court expressly determines that there is
no just reason for delay.

Fed. R. Civ. P. 54(b).  To determine whether a judgment should be certified pursuant to Rule

54(b) the court must follow a two-step process.  *See Planned Parenthood Southwest Ohio Region*

*v. DeWine*, 696 F.3d 490, 500 (6th Cir. 2012).  "First, the district court must expressly direct the

entry of final judgment as to one or more but fewer than all the claims or parties in a case.

Second, the district court must expressly determine that there is no just reason to delay appellate

review."  *Id*. (citing *Gen. Acquisition, Inc. v. Gencorp, Inc*., 23 F.3d 1022, 1026 (1994) (internal

quotation marks omitted)).

---

[14] The Court does not address whether the mutual exclusivity of claims under § 107 and §
113(f) is in line with public policy as the state of the law is dispositive on this issue.

[15] The Court notes that MichCon's more recent response is an identical restatement of its
previous arguments as contained in its response to the United States previous motion to dismiss.

There is no dispute in this case that Judge Cleland issued an Opinion and Order granting Plaintiffs' motion for entry of a consent decree.  (ECF No. 115).  Thereafter, Judge Cleland entered the SRA CD.  (*See* ECF No. 116 at 12, specifically directing entry of final judgment in accordance with the terms of the decree).  Further, MichCon does not challenge the fact that the SRA CD adjudicated all of the claims between Plaintiffs and the United States but fewer than all the claims or parties in a case.  Therefore, the only question before the Court is whether there is "no just reason for delay."

The Sixth Circuit has set forth a non-exhaustive list of five factors to consider when evaluating this second step:

> (1) the relationship between the adjudicated and unadjudicated claims; (2) the possibility that the need for review might or might not be mooted by future developments in the district court; (3) the possibility that the reviewing court might be obliged to consider the same issue a second time; (4) the presence or absence of a claim or counterclaim which could result in set-off against the judgment sought to be made final; (5) miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, expenses and the like.

*Gen. Acquisition, Inc.*, 23 F.3d at 1030.

The first factor weighs in favor of certification.  The SRA CD settles all of Plaintiffs' claims against the United States and an appeal from the SRA CD raises issues regarding the fairness and reasonableness regarding its terms as well as policy considerations.  Meanwhile, the remaining claims between Plaintiffs, MichCon, and the United States involve the substantive law and liability pursuant to the claims asserted under CERCLA and NREPA.

Second, an appeal of the SRA CD would only become moot if settlement is reached between Plaintiffs and MichCon or the United States and MichCon, such that MichCon agrees not to appeal the SRA.  MichCon argues that there is a chance that the litigation of the

33

substantive matters may result in appealable issues and that it would be most efficient to have all of the substantive claims addressed in one appeal. However, the chance of settlement is always a possibility and MichCon offers no reasoned analysis why such a consideration should be dispositive on its own in this analysis.

The third factor also weighs in favor of certification. There is no possibility that the Court of Appeals would be obliged to consider the same issues regarding the SRA CD a second time as those issues are unique to the SRA CD and do not implicate possible appealable issues stemming from a determination of liability under CERCLA or NREPA. MichCon argues that the "adjudicated and unadjudicated claims in this matter are closely intertwined, as they relate to the SRA and involve the same parties", however this conclusory assertion does not set forth any analysis as how potential issues regarding the reasonableness of the SRA CD are duplicative or could implicate the remaining issues between Plaintiffs, MichCon and/or the United States.

The fourth factor is whether the presence or absence of a claim or counterclaim which could result in set-off against the judgment sought to be made final. This claim also weighs in favor of certification as the SRA CD settles all of the claims between the United States and the Plaintiffs and provides for a settlement payment to Plaintiffs. The only remaining claim against the United States is MichCon's claim for cost recovery (as examined *supra*) however this claim would not provide a basis for a set-off against the SRA CD's judgment.

Finally, Plaintiffs argue that if the Court fails to certify the SRA CD for appeal it will complicate their ability to recover funds and also contravene CERCLA's policy of encouraging swift resolution of claims. MichCon merely argues that the Plaintiffs have vast resources and that this factor should not weight in their favor because they will not be harmed by waiting for

34

the resolution of the entire case before an appeal. MichCon's claim is weak at best and the Court agrees with Plaintiffs that CERCLA is premised on swift resolution of claims which would be advanced by certifying the SRA CD.

Upon consideration of all these factors and in the interests of judicial administration, and having found that there is no just reason for delay, the Court shall grant Plaintiffs and the United States' motions to certify the SRA Consent Decree for immediate appeal as a final judgment pursuant to 54(b). Accordingly, the Court will enter a final judgment pursuant to Rule 54(b) certifying the Court's October 9, 2012 SRA Consent Decree for appeal.

## V. CONCLUSION

Given all of these facts, the Court GRANTS the United States' Motion for Judgment on the Pleadings pursuant to Rule 12(c) (ECF No. 162). The Court also GRANTS the Plaintiffs' and United States' Motions to Certify the Schaefer Road Area Consent Decree For Appeal pursuant to Rule 54(b) (ECF No. 120, 154).

IT IS SO ORDERED.

s/Paul D. Borman
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated: February 10, 2015

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on February 10, 2015.

s/Deborah Tofil
Case Manager