**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

**FORD MOTOR COMPANY, and
AK STEEL CORPORATION**

       **Plaintiffs/Counter-Defendants,**      **Civil Action No.: 08-CV-13503**

       **vs.**      **District Judge Paul D. Borman**

             **Magistrate Judge Mona K. Majzoub**

**MICHIGAN CONSOLIDATED
GAS COMPANY,**

       **Defendant/Counter-Plaintiff**

       _____/

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT'S RENEWED MOTION TO COMPEL [188]**

Before the Court is Defendant Michigan Consolidated Gas Company's ("MichCon") Renewed Motion to Compel.[1] (Docket no. 188.) Plaintiffs filed a Response (docket no. 190), and Defendant filed a Reply (docket no. 197).[2] The Parties then filed a Joint Statement of Resolved and Unresolved Issues, narrowing the scope of Defendant's Motion. (Docket no. 196.) The Motion has been referred to the undersigned for consideration. (Docket no. 193.) The Court dispenses with oral argument pursuant to E.D. Mich. LR 7.1(e). The Motion is now ready for

---

[1] Defendant filed its initial Motion to Compel on March 7, 2013, arguing that Plaintiffs' assertions of the attorney-client privilege, the common-interest privilege, the joint-defense privilege, and the work-product doctrine were too broad in the context of Defendant's discovery requests. (Docket no. 127.) The Court entered an Order denying Defendants' Motion without prejudice, narrowing the scope of Plaintiffs' asserted protections, and leaving the door open for further argument. (Docket no. 140.) Defendant's Renewed Motion to Compel is filed under the guidelines of that Order.

[2] Defendant initially filed its Reply at docket no. 192 but filed a "corrected" version of its Reply at docket no. 197.

1

ruling.

I. Background

In its initial Order on Defendant's Motion to Compel, the Court set forth the relevant factual background in this matter:

> Plaintiffs Ford and Severstal[3] filed this action alleging that MichCon is largely responsible for costs incurred by Plaintiffs in their efforts to perform the environmental cleanup of a parcel of property located in Melvindale, Michigan, referred to throughout this litigation as "the Schaefer Road Area," or "SRA." (*See* docket no. 127 at 7.) The SRA is located between Schafer Road and the Rouge River. (*Id.*)
>
> From 1925 through the early 1950s, MichCon operated a manufactured gas plant along the Rouge River on a parcel of land that included what is now the SRA. MichCon's plant included the use of tar ponds on a portion of the property. (*Id*. at 8.) In the 1960s, the Rouge River was re-routed by the U.S. Army Corps of Engineers, and following the re-routing, the Rouge River effectively bisected MichCon's property. In 1966, Ford (which had a manufacturing plant located across the Rouge River before its re-routing, purchased the property that is now the SRA from MichCon with the intent to use it for a wastewater treatment plant as part of an agreement with the Water Resources Commission. (*See* docket no. 130 at 9.) Ford then constructed the wastewater treatment plant and its primary polishing lagoon on the SRA through a wholly owned subsidiary known as Rouge Steel. (*See* docket no. 127 at 9.) In 1989, Ford sold Rouge Steel to a company that ultimately merged into the Rouge Steel Company. (*See* docket no. 130 at 9.) As part of that sale, Ford agreed to be responsible for any hazardous substances "existing or occurring on or prior to" the closing date of the sale. (*Id.*) Plaintiff Severstal purchased the Rouge Steel Company assets (including the SRA and the wastewater treatment plant) out of bankruptcy in 2004. (*Id.* at 10.)
>
> **Environmental Investigations, CRA, and "The CACO"**
>
> In or around 1988, visible contamination of the Rouge River adjacent to the SRA was discovered. (*See* docket no. 130 at 8.) This led to investigation and evaluation of the property by two federal agencies, the Environmental Protection Agency ("EPA") and the Agency for Toxic Substances and Disease Registry

---

[3] On September 16, 2014, Severstal merged into AK Steel Corporation. The case caption has been amended to reflect this merger. Even though the privilege log at issue was produced by Severstal, the Court will refer to this entity as AK Steel for the remainder of this Opinion and Order.

2

("ATSDR") and one State agency, the Michigan Department of Natural Resources ("MDNR"). (*Id.* at 8-9.)

Ten years later, in or around 1998, Rouge Steel was the subject of a multimedia inspection by the EPA. And in 1999, Ford received notice from the EPA that its entire Rouge Manufacturing Complex (which included Rouge Steel and the SRA) was a "high priority" for environmental cleanup. (*Id.* at 10.) Thus, Ford and Rouge Steel approached the State of Michigan and voluntarily entered into an agreement whereby Ford and Rouge Steel would investigate the contamination and resolve the issues to satisfy the requirements of the Resource Conservation and Recovery Act ("RCRA"). The State of Michigan accepted the proposal and asked the EPA to hand over regulatory authority for this site to the Michigan Department of Environmental Quality ("MDEQ"). (*Id.* at 130.) This agreement was finalized in May 2000 in the form of a Corrective Action Consent Order (the "CACO"). (*Id.* at 11.)

While negotiating the CACO, Ford contracted with non-party CRA, an environmental consultant. (*Id.* at 11.) Ford contracted with CRA to help negotiate the CACO, to prepare environmental reports in an effort to comply with the CACO, and in an effort to ultimately assist Ford and Rouge Steel to clean up the Rouge Manufacturing Complex and the SRA. (*Id.*; docket no. 127 at 11.)

### **Defendant's Discovery Requests and Plaintiffs' Responses**

As part of its discovery in this matter, Defendant served Plaintiffs and CRA with various discovery requests. At issue in this matter are: (1) Defendant's Rule 34 Request served on Ford; (2) Defendant's Rule 34 Request served on Severstal; (3) Defendant's Rule 33 Interrogatories served on Ford; and (4) Defendant's Rule 45 Subpoena Duces Tecum served on CRA. (*See* docket no. 127 at 11 n.3.) As set forth by Defendant, its requests cover (in relevant part) three general areas:

1. Environmental Investigation Documents, which include (by way of example) dialogue between CRA and Plaintiffs; internal deliberative documents about environmental concerns, issues, and options; and preliminary conclusions and draft reports, notes, and observations from CRA and Plaintiffs;

2. Remedy Assessment Documents, which include (by way of example) notes, internal memoranda, calculations, costs, models, and communications regarding remedial options that were available to Plaintiffs other than the remedial option that Plaintiffs ultimately chose; and

3. Allocation Documents, which Defendant contends would show how

3

> Plaintiffs allocated (in the case of the U.S. Government) and intend to allocate (in the case of MichCon, Ford, Rouge Steel, and Severstal) the percentage of liability in this matter, including the $4.25 million settlement by the U.S. Government.
>
> (Docket no. 127 at 11-14.) In response, Ford produced approximately 4,200 documents, Severstal produced approximately 5,400 documents, and CRA produced "several disks containing documents." (*Id.* at 11.) But Plaintiffs and CRA also produced privilege logs, which individually listed "nearly 8,000 responsive documents" that Plaintiffs and CRA would not produce. (*Id.*) Plaintiffs and CRA argue that these documents are protected by either (1) the work product doctrine; (2) attorney-client privilege; (3) the joint-defense doctrine; or (4) the common-interest doctrine. In some instances, Plaintiffs assert that individual documents are protected under multiple theories.

(Docket no. 140 at 2-5.)

The Court ordered Plaintiffs and CRA to produce certain documents and ordered them to update their privilege logs, subject to the following restrictions:

1. Plaintiffs and CRA are permitted to raise the work-product doctrine, but any potential litigation with Defendant beginning in the year 2000 or with the EPA or the MDEQ is not a sufficient basis under which to assert such protection;

2. Plaintiffs and CRA are permitted to raise the attorney-client privilege, but only for communications sent for the purpose of obtaining legal advice (1) from CRA to Plaintiffs' attorneys, (2) from Plaintiff's attorneys to CRA, (3) from Plaintiffs' to their attorneys, or (4) from Plaintiffs' attorneys to Plaintiffs.

3. Plaintiffs and CRA are not permitted to raise the attorney-client privilege for any communications sent (1) from CRA to Plaintiffs, (2) from Plaintiffs to CRA, (3) from Ford to Severstal, or (4) from Severstal to Ford, unless such communications are protected by the common-interest privilege.

4. Plaintiffs and CRA are not permitted to raise the joint-defense privilege unless they can show that they were represented by the same attorney at the time that the communication was sent; and

5. Plaintiffs and CRA are permitted to raise the common-interest privilege, but the underlying communication must be of a privileged nature, and their legal interest in the underlying matter must have been identical.

(Docket no. 140 at 11-12.)

4

In light of the Court's order, Plaintiffs and CRA produced a large number of documents but also provided Defendant with a privilege log asserting protection of "several thousand documents." (*See* docket no. 188 at 10.) Defendant contends that with regard to 1,513 of these documents, Plaintiffs and CRA "simply changed the designation of [these] documents from 'work product' to 'attorney client'" documents "[i]n an effort to circumvent" the Court's order. (*Id.*) Defendant has included a list of these documents at Exhibit D of its Motion. (Docket no. 188-4.) Defendant also argues that Plaintiffs and CRA still improperly assert the attorney-client privilege with regard to documents listed on its Exhibit E (docket no. 188-5) and still improperly assert work-product protection over documents listed on its Exhibit F (docket no. 188-6). (Docket no. 188 at 11.) Through their Joint Statement, the Parties informed the Court that they were unable to resolve the legal issues in question, but they were able to reduce the number of at-issue documents. (Docket no. 196.) Amended versions of Exhibits D, E, and F have been filed with the Court. (Docket nos. 196-2, 196-3, and 196-4, respectively).

**II.   Governing Law**

The scope of discovery under the Federal Rules of Civil Procedure is traditionally quite broad. *Lewis v. ACB Bus. Servs.*, 135 F.3d 389, 402 (6th Cir. 1998). Parties may obtain discovery on any matter that is not privileged and is relevant to any party's claim or defense if it is reasonably calculated to lead to the discovery of admissible evidence. Fed.R.Civ.P. 26(b)(1). "Relevant evidence" is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed.R.Evid. 401. But the scope of discovery is not unlimited. "District courts have discretion to limit the scope of discovery where the information sought is overly broad

or would prove unduly burdensome to produce." *Surles ex rel. Johnson v. Greyhound Lines, Inc.*, 474 F.3d 288, 305 (6th Cir. 2007).

Rules 33 and 34 allow a party to serve interrogatories and requests for production of documents on an opposing party. Fed.R.Civ.P. 33, 34. A party receiving these types of discovery requests has thirty days to respond with answers or objections. Fed.R.Civ.P. 33(b)(2), 34(b)(2)(A). If the receiving party fails to respond to interrogatories or RFPs, Rule 37 provides the party who sent the discovery the means to file a motion to compel. Fed.R.Civ.P. 37(a)(3)(B)(iii) and (iv). If a court grants a Rule 37 motion to compel, then the court must award reasonable expenses and attorney's fees to the successful party, unless the successful party did not confer in good faith before the motion, the opposing party's position was substantially justified, or other circumstances would make an award unjust . Fed.R.Civ.P. 37(A)(5)(a).

### III. Analysis

#### A. Documents Marked "Attorney-Client" Listed in Exhibit D

Although related, work-product protection and the attorney-client privilege are two distinct doctrines with substantially different analyses.

> "[T]he attorney-client privilege is an exception carved from the rule requiring full disclosure, and as an exception should not be extended to accomplish more than its purpose. As Dean Wigmore said in his oft-quoted statement: "It is worth preserving for the sake of a general policy, but it is nonetheless an obstacle to the investigation of the truth. It ought to be strictly confined within the narrowest possible limits consistent with the logic of its principle." 8 Wigmore, Evidence § 2291, at 554 (McNaughton rev. 1961). The judicial decisions have echoed this need for a restrictive interpretation and application of the privilege. *Prichard v. United States,* 181 F.2d 326 (C.A.6); *United States v. United Shoe Machinery Corp.,* 89 F.Supp. 357 (D.Mass)."

*In re Rospatch Sec. Litig.*, No. 1:90-CV-805, 1991 WL 574963, at *5 (W.D. Mich. Mar. 14, 1991) (quoting *United States v. Goldfarb,* 328 F.2d 280, 282 (6th Cir.1964)). "Business advice received

from an attorney is not privileged." *Id.* (citing *In the Matter of Walsh,* 623 F.2d 489, 494 (7th Cir.), *cert. denied,* 449 U.S. 494 (1980)). "The attorney-client privilege protects only those disclosures necessary to obtain informed legal advice which might not have been made absent the privilege." *Id.* (citing *Fisher v. United States,* 425 U.S. 391, 403 (1976)).

"The work-product rule is not a privilege but a qualified immunity protecting from discovery documents and tangible things prepared by a party or his representative in anticipation of litigation. Fed. R. Civ. P. 26(b)(3)." *In re Perrigo Co.*, 128 F.3d 430, 437 (6th Cir. 1997) (quoting *Admiral Ins. Co. v. U.S. Dist. Court for Dist. of Ariz.*, 881 F.2d 1486, 1492 (9th Cir.1989)). Work performed in anticipation of litigation need not be for the purpose of obtaining legal advice to be protectable under the work-product doctrine. *See* Michele DeStefano Beardslee, *Taking the Business Out of Work Product*, 79 Fordham L. Rev. 1869, 1912 (2011). But nothing forecloses a party from asserting both the work-product doctrine and the attorney-client privilege as a basis for protection.

Currently at issue in Defendant's Motion are nearly 1,500 documents[4] originally marked as "work product" in Plaintiffs' and CRA's privilege logs that are now marked as "attorney-client" privileged material. (*See* docket no. 188 at 10.) Defendant asserts that this change is improper because Plaintiffs and CRA did not originally assert the attorney-client privilege with regard to these documents. Thus, Defendant contends, when Plaintiffs and CRA themselves determined that the documents were protectable as work product, they deliberately chose not to assert the

---

[4] Defendant filed its initial motion contesting the privileged nature of 1,513 documents, but as noted, the Parties have resolved their issues with regard to "a small number of documents," which have been removed from Defendant's Amended Exhibit D. (*See* docket no 196 at 2.) The Parties have not indicated exactly how many documents remain at issue, and the Court has not counted the list by hand.

7

attorney-client privilege; and if the documents were not privileged communication before, they are not privileged communication now. (*Id.* at 12-14.) Moreover, Defendant argues, by failing to assert the attorney-client privilege originally, Plaintiffs and CRA have waived any such protection. (*Id.* at 14-17.)[5]

Plaintiffs and CRA assert that they did not change the basis of protection for these documents from "work product" to "attorney client." In its Order, the Court discussed the common-interest privilege:

> The common-interest doctrine applies "where the parties are represented by separate attorneys but share a common legal interest." *Hawkins*, 2010 WL 2287454 at *8. Under the doctrine, privileged communication can be exchanged without waiving the privilege, provided that the parties have "'an identical legal interest with respect to the subject matter of the communication.'" *MPT, Inc. v. Marathon Labels, Inc.*, 2006 WL 314435 slip copy at *6 (N.D. Ohio Feb. 9, 2006) (quoting *Libbey Glass, Inc. v. Oneida, Ltd.*, 197 F.R.D. 342, 347 (N.D. Ohio 1999)). The weight of authority holds that litigation need not be actual or imminent for communications to be within the common interest doctrine. *United States v. BDO Seidman*, LLP, 492 F.3d 806, 816 n.6 (7th Cir. 2007). But like the joint-defense doctrine, for the common-interest doctrine to apply, the underlying shared communication *must be privileged*. Restatement (Third) of the Law Governing Lawyers § 76.

(Docket no. 140 at 9-10.) Noting that communication between Plaintiffs could be protected by the common-interest privilege "provided that such communication contains privileged

---

[5] Defendant asserts through the examples in its Motion that there are two categories of documents with "changes" to the basis for protection: (1) those that Plaintiffs and CRA changed from "work product and common interest/joint defense" to "Common Interest/Attorney Client," such as document numbers 590, 591, and 592; and (2) those that Plaintiffs and CRA changed from "work product and common interest/joint defense" to "attorney-client," such as document number F0025957. (Docket no. 118 at 13.) In reviewing the privilege log, however, document number F0025957 is labeled as both "Common Interest Privilege" and "Attorney Client Privilege." While a distinction between documents labeled as both Common Interest and Attorney Client and those labeled as only Attorney Client may impact the Court's decision, Defendant has pointed to no specific documents changed in this manner, and the Court will not compare 1,500 individual line items to look for such a change.

information and that Ford and Severstal's legal interest was identical," the Court reserved ruling on specific documents because Plaintiffs' and CRA's privilege logs were not sufficiently detailed. (*Id.* at 10.) Thus, Plaintiffs contend, they have not added the attorney-client privilege as a new basis for protection; instead, they have merely removed the work-production designation from these materials pursuant to the Court's Order, and they have added the attorney-client designation as the underlying basis for the common-interest privilege. (Docket no. 190 at 11-13.)

The Court agrees with Plaintiff that adding the attorney-client designation along with the common-interest designation is not inappropriate. To the contrary, as the Court indicated, for the common-interest doctrine to apply, the underlying communication *must be privileged*. Thus, where the Court has specifically informed the Parties that their privilege log is not sufficiently detailed, the Court finds nothing improper about Plaintiffs and CRA identifying the nature of the privileged communication. Any other holding would render the Court's initially ruling inapposite.

As Defendant notes, a core difference between the work-product doctrine and the attorney-client privilege is the ability for an opponent to pierce the veil of the work-product doctrine. (*See* docket no. 188 at 16 n.5.) "'Although the rule affords special protections for work-product that reveals an attorney's mental impressions and opinions, other work-product materials nonetheless may be ordered produced upon an adverse party's demonstration of substantial need or inability to obtain the equivalent without undue hardship.'" *In re Perrigo Co.*, 128 F.3d at 437 (quoting *Admiral Ins. Co.*, 881 F.2d at 1492 (quoting *Upjohn v. United States,* 449 U.S. 383, 401 (1981))). Such an exception does not exist for attorney-client-privileged communication. Thus, Defendant argues, "[i]t is nearly inconceivable [that] Plaintiffs and CRA

9

would have inadvertently neglected to identify the more significant protection as the basis for withholding [the documents original]." (Docket no. 188 at 16 n.5.) Nevertheless, by arguing that the documents were protected under the common-interest doctrine, Plaintiffs and CRA implied that the documents were privileged; the updated privilege log simply details the privilege under which they are claiming common-interest protection. Therefore, the Court will deny Defendant's Motion with regard to the documents in Exhibit D.

### B. Documents Marked "Attorney Client" Listed in Exhibit E

Unlike those listed in Exhibit D, the documents listed in Exhibit E were originally labeled as attorney-client-privilege materials and are still listed in that manner. Currently at issue with regard to Exhibit E are 11 documents: 6 documents listed on the AK Steel privilege log; 1 document listed on the Ford privilege log; and 4 documents listed on the CRA privilege log. (*See* docket no. 196-3.)

The Court discussed the nature of attorney-client privileged communication in its original Order:

> The attorney-client privilege applies where legal advice is sought from a legal advisor. *Reedv. Baxter*, 134 F.3d 351, 355-56 (6th Cir. 1998). The key inquiry is whether the communication was made "for the purpose of obtaining legal advice *from a lawyer*." *United States v. Koval*, 296 F.2d 918, 922 (2d Cir. 1961) (emphasis added). And while this privilege typically only applies to communications between a client and his attorney, the privilege can also apply to communications between an environmental consultant and an attorney when the communication is made to assist the attorney in giving legal advice to the client. *In re Grand Jury Matter*, 147 F.R.D. 82, 85 (E.D. Pa. 1992). In either situation, however, an attorney must be involved in the communication.

(Docket no. 140 at 7-8.) And as noted, the attorney-client privilege is to be strictly confined to its narrowest possible limits. *In re Rospatch Sec. Litig.*, 1991 WL 574963, at *5 (citing *Prichard,* 181 F.2d 326 (citing Wigmore, Evidence § 2291, at 554 (McNaughton rev. 1961))). More

importantly, though,

> [t]he party asserting the attorney-client privilege must identify the withheld documents with sufficient particularity to enable opposing counsel to intelligently argue that the privilege ought not be applied. *In the Matter of Walsh, supra,* at 493; *Willemijn Houdstermaatschaapij B.V. v. Apollo Computer Inc.,* 707 F.Supp. 1429, 1443 (D.Del.1988); *A.M. International, Inc. v. Eastman Kodak Co.,* 100 F.R.D. 255, 256 (N.D.Ill.1981). This identification must include an index of the documents purportedly protected by attorney-client privilege and must include a particularized description of the contents of each document. *In re Richardson–Merrell, Inc.,* 97 F.R.D. 481, 484 (S.D.Ohio 1983).

*In re Rospatch Sec. Litig.*, 1991 WL 574963, at *5 (footnote omitted). The Court will consider each Parties' assertion of privilege independently.

With regard to Ford's assertion of privilege, specifically with regard to document number F0026222.1, the Court finds that Ford's description is sufficiently specific to support its assertion of privilege. The document is an email sent from CRA to seven individuals, three of which are attorneys, for legal review and comment on proposed revisions of a draft memorandum. (Docket no. 188-1 at 45.) And while "[an] attorney receiving or providing privileged communication must be acting as an attorney and not as a business advisor," *In re Rospatch Sec. Litig.*, 1991 WL 574963, at *8 (citing 8 Wright & Miller, *Federal Practice and Procedure* § 2017, at 136 (1970)), the Court accepts Plaintiff's assertion that this email was sent for the purposes of obtaining legal advice. Therefore, the Court will deny Defendant's Motion with regard to this document.

With regard to AK Steel's assertion of privilege, specifically with regard to document numbers 147, 2060, 2067, 2229, 2231, and 2291, the Court finds that Plaintiff's privilege log is not sufficiently specific to meet its burden and assert the attorney-client privilege. Document number 147 describes the document as an "Environmental Contact Note re sample water and sediment layers." (Docket no. 188-2 at 11.) Document numbers 2060 and 2229 appear to be attachments

11

to emails with no description; the emails are both described as "Report[s] on EPA Sampling Visit[s]." (*Id.* at 100-101; 110.) Document number 2067 is a "Review of Sediment Analysis." (*Id.* at 101.) Document number 2231 is an email "re: water and sediment sampling." (*Id.* at 110.) And document number 2291 is an email described as "Schaefer Road Proposal Miller-17D." (*Id.* at 114.) Based on these descriptions, the documents at issue do not appear to give or seek legal advice. Therefore, the Court will grant Defendant's Motion with regard to these documents and order that they be produced by Plaintiffs.

With regard to CRA's assertion of privilege, specifically with regard to document numbers 1273, 1704, 1705, and 2755, the Court finds that CRA has met its burden regarding its claim of privilege for document numbers 1273, 1704, and 1705 but not with regard to document number 2755. Document number 1273 is listed as a document sent from Gordon Hotchkiss of CRA to several individuals, including Tammy Helminski, Ford's outside counsel, for legal review and comment. (Docket no. 188-3 at 60.) Similarly, document numbers 1704 and 1705 are related communications sent between CRA and Ms. Helminski for legal review and comment. (*Id.* at 82.) Even though the Defendant argues that these drafts are for business purposes and not for legal review, Defendant relies only on mere speculation in making that assertion. The Court has no reason to question CRA's assertion that these documents are privileged. Therefore, the Court will deny Defendant's Motion with regard to these documents.

Document number 2755, however, is a draft memorandum "prepared at the request of counsel" and sent to James VanAssche Nicole Rathbun Shanks and Douglas Gastrell, none of whom appear to be attorneys.[6] (*Id.* at 119.) Even though this document may have been created at

---

[6] Plaintiffs and CRA have not provided the Court with a list of attorneys to cross reference

12

the request of counsel, it was not sent to or from counsel for the purpose of seeking legal advice. While such a document may be protectable as work product, CRA did not claim such protection in its privilege log. Protection of this document is inappropriate under the attorney-client privilege. Therefore, the Court will grant Defendant's Motion with regard to this document.

### C. Documents Marked "Work Product" Listed in Exhibit F

In its Order, the Court found that Plaintiffs' potential litigation with the EPA or MDEQ was "not a sufficient basis under which to assert work-product protection." (Docket no. 140 at 7.) The Court reasoned that holding otherwise would be based on the presumption that Plaintiffs knew (or planned) to fail in their efforts under the CACO. (*Id.*) The Court noted, however, that documents created after Plaintiffs decided to proceed with litigation against Defendant on March 6, 2006, may still be protectable, provided that the documents were, in fact, created in anticipation of litigation. (*Id.* at 7 n.3.)

In their revised privilege logs, Plaintiffs asserted work-product protection for 108 documents at issue in Defendant's current Motion. (*See* docket no. 188 at 20.) In their Joint Statement, the parties resolved their dispute with regard to all but 34 documents: 11 documents listed in Ford's privilege log; and 23 documents listed in CRA's privilege log. (Docket no. 196-4 at 2.) Defendant acknowledges that these documents were created after March 6, 2006, but asserts that the documents were not generated in anticipation of litigation but "in connection with Plaintiffs' performance of their regulatory obligation to assess and, ultimately, remediate the

---

with their exhibits, and only Ford indicates in its privilege log which individuals are attorneys and which are not. The Court was able to determine that Ms. Helminski is Ford's outside counsel by cross referencing CRA's privilege log with Ford's privilege log. The Court was unable to find any mention of Ms. Shanks, Mr. Gastrell, or Mr. VanAssche through a review of Ford's privilege log.

13

STRA under the CACO." (Docket no. 188 at 22.) In support of this contention, Defendant notes that the documents post-dating the March 6, 2006 date "do not differ from those created to assess the SRA prior to that date." (*Id.*) Additionally, Defendant argues, Plaintiffs have waived work-product protection by placing the substance of the documents at issue in this matter. (*Id.* at 23-24.)

As the Court noted in its original Order, a document may "be created for both use in the ordinary course of business and in anticipation of litigation without losing its work product privilege." *United States v. Roxworthy,* 457 F.3d 590, 599 (6th Cir. 2006). Thus, the Court is not persuaded by Defendant's contention that the documents created after March 6, 2006, are similar to the documents created before that date. Even assuming that documents created before March 6, 2006, were created for purely business purposes, it does not follow that substantially similar documents created after that date could not be created for both business and litigation purposes.

Nevertheless, "A party asserting the work product privilege bears the burden of establishing that the documents he or she seeks to protect were prepared 'in anticipation of litigation.'" *U.S. v. Roxworthy*, 457 F.3d 590, 593 (6th Cir. 2006). Plaintiffs' sweeping assertion that the documents at issue "were undoubtedly generated in anticipation of litigation with MichCon" is insufficient to meet this burden, particularly where the examples cited in their brief related to litigation support activities are no longer at issue. (*See* docket no. 190 at 20.) Moreover, with regard to the Ford documents, it appears that only a "redacted portion[]" of the documents is at issue. The Court has no way to determine what type of content is included in these "redacted portions." (*Compare*, *e.g.*, docket no. 196-4 at 2, *with* docket no. 188-1 at 152.) Therefore, the Court will grant Defendant's Motion. Because the Court finds that Plaintiff has

14

not met its burden of establishing that work-product protection is appropriate for these documents, the Court need not address whether Plaintiffs have waived any such protection.

### D. Defendant's Request for Costs

As noted, where a court grants a Rule 37 motion to compel, then the court must award reasonable expenses and attorney's fees to the successful party, unless the successful party did not confer in good faith before the motion, the opposing party's position was substantially justified, or other circumstances would make an award unjust. Fed.R.Civ.P. 37(A)(5)(a). The Court finds that Plaintiffs' and CRA's position with regard to Defendant's Motion was substantially justified. Therefore, the Court will deny Defendant's request for costs.

**IT IS THEREFORE ORDERED** that Defendant's Renewed Motion to Compel is **GRANTED IN PART AND DENIED IN PART** as follows:

- a. Defendant's Motion is DENIED with regard to the documents listed in its Amended Exhibit D;
- b. Defendant's Motion is DENIED with regard to document number F0026222.1 in Ford's privilege log;
- c. Defendant's Motion is GRANTED with regard to document numbers 147, 2060, 2067, 2229, 2231, and 2291 in AK Steel's privilege log;
- d. Defendant's Motion is DENIED with regard to document numbers 1273, 1704, and 1705 in CRA's privilege log;
- e. Defendant's Motion is GRANTED with regard to document number 2755 in CRA's privilege log; and
- f. Defendant's Motion is GRANTED with regard to the documents listed in its

Amended Exhibit F.

**IT IS FURTHER ORDERED** that Plaintiffs and CRA are to produce responsive documents as set forth in this Opinion and Order within 30 days.

**IT IS FURTHER ORDERED** that Defendant's request for costs associated with its Motion is **DENIED**.

Pursuant to Fed. R. Civ. P. 72(a), the parties have a period of fourteen days from the date of this Order within which to file any written appeal to the District Judge as may be permissible under 28 U.S.C. 636(b)(1).

Dated: October 27, 2015          s/ Mona K. Majzoub
                                           MONA K. MAJZOUB
                                           UNITED STATES MAGISTRATE JUDGE

**PROOF OF SERVICE**

I hereby certify that a copy of this Opinion and Order was served on counsel of record on this date.

Dated: October 27, 2015          s/ Lisa C. Bartlett
                                           Case Manager